# EXHIBIT C

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

CHIEFTAIN ROYALTY COMPANY,   )
   )
   Plaintiff,   )
   )
v.   )   Case No. CIV-011-177-D
   )
SM ENERGY COMPANY (including   )
predecessors, successors and affiliates),   )
ENERVEST ENERGY INSTITUTIONAL   )
FUND XIII-A, L.P., ENERVEST   )
ENERGY INSTITUTIONAL FUND   )
XIII-WIB, L.P., ENERVEST ENERGY   )
INSTITUTIONAL FUND XIII-WIC, L.P.,   )
ENERVEST OPERATING, L.L.C., and   )
FOURPOINT ENERGY, LLC,   )
   )
   Defendant.   )

## DECLARATION OF STEVEN S. GENSLER IN SUPPORT OF CLASS COUNSEL'S RENEWED APPLICATION FOR ATTORNEY'S FEES

I, Steven S. Gensler, declare as follows:

1. I am a Professor and the Gene and Elaine Edwards Family Chair in Law at the University of Oklahoma College of Law, where I teach Civil Procedure and related classes. I am the author of Federal Rules of Civil Procedure: Rules and Commentary (Thomson Reuters) and a wide range of articles on Oklahoma and federal practice and procedure. My curriculum vitae is attached as Exhibit 1.

2. I have been retained by Class Counsel to provide an opinion as to the reasonableness of Class Counsel's attorney's fee request.

3. In forming these opinions, I have reviewed, among other things:

1

(1)     pleadings, filings, and orders in this case;

(2)     the Settlement Agreement;

(3)     the Declaration of William C. Hetherington, Jr. In Support of Class Counsel's Renewed Application for Attorneys' Fees ("Hetherington Decl.");

(4)     the Declaration of Richard G. Van Dyck In Support of Class Counsel's Renewed Application for Attorneys' Fees & Class Representative's Renewed Application for Case Contribution Award ("Van Dyck Decl.");

(5)     the Declaration of Glenn Coffee ("Coffee Decl.");

(6)     the Declaration of Joseph M. Watt In Support of Class Counsel's Renewed Application for Attorneys' Fees ("Watt Decl.");

(7)     the Declaration of Geoffrey P. Miller In Support of Class Counsel's Renewed Application for Attorneys' Fees and Class Representative's Renewed Application for Case Contribution Award on Remand ("Miller Decl. II");

(8)     the Declaration of Bradley E. Beckworth and Robert Barnes on Behalf of Class Counsel ("Joint Class Counsel Decl.");

(9)     the Declaration of Bradley E. Beckworth Filed on Behalf of Nix, Patterson & Roach, LLP ("NPR Decl.");

(10)    the Declaration of Robert N. Barnes and Patranell Britten Lewis ("B&L Decl.");

(11)    Class Counsel's detailed time records;

(12)    the decision of the two-judge panel for the U.S. Court of Appeals for the Tenth Circuit in *Chieftain Royalty Company v. EnerVest Energy Inst. Fund XIII-A, L.P., et al.*, No. 16-6022, 888 F.3d 455 (10th Cir. April 11, 2018) (amended *nunc pro tunc*) ("Panel Opinion" or "Panel Op.");

(13)    the Declaration of Layn R. Phillips in Support of Settlement (Dkt. No. 116) ("Phillips Decl.");

(14)    the Declaration of Michael Burrage in Support of Attorneys' Fees, Litigation Expenses and Case Contribution Award (Dkt. No. 117) ("Burrage Decl.");

(15)    the Declaration of Dan Little, President of Sagacity, Inc., In Support of Attorneys' Fees, Expenses and Case Contribution Award (Dkt. No. 118) ("Little Decl.");

(16)    the Declaration of Geoffrey P. Miller in Support of the Stipulation and Agreement of Settlement, Class Counsel's Application for Attorneys' Fees, Reimbursement of Litigation Expenses and Request for Case Contribution Award, and Notice of Proposed Settlement (Dkt. No. 119) ("Miller Decl. I");

(17)    my prior Declaration—the Declaration of Steven S. Gensler in Support of Award of Attorneys' Fees (Dkt. No. 120) ("Gensler Decl. I");

(18)    the Declaration of Robert Abernathy, President of Chieftain Royalty Company (Dkt. No. 122-1) ("Abernathy Decl. I");

(19)    the Declaration of Bradley E. Beckworth and Robert N. Barnes on Behalf of Class Counsel (Dkt. No. 122-2) ("Class Counsel Decl. I");

(20)    the Affidavit of Barbara A. Ley (Dkt. No. 122-3) ("Ley Aff.");

(21) the Affidavit of Scott Exley on Behalf of Settlement Administrator Rust Consulting, Inc. (Dkt. No. 122-4) ("Rust Aff.");

(22) the Affidavit of Kelsie Wagner Trust (Dkt. No. 122-6) ("KW Trust Aff.");

(23) the Affidavit of Pagosa Resources, LLC (Dkt. No. 122-7) ("Pagosa Resources Aff.");

(24) the Affidavit of Omega Royalty Company LLC (Dkt. No. 122-8) ("Omega Royalty Aff.");

(25) the Affidavit of Michael P. Starcevich (Dkt. No. 122-9) ("Starcevich Aff.");

(26) the Affidavit of CSW 2003 Exploration Limited Partnership (Dkt. No. 122-10) ("CSW Aff.");

(27) the Affidavit of Asa R. Maley Revocable Living Trust (Dkt. No. 122-11) ("Maley Trust Aff."); and

(28) the Supplemental Declaration of Robert Abernathy, President of Chieftain Royalty Company (Dkt. No. 145-8) ("Abernathy Decl. II").

### Summary of Opinions

4. It is my opinion that Class Counsel's fee request in the amount of $17,333.333.33 is fair and reasonable compensation for the services provided to the Class Members and the benefits bestowed upon the Class Members by the terms of the settlement.

5. Class Counsel's fee request is fair and reasonable under the statutory factors set forth in 12 O.S. §2023(G)(4)(e) and under any of the methods Oklahoma courts have used to calculate class action fee awards in common fund contingency fee cases.

6. The Section 2023(G)(4)(e) factors support granting Class Counsel's fee request when viewing it either as a multiple of 2.1 times Class Counsel's lodestar or as an award of 33 1/3% of the cash component of the common fund created by the settlement.

7. The Court must follow the Panel Opinion's directive to apply Oklahoma law. But, as a threshold matter, the Panel Opinion's statements about Oklahoma fee-award law

3

reflect two fundamental misunderstandings of the content of Oklahoma law and how Oklahoma courts have applied it in the common fund contingency fee class action setting.

8.     First, citing the *Burk* case from 1979, the Panel Opinion mistakenly suggests that Oklahoma courts must set class action fee awards using the lodestar method.  That is not correct.  As detailed below, Oklahoma courts never interpreted *Burk* as imposing any such mandate in common fund contingency cases.  To the contrary, Oklahoma courts uniformly relied on the percentage-of-fund method, using lodestar as, at most, a cross-check.  More fundamentally, the Oklahoma Legislature has since enacted a statute—12 O.S. § 2023(G)(4)—governing fee awards in class action.  In doing so, the Oklahoma Legislature actually intended to *relieve* Oklahoma courts of any need to follow lodestar methodology when determining class action fees, deliberately endowing Oklahoma courts with discretion to select whatever calculation methodology best fit the circumstances.  In substance and effect, the Oklahoma Legislature codified the practices Oklahoma courts had developed and used during the preceding three decades.  Since Section 2023(G)(4)(e) took effect, Oklahoma courts have continued to award class counsel fees on a percentage-of-the-fund basis in common fund contingency fee royalty underpayment cases.

9.     Second, citing the *Hess* case, the Panel Opinion mistakenly suggests that Oklahoma has rejected the use of multipliers when the lodestar method is used.  That too is not correct.  As detailed below, the Oklahoma Legislature deliberately eschewed adopting any range or cap for multipliers when it enacted Section 2023(G)(4).  Moreover, the Panel Opinion misreads *Hess* in two ways.  First, it misreads the applicability of *Hess* because it failed to appreciate that *Hess* addressed using the lodestar method in a fee-

4

shifting case, a setting wholly distinct from the common fund setting. Second, it missed the fact that the few references in *Hess* to using the lodestar method in the common fund setting affirmatively *recognize and support* the use of multipliers. Since *Hess*, Oklahoma courts applying Section 2023(G)(4)(e) in common fund contingency fee cases have consistently grasped these distinctions and have used multipliers when incorporating a lodestar component in their analyses.

10. Nevertheless, whatever tension may exist between the Oklahoma Legislature's intent and Oklahoma case law versus the Tenth Circuit Panel Opinion does not need to be resolved in this case because Class Counsel's fee request satisfies Section 2023(G)(4)(e) even under the lodestar approach.

11. With respect to the objections that have been made to the fee award, Oklahoma decisions provide clear guidance for the Court to follow as it implements the Panel Opinion's directive to apply Oklahoma law here. Those objections have been rejected at least four times; once before Section 2023(G)(4) took effect and three times since then. Indeed, in three of those cases, the rejected objections were raised by the same Objectors as in this case.

### The Settlement

12. Plaintiff Chieftain Royalty Company ("Chieftain") initiated this lawsuit in Beaver County, Oklahoma on January 27, 2011. Non-Settling Defendant, SM Energy Company ("SM Energy"), removed the case to federal court pursuant to 28 U.S.C. § 1332(d), the class-action jurisdictional provisions enacted by the Class Action Fairness Act

of 2005 ("CAFA"). Chieftain filed its First Amended Complaint in this Court on August 31, 2012.

13. In its First Amended Complaint, Chieftain alleged that SM Energy used its position as an operator, or non-operating working interest owner separately marketing its own gas in Oklahoma gas wells, to secretly underpay royalty owed to Chieftain and the Class on production of gas and its constituents. Chieftain alleged SM Energy underpaid royalties by taking a variety of improper deductions and reductions from royalty payments, including, but not limited to: (i) deducting direct and indirect fees for marketing, gathering, compression, dehydration, processing, treatment and other similar services; (ii) not paying royalty on wellhead gas that was used off the lease premises and/or in the manufacture of products; and (iii) not paying royalty on condensate that dropped out of the gas stream. Based on these allegations, Chieftain's First Amended Complaint alleged numerous causes of action, including breach of contract, unjust enrichment, breach of fiduciary or quasi-fiduciary duty, conversion, conspiracy, and fraud and deceit. Following SM Energy's sale of a substantial portion of the oil and gas leases and related properties at issue in this case to EnerVest and conveyance of an undivided fifty-percent interest in those same assets to FourPoint, Chieftain filed its Second Amended Complaint, which joined EnerVest and FourPoint (the "Settling Parties") to this Action, on September 18, 2014. The conduct alleged against the Settling Parties in Chieftain's Second Amended Complaint is the same as that alleged against SM Energy in the prior Complaint and Petition and relates to the wells that had previously been owned by SM Energy.

6

14.     Class Counsel has investigated, analyzed, and litigated the Class' claims in this Action for over seven years.  Class counsel has reviewed approximately 1,000,000 pages of documents, including complex and technical documents like leases, contracts, maps, royalty check stubs, gas payment statements, gas analyses, production volume documents and well data; has deposed three of SM Energy's corporate designees regarding payment of royalty to royalty owners in the Class Wells; and has reviewed every one of the approximately 8,473 leases covering the wells SM Energy sold to EnerVest.  Class Counsel has had to fight numerous discovery battles to obtain the information necessary to prosecute the Class' claims and fully briefed a motion for class certification that the Court later stayed pending the disposition of the appeals in *Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*, No. 12-3176 (10th Cir., appeal filed July 5, 2012), and *Chieftain Royalty Co. v. XTO Energy, Inc.*, No. 12-7047 (10th Cir., appeal filed July 3, 2012) (collectively, the "XTO Appeals"). In pursuing and evaluating the Class' claims, Class Counsel also worked extensively with experts on subjects including accounting, gas marketing, lease and title analysis, and royalty payment calculation and methodology.  *See* Class Counsel Decl. I at ¶¶7-27; *see also* Joint Class Counsel Decl. at ¶3.

15.     In 2015, Chieftain and the Settling Parties initiated settlement negotiations under the supervision of former federal judge Layn Phillips—an experienced and highly respected mediator of complex disputes like this one.  *See* Phillips Decl.  Prior to the initial formal mediation session, Chieftain and the Settling Parties submitted extensive briefing to Judge Phillips regarding the parties' respective positions on class certification, liability, damages, and the strength and weaknesses of their respective cases.  While the parties did

not reach a settlement during their full-day formal mediation session, Judge Phillips oversaw and guided continued settlement negotiations for the three months that followed. The result of these extensive, arms-length settlement negotiations over many months was an agreement in principle on June 26, 2015, and ultimately, the Settlement Agreement. *See id.*; *see also* Class Counsel Decl. at ¶¶16-17; Joint Class Counsel Decl. at ¶3.

16. The Settlement Agreement provides the Class Members with two substantial benefits. First, the class members will receive $52 million in cash up front—a cash payment that represents approximately *100%* of the Class' claimed royalty underpayment principal over the entire Class Period. Second, the Settling Parties have agreed, for a three-year period, to continue to follow the methods described in the Settlement Agreement for computing royalties paid to Class Members with respect to the Class Wells and with respect to the Settling Parties' ownership shares of production from those wells, including the Settling Parties' non-deduction of certain expenses. The estimated present value of the future benefit is $2,965,000.00. *See* Ley Aff. at ¶¶3-4.

17. In sum, the total present value conferred on the Class Members by this litigation and the Settlement Agreement it brought about is estimated to be at least $54,965,000. *Id.*

18. In this Class of over 21,000 Members, *not a single* Class Member objected to the Settlement itself or the relief it recovered for the Class Members. Only sixteen (16) Class members (seven of whom were the same entity) requested exclusion from the Settlement. *See* Dkt. No. 145 at 1-2. Numerous absent Class Members—including a former Oklahoma federal judge, a preeminent Oklahoma oil and gas attorney, and a variety

8

of companies that specialize in oil and gas royalty interest management and acquisitions—filed affidavits or declarations in support of the Settlement Agreement and the requested awards to Class Counsel and Chieftain as a result of their efforts to obtain the Settlement Agreement. *See, e.g.*, Burrage Decl.; Little Decl.; KW Trust Aff.; Pagosa Resources Aff.; Omega Royalty Aff.; Starcevich Aff.; CSW Aff.; Maley Trust Aff.

19. This Court found the Settlement Agreement to be fair and reasonable and finally approved it in December 2015. While Objector Nutley attempted to overturn the Settlement on appeal through a "conflict of interest" argument, he never once contended the relief that he or any other Class Member would receive as a result of the Settlement was insufficient or inadequate. Ultimately, the Tenth Circuit Panel expressly rejected Mr. Nutley's "conflict of interest" argument and affirmed this Court's Final Judgment.

### The Law Governing This Analysis

20. In 2015, this Court approved the Settlement and, applying federal common law standards as set forth by the United States Supreme Court and the Tenth Circuit, awarded fees to Class Counsel in the amount of $17,333.333.33, reflecting a percentage-based award of 33 1/3 % of the common fund.

21. On appeal, a Tenth Circuit panel concluded that the Court should have applied Oklahoma law because the Court is exercising diversity jurisdiction. *Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455, 459-63 (10th Cir. 2017). Accordingly, the Tenth Circuit panel remanded for a re-evaluation of the fee award under Oklahoma law governing class action attorney's fees. *Id.* at 464.

9

22.     The Tenth Circuit panel concluded that this Court erred by not using a lodestar method to calculate Class Counsel's fee in this case. *Id.* at 463-64. The Tenth Circuit panel based this conclusion on its belief that the Oklahoma Supreme Court has imposed a lodestar requirement in all common fund cases. *Id.*

23.     For the reasons discussed below, it is my opinion that the Tenth Circuit panel's statements do not fully or accurately describe Oklahoma law governing class action attorney's fees or the practices actually employed by Oklahoma courts when awarding fees in common fund contingency cases. Most significantly, many of the statements made misunderstand the purpose and effect of 12 O.S. Supp. 2013 2023(G)(4), a 2013 statute that now controls the award of attorney's fees in class action cases. However, this Court does not need to resolve those questions because they do not affect the outcome. Under Oklahoma law, the Court's task is to make an award of *reasonable* attorney's fees, taking into consideration all of the factors listed in Section 2023(G)(4)(e). Whether one uses the percentage-of-the-fund method or the lodestar method, it is clear that Class Counsel's request for a fee award in the amount of $17,333.333.33 is fair, reasonable, and well within the range of fee awards Oklahoma courts have granted under Oklahoma law in similar cases for decades.

**The History and Effect of 12 O.S. § 2023(G)(4)(e)**

24.     In 2009, the Oklahoma legislature passed a comprehensive tort reform package that, among other things, included amendments to 12 O.S. § 2023, the statute governing class action practice in state courts in Oklahoma. *See* Coffee Decl. at ¶¶20-22 (discussing Enrolled House Bill No. 1603, enacted in 2009). The Oklahoma Supreme

10

Court voided that legislation in 2013 as violating the state's single-subject rule. *See Douglas v. Cox Ret. Props.*, 302 P.3d 789 (Okla. 2013). That same year, the Oklahoma Legislature then re-enacted the provisions affecting Section 2023. The contents of the 2009 and 2013 amendments are identical. *See* Coffee Decl. at ¶22.

25. The amendments to Section 2023 included a new subpart (G) governing the award of attorney's fees and costs.

26. Section 2023(G)(1) authorizes the court to award reasonable attorney's fees that are authorized by law or by the parties' agreement. Here, on appeal, no challenge was made to the Court's authority to award fees to Class Counsel out of the common fund created by the Settlement.

27. Section 2023(G)(4)(e) specifically addresses the determination of what would be a reasonable fee, stating that "in arriving at a fair and reasonable fee for the class counsel, the court shall consider the following factors:

(1) time and labor required,

(2) the novelty and difficulty of the questions presented by the litigation,

(3) the skill required to perform the legal service properly,

(4) the preclusion of other employment by the attorney due to acceptance of the case,

(5) the customary fee,

(6) whether the fee is fixed or contingent,

(7) time limitations imposed by the client or the circumstances,

(8) the amount in controversy and the results obtained,

11

(9) the experience, reputation and ability of the attorney,

(10) whether or not the case is an undesirable case,

(11) the nature and length of the professional relationship with the client,

(12) awards in similar causes, and

(13) the risk of recovery in the litigation."

28. The first twelve factors are the same (with some slight differences in wording that do not affect meaning) as the list of twelve factors set forth by the Oklahoma Supreme Court in *Burk v. City of Oklahoma*, 598 P.2d 659, 661 (1979), which had adopted the list of factors set forth by the Fifth Circuit in the influential case of *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). The thirteenth factor—the risk of recovery in the litigation—was added by the Oklahoma Legislature.

29. As the Tenth Circuit panel stated, it is clear that Section 2023(G)(4)(e) codified the *list of factors* Oklahoma courts must consider when setting class counsel fees. *See Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455, 463 (10th Cir. 2017). However, the Panel Opinion veered off track when it concluded that, in codifying a list of factors for courts to consider, the Oklahoma Legislature intended to codify a lodestar requirement in all cases.

30. Section 2023(G)(4) conspicuously does not use the term "lodestar." Nor does it use any terms like "hours," "hourly rates," or "hourly basis" with respect to the fees to be awarded to Class Counsel. The absence of any such language is no accident. During the legislative activity leading up to what became Section 2023(G), at least four bills were introduced that would specifically have required courts to calculate class action attorney's

12

fees on a lodestar basis. *See* Coffee Decl. at ¶¶11-19. None of those bills became Oklahoma law.

31.     In contrast, there is one subpart of Section 2023(G)(4) that very clearly and conspicuously tethers fee awards to a lodestar calculation. But that subpart does not apply to class counsel. Rather, it applies to situations where the court appoints a *different* lawyer to represent the interests of the class at the fee hearing. *See* 12 OKLA. STAT. §2023(G)(4)(d). During the legislative activity leading up to what became Section 2023(G), a bill was introduced that would have *required* courts to appoint independent counsel for the class to represent their interests at the fee hearing. *See* Enrolled Senate Bill No. 507 (Introduced and Enrolled during the 1st Session of the 51st Legislature (2007-2008)).[1] Under the bill, any such independent "fee counsel" would have been paid "on an hourly basis out of the proceeds awarded to the class." *Id.* at Section 1. That bill was passed by the Oklahoma Legislature but vetoed by Governor Henry. But if that mechanism sounds familiar, it is because a variation of it eventually was passed. Current Section 2023(G)(4)(d) *permits*—but does not require—the trial court to appoint an independent fee counsel, and specifies that such counsel "shall be awarded reasonable fees by the court on an hourly basis out of the proceeds to be awarded to the class."

32.     As attested to by Glenn Coffee, former President *Pro Tem* of the Oklahoma Senate, the absence of language requiring courts to award fees under a lodestar approach, or to pay class counsel fees out of the common fund on an "hourly" basis, was neither an

---

[1] The full Legislative history and all versions of Senate Bill No. 507 can be accessed online at: http://www.oklegislature.gov/BillInfo.aspx?Bill=SB507&Session=0800.

accident nor an oversight. It was the result of a deliberate decision to *relieve* Oklahoma judges of any obligation to calculate class action attorney's fees under any specific method. Coffee Decl. at ¶¶23-27. Codify the *factors* to be considered? Yes. But then let judges decide, based on the circumstances of the case, whether to award fees based on the percentage-of-fund method, as a lodestar calculation, some combination of the two, or some other method that might be developed in the future.

33. Section 2023(G)(4) also conspicuously lacks anything purporting to set a limit on what multiplier is appropriate under a lodestar calculation. That too is a deliberate omission. All four of the rejected bills that would have required a lodestar calculation also included a numerical limit on the multiplier. None of those bills passed. As Glenn Coffee attests, "caps on such 'multipliers' were specifically considered, debated and ultimately rejected." Coffee Decl. at ¶27.

34. The effect of Section 2023(G)(4)(e) was to codify the practices Oklahoma judges had developed and consistently applied during the past several decades. It did so in two ways. First, it codified the factors judges had been reciting based on what they referred to as the "basic guidance" from *Burk*, with the addition of the thirteenth factor. Second, it codified the discretion they had to employ a percentage-of-the-fund approach in common fund contingency cases, along with the discretion they had to use—or not use—a lodestar calculation as a cross-check. The following paragraphs explain this second conclusion.

35. Before Section 2023(G)(4)(e) was enacted, the prevailing practice in Oklahoma courts was to use a percentage of the fund approach when awarding attorney's fees in common fund contingency royalty underpayment cases. *See* Hetherington Decl. at

14

¶¶62-66, 79-87 and Exhibit B thereto (setting forth a chart that tracks and summarizes fee awards in over 50 Oklahoma oil and gas class actions filed in state and federal courts from 1995 through May of 2018).

36.     In my study of Oklahoma class action fee awards, I have independently read and analyzed every one of the decisions listed on the chart attached as Exhibit B to Judge Hetherington's Declaration.  I identified twenty-one fee orders issued between 1995 and March 2009 (prior to the enactment of Section 2023(G)(4)) in which the basis for the fee award was stated.[2]  Every one of those orders couched the fee award—either in whole or in part—as a function of the percentage of the fund.

37.     Contrary to what was implied by the Tenth Circuit panel, Oklahoma courts simply did not read *Burk* as requiring them to base the award of attorney's fees in common fund contingency cases on a lodestar calculation.  Three reasons regularly were stated.

38.     First, *Burk* was not a class action.  The suit arose out of the decision by the City Council of Oklahoma City to let American Fidelity Insurance Company construct a new building on what had been a public street (NW 20th Street between Classen and Western).  The plaintiffs prevailed and American Fidelity was given the option of removing the building and restoring the street or paying rent to the City for so long as the building remained.  Initially, the Oklahoma Supreme Court ordered the defendants to pay the

---

[2] An additional ten (10) fee orders were issued during this period that state only the amount of the fee awarded, with nothing in the order indicating how the court arrived at that amount.

15

plaintiffs' attorney's fees, but on rehearing ordered the fees to be paid out of the rent to be paid to the City.

39. Second, *Burk* did not stand alone as the only relevant guidance from the Oklahoma Supreme Court. One year **after** *Burk*, the Oklahoma Supreme Court was confronted with an argument that courts had to award fees on a strict lodestar calculation. *See Oliver's Sports Center, Inc. v. National Standard Ins. Co.*, 615 P.2d 291, 294 (1980). The Court rejected that view, explaining:

> **Fees cannot be awarded on the basis of time alone.** The use of time as the sole criterion is of dubious value because economy of time could cease to be a virtue; and inexperience, inefficiency, and incompetence may be rewarded to the detriment of expeditious disposition of litigation. The litigation risk factor must be considered. Although the court initially looks to the hourly rate for comparable representation where compensation is guaranteed, it must adjust the basic hourly rate where compensation is contingent by assessing the likelihood of success at the outset of the representation.

*Id.* (emphasis added). Before Section 2023(G)(4)(e) was enacted, it became common for Oklahoma judges awarding common fund fees in contingency cases to characterize *Oliver's Sports Center* as having "modified" the *Burk* factors. *See, e.g.*, *Simmons, et al. v. Anadarko Petroleum Corp.*, CJ-2004-57 (D. Ct. Caddo Cty. Dec. 23, 2008), Order on Attorney Fees, Litigation Expenses, and Class Representatives Fee (attached as Exhibit 2) at ¶16 ("In 1980, the Oklahoma Supreme Court followed and modified *Burk, supra*, to further instruct District Courts that counsel fees cannot be fairly awarded on the basis of time alone, but other factors, particularly the litigation risk factor, must be considered" (citing *Oliver's Sports Center*, 615 P.2d at 294); *Lobo Exploration Co. v. BP Am. Prod. Co.*, CJ-97-72 (D. Ct. Beaver Cty. Dec. 8, 2005), Order on Motion for Attorney Fees,

16

Litigation Expenses, and Class Representatives Fee (attached as Exhibit 3) at pg.9, ¶13 (same); *Continental Resources, Inc., et al. v. Conoco Inc., et al.*, CJ-95-739 (D. Ct. Garfield Cty. Aug. 22, 2005), Order on Motion for Attorney Fees, Litigation Expenses, and Class Representatives Fee (attached as Exhibit 4) at ¶12 (same); *Robertson, et al. v. Sanguine, Ltd., et al.*, CJ-02-150 (D. Ct. Caddo Cty. July 11, 2003), Order on Class Counsel's Motion for Attorneys' Fee, Representatives' Fee and Reimbursement of Litigation Expenses from the Common Fund (attached as Exhibit 5) at ¶13 (same); *Modrall v. Hamon Operating Co.*, CJ-94-266 (D. Ct. Caddo Cty. 1995), Order on Class Counsels' Application for Attorney Fees and Reimbursement of Expenses (attached as Exhibit 6) at p.4, ¶10 (same). The "litigation risk" factor, of course, ultimately was codified as the new "13th" factor in Section 2023(G)(4)(e).

40. Third, many Oklahoma courts cited the Oklahoma Court of Civil Appeals' decision in *Sholer v. State ex rel Dept. of Public Safety*, 990 P.2d 294 (Okla. Civ. App. 1999) for the proposition that, in class actions where class counsel was retained on a contingency fee basis, the court may "extend" the contingency fee agreement to the class members. *Id.* at 299 ("Many courts have held . . . that once a class is certified and a decision on the merits is had, the trial court may decide whether to approve the contingent fee agreement, and whether to extend the contingent arrangement to all class members."); *see also, e.g.*, *Strack, et al. v. Continental Resources, Inc.*, CJ-10-75 (D. Ct. Blaine Cty. July 13, 2018), Judgment and Order Approving Attorneys' Fees and Class Representatives' Case Contribution Award (attached as Exhibit 7) at ¶¶12-13 (finding the court had "the duty to determine whether to extend the contingency fee agreement entered into between

17

the Class Representatives and Class Counsel to the Class" and quoting *Sholer*, 990 P.2d at 299); *Taylor, et al. v. ChevronTexaco Corp., et al.*, CJ-2002-104 (D. Ct. Texas Cty. Dec. 22, 2009), Order on Attorney Fees, Litigation expenses, and Class Representatives Fee (attached as Exhibit 8) at ¶6 ("Under the Common Fund Doctrine, and in particular in a 'class action' (which is one type of action that can create a common fund), the Court has the authority to extend contingency fee agreements entered into between the Class Representative and Class Counsel to the entire Class" (quoting *Sholer*, 990 P.2d at 299)); *Simmons*, Ex. 8, at ¶6 (same); *Continental Resources*, Ex. 4, at ¶4 (same).

41.     The Oklahoma Court of Civil Appeals elaborated on this point in its unpublished opinion in *Adkisson v. Koch Industries, Inc.*, Case No. 106,452 (Okla. Ct. Civ. App. 2009) (attached as Exhibit 9).  That case involved an objection brought by Charles David Nutley (one of the same objectors here) arguing that *Burk* precluded a percentage-based fee award.  The Court of Civil Appeals squarely rejected that argument, writing:

> *Burk* expressly authorizes the trial court to consider whether the attorney took the case pursuant to a contingent fee agreement in determining a reasonable fee. Accordingly, we conclude *Burk* contemplates the trial court may in its discretion award the incentive or bonus fee by extending a contingent fee agreement to the beneficiaries of the common fund, especially in the types of cases in which a contingent fee is customary.

*Id.* at 12.

42.     This is not to say that Oklahoma courts ignored *Burk* or viewed it as irrelevant.  Most fee award orders continued to cite to and apply the *Burk factors*.  What was rejected was the idea that *Burk* alone spoke to the issue and obligated a lodestar approach.  Rather, looking at the relevant guidance as a whole, Oklahoma courts uniformly

18

concluded they had discretion to determine what methodology to use and that they could faithfully apply and honor the *Burk* factors using a percentage-of-fund approach.

43.     Using that discretion, the Oklahoma courts uniformly used a percentage of the fund approach when setting fees in common fund contingency cases, often extolling the advantages of the percentage-of-fund method.  That trend began in the very first fee order I have found.  In the fee order in *Modrall v. Hamon Operating Co.*, Ex. 6, Judge (now Oklahoma Supreme Court Justice) Winchester enthusiastically embraced the trend of using the percentage-of-fund method in common fund contingency cases, observing that it "more closely parallels what is worked out daily in law offices throughout the State of Oklahoma" and that what class members care about is how much they will recover, not how many hours the lawyer worked.  *Id.* at 4-5, ¶12.  Judge Winchester added:

> If the time expended was this Court's sole item to consider, then in that event the Court can visualize instances where attorneys in a class action would never attempt to settle a matter and would attempt to work the file for years in an attempt to increase their hours and their resultant compensation.  **This is the wrong approach.**  It would penalize efficiency and it would unduly tax this Court with the burdens of motions and no doubt dilatory pleadings.

*Id.* at 5, ¶13 (emphasis added).  Judge Winchester ultimately approved a fee award of 40% of the common fund.

44.     Another early example is Judge Van Dyck's fee order in *Robertson v. Sanguine, Ltd.*, Ex. 5, a case approving a percentage-based fee award of 40%.  Judge Van Dyck explained:

> The percentage fee has important advantages to the Class in that it provides self-regulating incentives for efficiency.  First, it compensates counsel on the real value of the service provided (the amount of benefit conferred).  Second, the percentage approach awards efficiency.  Not only is there no reward for

19

inefficiency, there is a penalty due to the fact that, if the work was unnecessary, the lawyer has wasted his time. Third, the percentage method encourages counsel to go the extra mile. Counsel has an incentive to push beyond a 'good' recovery to an 'excellent' recovery.

*Id.* at 4, ¶8. These sentiments no doubt sound familiar; countless federal fee law decisions—including thirty years' worth of jurisprudence by the Tenth Circuit—make the same points. *See, e.g.*, *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454-56 (10th Cir. 1988); *Uselton v. Commercial Lovelace Motor Freight*, 9 F.3d 849, 853-54 (10th Cir. 1993); *Gottlieb v. Barry*, 43 F.3d 474, 482-83, 487-88 (10th Cir. 1994).

45. When a lodestar was used, it was done in conjunction with a percentage-of-fund analysis, not in lieu of one. Eventually, Oklahoma judges would start to refer to this use of the lodestar approach as a "cross-check." *See, e.g.*, *Lobo Exploration Co.*, Ex. 3 at 9 ("Stated more clearly in terms that we are dealing with here, once the amount of reasonable billing has been determined, the court generally uses this as a cross-check to determine whether the percentage recovery from the common fund is reasonable."); *see also Bank of Am. v. El Paso Natural Gas Co*, CJ-97-68 (D. Ct. Washita Cty. June 2006) (Cabaniss, D.J.), Order on Motion for Attorney Fees, Litigation Expenses, and Class Representative's Fee (attached as Exhibit 10) at 7; *Laverty v. Newfield Exploration Mid-Continent, Inc.*, CJ-2002-101 (D. Ct. Beaver Cty. Aug. 2007) (Zigler, D.J.), Order on Motion for Attorney Fees, Litigation Expenses, and Class Representative's Fee (attached as Exhibit 11) at 8; *Sacket v. Great Plains Pipeline Co. et al.*, CJ-2002-70 (D. Ct. Woods Cty. 2009) (Linder, D.J.) Order on Motion for Attorney Fees, Litigation Expenses, and Class Representative's Fee (attached as Exhibit 12) at 12.

20

46.     I am aware of no common fund contingency fee royalty underpayment case in which the court based fees solely on a lodestar calculation.  In every case I have reviewed, when the court conducted a lodestar analysis, it did so in conjunction with, or as a supplement to, a percentage-of-fund analysis.

47.     The description of Oklahoma court practices set forth above is not limited to the practices of a couple of outlier judges from a few counties.  It describes the practices that prevailed throughout the state in the years before Section 2023(G)(4)(e) took effect, spanning decisions from at least twelve different judges in cases from at least ten different counties, and going back to at least 1995 (as seen in Judge Winchester's fee order in *Modrall v. Hamon Operating Co.*, Ex. 6).

48.     Since the enactment of Section 2023(G)(4)(e), fee award practice in the Oklahoma courts has been virtually unchanged.  Judges still discuss the same factors (the original 12 from *Burk* plus the "risk of recovery" factor from *Oliver's Sports Center* that became the 13th statutory factor). Judges still state they may award fees on a percentage-of-fund basis in common fund contingency cases.  Judges still extol the advantages of the percentage-of-fund method in common fund contingency cases.  Judges still employ lodestar as an additional window into reasonableness, though they remain divided about the need and utility of doing so.  And judges never base a fee award solely on a lodestar calculation in common fund contingency fee royalty underpayment cases.

49.     In the years after Section 2023(G)(4)(e) was enacted, Oklahoma district courts have understood it as a flexible scheme that is applied differently based on whether the case involves a common fund recovery or statutory fee-shifting. In *Fitzgerald Farms,*

21

*LLC v. Chesapeake Operating, L.L.C.,* CJ-2010-38, 2015 WL 5794008 (D. Ct. Beaver Cty. July 2, 2015), for example, Judge Parsley applied all of the Section 2023(G)(4)(e) factors but held that, in common fund cases, the primary factor is the percentage of recovery. Judge Parsley discussed at length the need to distinguish between common fund and statutory fee-shifting cases, stating: "[W]here, as here, the legal representation is undertaken on a contingent fee basis and that representation results in a common fund recovery for the benefit of a class, Oklahoma applies a percentage analysis." *Id.* at *2. In contrast, while the time-and-labor "factor is the most important in a fee shifting case, its relevance in the contingent fee common fund class actions such as this one is to show that the case was not a lay-down winner where little time was invested and little risk actually assumed." *Id.* at *6. Judge Parsley went on to explain that "Oklahoma courts have long preferred the percentage method for awarding fees in Oklahoma oil and gas class actions," noting that it rewards good results, promotes efficiency, and aligns the interests of class counsel with the class members. *Id.* Later in the opinion, Judge Parsley rejected the assertion, made by objectors (Mr. Nutley included), that the Oklahoma Supreme Court's 2014 opinion in *Hess v. Volkswagen of America, Inc.*, 2014 OK 111, 341 P.2d 662, requires a lodestar calculation, pointing out that *Hess* was a statutory fee-shifting case, not a common fund case. *Id.* at *12. Ultimately, Judge Parsley approved a 40% fee based on a settlement that obtained approximately 41% of the damages claimed.

50. Another recent example is *Bank of America, N.A. v. El Paso Natural Gas Co.*, CJ-2004-45 (D. Ct. Washita Cty. August 30, 2017), Final Order Granting Class Counsel Attorneys' Fees, Litigation Costs, and Class Representative Incentive Award

22

(attached as Exhibit 13). This opinion was issued *after* the Panel Opinion and, again, Mr. Nutley objected on the same basis as he objects here. At first, *Bank of America* might appear to be lodestar-based because the order begins by saying what the lodestar calculation would be. But in his analysis, Judge Kelly made clear that he was in fact applying the percentage method—and not the lodestar method—because the case involved a contingent fee and a common fund. In discussing the sixth factor listed in Section 2023(G)(4)(e)—whether the fee is fixed or contingent—Judge Kelly explained that, while the lodestar method applies in fixed-fee and statutory-fee cases, it does not apply in contingent-fee common-fund cases, stating: "When the legal representation is undertaken on a contingent fee basis, and that representation results in a common fund recovery for the benefit of a class, Oklahoma law allows a percentage analysis to determine an appropriate fee." *Id.* at 8. The fee order ultimately approves a 40% award based on all of the Section 2023(G)(4)(e) factors, but primarily the percentage of recovery, which the court found to also represent a reasonable multiplier of 3 to 3.6 applied to the lodestar. *Id.* at 5, 13.

51. I am aware of fifteen (15) oil and gas royalty class action settlements in Oklahoma state courts since Section 2023(G)(4) first took effect in September 2009. Of those, thirteen (13) have fee orders that explain the methodology used to arrive at the fee award. Every one of those 13 fee orders awarded class counsel fees on a percentage-of-fund basis. In every case, the court awarded fees at 40% of the common fund. As with the pre-2023(G) data set, these outcomes are not the result of outlier actions by a few judges. These fee awards were made by ten different judges in cases filed in ten different counties.

23

52.     Of the thirteen (13) fee awards with detailed orders, only seven (7) include a lodestar calculation.  In each one, the lodestar calculation was made as a cross-check to, not in lieu of, the percentage-of-fund approach.

53.     In the other six (6) fee orders, no lodestar calculation was made at all. Instead, they contain a general finding on Class Counsel's time and labor invested, mirroring the federal common law standards applied in the Tenth Circuit.  As some judges have put it, the point of the inquiry is not to generate a specific number but to ask whether the case was merely a "lay-down."  *See Fitzgerald Farms*, 2015 WL 5794008, at *6 ("Although this factor is the most important in a fee shifting case, its relevance in the contingent fee common fund class actions such as this one is to show that the case was not a lay-down winner where little time was invested and little risk actually assumed."); *Cornett v. Samson Resources Co.*, CJ-09-81 (D. Ct. Dewey Cty. Dec. 23, 2013), Final Order Granting Class Counsel Fees (attached as Exhibit 14) at pg. 5, ¶10 ("This factor in the contingent fee common fund class actions such as this one is intended to show that the case was not a lay-down.").

54.     In the seven (7) cases where the court made a lodestar calculation, the court then applied a multiplier as part of the cross-check analysis.  The court found the multiplier acceptable in each case.  Those multipliers were:  1.28, 2, 2.7, 3.12[3], 3.17, 5, and 6.3.  All

---

[3] In this case, the court described the multiplier as being "3 to 3.6."  *See Bank of Am., N.A*, Ex. 13 at 5.  Using the figures from the Order, I calculate the actual lodestar multiplier in that case to have been 3.12.

of these involved percentage-based fee awards of 40%. None of them were rejected on the basis that the corresponding lodestar multiplier that resulted was too high.

55.     It is, perhaps, an interesting academic exercise to speculate on how the Oklahoma Supreme Court might have viewed the fee award practices developed by the Oklahoma lower courts had it addressed that issue before Section 2023(G)(4)(e) took effect.[4] Interesting, but as I said, academic, because the Oklahoma Legislature intervened, and the governing law today is Section 2023(G)(4)(e). And Section 2023(G)(4)(e) clearly followed the lead of the Oklahoma lower courts by taking the "basic guidance" of *Burk* in the form of the list of factors and endowing judges with discretion about choosing a calculation methodology to employ them.

56.     It is unquestionably clear that the Oklahoma lower courts have understood Section 2023(G)(4) as giving them discretion to choose what calculation methodology to employ, and they have uniformly selected the percentage-of-fund method when determining class counsel fees in royalty underpayment common fund contingency cases. Where they have also looked to the lodestar approach, they have done so on a cross-check basis using multipliers as high as 6.3. In short, Oklahoma lower courts have interpreted and understood Section 2023(G)(4) as telling them to keep doing what they had been doing all along.

57.     That the Oklahoma Legislature chose to align the statutory scheme with what had been prevailing practice in the Oklahoma state courts ought to come as no surprise.

---

[4] One might speculate, for example, that *Justice* Winchester would have held the same views he expressed in *Modrall v. Hamon Operating Co.* when he was *Judge* Winchester.

The Oklahoma Supreme Court decided *Burk* almost 40 years ago, in the era when lodestar methodology was at its height, and before courts came to understand how inapt it is in the common fund setting. *Burk* itself relies on three cases from federal circuits that have all since disavowed the necessity of lodestar calculations and instead emphasize calculating fee awards in common fund cases as a percentage of the result.[5] Indeed, one of those circuits, the Third Circuit, led the charge in moving away from the lodestar methodology as a result of its well-known and influential Task Force Report on Court Awarded Attorney Fees. *See Report of the Third Circuit Task Force on Court Awarded Attorney Fees*, 108 F.R.D. 237 (1985). As far back as 1995, Judge (now Justice) Winchester cited to the Third Circuit Task Force's Report when discussing the national trend toward—and the advantages of—the percentage-of-fund approach in common fund cases. Through Section 2023(G)(4)(e), the Oklahoma Legislature seems to have officially brought Oklahoma fee-award methodology into the modern era.

58. Finally, the Oklahoma Supreme Court's opinion in *Hess v. Volkswagen of America, Inc.*, 341 P.3d 662 (Okla. 2014), does not resurrect a lodestar requirement in common fund contingency fee class actions. *Hess* presented a completely different type of fee claim. In that case, a consumer class action, the parties' settlement agreement created

---

[5] *See Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1270 (D.C. Cir. 1993) ("[W]e join the Third Circuit Task Force and the Eleventh Circuit, among others, in concluding that a percentage-of-the-fund method is the appropriate mechanism for determining the attorney fees award in common fund cases."); *Union Asset Management Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 644 (5th Cir. 2012) (rejecting argument that the *Johnson* factors require a lodestar analysis, acknowledging the benefits of the percentage method in common fund cases, and holding that trial courts may use the percentage method in common fund cases).

a claims process and provided for *the defendant* to pay the plaintiffs' attorney's fees. Ultimately, only 310 people filed claims resulting in payments of about $46,000. Enforcing the contractual fee clause, the district court ordered Volkswagen to pay class counsel attorney's fees of over $7 million. The Oklahoma Supreme Court reversed the fee award, holding that the minimal class recovery could not support such a large fee award.

59. Critically, *Hess* addressed what courts should do when the attorney's fees have been *shifted*—in that case, by the settlement contract—to the other side. The Court was not presented with the issue of what Section 2023(G)(4)(e) requires—or permits— when class counsel's fees are to be paid by the class members out of the common fund created by the litigation. The only discussion of that subject is found in Justice Taylor's concurrence, in which he wrote that "there are two primary methods of calculating attorney fees in class actions: the lodestar method and the contingency fee method" and that "the contingency fee method is incorporated into any calculation of attorney's fees because the amount in controversy and the results obtained must be considered in determining reasonable attorney's fees." *Id.* at 673 (Taylor, J., concurring) (citing 12 O.S. Supp. 2013 2023(G)(4)(e)(8)). Justice Watt's Declaration unequivocally reinforces the fact that *Hess* addressed fees in the fee-shifting setting only and does not create any new Oklahoma law governing fees in the common fund contingency fee setting. Watt Decl. at ¶ 24.

60. *Hess* also did not address the role of multipliers in common fund contingency fee situations. In its opinion remanding the fee request, the Tenth Circuit cited *Hess* as indicating that the Oklahoma Supreme Court had adopted a "strong presumption that the lodestar method, alone, will reflect a reasonable attorney fee." Panel Op., 888 F.3d

27

at 463. It added the observation that the Oklahoma Supreme Court had cited to the United States Supreme Court's decision in *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010), "signaling that it would follow the lead of the United States Supreme Court in greatly limiting departures from the lodestar figure." Panel Op., 888 F.3d at 463-64. Again, *Hess* was a *fee-shifting* case, not a common fund case. The cite to *Perdue v. Kenny*—also a fee-shifting case[6]—makes perfect sense in that context. But *Perdue v. Kenny* does not speak to the use of multipliers in percentage-based fee awards, and federal law governing fees paid out of a common fund adopts no such limiting principle.

61. To the extent *Hess* says anything about the role of multipliers in common fund contingency fee calculations, it actually *supports* their use. In the footnote citing to *Perdue v. Kenny,* the Oklahoma Supreme Court also cited to a second case, *In re Enron Corp. Securities*, 586 F. Supp. 2d 732 (S.D. Tex. 2008). Unlike *Perdue v. Kenny*, the *Enron* case involved a percentage-based fee award paid out of the common fund. In setting forth the applicable law, Judge Melinda Harmon acknowledged the lodestar-only presumption in fee-shifting cases, but then devoted five pages canvassing the abundant federal case law explaining why it does not apply in common fund contingency cases. *In re Enron*, 586 F. Supp. 2d at 757-61. The pudding contains the clinching proof: using the lodestar method

---

[6] The opening line of that opinion reads: "This case presents the question of whether the calculation of an attorney's fee, *under federal fee-shifting statutes*, based on the 'lodestar,' *i.e.*, the number of hours worked multiplied by the prevailing hourly rates, may be increased due to superior performance and results." *Perdue*, 559 U.S. at 546 (emphasis added). *Cf. Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ("Unlike the calculation of attorney's fees under the 'common fund doctrine,' where a reasonable fee is based on a percentage of the fund bestowed on the class, a reasonable fee under § 1988 reflects the amount of attorney time reasonably expended on the litigation.").

as a cross-check, Judge Harmon approved a multiplier of 5.2. *Id*. at 803. Taken together, the cites to *Perdue v. Kenny* and *In re Enron* confirm the important distinction that while multipliers are disfavored in fee-shifting cases they serve a key role and are customary in common fund contingency cases.

### Oklahoma Courts Have Rejected Objectors' Arguments Both Before and After Section 2023(G)(4) Took Effect

62.     I am aware of four Oklahoma cases addressing the Objectors' arguments. One is the Oklahoma Court of Civil Appeals' unpublished 2009 opinion in *Adkisson v. Koch*, Ex. 9, decided before Section 2023(G)(4) took effect. The other three are Oklahoma District Court opinions specifically applying Section 2023(G)(4). In all four decisions, the court rejected the arguments made by the Objectors here. I am aware of no Oklahoma decision—either before or after Section 2023(G)(4) took effect—that has embraced the Objectors' arguments.

63.     In *Adkisson v. Koch*, an Oklahoma royalty underpayment class action settlement discussed *supra*, Mr. Nutley (represented by Mr. George's counsel here) objected that a lodestar—as opposed to percentage-based—methodology was required under Oklahoma law and a multiplier of no higher than 3 could be applied. *See* Dkt. No. 145-5. Applying Oklahoma law, Judge John H. Scaggs of the District Court of Seminole County rejected Mr. Nutley's arguments, overruled Mr. Nutley's objections, and awarded class counsel "a 40% contingency attorney fee award based upon the contract with class representatives which the Court found reasonable." *See* Dkt. No. 145-7 at 3. The Oklahoma Court of Civil Appeals agreed and affirmed Judge Scaggs' order:

29

Accordingly, we conclude *Burk* contemplates the trial court may in its discretion award the incentive or bonus fee by extending a contingent fee agreement to the beneficiaries of the common fund, especially in the types of cases in which a contingent fee is customary. . . . The testimony Class counsel had a contingent fee agreement with Class Representatives and that contingent fees are customary in oil and gas class actions supported the trial court's decision to award an incentive or bonus fee by extending the contingent fee agreement to the Class. We find no abuse of discretion.

*Adkisson*, Ex. 9 at ¶¶15-18. The Oklahoma Supreme Court denied Mr. Nutley's Petition for Certiorari on February 4, 2010. *See* Order of the Oklahoma Supreme Court, Case No. 106,562 (Okla. Feb. 4, 2010).

64. Mr. Nutley (again represented by Mr. George's counsel here) asserted the same objections in another Oklahoma common-fund royalty underpayment class action settlement reached in 2015. *See Fitzgerald Farms*, 2015 WL 5794008; *see also* Dkt. Nos. 145-2 through 145-4. Again, Mr. Nutley objected that Oklahoma law required the application of a lodestar methodology, with little to no multiplier, as opposed to an award based on a reasonable percentage of the fund. *See* Dkt. No. 145-3; *see also Fitzgerald Farms*, 2015 WL 5794008 at *12. Another Oklahoma judge—Judge Jon K. Parsley of the District Court of Beaver County—rejected Mr. Nutley's argument, found a fee award of 40% of the common fund recovered fair and reasonable, and held that "a multiplier of around 5 supports the 40% fee request and is well-within the parameters of Oklahoma case law." *Fitzgerald Farms*, 2015 WL 5794008 at *2-9, *11-12.

65. Mr. Nutley asserted the same objections in another Oklahoma royalty underpayment class action in 2017. *See Bank of America*, Ex. 13. Yet another Oklahoma judge—Judge Christopher S. Kelly of the District Court of Washita County—rejected Mr.

30

Nutley's arguments and found that "a multiplier of 3 to 3.6 easily comports to the 40 percent fee request and is well-within the parameters of fees granted in similar cases." *Id.*

66.     In 2018, Judge Dennis Hladik of the District Court of Blaine County dealt with a similar objection—this time by an oil and gas industry defense attorney—in another royalty underpayment class action settlement. *See Strack*, Ex. 7. There, the objector argued that Oklahoma law required the fee award to be based on a $275-425 hourly rate plus a mild multiplier. *See id.* at ¶22. Judge Hladik, like all of the Oklahoma courts before him had, rejected this argument, found a percentage-based award of "the 40% contingency fee based upon the common fund" to be "fair and reasonable[,]" and utilized a lodestar "cross-check" to find "an 'enhancement multiplier' of approximately 3.17" to be "fair and reasonable[.]" *Id.* at ¶¶9-20.

67.     In sum, the Panel Opinion has instructed this Court to apply Oklahoma law to the fee issues before it. Oklahoma courts—both *prior to* and *following* the Panel Opinion—have uniformly applied Oklahoma law to: (i) find that Oklahoma law imposes no prohibition on percentage-based fee awards in common-fund class actions taken on a contingency basis; (ii) find that Oklahoma law imposes no arbitrary cap on the lodestar multiplier that may be used to cross-check that percentage-based fee award; (iii) award class counsel attorneys' fees in an amount that is similar to (and often more than) those sought by Class Counsel here on remand; and (iv) reject and overrule the objections before this Court.

31

**Application of Section 2023(G)(4)(e) to This Case**

68.     Class Counsel secured a settlement with an estimated total net present value of nearly $55 million.  The settlement value has two components.  First, the class members will receive $52 million in cash up front.  Second, the Settling Parties have agreed, for a three-year period, to continue to follow the methods described in the Settlement Agreement for computing royalties paid to Class Members with respect to the Class Wells and with respect to the Settling Parties' ownership shares of production from those wells, including the Settling Parties' non-deduction of certain expenses. The estimated present value of the future benefit approaches $3 million.

69.     As compensation for having secured these benefits for the Class Members, Class Counsel are seeking attorney's fees in the amount of $17,333,333.33.

70.     As explained earlier, I do not think Oklahoma law imposes a lodestar requirement in common fund contingency cases.  But there is no need to press that question here.  Whatever role lodestar is supposed to play under Oklahoma law, the outcome is the same:  Class Counsel's fee request is reasonable and well within the range of fee awards approved by Oklahoma courts in cases like this.  Accordingly, for purposes of this analysis, I will follow the Tenth Circuit's lead, beginning with the lodestar calculation and then turning to the Section 2023(g)(4)(e) factors.

71.     Class Counsel's current lodestar figure for this case is $8,236,561.50, which is based on their expenditure of at least 13,232.24 hours to date, and their expectation of spending at least 1,850 additional hours through the remainder of the litigation and distribution. The fee request of $17,333.333.33 represents a lodestar multiplier of 2.1.

32

72.      With that information in hand, I will now analyze the Section 2023(G)(4)(e) factors to see what they tell us about the reasonableness of Class Counsel's fee request.

73.      **Factor 1: The time and labor required.**  Having reviewed the history of this case and the docket, and having reviewed selected critical pleadings, filings, and orders, and Class Counsel's detailed time records, it is my opinion that the time and labor factor supports approval of Class Counsel's fee request.  Class Counsel invested significant time and money over what has now been over seven years of litigation with no guarantee of reimbursement or recovery, including the Tenth Circuit appeal and these resulting proceedings on remand.

As discussed above, Class Counsel has spent 13,232.24 hours litigating this case to date and reasonably expects to spend an additional 1,850 hours litigating it through distribution of the Settlement and the remaining ancillary proceedings.[7]  Class Counsel's fee request of $17,333,333.33 reflects a lodestar multiplier of 2.1.  As discussed below, that multiplier lies comfortably within the lower zone of what Oklahoma judges applying Oklahoma law have approved in comparable cases.

74.      **Factor 2:  The novelty and difficulty of the questions presented by the litigation.**  Royalty underpayment class actions like this one are complex cases that present

---

[7] Because this element is clearly satisfied based just on the efforts documented in Class Counsel's lodestar submission, I have not attempted to factor in the potential significance of other items that Class Counsel did not include in the lodestar, such as the additional time they expect to spend on this litigation in the event the U.S. Supreme Court grants their Petition for *Certiorari*.  *See* NPR Decl. at ¶¶54-55.  However, the Court may consider those efforts and any others that speak to Class Counsel's overall contribution of time and labor to the successful pursuit of the class claims.

33

many, many difficult questions. To start, they are often at the forefront of procedural frontiers—some known in advance and some unexpected. This case is proof enough. In addition to the general (and known) complexity associated with class certification under Rule 23(b)(3), this case presented the unexpected complexity of a choice-of-law challenge that resulted in a remand. But more importantly, the legal and factual questions involved in royalty underpayment class actions under Oklahoma law are enormous and challenging.

75. The Court has witnessed firsthand the complexities of this action by presiding over the ongoing litigation against the non-settling Defendant, SM Energy, which has continued for the past three years since this Settlement Agreement was reached and remains ongoing today. Moreover, the complexity involved in royalty underpayment cases in Oklahoma is demonstrated by the case of *Pummill, et al. v. Cimarex Energy Co., et al.*— a royalty underpayment case related to just a ***single well*** that Class Counsel tried to judgment and defended on appeal all the way to the Oklahoma Supreme Court on two separate occasions while this Action was pending. *See also* Hetherington Decl. at ¶¶55-59 (discussing *Pummill* and the benefits Class Counsel's efforts in the *Pummill* litigation provided to the Settlement Class here). Finally, the novelty of this case and the Settlement Agreement Class Counsel obtained is demonstrated by the facts that: (1) Class Counsel obtained this Settlement at a time when the Settling Parties (and the entire oil and gas industry) faced dire financial circumstances; and (2) Class Counsel was forced to defend this Settlement on behalf of the Class all the way through an appeal. *See, e.g.*, Hetherington Decl. at ¶¶48-49; Miller Decl. at ¶43.

76. **Factor 3: The skill required to perform the legal services properly.** It takes a high level of skill to bring a royalty underpayment class action and navigate it to a successful result. In part, this owes to the sheer complexity and difficulty of this type of case (see above). But it is also a function of the adversary. Big oil and gas companies are very sophisticated entities with sizable litigation budgets. They hire excellent lawyers from top law firms. Those lawyers are experts in what they do—marshalling all of their best tactics and strategies to defeat the case or minimize its settlement value. Plaintiffs' lawyers who are not at least as equally skilled in what they do stand little chance of maximizing the value of the class members' claims.

77. **Factor 4: The preclusion of other employment.** We are all subject to the tyranny of time. Taking one case consumes the time a lawyer could have given to another case. That is especially true in large-scale litigation like this, which often takes years and consumes thousands of hours of lawyer time. Class Counsel confirm they have had to turn away a significant number of other cases because of their commitment to this case. *See* NPR Decl.; B&L Decl. It should also be noted that lawyers who serve as class counsel *against* the big oil companies effectively preclude themselves from doing legal work *for* the companies in the oil and gas industry.

78. **Factor 5: The customary fee.** The customary fee agreement for plaintiff's counsel in royalty underpayment class actions is a 40% contingency fee. *See Strack*, Ex. 7 at 7; *Bank of America*, Ex.13 at 7; *Fitzgerald Farms*, 2015 WL 5794008, at \*3 (D. Ct. Beaver Cty. 2015) (Parsley, D.J.); *DSR Investments LLC v. Devon Energy Production Co., LP*, CJ-11-12 (D. Ct. Dewey Cty. 2013) (Linder, D.J.), Final Order Granting Class Counsel

35

Fees (attached as Exhibit 15) at 4-5; *Holcomb v. Chesapeake Energy Corp.*, CJ-2011-6 (D. Ct. Roger Mills Cty. 2013) (Haught, D.J.), Order Approving Attorney Fees (attached as Exhibit 16) at pg. 5, ¶8. *See also* Hetherington Decl. at ¶¶62-66 and Exhibit B thereto; Miller Decl. at ¶¶49-51. As Judge Hladik recently stated, "[t]hese types of cases are never taken on an hourly basis." *Strack*, Ex. 7 at 7.

79.    The requested fee, which represents Class Counsel's lodestar plus a 2.1 multiplier, is far less than the 40% customary fee. It also is less than Class Counsel's contract with Chieftain. And, it is less than the 40% requested in the Notice, to which no Class Members other than the two professional objectors objected, and in support of which, numerous Class Members filed supporting Declarations. *See, e.g.*, Burrage Decl.; Little Decl.; KW Trust Aff.; Pagosa Resources Aff.; Omega Royalty Aff.; Starcevich Aff.; CSW Aff.; Maley Trust Aff.

80.    **Factor 6: Whether the fee is fixed or contingent.** After arm's-length negotiations with Class Counsel, Plaintiff agreed Class Counsel would represent Plaintiff on a contingency fee basis, not to exceed 40%. *See* Abernathy Decl. at ¶6. Chieftain's president, Mr. Abernathy, is a sophisticated royalty owner and Oklahoma lawyer, who negotiated this fee agreement at arm's-length at the outset of this Action. The common-fund doctrine, which federal and Oklahoma courts alike have recognized for centuries, "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also, e.g.*, *Okla. Tax Comm'n v. Ricks*, 1994 OK 115, ¶6, 885 P.2d 1336, 1339 (finding "Oklahoma case law has long recognized

36

the [common-fund] doctrine[,]" which holds that "[w]hen an individual's efforts succeed in creating or preserving a fund which benefits similarly situated non-litigants, equity powers may be invoked to charge that fund with attorney's fees for legal services rendered in its creation or preservation").

81. **<u>Factor 7: Time limitations imposed by the client or the circumstances</u>.** This factor does not appear to be significant in either direction. Plaintiffs who have been harmed obviously want to get made whole sooner rather than later. However, I have not been made aware of any special circumstances compelling this case to proceed on a faster schedule than usual.

82. **<u>Factor 8: The amount in controversy and the results obtained</u>.** In *Hess*, the Oklahoma Supreme Court repeatedly recognized this is actually the most important factor in assessing a fair and reasonable fee. *See, e.g.*, *Hess*, 341 P.3d at 667; *id.* at 672 (Taylor, J., concurring). The $52 million in cash that the Settling Parties have agreed to pay represents a near 100% recovery of the past claimed royalty principal underpayments. Ley Aff. at ¶¶3-4. Importantly, it is a cash recovery that will be distributed to Class Members automatically. There are no claim forms to fill out, no elections to make, and no documentation to scavenge out of old records. Indeed, Class Members do not have to take any action whatsoever to receive their benefits. The only thing Class Members need to do is not opt out and wait for their checks to be distributed after the Court grants final approval of the Settlement.

83. The Settlement also provides a future benefit to Class Members. For three years from the date of the Settlement, the Settling Parties agreed to not take certain of the

37

deductions at issue in this case—for marketing, gathering, transporting, compressing, dehydrating, treating, blending, or processing—unless the language of a particular lease or Oklahoma Corporation Commission order expressly provides for it. This is a one-way benefit: the Settling Parties must comply, but Class Members do not release any claims they may have regarding proper royalty calculations during this period. It is my understanding that the present value of this benefit is estimated to be almost $3 million.

84. It is well established that the value of future benefits should be included when determining the size of the recovery obtained for the class. *See* AMERICAN LAW INSTITUTE, PRINCIPLES OF THE LAW OF AGGREGATE LITIGATION § 3.13(b) (2010); *see also, e.g.*, *Strack*, Ex. 7 at 8, ¶15 (taking value of future benefit into account even though class counsel were not seeking fees from it); *Brumley, et al. v. ConocoPhillips Company, et al.*, CJ-2001-5 (D. Ct. Texas Cty. 2005), Order on Class Counsels' Motion for Attorneys' Fee, Representatives' Fee and Reimbursement of Litigation Expenses from the Common Fund (attached as Exhibit 17) at 4 (awarding class counsel attorneys' fees based on a reasonable percentage of the "Total Common Fund" that was comprised of $30,000,000 in unpaid royalties and "future benefits of approximately $7,590,000" in royalty payments that would be made in the future due to royalty calculation changes agreed to in the parties' settlement); *Robertson*, Ex. 5 at 6 (taking value of future benefit into account even though counsel were not seeking fees on it, and observing that the effective percentage fee rate dropped from 40% to 32.6% when the future benefits were considered).[8] Thus, even

---

[8] *See also Chieftain Royalty Co. v. XTO Energy Inc.*, No. CIV-11-29-KEW (E.D. Okla. Mar. 27, 2018) (Dkt. No. 231) ("*Chieftain-XTO Fee Order*") at ¶¶6(a), (h)-(l); *Reirdon v.*

though Class Counsel is not asking the Court to award a fee from the future benefit, the existence of the future benefit is still relevant to the fee request because it is a part of the Class' recovery and therefore speaks to the overall quality of the result. *See DSR Investments LLC*, Ex. 15 (value of additional benefit was relevant to the fee analysis even though class counsel was not seeking fees from it).

85.     The future benefit is a valuable part of the overall Class recovery. Class Counsel could have limited their negotiations to past damages. But that would mean that, from the Settlement date going forward, Class Members would be in the same position they had been in before. This Settlement protects them for the next three years. If the Settling Parties later revert to their old ways, or if Class Members believe these changes are not enough, they have the option to participate fully in the Settlement and also litigate over these additional issues. In my experience, this is a unique option that is of significant value to Class Members.

86.     **Factor 9: The Experience, Reputation and Ability of Counsel.** Though I suspect the Court does not need me to attest to the skill and reputation of Class Counsel, it is nonetheless true that the firms of Barnes and Lewis, LLP and Nix, Patterson, and Roach, LLP are pioneers and leaders in the field of class action royalty litigation. Having worked with Class Counsel on multiple occasions, and based on my knowledge of their work in those cases, and having served as a consultant or expert in many other class actions,

---

*XTO Energy Inc.*, No. 6:16-cv-00087-KEW (E.D. Okla. Jan. 29, 2018) (Dkt. No. 124) ("*Reirdon* Fee Order") at ¶6(l).

it is my opinion that Class Counsel are excellent lawyers well-deserving of their reputation as being among the very best in the field.

87.    **Factor 10:  The undesirability of the case.**   Oklahoma courts regularly observe that royalty underpayment contingency class actions like this one are undesirable to the vast majority of lawyers because they are so costly and time-consuming and expose the lawyers to a very real risk of walking away empty-handed at the end.  *See, e.g.*, *Bank of America*, Ex.13 at 10; *Mahaffey v. Marathon Oil Co.*, CJ-04-581E (D. Ct. Stephens Cty. 2016), Final Order Approving Class Counsel Attorneys' Fees (attached as Exhibit 18) at 7; *Fitzgerald Farms*, 2015 WL 5794008, at \*8 (D. Ct. Beaver Cty. 2015); *DSR Investments LLC*, Ex. 15 at 3;  *Krug v. Helmerich & Payne, Inc.*, CJ-98-06012, at 6 (D. Ct. Tulsa Cty. 2014); *Holcomb*, Ex, 16 at 8. As Judge Linder put it, "there are not that many lawyers willing to undertake representation of a class in cases like this one." *DSR Investments LLC*, Ex. 15 at 3.

88.    **Factor 11: The nature and length of the professional relationship with the client.**  Chieftain Royalty Company is an experienced royalty class action plaintiff.  It has litigated multiple royalty class actions in the Western District of Oklahoma alone, including a settled case in this Court against Laredo Petroleum and the remaining claims in this Court against SM Energy.  Chieftain has a longstanding relationship with Class Counsel in these cases.  Chieftain is an experienced royalty owner and energy business.  Its president is a sophisticated Oklahoma energy attorney.  Based on these experiences, Chieftain agreed to retain Class Counsel on a contingency fee basis not to exceed 40%.  *See* Abernathy Decl. ¶5.  Further, Chieftain has filed a Declaration fully supporting the fee.

40

89.     **Factor 12:  Awards in similar cases.**  This factor looks to what courts have determined to be reasonable fee awards in similar cases.  Oklahoma courts have frequently stated that a 40% award is customary or typical in a royalty underpayment class action when class counsel worked on a contingency fee basis and sought fees out of the common fund created by the litigation.  *See Fitzgerald Farms*, 2015 WL 5794008, *3-4 (D. Ct. Beaver Cty. 2015); *Cornett*, Ex. 14 at 4; *DSR Investments LLC*, Ex. 15 at 4-5; *Holcomb*, Ex. 16 at 8.  Those statements reflect a long history of fee awards in Oklahoma royalty underpayment cases in which 40% has been the mode—i.e., judges have awarded 40% more than any other amount.

90.     In every fee order entered since Section 2023(G)(4) first took effect in September 2009, where the basis of the award is identified, the court has used a percentage-of-the-fund approach and awarded fees equal to 40% of the common fund.  *See supra* ¶51.

91.     Nearly half of the fee orders entered since Section 2023(G)(4) took effect do not even include lodestar calculations.  Where they exist, the courts uniformly applied multipliers when determining whether the fee request was reasonable from a lodestar perspective.  Those multipliers have ranged from 1.28 to 6.3 and have averaged 3.37.  *See supra* ¶54.  No Oklahoma court has rejected a percentage-based fee award on the basis that it yielded a lodestar multiplier that was too high.

92.     Whether measured on a percentage-of-fund basis or a lodestar basis, Class Counsel's fee request is well within the range of awards made in similar cases.  On a percentage basis, the request of 33 1/3% of the cash component (31.7% of total benefits) is _below_ the 40% award that is the norm in Oklahoma state court in similar cases.  On a

41

lodestar basis, the multiplier of 2.1 falls within what I have identified as the lower zone of what Oklahoma state courts have approved in similar cases since 1995, *see infra* ¶103, and is well below the average of what Oklahoma Courts have approved in similar cases since Section 2023(G)(4) took effect. *See supra* ¶¶54, 91.

93. **Factor 13: The risk of recovery in the litigation.** The Oklahoma Legislature specifically added this factor when it enacted Section 2023(G)(4)(e). It codifies the teaching of *Oliver's Sports Center*, where the Oklahoma Supreme Court emphasized that "[t]he litigation risk factor must be considered" in cases where the lawyer is not guaranteed compensation. 615 P.2d at 294. The Court added that the risk factor is to be evaluated "by assessing the likelihood of success at the outset of the representation." *Id.*

94. As the Court is well aware, royalty underpayment class actions are a risky venture with no guarantees. The defendants in these cases—typically large and well-funded oil and gas companies represented by highly-skilled and highly-compensated lawyers from top-shelf law firms—are formidable adversaries who put up a sustained and vigorous defense. (And those lawyers get paid rates from $500 to over $1,000 an hour, all expenses are paid by the client, and every bill gets paid no matter whether they win or lose.) When setting out at the start of this type of case, Class Counsel can anticipate that the defendants will vigorously contest both the merits of the claim and whether the case can be tried as a class action. If class certification is denied—at the district court level or on appeal—there is no recovery for the class at all. Beyond the certification hurdle, the class must still prevail on the merits or obtain a settlement. At the start of the case, Class

42

Counsel accepts the risk that the claims may prove to be weaker than expected, reducing the value of the claims for settlement and potentially leading to an adverse judgment.

### Class Counsel's Fee Request Is Reasonable Under Either the Lodestar or the Percentage-of-Fund Approach

95.     Following the Tenth Circuit's lead, I now examine the results of the Section 2023(G)(4)(e) from the lodestar perspective.

96.     The first element of a lodestar calculation is the number of hours expended in the pursuit of the litigation. Class Counsel have submitted evidence that it dedicated 13,232.24 hours of attorney and professional hours to this Litigation and reasonably anticipate dedicating an additional 1,850 hours through final approval and distribution. *See* NPR Decl.; BL Decl.

97.     While Oklahoma law requires lawyers to submit "detailed" time records, there is no particular process lawyers must use to prepare those records and supply the required detail. Oklahoma law expressly allows reconstructed time records. *See, e.g.*, Hetherington Decl. at ¶¶5-6, 34-40 (and cases cited therein). Where Oklahoma courts have rejected reconstructed time records, it was because the reconstructed records were not based on personal knowledge. *See, e.g.*, *Young v. Spencer*, 2017 OK CIV APP 58, ¶¶22-25, 405 P.3d 701 (acknowledging that "attorney fees may be based on reconstructed records," but finding trial court did not abuse its discretion in determining the records for plaintiff's former and *deceased* counsel "could not adequately be reconstructed"). So long as the lawyer attests from personal knowledge, the process of developing the time records goes to weight not admissibility. *See* Hetherington Decl. at ¶¶37-38.

43

98.     The second element of a lodestar calculation is the hourly rate for the work performed.  The hourly rate is that which clients would customarily pay for the type of work involved in the relevant legal market.  The relevant legal market in this case is high-stakes class-action oil-and-gas royalty litigation against wealthy oil and gas companies. *See* NPR Decl. at ¶¶32, 34-41.  This legal market is no place for dabblers or dilettantes.  Lawyers who take on big oil and gas companies seeking tens of millions of dollars in damages must be prepared for a long and expensive battle.  *Id.* at ¶¶32-33.  They must also have the expertise and acumen needed to get the case certified as a class action despite the inevitable and often extraordinary efforts the defendant will make to keep that from happening.  *Id.* at ¶¶10-11.  Moreover, the oil and gas defendant must know and appreciate that class counsel is sufficiently expert and resourced to not just survive but thrive in that environment.  Any hint of weakness on the part of class counsel will embolden the defendant's procedural resistance and undermine settlement.  To get top dollar in a settlement, class counsel has to be—and be seen to be—as well-funded and as legally formidable as the oil and gas companies and the "big law" firms they retain.  *Id.* at 12.

99.     Because high-stakes class-action royalty litigation is almost exclusively done on a contingency-percentage/common fund basis, finding the market rate for class counsel is not as simple as it would be for the defense counsel, who typically bill by the hour.  *See id*. at ¶¶13-41.  Class Counsel—and their sophisticated client who is a lawyer—believes that effective, equivalent market rates for what it does ranges from $400.00 to $875.00 per hour for attorneys if those attorneys were billing by the hour, not advancing any costs, and had payment of their bills guaranteed no matter whether they win or lose.  *See* NPR Decl.

44

at ¶¶32-37; B&L Decl. at ¶¶15-16.  As evidenced by the data compiled by Geoffrey Miller, these rates are in line with the rates of national complex litigation firms and are lower than the billing rates charged by the large law firms hired to defend multi-million-dollar oil-and-gas class actions.  *See* Miller Decl. at ¶¶29-39 (concluding that "the hourly rates submitted by Counsel in this action are reasonable and fit well within the customary rates charged by comparable firms in complex matters"); *see also* Joint Class Counsel Decl. at ¶¶27-31; NPR Decl. at ¶¶32-41.

100.    Taking the 13,232.24 hours and the 1,850 reasonably anticipated future hours and multiplying that by the market rates set forth in the Declarations, the lodestar base comes to $8,236,561.50.  *See* NPR Decl. at ¶¶42-55; B&L Decl. at ¶¶15-16.

101.    The third element of a lodestar calculation is to apply a multiplier to reflect the fact that lawyers in common fund cases only get paid if they win.  *See* NPR Decl. at ¶¶10, 15-16, 23, 33-34.  It is an adjustment to account for the risk that contingency/common fund lawyers take.  (If a top lawyer can earn a guaranteed hourly rate representing a defendant, expense free, why would that lawyer represent plaintiffs if the hourly rate was the same but they only got paid if they win?)  The lodestar accounts for that factor with adjustments for the risk associated with contingency/common fund work, and also for the complexity of the work in question and the quality of the work performed.

102.    Under Oklahoma law, it is both customary and appropriate to apply a multiplier to the lodestar calculation.  First, the customary fee arrangement (Factor 5) in royalty class action litigation is for the plaintiffs to hire counsel on a contingency fee basis.  No plaintiff would hire counsel on a guaranteed hourly basis to work on a case like this.

45

The only feasible way for most royalty owners to hire plaintiffs' counsel is through a contingency fee arrangement. Second, straight lodestar calculations do not account for the risk lawyers take when working on a contingency fee basis (Factor 13). No lawyer would take the type of risks, and face the burdens, presented by these cases only to get paid a standard hourly rate if she prevailed. *See* NPR Decl. at ¶¶10, 15-16, 23, 33-34; B&L Decl.

103. My study has identified 19 Oklahoma oil and gas royalty cases from 1995 to the present in which the court made a lodestar calculation. The court incorporated a multiplier in every one of those cases. Overall, the multipliers have ranged from a low of 1.28 to a high of 8.6. I find them to cluster in three zones. In the lowest zone lies six multipliers ranging from 1.28 to 2.5 (1.28, 1.7, 1.76, 2, 2.5, and 2.5). In the middle zone lies eight multipliers ranging from 3.12 to 4.2 (3.12, 3.17, 3.2, 3.25, 3.6, 3.85, 4.2, and 4.2). In the highest zone lies five multipliers ranging from 5 to 8.6 (5, 5, 5.25, 6.3, and 8.6). To repeat, these are all multipliers that have been *approved* in common fund contingency fee royalty class actions where the fee award had been set as a percentage of the fund. In other words, the Oklahoma Courts have used a lodestar calculation to cross-check a percentage-based fee award nineteen (19) times, and in every case the court found the fee award to reflect an acceptable multiple of the lodestar.

104. Section 2023(G)(4)(e) contains no cap on multipliers. All of the bills that would have adopted them were rejected. *See supra* ¶¶32-34; Coffee Decl. at ¶¶ 22, 27.

105. Here, Class Counsel's multiplier of 2.1 is well within the lower zone of the range of multipliers that Oklahoma state courts have found to be reasonable over the course of several decades, *see supra* ¶103, and lies well below the midpoint of the multipliers

approved by Oklahoma courts since Section 2023(G)(4)(e) took effect. (Factor 12). *See supra* ¶¶54, 91. Given the excellent result obtained (Factor 8), a fee request with a multiplier within the lower zone is eminently reasonable.

106. In summary, Class Counsel's fee request is fair, reasonable, and well within the customary and accepted range when viewed through a lodestar analysis.

107. A percentage-of-the-fund analysis confirms the reasonableness of Class Counsel's fee request.

108. In a contingency fee case, it is both permissible and customary for Oklahoma judges to conclude that the Section 2023(G)(4)(e) statutory factors support awarding fees on a percentage-of-the-fund basis. *See Bank of America*, Ex. 13 at 8 ("When the legal representation is undertaken on a contingent fee basis, and that representation results in a common fund recovery for the benefit of the class, Oklahoma law allows a percentage analysis to determine an appropriate fee."); *Fitzgerald Farms*, 2015 WL 5794008, at *2 (D. Ct. Beaver Cty. 2015) ("[W]here, as here, the legal representation is undertaken on a contingency fee basis and that representation results in a common fund recovery for the benefit of the class, Oklahoma law applies a percentage analysis."); *see also Strack*, Ex. 7 at 7-8 (extending the terms of the contingency fee agreement to class members).

109. When making a fee award based on the percentage of the fund, the most important of the statutory factors is the quality of the result. *See Bank of America*, Ex. 13 at 9; *Fitzgerald Farms*, 2015 WL 5794008, at *3 (D. Ct. Beaver Cty. 2015) ("[The result obtained] is the most important factor in the contingent fee analysis.").

47

110. Class Counsel secured an excellent result in this case. The Settlement amount represents a near 100% recovery of the past claimed royalty principal underpayments. Importantly, this is a cash recovery that will be distributed to Class Members automatically. The Settlement also provides the Class Members with an important and valuable future benefit.

111. The fee previously awarded and requested again on remand as a lodestar with a multiplier is less than the customary contingent fee negotiated in cases of this type (Factor 5). In royalty underpayment class actions, the usual and customary contingency fee is 40%. *Fitzgerald Farms*, 2015 WL 5794008, at *3 (D. Ct. Beaver Cty. 2015). Indeed, Class Counsel's contingency contract with Chieftain provided for a contingency fee of "up to 40%," though Class Counsel is seeking only 33 1/3 % (and is limited to the cash component).

112. The 33 1/3 % fee requested falls well within the range of percentages approved by Oklahoma courts in comparable cases (Factor 12). Oklahoma courts have frequently found a 40% award to be "customary" or "typical." *See Bank of America*, Ex. 13 at 10-11; *Fitzgerald Farms, LLC*, 2015 WL 5794008, at *3 (D. Ct. Beaver Cty. 2015); *Cecil v. Ward Petroleum Corp.*, CJ-2010-462 (D. Ct. Grady Cty. Feb. 2014), Final Order Awarding Attorneys' Fees, Litigation Expenses, and Case Contribution award (attached as Exhibit 19) at 5 (extensively listing cases); *Drummond v. Range Resources Corp.*, CJ-2010-510 (D. Ct. Grady Cty. Sept. 2013), Final Order Awarding Attorneys' Fees, Litigation Expenses, and Case Contribution award (attached as Exhibit 20) at 5 (extensively listing cases).

48

113. Since 2009, when Section 2023(G)(4)(e) first took effect, Oklahoma courts have made fee awards in fifteen royalty class actions. Thirteen of those orders identify the basis for the award. In every one of those thirteen orders, the court specifically approved a percentage-based fee award of 40%. *See supra* ¶51.

114. As a function of the percentage of the fund, the 33 1/3 % request in this case compares favorably with the 40% fee awards routinely approved in Oklahoma cases applying Section 2023(G)(4)(e).

115. Oklahoma courts have recognized that contingency-based fee awards of up to 40% are justified by the burdens and risks lawyers take on when bringing royalty underpayment class actions (Factor 13). *See Bank of America*, Ex. 13 at 10-11; *Fitzgerald Farms, LLC*, 2015 WL 5794008, at *3 (D. Ct. Beaver Cty. 2015); *Holcomb*, Ex. 16 at 8. When class counsel agree to take on a case like this, the only thing they can be sure of is that they will have to spend a great deal of time and money to even get to the point where they might be able to get compensated. Class counsel will receive a fee only if the case settles or is litigated to a favorable judgment. If the case is dismissed, no recovery means no fee. If class certification is denied (at the district court or on appeal), no recovery means no fee. If the claims fail on the merits, no recovery means no fee. And even if there is a recovery, the fee will still be calculated as a share of the recovery. If the claims prove to be weaker than believed, the recovery may generate a fee that is only a fraction of what class counsel invested in the case.

116. Oklahoma courts do not reduce the percentage fee award from what is requested on the belief that it would be "just too much." To do so would penalize lawyers

49

for their success. *See Fitzgerald Farms*, 2015 WL 5794008, *3-4 (D. Ct. Beaver Cty. 2015) (Parsley, D.J.); *Brown v. Citation Oil & Gas Co.*, CJ-04-217 (D. Ct. Caddo Cty. 2009) (Van Dyck, D.J.), Order On Attorney's Fees (attached as Exhibit 21) at 5; *Taylor*, Ex. 8 at 5; *Simmons*, Ex. 2 at 5-6; *Brumley*, Ex. 17 at 15. It is also inconsistent with the underlying theme of contingency fee awards, which is to align the financial interests of client and counsel. When the client benefits more, so too does (and should) the lawyer. Judge Hladik summarized these points in his fee order entered earlier this summer, approving a 40% fee award out of a settlement of about $57 million (roughly the size of the settlement in this case):

> Without question, the attorney fee award is a helluva lot. However, this court is convinced it was earned, justified, and comparable to awards in similar cases. The percentage was agreed upon by the Class Representatives and Class Counsel, and it is the best evidence of risks and benefits each of the parties believed acceptable before proceeding. This court is unaware of any court denying or reducing an attorney fee award that satisfied these conditions because a Class Member complained that it was too much.

*Strack*, Ex. 7 at 12-13, ¶¶33-34.

117. My analysis above of each of the Section 2023 factors demonstrates that the requested fee, presented as a lodestar with a multiplier, is fair and reasonable. If calculated as a lodestar multiplier, Class Counsel's fee request falls well within the lower zone of multipliers that Oklahoma courts have approved when using the lodestar method as a cross-check on the percentage-of-fund method.

## Conclusion

118. A panel of the Tenth Circuit has required this Court to apply Oklahoma law in assessing Class Counsel's fee request. At least three Oklahoma state courts have

50

addressed the same exact objections raised by Objectors here. Those Oklahoma state courts have held that a percentage of the fund approach is allowed under Oklahoma law and that Oklahoma law does not require trial courts to impose a straight lodestar without a multiplier. Those courts have decided these issues correctly. Indeed, as Senator Coffee, Judge Van Dyck, Judge Hetherington, and Justice Watt make abundantly clear, Oklahoma law does not require a lodestar and it does not impose a multiplier or enhancement cap on the lodestar when one is used.

119. The fee this Court awarded on December 23, 2015 was fair and reasonable. And, when this fee request is examined as a lodestar with a multiplier, and evaluated under each of the Section 2023 factors, it is clear that the requested fee remains fair and reasonable today.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Steven S. Gensler
August 16, 2018

Dated the 16th day of August, 2018.
Lisa Thompson Ross
Comm # 02010483                  51
Comm Ex: 6/14/22

# EXHIBIT 1

# CURRICULUM VITA

**Steven S. Gensler**
University of Oklahoma College of Law
300 Timberdell Road, Norman, OK 73019
(405) 325-7889    sgensler@ou.edu

## EDUCATION

**University of Illinois College of Law**, J.D. *summa cum laude*, May 1992
▪ Valedictorian (Class Rank: 1/189)
▪ Editor-in-Chief, University of Illinois Law Review

**University of Illinois (Urbana-Champaign)**, B.S. (Biology), June 1988

## TEACHING POSITIONS

**University of Oklahoma College of Law**
*Gene and Elaine Edwards Family Chair in Law* (2018-current)
*Welcome D. & W. DeVier Pierson Professor* (2009-2017)
*President's Associates Presidential Professor* (2006-current)
*Professor* (2005–current)
*Associate Professor* (2000-2005) (on leave 2003-2004)
▪ Courses Taught Six or More Times: Civil Procedure I, Civil Procedure II; Conflict of Laws; Federal Courts; Federal Judicial Clerkships
▪ Courses Taught One to Five Times: Administrative Law; Aternative Dispute Resolution; Comparative Litigation; Complex Litigation; Electronic Discovery
▪ Teaching Awards: Student Bar Association Oustanding Professor Award (2017, 2003); Best Professor (first-year section; upper-level classes) (multiple awards)

*Associate Dean for Research and Scholarship* (2012-2015)

**University of Illinois College of Law**
*Visiting Assistant Professor* (1998-2000)
▪ Courses Taught: Civil Procedure II; Property; ADR; Legal Research & Writing

**University of Nevada Las Vegas, William S. Boyd College of Law**
*Visiting Professor* (Fall 2017)
▪ Courses Taught:  Civil Procedure; Federal Courts

## JUDICIAL FELLOWSHIPS

**United States Supreme Court**
*Supreme Court Fellow*, Administrative Office of the U.S. Courts (2003-2004)

## JUDICIAL CLERKSHIPS

1

**The Honorable Deanell Reece Tacha, U.S. Circuit Judge (10th Cir.)**, Lawrence, KS
*Law Clerk* (1992-1993)

**The Honorable Kathryn H. Vratil, U.S. District Judge (D. Kan.)**, Kansas City, KS
*Law Clerk* (1993-1994)

<u>LAW PRACTICE EXPERIENCE</u>

**Michael, Best & Friedrich, LLP**, Milwaukee, WI
*Associate* (1996-1998)

**Reinhart, Boerner, van Duren, Norris & Rieselbach S.C.**, Milwaukee, WI
*Associate* (1994-1996)

<u>PUBLICATIONS</u>

**Books:**

FEDERAL RULES OF CIVIL PROCEDURE: RULES AND COMMENTARY (West)
   ▪ Comprehensive two-volume practice treatise on the Federal Rules of Civil Procedure
   ▪ Revised and updated edition published annually
   ▪ Annual editions to date: 2007, 2008, 2009, 2010, 2011, 2012, 2013, 2014, 2015, 2016, 2017, 2018

MOORE'S FEDERAL PRACTICE, Volume 11 (3d. ed. 2012) (with Jeffrey W. Stempel)
   ▪ Covering Summary Judgment under Rule 56
   ▪ Wrote new chapter for 3d Edition after Rule 56 was substantially revised in 2010
   ▪ Responsible for overseeing quarterly updates

THE 2015 AMENDMENTS TO THE FEDERAL RULES OF CIVIL PROCEDURE (Lexis/Nexis 2015) (monograph prepared and distributed as part of MOORE'S FEDERAL PRACTICE)

FEDERAL COURTS AND JURISDICTION: CASES AND MATERIALS (in progress) (target publication date May 2019) (Carolina Academic Press) (with Tom Rowe, Katherine Florey, Lou Mulligan)

GILBERT'S LAW SUMMARY ON CIVIL PROCEDURE (West Academic Publishing) (added as new co-author for 19th edition) (with Rick Marcus and Tom Rowe)

**Journal Articles:**

*The Fishing Fallacy in Civil Discovery*, in progress

*A Proportionality-Options Approach to Regulating Civil Discovery*, in progress

*Breaking the Boilerplate Habit in Civil Discovery*, 51 AKRON L. REV. 809 (Spring 2018) (with the Honorable Lee H. Rosenthal) (Symposium on the impact of the 2015 Civil Rules Amendments)

6:18-cv-00123-JH
Document 34-4
Filed in ED/OK on 05/26/21
Page 56 of 350
6:16-cv-ases31-LkGw00126cube Document es5m1E-Dedc.08/17/28 15age51740f351

*Discovery: What the Form Are We Fighting For?*, 80 TEX. B.J. 774 (Dec. 2017) (with the Honorable Xavier Rodriguez)

*A Report from the Proportionality Roadshow*, 100 JUDICATURE 14 (Winter 2016) (with the Honorable Lee H. Rosenthal)

*From Rule Text to Reality: Achieving Proportionality in Practice*, 99 JUDICATURE 43 (Winter 2015) (with the Honorable Lee H. Rosenthal)

*Four Years After Duke: Where Do We Stand on Calibrating the Pretrial Process?*, 18 LEWIS & CLARK LAW REVIEW 643 (2014) (with the Honorable Lee H. Rosenthal) (Symposium honoring Judge Mark Kravitz)

*Measuring the Quality of Judging: It All Adds Up to One*, 48 NEW ENGLAND LAW REVIEW 475 (2014) (with the Honorable Lee H. Rosenthal) (Symposium on "Benchmarks: Measurements for Evaluating Judicial Productivity")

*The Reappearing Judge*, 61 KANSAS LAW REVIEW 849 (2013) (with the Honorable Lee H. Rosenthal) (Symposium on "Advocacy under the Federal Rules of Civil Procedure")

*Ed Cooper, Rule 56, and Charles E. Clark's Fountain of Youth*, 46 UNIVERSITY OF MICHIGAN JOURNAL OF LAW REFORM 593 (2013)

*Managing Summary Judgment*, 43 LOYOLA UNIVERSITY CHICAGO LAW JOURNAL 517 (2012) (with the Honorable Lee H. Rosenthal) (Symposium on the 25th Anniversary of the Supreme Court's 1986 Summary Judgment trilogy)
- *Reprinted in* 62 DEF. L.J. 1 (2013)

*Special Rules for Social Media Discovery?* 65 ARKANSAS LAW REVIEW 7 (2012) (Symposium on "Facebook and the Law")

*Judicial Case Management: Caught in the Crossfire*, 60 DUKE LAW JOURNAL 669 (2010) (Symposium publishing papers selected from the 2010 Duke Conference on Civil Litigation)

*Oklahoma's New E-Discovery Rules*, 81 OKLAHOMA BAR JOURNAL 2427 (Nov. 2010)

*Must, Should, Shall*, 43 AKRON LAW REVIEW 1141 (2010) (Symposium issue publishing papers selected for presentation at the 2010 AALS Section on Litigation program on "The Future of Summary Judgment")

*The Other Side of the CAFA Effect: An Empirical Analysis of Class Action Activity in the Oklahoma State Courts*, 58 KANSAS LAW REVIEW 809 (2010) (Symposium on Class Actions)

*A Bull's-Eye View of Cooperation in Discovery*, 10 SEDONA CONFERENCE JOURNAL 363 (Fall 2009 Supp.) (invited contribution to Special Edition on The Sedona Conference Cooperation Proclamation)

*Some Thoughts on the Lawyer's E-volving Duties in Discovery*, 36 NORTHERN KENTUCKY UNIVERSITY LAW REVIEW 521 (2009) (invited contribution to Symposium on E-Discovery)

    ▪ *Reprinted in* 60 DEF. L.J. 1 (2011)

*Justness!  Speed!  Inexpense!  An Introduction to* The Revolution of 1938 Revisited:  The Role and Future of the Federal Rules, 61 OKLAHOMA LAW REVIEW 257 (2008) (Introduction to AALS Civil Procedure Section 2008 Annual Meeting Symposium)

*Driving Misjoinder: The Improper Party Problem in Removal Jurisdiction*, 57 ALABAMA LAW REVIEW 779 (2006) (with Laura J. Hines)

*Diversity Class Actions, Common Relief, and the Rule of Individual Valuation*, 82 OREGON LAW REVIEW 295 (2003)

*Class Certification and the Predominance Requirement under Oklahoma Section 2023(B)(3)*, 56 OKLAHOMA LAW REVIEW 289 (2003)

*Bifurcation Unbound*, 75 WASHINGTON LAW REVIEW 705 (2000)

*Prejudice, Confusion, and the Bifurcated Civil Jury Trial: Lessons from Tennessee*, 67 TENNESSEE LAW REVIEW 653 (2000) (invited contribution to Symposium: Communicating with Juries)

*Wrongful Discharge for In-House Attorneys: Holding the Line Against Lawyers' Self-Interest*, 1991 UNIVERSITY OF ILLINOIS LAW REVIEW 515 (Student Note)

**Other Publications:**

*Second Circuit Distinguishes Abandonment from Default in Summary Judgment*, 99 JUDICATURE 45 (2015) (brief case note)

*A Tribute to Robert Spector: "It Started With Jurisdiction"*, 63 OKLAHOMA LAW REVIEW i (2011)

FEDERAL RULES OF CIVIL PROCEDURE:  2007 STYLE PROJECT COMPARISON CHARTS (West)
    ▪ Companion publication to the 2008 edition of treatise listed above

SEALED SETTLEMENT AGREEMENTS IN FEDERAL DISTRICT COURT, Federal Judicial Center (2004) (with Robert Timothy Reagan, Shannon R. Wheatman, Marie Leary, Natacha Blain, George Cort, and Dean Miletich)

*Developments in the Federal Rules of Civil Procedure*, Association of American Law Schools Civil Procedure Newsletter (2003, 2005, 2006, 2007, 2008)

**PROFESSIONAL AND PUBLIC SERVICE**

*American Law Institute*
    ▪ Council (2015 – present)
    ▪ Member (2006 – present)
    ▪ Adviser for Restatement (Third) of Conflict of Laws
    ▪ Members Consultative Group for the Principles of Aggregate Litigation Project

▪ Members Consultative Group for Restatement (Third) U.S. Law of International Arbitration

*United States Judicial Conference Advisory Committee on Civil Rules*
▪ Member (2005 – 2011)
▪ Appointed June 2005 by Chief Justice William H. Rehnquist
▪ Reappointed August 2008 by Chief Justice John G. Roberts, Jr.

*United States Judicial Conference Federal-State Jurisdiction Committee*
▪ Consultant (2017 – present)

*National Conference of Bar Examiners*, *MBE Civil Procedure Drafting Committee*
▪ Invited participant (Summer 2017, Winter 2017)
▪ Member (Spring 2018 – present)

*Local Rules Committee, United States District Court for the Western District of Oklahoma*
▪ Member (2008 – present)

*Oklahoma State Bar Association Committee on Civil Procedure*
▪ Member (2005 - present)
▪ Vice-Chair (2009 - 2017)
▪ Chair, E-Discovery Subcommittee (2009)

*Oklahoma Uniform Jury Instruction Committee (Civil)*
▪ Appointed March 21, 2016 by Oklahoma Supreme Court Chief Justice John F. Reif

*The Sedona Conference*
▪ Member (2008 – present)
▪ Advisory Board (April 2012 – present)
▪ Working Group 1: Electronic Discovery
▪ Working Group 6: International Electronic Information Management, Discovery and Disclosure
▪ *Founding Member*: ROI Project for Information Asset Management (exploratory group to identify principles and best practices for maximizing "information assets")

Reporter, *Guidelines and Practices for Implementing the 2015 Discovery Amendments to Achieve Proportionality*
▪ November 2014 – present
▪ Project Sponsored by the Duke Center for Judicial Studies

Academic Advisor, *Civil Jury Project (NYU Law School)* (2016-present)

Fellow, *American Bar Foundation* (2016-present)

*Planning Committee, 2010 Conference on Civil Litigation ("Duke Conference")* (2009-2010)

Member, *Executive Committee, Association of American Law Schools Section on Civil Procedure* (2005 - 2009)
▪ Chair (2007)

**PRESENTATIONS**

*Breaking the Boilerplate Habit in Civil Discovery*
- Presenter
- Akron Law Review Symposium on Civil Discovery
- April 6, 2018, Akron, OH

*Sedona Conference eDiscovery Negotiation: Practical Cooperative Strategies*
- Faculty Member
- February 22-23, 2018, New York, NY

*Technology Assisted Review (TAR) Best Practices*
- Program Moderator
- Duke Law Center for Judicial Studies, Bench-Bar-Academy Distinguished Lawyers' Series
- September 8-9, 2017, Arlington, VA

*Federal Rules Update*
- 2017 Judicial Conference of the Fifth Circuit
- May 9, 2017, Grapevine, TX

*The Virtual Reality: Litigating in the 21st Century*
- Kansas Legal Revitalization Conference
- February 2, 2017, Kansas City, MO

*Big Deal or Big Distraction? Which Recent FRCP Developments Really Matter and Why*
- Kansas Legal Revitalization Conference
- February 2, 2017, Kansas City, MO

*The New Rules for E-Discovery:  What Do They Impact?*
- Kansas Legal Revitalization Conference
- February 1, 2017, Kansas City, MO

*How E-Discovery Brought All Discovery Back to Its Senses*
- University of Florida College of Law, E-Discovery Distinguished Speaker Series
- October 10, 2016, Gainesville, FL

*The 2015 Amendments to the Federal Rules of Civil Procedure*
- Westfield Insurance Annual Counsel Meeting
- August 9, 2016, Westfield Center, OH

*The 2015 Amendments to the Federal Rules of Civil Procedure*
- Eighth Circuit Judicial Conference
- May 4, 2016, Rogers, AR

*Federal Rules Amendment Process:  How Does It Work?  Trends and Predictions.*
- Wichita Bar Association Civil Practice CLE
- April 21, 2016, Wichita, KS

*Sedona Conference eDiscovery Negotiation: Practical Cooperative Strategies*
- ▪ Faculty Member
- ▪ March 1-2, 2016, Washington, D.C.

*IAALS Fourth Civil Justice Reform Summit*
- • Panelist and Planning Committee Member
- • February 24-25, 2016, Denver, CO

*ABA "Roadshow" on Proportionality and the New 2015 Rules*
- ▪ Fall 2015 through Spring 2016
- ▪ Presentations at U.S. Courthouses in 17 cities (New York, Philadelphia, Newark, St. Louis, Atlanta, Chicago, Washington D.C., Los Angeles, San Francisco, Denver, Phoenix, Dallas, Miami, San Diego, Seattle, Boston, Detroit)

*"What Do the 2015 Amendments to the Federal Rules of Civil Procedure Really Mean for Judges and Lawyers"*
- ▪ 2016 Southern District of Georgia Attorney Advisory Committee Meeting
- ▪ January 29, 2016, Amelia Island, FL

*"The 2015 Amendments to the Federal Rules of Civil Procedure"*
- ▪ Federal Bar Association, Federal Practice Series
- ▪ November 24, 2015, Oklahoma City, OK

*"Proportionality and the New 2015 Rules"*
- ▪ Judicial Training Symposium co-sponsored by Federal Judicial Center and the Electronic Discovery Institute
- ▪ October 14, 2015, New Orleans, LA

*"Proportionality and the New 2015 Rules"*
- ▪ ABA Section on Litigation Fall Leadership Meeting
- ▪ October 9, 2015, Memphis, TN

*"The 2015 Amendments to the Federal Rules of Civil Procedure"*
- ▪ Kansas City Metropolitan Bar Association Bench, Bar, & Boardroom Conference
- ▪ May 15, 2015, Branson, MO

*"Proportionality and the New 2015 Rules"*
- ▪ National Conference for U.S. Magistrate Judges
- ▪ April 21, 2015, Seattle, WA
- ▪ July 9, 2015, Boston, MA

*"Proportionality is Officially Part of Discovery: Now What?"*
- ▪ Washington & Lee University School of Law Faculty Speaker Series
- ▪April 6, 2015, Lexington, VA

*Sedona Conference eDiscovery Negotiation: Practical Cooperative Strategies*

▪ Faculty Member
▪ March 4-5, 2015, Atlanta, GA

*Duke Center for Judicial Studies Conference on Implementing Discovery Proportionality Standard*
▪ Faculty Member and Panelist
▪ November 13-14, 2014, Arlington, VA

*"Four Years After Duke: Where Do We Stand on Calibrating the Pretrial Process?"*
▪ Civil Rules Advisory Committee Meeting; Program Honoring Judge Mark Kravitz
▪ April 10, 2014, Portland, OR

*"Hot Topics in Discovery Sanctions: Spoliation and Rule 26(g)"*
▪ Judges Retreat, U.S. District Court for the Western District of Missouri
▪ March 7, 2014, Kansas City, MO

*Sedona Conference Cooperation Training Program*
▪ Faculty Member and Panelist
▪ February 12-13, 2014, Chicago, IL

*"Amendments to Rule 45"*
▪ Presentation to District Judges of the Western District of Oklahoma
▪ December 2, 2013, Oklahoma City, OK

*"Cooperation in Practice"*
▪ Georgetown Law Advanced eDiscovery Institute
▪ November 21, 2013, Washington, D.C.

*"Pretrial Bench Presence"*
▪ New England Law School Symposium: "Benchmarks: Evaluating Measurements of Judicial Productivity"
▪ November 8, 2013, Boston, MA

*Unlocking E-Discovery: Educational Summit for State Court Judges*
▪ Faculty member for e-discovery program for state-court judges from around the country.
▪ Co-hosted by the National Judicial College and the Institute for the Advancement of the American Legal System ("IAALS")
▪ September 19-20, 2013, Denver, CO

*"Cooperation and Professional Responsibility"*
▪ The Sedona Conference Cooperation Training Program
▪ February 21, 2013, Phoenix, AZ

*"Search Wars: Predictive Coding and the Battle for Control of the Search Process"*
▪ University of Kansas School of Law Symposium: "Advocacy Under the Federal Rules of Civil Procedure After 75 Years"
▪ November 9, 2012, Lawrence, KS

8

*"New Approaches to Civil Case Management from Around the Country"*
- ▪ Workshop for Judges of the Fifth Circuit
- ▪ May 10, 2012, Santa Fe, NM

*"Ed Cooper, Sherpa Guides, and Procedural Discretion"*
- ▪ Civil Rules Advisory Committee Meeting, Program Recognizing Reporter Ed Cooper
- ▪ March 22, 2012, Ann Arbor, MI

*"Effective Case Management"*
- ▪ Judges Retreat, U.S. District Court for the District of Kansas
- ▪ February 17, 2012, Topeka, KS

*"Closing the Guidance Gaps Under the Federal Rules"*
- ▪ Presented at the William S. Boyd School of Law, University of Nevada Las Vegas
- ▪ January 26, 2012, Las Vegas, NV

*"Electronic Discovery and the Sensible Harvest"*
- ▪ Boston E-Discovery Summit 2011
- ▪ December 8, 2011, Boston, MA

*"Social Media and the Continuing Evolution of the Discovery Rules"*
- ▪ University of Arkansas School of Law Symposium: "Facebook and the Law"
- ▪ November 4, 2011, Fayetteville, AR

*"Discovery After Iqbal:  Where Do We Go From Here?"*
- ▪ Multidistrict Litigation Panel Transferee Judge's Conference
- ▪ November 1-2, 2011, West Palm Beach, FL

*"Summary Judgment and Case Management:  Each in Service of the Other"*
- ▪ Seattle University School of Law Colloquium:  "25th Anniversary of the Summary Judgment Trilogy:  Reflections on Summary Judgment"
- ▪ September 16, 2011, Seattle, WA

*"Civil Rules and Appellate Rules:  What's New and What's on the Horizon"*
- ▪ Judicial Conference of the Fifth Circuit
- ▪ May 3-4, 2011, San Antonio, TX

*"The Rulemaking Response to* Twombly *and* Iqbal*"*
- ▪ University of Baltimore School of Law Colloquium Presentation
- ▪ April 15, 2011, Baltimore, MD

*"Knowledge in the Public Interest: Consideration of Incidents Where Scientific and Technical Knowledge Is Kept From the Public Because of Sealed Settlements and Other Restrictive Arrangements"*
- ▪ Panelist, National Academy of Science, Committee on Science, Technology, and Law
- ▪ April 11, 2011, Washington, DC

9

*"Complex Litigation XIII: The Future of Civil Litigation 2"*
▪ Panelist, 13th Annual Sedona Conference on Complex Litigation
▪ April 7-8, 2011, Del Mar, CA

*"The 2010 Amendments to Rule 26 and Rule 56"*
▪ Kansas Association of Defense Counsel Annual Meeting
▪ December 3, 2010, Kansas City, MO

*"The 2010 Amendments to Rule 56"*
▪ LEXIS/NEXIS Webinar
▪ November 23, 2010

*"Incorporating E-Discovery Rules Into State Practice"*
▪ Panelist, Tulsa County Bar Association CLE Program on Electronic Discovery
▪ November 12, 2010, Tulsa, OK

*"Federal Judicial Roundtable on Electronic Discovery"*
▪ Moderator, Oklahoma Bar Association Symposium on Electronic Discovery
▪ November 5, 2010, Oklahoma City, OK

*"Incorporating E-Discovery Rules Into State Practice"*
▪ Panelist, Oklahoma Bar Association Symposium on Electronic Discovery
▪ November 5, 2010, Oklahoma City, OK

*"Report from the 2010 Conference on Civil Litigation: Where We Are and Where We Are Going"*
▪ Panelist, Sedona Conference Webinar Series Presentation
▪ June 22, 2010

*"Cooperation in Discovery: A 90-Year View"*
▪ Northern Illinois University Law Review Symposium: "What It Means to Be a Lawyer in the Digital Age"
▪ April 16, 2010, DeKalb, IL

*"The Future of Civil Litigation: Legislative and Behavioral Changes"*
▪ Panelist, 12th Annual Sedona Conference on Complex Litigation
▪ April 8-9, 2010, Phoenix, AZ

*"Federal Rules of Civil Procedure: What's Coming in December 2010"*
▪ Co-presenter (with The Honorable Lee H. Rosenthal)
▪ DRI Product Liability Conference
▪ April 7, 2010, Las Vegas, NV

*"Codifying Mediation 2.0"*
▪ Panelist, The Ohio State Journal of Dispute Resolution Symposium 2010
▪ February 5, 2010, Columbus, OH

*"Must, Should, Shall"*

▪ AALS Section on Litigation Program
▪ January 10, 2010, New Orleans, LA

*"Procedure a la Carte"*
▪ AALS Section on Civil Procedure
▪ January 9, 2010, New Orleans, LA

*"E-Discovery: Searching the Virtual File Cabinets"*
▪ Presenter, NBI Seminar
▪ Forthcoming November 13, 2009, Oklahoma City, OK

*"Federal Rules of Civil Procedure: Changes Effective December 1, 2009"*
▪ OBA/CLE Webcast Seminar
▪ November 10, 2009

*"The First Year of the Cooperation Proclamation"*
▪ Panelist, The Sedona Conference Webinar
▪ November 4, 2009

*"The Other Side of the CAFA Effect: An Empirical Analysis of Class Action Activity in the Oklahoma State Courts"*
▪ Kansas Law Review 2009 Symposium: "Aggregate Justice: Perspectives 10 Years After *Amchem* and *Ortiz*"
▪ October 30, 2009, Lawrence, KS

*"Judicial Management Strategies to Encourage Cooperative, Non-Adversarial Discovery"*
▪ Workshop for U.S. Magistrate Judges II
▪ July 15 and 16, 2009, Milwaukee, WI

*"Some Thoughts on the Lawyer's E-volving Duties in Discovery"*
▪ Northern Kentucky Law Review Symposium on E-Discovery
▪ February 28, 2009, Cincinnati, OH

*"Privilege Waiver Under New Federal Rule of Evidence 502"*
▪ Presenter, NBI Seminar: *Keeping Up with E-Discovery*
▪ November 13, 2008, Oklahoma City, OK

*"E-discovery in Oklahoma"*
▪ Presented to the Kingfisher County Bar Association
▪ August 28, 2008, Kingfisher, OK

*"The Revolution of 1938 Revisited: The Role and Future of the Federal Rules"*
▪ Moderator, AALS Civil Procedure Section Program
▪ January 4, 2008, New York, NY

*"E-discovery: New Adventures in Client Babysitting?"*
▪ Presented at the Kansas University School of Law

11

▪ October 19, 2007, Lawrence, KS

*"Bell Atlantic v. Twombly: Pleading Standards and Court Access"*
- ▪ "Brown bag" presentation at the University of Oklahoma College of Law
- ▪ June 20, 2007, Norman, OK

*"What's Coming Next? A Look Into the Rules Amendment Pipeline"*
- ▪ Presented at *Winning the Federal Case Before Trial*
- ▪ December 15, 2006, Oklahoma City, OK

*"Recent Developments in Federal Subject Matter Jurisdiction"*
- ▪ Presented at *Winning the Federal Case Before Trial*
- ▪ December 9, 2005, Oklahoma City, OK

*"Driving Misjoinder: The Improper Party Problem in Removal Jurisdiction"*
- ▪ "Brown bag" presentation at the University of Oklahoma College of Law
- ▪ May 25, 2005, Norman, OK

*"The Relatively Underguided Erie Analysis"*
- ▪ University of Oklahoma College of Law
- ▪ February 9, 2005, Norman, OK

*"Federal Civil Rules Amendments: A Look Into the Pipeline"*
- ▪ Presented at *Winning the Federal Case Before Trial*
- ▪ January 14, 2005, Dallas, TX

*"Discretionary Dismissal Based on Post-Jurisdictional Events"*
- ▪ Presented to United States Judicial Conference Committee on Federal-State Jurisdiction
- ▪ June 10, 2004, New York City, NY

*"Oil and Gas Class Actions: Issues and Outcomes in Oklahoma"*
- ▪ Presented at the *Eugene Kunz Conference on Natural Resources Law and Policy*
- ▪ November 2002, Oklahoma City, OK

## UNIVERSITY OF OKLAHOMA SERVICE

Member, Faculty Appeals Board (2012-present)
Research Liaison, Office of the Vice President for Research (2012-2015)
Member, Small Executive Committee, Faculty Senate (2002-2003)
Member, Faculty Senate (2001-2002)
Chair, Campus Disciplinary Council I (2007-2009)
Chair, Campus Disciplinary Council II (2001-2002)

## UNIVERSITY OF OKLAHOMA COLLEGE OF LAW SERVICE

Member, Committee on Endowed Positions (2017)
Chair, Scholarship and Creative Activity Strategic Planning Committee (2012-2015)

12

Member, New Programs Committee (2012-present)
Chair, Foreign Studies Program Committee (2011-2015)
Director, Oxford Summer Program (2011-2015)
Chair, Curriculum Committee (2016-2017)
Member, Curriculum Committee (2011-2012; 2014)
Member, Committee on Research and Scholarship (2011-2016)
Chair, Committee A (2009-2010)
Member, Dean Search Committee (2009-2010)
Member, Committee A (2008-2010)
Faculty Advisor, Oklahoma Law Review (2002-2003, 2004-2007, 2011-present)
Chair, Mentoring Study Committee (2005-2006)
Chair, Code of Academic Responsibility Appeals Board (2004-2005; 2015-2017)
Chair, Academic Appeals Board (2015-2017)
Member, Externship Subcommittee (2004-2005)
Chair, Personnel Committee (2006-2007)
Member, Personnel Committee (2000-2001, 2002-2003)
Member, Competitions Committee (2001-2003)
Member, Legal Writing Committee (2001-2002)
Member, Judicial Clerkships Program (2000-current)
Faculty Advisor, Phi Alpha Delta (2001-2003)

**BAR MEMBERSHIPS**

United States Supreme Court (2003)
State of Wisconsin (1992)
Eastern District of Wisconsin (1992)
Western District of Wisconsin (1993)
District of Colorado (1995)

# EXHIBIT 2

6:18-cv-00199-JHP  Document 84-4  Filed in ED/OK on 05/26/21  Page 68 of 350
6:16-cv-00113-JHP  Document 295-2  Filed 08/17/18  Page 68 of 351

## IN THE DISTRICT COURT OF CADDO COUNTY
## STATE OF OKLAHOMA

IVAN J. SIMMONS, MADALINE M.          )
THOMPSON, AND GAYLON LEE             )
MITCHUSSON,                           )
                                      )
                                      )      Case No. CJ-2004-57
FOR THEMSELVES AND ALL OTHERS SIMILARLY )
SITUATED,                             )
                                      )
                    PLAINTIFFS,       )
                                      )
v.                                    )
                                      )
ANADARKO PETROLEUM CORPORATION,       )
                                      )
                    DEFENDANT.        )

> STATE OF OKLAHOMA
> CADDO CO.
> **FILED**
> DEC 2 3 2008
> At _____ O'Clock _____ M.
> OPAL KAROL FINCH, Court Clerk
> By _____

### ORDER ON ATTORNEY FEES, LITIGATION
### EXPENSES, AND CLASS REPRESENTATIVES FEE

This matter comes on this 23rd day of December, 2008, on Class Representatives' and

Class Counsel's motion for attorney fees, litigation expenses and Class Representatives fee. All

named parties were present and represented by counsel. After reviewing the motion and all

related pleadings, having reviewed the evidence submitted, having heard the testimony and

arguments presented today, and being fully advised in the premises, **THE COURT FINDS**

**AND ORDERS AS FOLLOWS**:

<u>Notice and Objections:</u>

1. Notice of this hearing was properly mailed to the Class Members with known

valid mailing addresses and was published as required by this Court's previous order (see

Report Concerning Notice, previously filed with the Court). The Court previously approved

such notice and now finds that the notice to the Class of this hearing is proper and sufficient

- 1 -

6:18-cv-00199-JHP   Document 84-4   Filed in ED/OK on 05/26/21   Page 69 of 350
6:16-cv-00552-JKJ-JFJ   Document 299-2   Filed in ED/OK on 11/28/18   Page 180 of 351

under 12 Okla. Stat. § 2023 (E), the Due Process Clause of the United States Constitution and the Due Process Clause of the Oklahoma Constitution.

2. The Court notes that with over 16,000 Class Members, only six (6) persons filed objections. One (1) additional objection has been dismissed and stricken because the objector is not a Class Member. Each of the six (6) Class Member objectors objected to the attorney fee request, one (1) of them objected to the award of the Class Representatives fee, and none (0) of them objected to the expenses that were incurred on behalf of the Class. None of the objectors appeared at the hearing, nor did any objector submit any credible evidence for the Court to consider or add anything of benefit to the Class. As recently explained by the Oklahoma Court of Appeals in *Velma-Alma Independent School Dist. No. 15 v. Texaco, Inc.*, 2007 OK CIV APP 42, 162 P. 3d 238, ¶13, while written comments and objections can be submitted by class members, those class members must file objections in compliance with the order and notice of the settlement court, state their intent to appear at the fairness hearing, and appear **in person** or through their disclosed counsel at the hearing for their objection to be preserved. The total percentage of the claims of all six (6) of the objectors is less than three tenths of one percent (0.3%) of the settlement fund leaving more than 99.7% of the Class as non-objectors. Without any credible evidence being presented by persons who filed timely objections, the Court finds that all evidence presented supports the requests of the Class Representatives and Class Counsel for the award of their requested fees and expenses.

**Class Counsel Fees:**

3. Class Counsel's efforts in this lawsuit began in late 2003 and early 2004 with an investigation that led to the filing of this lawsuit in February of 2004. Over the past five years

6:18-cv-00199-JHI-w  Document 84-4   Filed in ED/OK on 05/26/21   Page 70 of 350
6:16-cv-00199-JHI-w   Document 295-2   Filed 06/11/18   Page 713 of 351

Class Counsel conducted extensive discovery, motion practice and other demanding prosecution of this case. The issues in this case (including issues related to discovery, class action status, due process, notice, choice of law, summary judgment on various issues, motions to stay both at the trial court and the appellate courts, and many other factual and legal issues) have been aggressively advanced throughout the history of this case. A further overview of the history of this case can be gleaned from the Court Clerk's docket sheet. This Court granted class certification in this case only after it had reviewed extensive briefing, volumes of exhibits and arguments of counsel. APC appealed the class certification decision, which appeal was fully briefed and awaiting decision on appeal when a settlement was reached by the parties. The appeal was held in abeyance, and this Court's jurisdiction to approve settlement was specifically confirmed by the appellate court.

4. Class Counsel and the Class Representatives have devoted tens of thousands of hours of time and effort, and have paid large sums of money, to achieve a fair and reasonable settlement for the benefit of the Class. Class Counsel and the Class Representatives have borne the hardships of the litigation and the risk of potential loss solely on their own shoulders. To date, Class Counsel and the Class Representatives have received no compensation for their efforts or reimbursement of their expenses. Class Counsel and the Class Representatives now request that the contingent fee and expense reimbursement contract they negotiated be extended to the Class.

5. Class Counsel have made substantial time and labor commitments which have now inured to the financial benefit of the Plaintiff Class and which have resulted in the creation of a Common Fund of $155,000,000.00, plus accrued interest.[1]

---

[1] The Common Fund Doctrine is well recognized by the Oklahoma Supreme Court (as well as the United States

- 3 -

6. Under the Common Fund Doctrine, and in particular in a "class action" (which is one type of action that can create a common fund), the Court has the authority to extend contingency fee agreements entered into between the Class Representative and Class Counsel to the entire Class.

> **Contingent fee agreements may be appropriate in class action cases. . .** Many courts have held . . . that once a class is certified and a decision on the merits is had, **the trial court may decide whether to approve the contingent fee agreement, and whether to extend the contingent arrangement to all class members.** [Emphasis added.]

*Sholer v. State of Oklahoma*, 1999 OK CIV APP 100, ¶¶ 13-14, 990 P.2d 294.

7. This Court recognizes the importance of contingent fees in our judicial system, especially in class actions.

> Although contingent fee contracts are subject to restrictions . . . such agreements have generally been enforced unless the contract is unreasonable. **Often contingent fee agreements are the only means possible for litigants to receive legal services —— contingent fees are still the poor man's key to the courthouse door. The contingent fee**

---

Supreme Court). If the plaintiff and/or his counsel have **created, preserved, protected, or increased a common fund (or common property), or have brought into court** a fund in which others may share with him, a court, in the exercise of equitable jurisdiction, may order the allowance of attorney fees and litigation expenses to counsel.

> **The conceptual underpinnings for the chancery common-fund doctrine teach us that an equitable charge may be impressed in favor of its creator** *when the fund is within the direct control of the court.* The "pre-existing fund" must be immediately subject to counsel-fee assessment, and the benefits conferred have to be traceable with some accuracy to each beneficiary. [Footnotes and citations omitted. Emphasis added.]

*Oklahoma Tax Com'n v. Ricks* 1994 OK 115, ¶7-8, 885 P.2d 1336.

> It is well settled that ordinarily "a court in the exercise of equitable jurisdiction, will, in its discretion, order an allowance of counsel fees, or, as it is sometimes said, allow costs as between solicitor and client, to a complainant (and sometimes directly to the attorney) who at his own expense has maintained a successful suit for the **preservation, protection, or increase of a common fund, or of common property, or who has created at his own expense, or brought into court, a fund in which others may share with him."** [Citations omitted. Emphasis added.]

*State ex rel. Board of Com'rs of Harmon Co. v. OTC*, 1944 OK 250, ¶4 151 P.2d 797; *see also, Kellough v. Taylor,* 1941 OK 320, 119 P.2d 556.

- 4 -

6:18-cv-00199-JHP Document 84-4   Filed in ED/OK on 05/26/21   Page 72 of 350
6:16-cv-00184-JHP-JFJ Document 295-2 Filed in ED/OK on 11/28/18 Page 73 of 351

> system **allows persons who could not otherwise afford to assert their
> claims to have their day in Court.** [Emphasis added. Footnotes omitted.]
> *Sneed v. Sneed*, 1984 OK 22, ¶3, 681 P.2d 754.

8.  *Newberg on Class Actions* §14:6 (4th ed. 2002) recognizes that it is appropriate to

award an attorney's fee based on a percent of the value of the common fund established for

the benefit of the class.

9.  A review of other Oklahoma District Courts' orders reveals similar sound logic.

In *Bridenstine v. Kaiser-Francis, et al.*, Case No. CJ-2000-1, District Court of Texas County,

State of Oklahoma, ¶3, the Honorable Ronald Kincannon explained his rationale for using

the percentage of fund method for determining the appropriate attorney's fee:

> The percentage fee has important advantages to the Class in that it
> provides self-regulating incentives for efficiency. First, it compensates
> counsel on the real value of the services provided (the amount of benefit
> conferred). Second, the percentage approach awards efficiency. Not only
> is there no reward for inefficiency, there is a penalty due to the fact that, if
> the work is unnecessary, the lawyer has wasted his time. Third, the
> percentage method encourages counsel to go the extra mile. Counsel has
> an incentive to push beyond a "good" recovery to an "excellent" recovery.
> The Court certainly considers the existing Common Fund to be an
> excellent recovery to the Class Members. Thus, under this percentage
> approach, the interests of the Class and Class Counsel are consistent and
> aligned.

In *Brumley v. ConocoPhillips*, Case No. CJ-2001-5, District Court of Texas County,

Oklahoma, Judge Zigler stated additional rationales for awarding the full percentage fee:

> **To award Class Counsel a lesser percentage of the Total Common
> Fund because the efforts of Class Counsel have created an
> exceptionally large Fund would amount to penalizing Class Counsel
> for their success which the Court is unwilling to do.** This Court makes
> no myth as to Class Counsel's attorney fee award herein. It is significant.
> Yet, it is reasonable and proper. It is fair and equitable. **Additionally, the
> common sense reality is, when the efforts of Class Counsel create an
> exceptionally large Total Common Fund for the benefit of the Class**

- 5 -

> and if Class Counsel's fees awarded therefrom are greatly restricted, then forseeably [sic] so goes later access to the Courthouse for other potential and future class members. From that common sense viewpoint and understanding it is all a matter of economics. So in conclusion, as in the many other class cases referenced herein, under this percentage approach as thoroughly addressed hereinabove, the interests of the Class and Class Counsel will be consistent and aligned.

* * *

> Knowing the rewards for Class Counsel can be great, so travels the path of loss for Class Counsel if defeat is the end result. Financial, personal, and emotional devastation are the potential events for a very few members of this Profession willing and able to represent thousands of strangers in order to obtain monetary benefit for those strangers that otherwise, without question, is unattainable through known legal means. From this aspect, the potential rewards of a Class Counsel's success and the potential devastation realized of a Class Counsel's defeat must be considered with [an] open judicial mind.

Emphasis added.

10. This Court finds that the efforts of Class Counsel created an exceptionally large total common fund for the benefit of the Class. The reasoning of the above-quoted Oklahoma courts on the award of attorney fees in cases such as the present action is compelling, and this Court adopts their reasoning in this case. The Court will not reduce Class Counsel's percentage of fees from the common fund because of the remarkable success they achieved. To do so would effectively penalize Class Counsel for their success in this case and thereby restrict later access to the courthouse for potential class members in other cases who look to effective lawyers like Class Counsel in this case as their keys to the courthouse doors.

11. The Court finds that Class Counsel and the Class Representatives entered into contingency fee agreements whereby Class Counsel agreed to prosecute this action in

- 6 -

6:18-cv-00199-JHP Document 84-4 Filed in ED/OK on 05/26/21 Page 74 of 350
6:16-cv-00067-JHP Document 295-2 Filed 08/17/18 Page 73 of 351

exchange for receiving a fee of 40% of the gross recovery for the Class plus reimbursement of litigation expenses.

12. The Court finds that the 40% contingency fee percentage contained in the agreement between Class Counsel and the Class Representatives is within the typical range of contingency fee percentages for oil and gas class action litigation approved in this State.

13. The Court finds: (a) that the 40% contingency fee agreement between Class Counsel and the Class Representatives is fair and reasonable and should be, and is hereby, approved and extended to the members of the Class, and (b) that based upon the foregoing factors and reasoning, as well as the additional analysis described below, an attorney fee award of 40% of the gross Settlement Proceeds (as defined in Compromise and Settlement Agreement), together with accrued interest thereon, is a fair and reasonable amount of compensation to Class Counsel for establishing the Common Fund.

14. The Court has reviewed the detailed time records submitted by Class Counsel and finds that the time reflected in the record (in excess of 38,000 hours) was reasonably expended for the benefit of the Class. The Court has also reviewed the hourly rates of Class Counsel as set forth in the record and finds them to be reasonable and within the acceptable range in the legal community for this type of legal services. Thus, the Court further finds the base hourly fees in this case (hours X rates), prior to consideration of the enhancement factors under a "lodestar" approach, is almost $15,000,000, which would result in a lodestar multiplier of approximately 4.2 on an attorney fee award of 40%.

15. The Court considered the basic guidelines established by the Oklahoma Supreme Court set forth in *State ex rel. Burk v. City of Oklahoma City*, 1979 OK 115, 598 P.2d 659.[2]

---

[2] The Court recognizes that *Burk* was not a class action and that the equitable fund created by the attorneys' effort

- 7 -

6:18-cv-00199-JHᴘ-ᴋᴇᴡ Document 84-4  Filed in ED/OK on 05/26/21  Page 75 of 350
6:16-cv-00199-JHP-KEW  Document 295-2  Filed in ED/OK on 11/28/18  Page 75 of 351

In *Burk*, the Supreme Court enunciated twelve factors to be considered by the District Court in fixing fees under the lodestar approach.

A.     Time and labor required. Counsel have made substantial time and labor commitments which have now inured to the financial benefit of the Plaintiff Class.

B.     The novelty and difficulty of the question. Class action issues are known to be difficult and vigorously contested. Furthermore, the oil and gas royalty issues involved in this case are also very complex.

C.     The skill requisite to perform the legal services properly. The unique nature of this case, coupled with the issues, mandated that the Class be represented by highly skilled counsel. To prosecute these claims against a large corporate defendant represented by highly capable defense counsel with extensive resources necessitated assembling a team of Class Counsel skilled in oil and gas litigation, as well as details of complex litigation. Counsels' qualifications, skills and experience are well known throughout the oil and gas legal community. Class Counsel are certainly highly skilled and capable counsel.

D.     The preclusion of other employment. Class Counsel are engaged in the on-going practice of law. Had Class Counsel not committed their resources to this case, Class Counsel could have accepted other matters, but did not. The prosecution of this case has very substantially reduced Class Counsel's opportunity for employment in other matters. In fact, the Barnes & Lewis law firm and The DeVore Law Firm declined substantially all new work for their longstanding oil company clients, all of which work would have been compensated on an hourly fee basis, in order to allow Class Counsel to devote more time to this case.

E.     The customary fee.    These types of cases (oil and gas class action cases), are handled on a contingent fee. The fee percentage in these types of cases is typically 40% of the gross fund.

F.     Whether the fee is fixed or contingent. Class Counsel entered into contingency fee agreements with the Class Representatives that provide for an attorneys' fee of 40% of the gross consideration received, as discussed in detail above. Counsel for the Class have represented the Class with vigor and without prior compensation of any kind for their time and have advanced hundreds of thousands of dollars of litigation expenses out of their own pockets.

---

benefited only the City of Oklahoma City. The attorneys fee awarded in that case amounted to 100% of the equitable fund currently available and all of the benefit due the City for several years into the future.

- 8 -

6:18-cv-00189-JKH   Document 84-4   Filed in ED/OK on 05/26/21   Page 76 of 350
6:16-cv-01643-JKH-JTC   Document 235-2   Filed 08/17/18   Page 76 of 351

G.  **Time limitations imposed by client or circumstances.** Numerous time limitations were imposed on Class Counsel throughout the course of the proceedings. This Court and the appellate courts imposed time limitations through case scheduling over the last five years that forced Class Counsel to perform services of great magnitude by certain dates. The schedules of the courts, witnesses and clients were also accommodated on a regular basis by Class Counsel. A case of the size and complexity existing here required the commitment of a large percentage of the total time and resources of the firms of Class Counsel and worked significant hardships as time went on. The circumstances of the case required the litigation to be vigorously pursued if an excellent recovery through settlement was to be achieved. Class Counsel, in fact, did vigorously prosecute the case and obtained excellent results for the Class.

H.  **The amount involved and the results obtained.** There can be no doubt that at the outset, Plaintiffs' Counsel had no assurance of any recovery. Considering all involved, the amount and terms of the settlement reflect the quality of the result and the outstanding benefits provided by Class Counsel to the Class. The Court considers this settlement to be an excellent result for the Class.

I.  **Experience, reputation and ability of counsel.** Class Counsel's qualifications, skill, experience, ability and reputation are well known throughout the oil and gas and complex litigation legal communities. Class Counsel are exceptional litigators.

J.  **The undesirability of the case.** Compared to most civil litigation attracting counsel to represent plaintiffs, this litigation clearly fits the initially "undesirable" test. Few law firms would be willing, or able, to risk investing the time and expenses necessary to prosecute this litigation. The Defendants were well-financed, and well represented. Certainly, the possibility of a recovery was a risky matter.

K.  **Nature and length of the professional relationship with the client.** Class Counsel have various long-term relationships with various Class Members.

L.  **Awards in similar cases.** The awards in similar cases were discussed in detail in Class Counsel's motion, exhibits and testimony. The Court incorporates said discussion herein by reference. The Court finds that a 40% fee is customary in these types of cases.

- 9 -

6:18-cv-00189-JHP  Document 84-4    Filed in ED/OK on 05/26/21    Page 77 of 350
6:16-cv-00-cv-00 Document 366-1  Filed on 12/28/  Page 73 of 351

16. In 1980, the Oklahoma Supreme Court followed and modified *Burk, supra,* to further instruct District Courts that counsel fees cannot be fairly awarded on the basis of time alone, but other factors, particularly the litigation risk factor, must be considered. See *Oliver's Sports Center, Inc. vs. National Standard Ins. Co.,* 1980 OK 120, 615 P.2d 291.

17. Based upon the Court's analysis of the *Burk* factors, the Court finds a reasonable fee in this case to be $62,000,000.00, plus accrued interest thereon (which represents 40% of the gross Settlement Proceeds, and a lodestar multiplier on the base hourly fees of approximately 4.2, which is well within the range of reasonableness).[3]

**IT IS THEREFORE ORDERED** that Class Counsel be, and hereby are, awarded a fee of forty percent (40%) of the gross Settlement Proceeds, for an attorney fee in the amount of $62,000,000.00, plus accrued interest thereon.

## Expert Witness Fees, Litigation Expenses and Class Representatives Fee:

18. The Court, having reviewed the accounting records which detail the expert witness fees and litigation expenses incurred in pursuit of class claims, having heard testimony regarding the necessity of such expenditures in preparation of the case, and having

---

[3] In appropriate cases where Class Counsel have created a large common fund, such as in the present case, multipliers of even 5 to 10 have been awarded. See, *Herbert Newberg*, Newberg on Class Actions (3rd), §14.03 (emphasis added):

> Courts applying the lodestar approach will often use large multipliers or monetary enhancements of the time/rate (lodestar) calculation in order to reach fee award results comparable to percentage of recovery fees. **Multiples ranging from one to four frequently are awarded in common fund cases when the lodestar method is applied. A large common fund award way warrant an even larger multiple.**[21]
>
> [Fn. 21] *See e.g., In re Beverly Hills Fire Litig,* 639 F. Supp. 915 (ED Ky 1986) (personal injury class action; **multiplier of 5 for lead counsel for contingency and superior trial skill**); *Wilson v. Bank of Am Natl Trust & Savs Assn,* No. 643872 (Cal Sup Ct Aug 16, 1982) (illegal use of escrow funds by lender for profit; noncontingent hourly rates of up to $150/hour and a **multiplier of up to 10 times the hourly rate**). [End of Fn. 21]

6:18-cv-00189-JH   Document 34-4   Filed in ED/OK on 05/26/21   Page 78 of 350
6:16-cv-05731-cv-00 Document Document 166 Filed on 12/13/07 Page Page 78 of 351

no objections filed as to these expenses, finds that reasonable expert witness fees and litigation expenses were incurred in the amount of $820,338.17.

19. The Court finds the Class Representatives have made substantial time and labor commitments to the Class, and have incurred serious legal and financial risks while pursuing this case on behalf of the Class, all of which resulted in obtaining an excellent benefit for the Class. The granting of a Class Representative fee is based upon equitable considerations discussed above which relate to a party's efforts in the creation of a common fund for the mutual benefit of a class. Court awards to Class Representatives of 0.5% of the common fund are typical in these types of class actions with recoveries of this magnitude. In this action, Class Counsel has recommended and requested a Class Representatives' fee of $775,000.00 (one-half of one percent (0.5%) of the gross Settlement Proceeds). The Court finds that compensation to the Class Representatives of one-half of one percent (0.5%) of the gross Settlement Proceeds in the amount of $775,000.00 (to be divided equally among the three Class Representatives) is fair and reasonable compensation for their services to the Class. The Court further finds that the Class Representatives have incurred litigation expenses of their own in the amount of $5,143.56 and should be reimbursed for those expenses as reasonably expended in the performance of their duties for the benefit of the Class.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED** that (1) Class Counsel are awarded an attorney fee of forty percent (40%) of the gross Settlement Proceeds in the amount of $62,000,000.00, plus accrued and accruing interest thereon until paid; (2) Class Counsel are also awarded reimbursement of litigation expenses in the amount of $820,338.17; (3) Class Representatives are awarded fees of one-half of one percent (0.5%) of the gross

- 11 -

6:18-cv-00189-JKL  Document 84-4    Filed in ED/OK on 05/26/21   Page 79 of 350
Case 5:21-cv-00 Document 255-2  Filed 06/17/25  Page 79 of 351

Settlement Proceeds in the amount of $775,000.00, to be divided equally among them;  and (4)

Class Representatives are also awarded reimbursement of their litigation expenses in the amount

of $5,143.56.

IT IS SO ORDERED this 23rd day of December, 2008.


The Honorable Wyatt Hill
Judge of the District Court

- 12 -

# EXHIBIT 3

# IN THE DISTRICT COURT OF BEAVER COUNTY
## STATE OF OKLAHOMA

LOBO EXPLORATION COMPANY,      )
an Oklahoma Corporation,       )
              Plaintiff,      )
                   )      Case No. CJ-97-72
vs.                            )
                   )      Hon. Gerald Riffe
BP AMERICA PRODUCTION          )
COMPANY, a Delaware Corporation,  )
                   )
              Defendant.      )

## ORDER ON MOTION FOR ATTORNEY FEES, LITIGATION EXPENSES, AND CLASS REPRESENTATIVES FEE

This matter came on for hearing on the 14th day of November, 2005, on Class Representative's and Class Counsel's motion for attorney fees, litigation expenses and Class Representatives fee. All named parties were present and represented by counsel, and no opposing parties appeared. After reviewing the motion and all related pleadings, having reviewed the evidence submitted, having heard the testimony and arguments presented, and being fully advised in the premises, **THE COURT FINDS AND ORDERS AS FOLLOWS**:

Attorneys' Fees:     This court notes that the Annotated *Manual for Complex Litigation,* Fourth Edition 2005, § 14, p. 207 indicates "In class actions involving monetary stakes, the natural conflict that arises between lawyers and class members necessarily draws the judge into the role of regulating and awarding attorney fees. Unless the judge protects the interests of absentee class members, those interests may go unrepresented."

Class Counsel requests fees of forty percent of the common fund. However, the Annotated *Manual for Complex Litigation,* Fourth Edition 2005, § 14.121, p. 211, for example,

- 1 -

indicates that some courts have established "bench marks" for attorneys' fees in common fund cases of between 25 and 30 percent of the common fund. Further, the Manual for Complex Litigation indicates that these percentages are set at even lesser amounts for "mega-cases"[1].

*Newberg on Class Actions*, Fourth Edition, § 14.6, p. 550, indicates a similar benchmark (20 to 33 percent) for "securities and antitrust suits, and some "caps" for percents on such mega-fund cases, or by awarding a declining percent of the common fund as the size of the same increases[2].

However, *Newberg* goes on in this same subsection to show that some studies and courts also have disregarded such declining percentage for large settlements as these discourage attorneys from taking risks for higher judgments/settlements since the same may give them little additional reward with great risk. Rather, these authorities suggest that a fixed percentage no matter the size of the common fund aligns the interests of the class and class counsel so that as the settlement/judgment amount increases, the attorneys' fees do so proportionately. This suggests that a system using such a fixed percent mimics the market, and is best for both the class and class counsel[3].

In sum, my analysis from these sources is that the award must be based upon the specific facts of the case[4]. Clearly, the settlement amount is to be considered within the facts of the particular case.

These sources and those in Oklahoma list the following factors to be considered by

---

[1] Annotated *Manual for Complex Litigation,* Fourth Edition 2005, § 14.121, p. 211: "Accordingly, in "mega-cases" in which large settlements or awards serve as the basis for calculating a percentage, courts have often found considerably lower percentages of recovery to be appropriate. One court's survey of fee awards in class actions with recoveries exceeding $100 million found fee percentages ranging from 4.1% to 17.93%."
[2] Id., p. 550. I note also that another equally valid study indicates these percentages to be "between 20% and 40% of the gross monetary settlement" see fn. 28, p. 558.
[3] Id., pp. 558-565.
[4] Id. p. 554.

the trial court in making this decision. First, in Oklahoma, the *Burk*[5] factors listed at pages 7-9 below are to be considered. Then, the *Manual for Complex Litigation* lists certain additional factors[6].

Based upon these factors this court will evaluate the requests of counsel in light of the facts of this particular case, to wit:

  a. This case was filed on July 25, 1997, after approximately two years of discovery and research (via primarily an audit) initiated by class counsel. After initial discovery, a seven-day evidentiary trial was held in June, 1998, and the class was certified by the trial court on July 17, 1998. The Oklahoma Court of Civil Appeals affirmed this order in 1999 (*Lobo Exploration Co. v. Amoco Production Co.*, 1999 OK CIV APP 112, 991 P.2d 1048). Certiorari was denied by the Oklahoma Supreme Court, and then Certification to the U.S. Supreme Court was also denied.
  b. From that time the attorney's have conducted extensive discovery: over 250,000 in total pages, prior to and after filing this case, of document discovery, over 100 gigabytes of electronic data, and over 50 depositions. Additionally, there have been many contested hearings pertaining to this discovery.
  c. Notice has been mailed and published to approximately 13,000 class members, (after extensive motions, briefs and hearings pertaining to the same) and the class determined with a few[7] significant putative class members opting out of this class.
  d. The parties have retained a number of experts; most of these submitted written reports, and these were subsequently deposed. There have been a number of motions filed pertaining to these experts, including *Daubert* motions and motions

---

[5] *State ex rel. Burk v. City of Oklahoma City*, 1979 OK 115, 598 P.2d 659.

[6] Annotated *Manual for Complex Litigation*, Fourth Edition 2005, § 14.12, p. 214. These are as follows:
  a. The size of the fund and the number of persons who actually receive monetary benefits;
  b. Any agreements or understandings, including side agreements, between attorneys and their clients or other counsel involved in the litigation;
  c. Any substantial objections to the settlement terms or fees requested by counsel for the class by class members (it is, however, a court's duty to scrutinize applications for fees, independently of any objection . . .;
  d. The skill and efficiency of the attorneys; (*Newberg*, states this together with e, below, as "the amount of the benefit conferred upon the Class that could properly be attributed to Class Counsel"[6];
  e. the complexity and duration of the litigation;
  f. The risks of non-recovery and nonpayment;
  g. The amount of time reasonably devoted to the case by counsel; even where fees are to be awarded on a percentage-of-fund basis, some judges cross-check the percentage by conducting a modified lodestar analysis; and
  h. The awards in similar cases.

[7] That aggregate number is about 200, although many of these are various corporations and sub-corporations within the same unit.

in limine objecting to the testimony of some of these experts. This court ruled on a portion of these, including the denial of a portion of this testimony.

e. Additionally, there have been a number of motions filed, briefed and heard by this court including, choice of law, due process, motions for partial summary judgment (on a number of issues), and a motion to determine what contract terms are ambiguous.

f. This matter was set for pretrial where among other matters extensive motions in limine and jury instructions were to be argued (scheduled for two and a half weeks). Then the initial Phase I trial regarding liability was scheduled. (The estimated time of this trial was four weeks, and it was scheduled immediately following the pretrial hearing).

g. Thereafter, there was scheduled, should the Class have prevailed, an indefinite number of Phase II trails regarding possible individual defenses of BP against certain class members. This court's plan was that a few of the large class members would be tried to a jury, and the remainder by bench trails to this court.

h. Finally, there was scheduled a Phase III trial to determine damages, including punitive damages.

i. Each portion of these matters heard by this court was skillfully and hotly contested by counsel; including both extensive pre-hearing briefs, and then supplementary verbal arguments.

j. In accomplishing all of the above, to date Class counsel has expended significant sums of money (the "litigation expenses" requested were $621,760.69), plus just under 23,000 hours of billable time (the bill submitted for this calculated as the respective hourly rates for each of the respective attorneys aggregates approximately $6,900,000). This translates to great risks, skill and effort expended over a lengthy period of time by very tenacious counsel for the Class.

k. A settlement agreement has been executed by the parties, and approved by this court for $150 million. This amount has been deposited in a secure account where it is now drawing interest. If the legal fees are approved as requested, each class member should receive approximately 180 percent of the monies that it was allegedly overcharged by the defendant. Thus, this is an outstanding settlement[8].

l. The notice of settlement was mailed to all class members[9], and published in two places (The *Oil and Gas Journal* and the *Wall Street Journal*)[10].

m. Only five answers were filed, and, of these, only one of these was a valid objection[11]. Further, Samson Resources, one of the largest remaining class

---

[8] In addition to the hotly contested eight year history of this case, prior to this offer the defendant offered $2,000,000 initially, and then $16,000,000 at the settlement conference.

[9] This aggregated over 13,000 class members.

[10] This notice specified the amounts of attorney's fee, court costs and class representative's fees that were requested.

[11] The first answer was an objection by Lawrence Pendley indicating that he did not receive notice including him in this class. Apparently his father initially owned the interest in question, and had died. This interest was transferred to his two sons, and only Lawrence Pendley's brother got a notice. The class included Lawrence as a successor to his father's interests along with his brother, and this was resolved.

Next, Rosemary Howard answered only with a change of address.

Thirdly, Vernon Lynn Scott filed an objection through counsel. However, his only interests were royalty interests. Thus, this court determined that he was not a member of the class.

Fourth, COG-EPCo 1992 Limited Partnership also filed a Motion to Clarify the language of the settlement

members, filed an affidavit in this matter urging this court to approve settlement and the fees requested by Class Counsel as reasonable and proper.

n.  Finally Lobo Exploration Co., the Class representative executed a contingency fee agreement with Class Counsel allowing them an attorneys' fee of "(2) Forty (40 %) percent [of the common fund] after the filing and commencement of a lawsuit; and (3) Fifty (50%) percent after commencement of the trial of the lawsuit or after the filing of a motion for summary judgment." Class counsel agreed to limit themselves to the forty percent figure.

o.  In addition to the facts above, Class Counsel presented as witnesses two attorneys who each have significant experience in representing the class in similar class action litigation, Robert Barnes and Terry Barker. They indicated as follows:

  i.   Both attorneys indicated their extensive experience in similar class action litigation, and that there were few firms within this state who handle such litigation due both to the extreme risks and the amount of expertise involved.

  ii.  The case at bar was very complex and difficult litigation with excellent defense counsel. Thus, plaintiff's counsel was equally skilled and tenacious.

  iii. This case was at an advanced stage when it settled. For example, the discovery completed was quite extensive on both the legal issues and the amount of damages. Further, the class had been certified and all appeals exhausted, all of Stage 1 discovery was completed, many motions had been filed, briefed, argued, and decisions made: these include after certification a number of summary judgment motions (I believe at least nine), choice of laws issue had been resolved, and the ambiguity of contract terms motion was completed.

  iv.  Further, had this matter have gone to trial, the estimate is five to eight more years of litigation[12]. This would more than double the time required, expenses, and significantly increase the risks. For example should the class loose one or more of the issues, or a number of the larger class member – all of which is quite possible, then their recovery could be significantly reduced. Thus, while recovery could be lower or higher than the settlement[13], should this have proceeded to trial, the risks and expenses of said trial certainly militate in favor of this excellent settlement.

---

agreement. This was withdrawn after discussions with BP and class counsel.

Finally, Rodney N. Erdey, filed a letter stating "I object to the attorney fees of 40%, due to the quick amicable resolution without trial on the merits." Mr. Erdey made no personal appearance at the Fairness Hearing, and he has done nothing else.

Clearly, this settlement has been anything but "quick [and] amicable". This along with his failure to do any more that file this letter force me to place little credence in this objection.

[12] My experience to date with time estimates of counsel is that they are generally short of the actual time required due both to the complexity of these matters and the contentious nature of this case.

[13] Clearly here this was presented in support of this settlement. It is also clear that the Class requested 2.77 billion dollars in damages, much of this from Unjust Enrichment and Punitive damages, neither of which were discussed in this settlement. Thus, they might also have recovered significantly more.

v. As noted above, this was an outstanding settlement. Further, it was accomplished in great part due to the tenacity and skill of class counsel. These attorneys should reap rewards for their diligence, skill and due to the risks involved[14].

vi. Finally, these attorneys indicated that the norm in such working-interest owner cases is an attorneys' fee of forty percent of the common fund, and in some fifty percent. In these cases the risks are greater than the royalty cases, as they are much more complex and difficult cases. Mr. Barnes here indicated that he had significant experience in such cases, and this indicated to him that these are much more complex than the royalty owner cases, with complex contracts that can be construed to reduce both liability and damages[15].

vii. Both also clearly differentiate these from the cases cited in both *Newberg* and the *Manuel for Complex Litigation* where attorneys' fee of 20-33 percent of the common fund was more the norm. They testified that the cases cited in both *Newberg* and the *Manuel for Complex Litigation* were securities fraud type cases which were much simpler, less risky, and less difficult cases which should not command nearly the attorney's fee as the current oil and gas working interests' owner cases. Further, these securities cases have been and can be subject to abuses. Clearly, they neither believed that that there was any such abuse here.

**APPLICATION:**

*Newberg[16]*, the *Manuel for Complex Litigation[17]*, and Oklahoma jurisprudence[18] approve of the common fund doctrine, and allow taking a percentage or contingency of the fund created in settlement of the case for the attorney's fees and costs for plaintiff's counsel. In class actions such as this, the percentage fee or contingency fee has important advantages to the Class in that it provides self-regulating incentives for efficiency. First, it compensates counsel on the real value of the services provided (the amount of benefit conferred). Second, the percentage approach rewards efficiency. Not only is there no reward for inefficiency, there is a penalty due to the fact that, if the work is unnecessary, the lawyer has wasted his time. Third, the percentage method

---

[14] See footnote 7 above.

[15] Mr. Barker, who apparently had much less experience in this type case only indicated that the corporations v. corporations in such working interests cases garner less sympathy from juries and judges. Thus, the risks were much greater.

[16] *Newberg on Class Actions*, Fourth Edition, § 14.6.

[17] Annotated *Manual for Complex Litigation*, Fourth Edition 2005, § 14.121

[18] *Oklahoma Tax Commission v. Ricks*, 1994 OK 115, 885 P.2d 1336, 1339.

- 6 -

encourages counsel to go the extra mile. Counsel has an incentive to push beyond a "good"

recovery to an "excellent" recovery. The Court certainly considers the existing Common Fund to

be an excellent recovery to the Class Members. Thus, under this percentage approach, the

interests of the Class and Class Counsel are consistent and aligned.

However, this court must still determine what a reasonable and fair percentage is for both

counsel and the Class.

This Court will use a bifurcated approach, considering first the basic guidelines

established in *State ex rel. Burk v. City of Oklahoma City*, 1979 OK 115, 598 P.2d 659[19], and

also the additional factors from the *Manuel for Complex Litigation.*

1.  In *Burk,* the Supreme Court enunciated twelve factors to be considered by the District Court

    in fixing fees under the lodestar approach. These factors, evaluated below, give this court

    a general indication that the requested forty percent of the common fund is reasonable.

    1)    <u>Time and labor required</u>.  Counsel has made substantial time and labor commitments which have now inured to the financial benefit of the Plaintiff Class.

    2)    <u>The novelty and difficulty of the question.</u> The oil and gas accounting issues involved in this case have proved to be very complex. Further, as noted in the hearing much of what was done here "plowed new ground". Without question the issues in the litigation were novel, complex and difficult.

    3)    <u>The skill requisite to perform the legal services properly</u>. The unique nature of this case, coupled with the issues, mandated that the Class be represented by skilled counsel. To prosecute these claims against a large corporate defendant represented by highly capable defense counsel with extensive resources necessitated assembling a team of Class Counsel skilled in oil and gas litigation, as well as details of complex litigation. Counsel's qualifications, skills and experience are well known throughout

---

[19] The Court recognizes that *Burk* was not a class action and that the equitable fund created by the attorneys' effort benefited only the City of Oklahoma City.  The attorneys' fee awarded in that case amounted to 100% of the equitable fund currently available and all of the benefit due the City for several years into the future.

the oil and gas legal community. Class Counsel are certainly highly skilled and capable counsel.

4) <u>The preclusion of other employment.</u> Class Counsel are engaged in the on-going practice of law. Had Class Counsel not committed their resources to this case, Class Counsel could have accepted other matters, but did not. The prosecution of this case has very substantially reduced Class Counsel's opportunity for employment in other matters.

5) <u>The customary fee.</u> These types of cases (oil and gas class action cases) are handled on a contingent fee basis. What is reasonable and normal is discussed below, but this is to be determined on a case by case basis, dependant upon the facts of this particular case.

6) <u>Whether the fee is fixed or contingent.</u> Class Counsel entered into contingency fee agreements with the Class Representative as discussed above. They argue that this should also be applied to the entire Class.

7) <u>Time limitations imposed by client or circumstances.</u> Numerous time limitations were imposed on Class Counsel throughout the course of the proceedings. This Court and the appellate courts imposed time limitations through case scheduling over the last eight years that forced Class Counsel to perform services of great magnitude by certain dates. The schedules of the courts, witnesses and clients were also accommodated on a regular basis by Class Counsel. A case of the size and complexity existing here required the commitment of a large percentage of the total time and resources of the firms of Class Counsel and worked significant hardships on them over the course of this case. The circumstances of the case required the litigation to be vigorously pursued if an excellent recovery through settlement was to be achieved. Class Counsel, in fact, did vigorously prosecute the case and obtained excellent results for the Class.

8) <u>The amount involved and the results obtained</u>. There can be no doubt that, at the outset, Class Counsel had no assurance of any recovery. Considering all involved, the amount and terms of the settlement reflect the quality of the result and the outstanding benefits provided by Class Counsel to the Class. The Court considers this settlement to be an excellent result for the Class.

9) <u>Experience, reputation and ability of counsel.</u> Class Counsel's qualifications, skill, experience, ability and reputation are well known throughout the oil and gas and complex litigation legal communities. Class Counsel are excellent litigators.

10)     <u>The undesirability of the case.</u> Compared to most civil, contingent litigation attracting counsel to represent plaintiffs, this litigation clearly fits the initially "undesirable" test. Not many law firms would be willing, or able, to risk investing the time and expenses necessary to prosecute this litigation.   The Defendant was well-financed, and well represented. Certainly, the possibility of a recovery was a risky matter.

11)     <u>Nature and length of the professional relationship with the client.</u> Class Counsel has an on-going relationship with Lobo.

12)     <u>Awards in similar cases.</u> This is one of the most critical factors. However, the discussions in both *Newberg* and the *Manuel for Complex Litigation* give this court better guidance on how to evaluate this factor. Thus, this Court incorporates said discussion set out below herein by reference in finding that the requested 40% fee is customary in these types of cases.

13)     <u>Multiplier as an additional factor:</u> In 1980, the Oklahoma Supreme Court followed and modified *Burk, supra,* to further instruct District Courts that counsel fees cannot be fairly awarded on the basis of time alone, but other factors, particularly the litigation risk factor, must be considered. Thus, they added this thirteenth factor.

The general agreement in all jurisdictions is that the time and labor spent by the attorney in performing services for which compensation is sought is an important factor to be considered in setting a reasonable fee. However, it is also commonly agreed that the time element must be considered in connection with other factors. Fees cannot fairly be awarded on the basis of time alone. The use of time as the sole criterion is of dubious value because economy of time could cease to be a virtue; and inexperience, inefficiency, and incompetence may be rewarded to the detriment of expeditious disposition of litigation. The litigation risk factor must be considered. Although the court initially looks to the hourly rate for comparable representation where compensation is guaranteed, it must adjust the basic hourly rate where compensation is contingent by assessing the likelihood of success at the outset of the representation.   See *Oliver's Sportcenter, Inc. vs. National Standard Ins. Co.,* 1980 OK 120, 615 P.2d 291.

In the authorities noted herein this amounts to a cross-check via the lodestar method.

Stated more clearly in terms that we are dealing with here, once the amount of reasonable hourly billing has been determined, the court generally uses this as a cross-check to determine whether the percentage recovery from the common fund is reasonable. Here one must multiply approximately 8.7 times the billed amount to equal the forty percent recovery that is requested.[20] I evaluate this multiplier under h, p. 12 below.

---

[20] *Newberg on Class Actions,* Fourth Edition, indicates that multipliers of one to four are frequently awarded in common fun cases, but these may be larger  in "large common fund" cases. § 14.6, footnote 87 indicates that

2. Secondly, I shall review the facts also in light of the additional factors from *the Manuel for Complex Litigation*. These, I believe, give to this court necessary additional guidance in this type of case:

   a. *The size of the fund and the number of persons who actually receive monetary benefits:* Clearly this is a significant fund, $150,000,000, for which every class member shall receive a benefit. All shall be paid a minimum amount[21], and those that prove damages (which I presume to be the vast majority) should receive about one hundred eighty percent of their original loss.

   b. *Any agreements or understandings, including side agreements, between attorneys and their clients or other counsel involved in the litigation:* This is the contingency agreement as to attorneys' fees between Class Counsel and class representative noted above. I also note that Class Counsel has agreed to limit their request for attorneys' fees to forty percent of the common fund.

   c. *Any substantial objections to the settlement terms or fees requested by counsel for the class by class members (it is, however, a court's duty to scrutinize applications for fees, independently of any objection . . . .:* Clearly here there were no real objections[22], and one of the larger class members, Sampson Resources, filed an affidavit urging this court to approve the fees requested by class counsel.

   d. *The skill and efficiency of the attorneys; (Newberg, states this together with e, below, as "the amount of the benefit conferred upon the Class that could properly be*

---

multipliers from 5 to 10 have been used.

[21] This is either $5 or $10.

[22] See footnote 2 above.

- 10 -

*attributed to Class Counsel"[23]:* As noted above it is clear that this result could not have been reached except for the great skill, tenacity, and insight of Class counsel into both the merits of this litigation, and what was a reasonable damage amount. It is also clear that without such Class Counsel that the class would likely not have benefited, or as least that their benefit would have been much lesser.

First, until this action was filed apparently these matters had not been litigated by the class members since they began to accrue in 1983, i.e. when this alleged "double-dipping" began. Thus, the class members elected not to take the risks of litigating for these many years. Whether they did this because they did not perceive that they had a case, the returns were too small compared to the risks, BP's accounting system too complex or for some other reason; at this stage, aside from this action, it is very unlikely that the class would have received any return aside from this lawsuit.

Further, even after this action was filed, this litigation has been hard fought at least since its filing in 1997, and only settled at the very eve of trial. Even when the initial offers of settlement were tendered by BP, these were significantly less than that for which settlement was reached. The only way that the settlement became possible was via Class Counsel doing tremendous amounts of discovery, both of the merits – so that all were well aware of the strengths of their case, and of the damages – so that the amounts of loss could be accurately determined; and contesting a number of legal motions – to clarify the issues[24]. It was only at this late date after these issues became

---

[23] *Newberg on Class Actions*, Fourth Edition, § 14.7, p. 582.
[24] I presume the most significant single motion would be Class Counsel's Motion to Determine of the Contract Terms Were Ambiguous. This was , as were the remaining motions, hotly contested with both briefing, factual citations and oral arguments. In this, this Court's determination that the COPAS Accounting Procedure language was not ambiguous so as to possibly allow direct billing of the "Operation Centers" was quite critical.
However, even this would not have been possible without the voluminous amounts of discovery, and the

- 11 -

clearer, that, apparently, this matter was able to settle. This, again, was due to the skill and tenacity of Class counsel.

In summation, Class Counsel has conferred great benefits on this class for which they otherwise would not have otherwise received anything.

e.  *The complexity and duration of the litigation:* I will not reiterate these findings as they were made already above, but this was very difficult and complex litigation. Its life was about ten years prior to settlement, eight of which was after the filing of the litigation.

f.  *The risks of nonrecovery and nonpayment:* It is unclear whether this means prior to settlement or after, but probably after. Prior to settlement, the risks of nonrecovery, as noted above, were great. After settlement, there is virtually no risk of nonrecovery or nonpayment for any class member who has any damages since the full settlement had been paid.

g.  *The amount of time reasonably devoted to the case by counsel; even where fees are to be awarded on a percentage-of-fund basis, some judges cross-check the percentage by conducting a modified lodestar analysis:* This factor divides the amount of attorneys' fee requested ($60,000,000) by the charge for billable time presented by Class Counsel (approximately $6,900,000) for a multiplier of 8.7. *Newberg* lists this as high in the acceptable range[25]. Even so, due to the factors listed in my

---

prior legal motions related both to discovery and other legal issues. (One additional example was the Motion to Determine What Law was applicable to this case.) Each part is critical, pyramiding on the prior findings.

[25] In appropriate cases where Class Counsel has created a large common fund, such as in the present case, multipliers of 5 to 10 have been awarded. See, *Herbert Newberg*, Newberg on Class Actions (3rd), § 14.03 (emphasis added):

> Courts applying the lodestar approach will often use large multipliers or monetary enhancements of the time/rate (lodestar) calculation in order to reach fee award results comparable to percentage of recovery

consideration of the specifics of this case in h below, I find that due both to the difficulties of this case and the excellent settlement, this is acceptable for these particular facts.

h. *The awards in similar cases:*    It is here that I review similar awards in other cases. First, both *Newberg* and the *Manuel for Complex Litigation* set the benchmark for attorneys' fees at 20-33 percent of the common-fund, and much lesser in such mega-fund settlements as this.

However, as noted above, *Newberg* somewhat disavows the declining percent of recovery for larger settlements as not accurately reflecting the market. Reducing the percent of attorney's fees for larger settlements does not encourage counsel to take the risks to secure larger settlements as their rewards not much greater. As noted, such declining attorneys' fee percentage does not truly align the interests of Class Counsel and the Class.

Additionally, as noted by the experts presented by Class Counsel, the cited benchmarks appear to be more appropriate for securities litigation than this type of oil and gas litigation. These attorneys indicated that a contingent attorneys' fee of at least forty percent of the common fund is normative for this type of "working-interests'

---

fees. **Multiples ranging from <u>one to four frequently</u> are awarded in common fund cases when the lodestar method is applied. <u>A large common fund award way warrant an even larger multiple</u>.[21]**

[Fn. 21] *See e.g., In re Beverly Hills Fire Litig,* 639 F. Supp. 915 (ED Ky 1986) (personal injury class action; **multiplier of 5 for lead counsel for contingency and superior trial skill**); *Wilson v. Bank of Am Natl Trust & Savs Assn,* No. 643872 (Cal Sup Ct Aug 16, 1982) (illegal use of escrow funds by lender for profit; noncontingent hourly rates of up to $150/hour and a **multiplier of up to 10 times** the hourly rate). [End of Fn. 21]

owners v. well operator" class litigation. The table of cases listed by Class Counsel supports this conclusion[26].

I have highlighted both this litigation, and the only other two working-interests owner type cases of which I am aware. The rest, I believe, are royalty owner type cases. The first of these similar cases is *Cactus Petroleum v. Chesapeake*. In this case the attorney fee granted was clearly a lesser amount of the common fund (26.37

---

[26]

| Statistics maintained by the Coalition of Oklahoma Surface & Mineral Owners, Inc. | | | Percentage of Common Fund Awarded | | | |
|---|---|---|---|---|---|---|
| Case Name | Year Awarded | "Common Fund" | Total Award of Fees & Costs | Attorney Fee | Litigation Costs | Class Rep. Fee |
| *Fazekas v. Arco* | 2002 | $6,250,000 | **51.40%** | 35.00% | 10.00% | 6.40% |
| *Kouns v. ConocoPhillips* | 2004 | $4,300,000 | **46.04%** | 42.56% | 3.02% | 0.47% |
| *Rudman v Texaco* | 2001 | $25,000,000 | **44.27%** | 40.00% | 3.27% | 1.00% |
| *McIntoush v. Questar* | 2002 | $1,500,000 | **43.54%** | 40.00% | 3.20% | 0.33% |
| *Black Hawk v. Exxon* | 1999 | $9,000,000 | **42.87%** | 31.80% | 7.35% | 3.72% |
| *Brumley v. ConocoPhillips* | 2005 | $29,261,379 | **42.16%** | 37.91% | 3.12% | 1.13% |
| *Continental v. Conoco* | 2005 | $23,000,000 | **41.24%** | 40.00% | 0.74% | 0.50% |
| *Robertson/Taylor v. Sanguine* | 2003 | $13,250,606 | **41.08%** | 40.00% | 0.08% | 1.00% |
| *Lobo v. BP (As Requested)* | 2005 | $150,000,000 | **40.91%** | 40.00% | 0.50% | 0.50% |
| *Mayo v. Kaiser-Francis* | 2004 | $5,000,000 | **40.85%** | 40.00% | 0.85% | 0.00% |
| *Velma-Alma v. Chesapeake* | 2004 | $10,500,000 | **40.01%** | 34.95% | 3.05% | 2.00% |
| *Shockey v. Chevron* | 2005 | $60,000,000 | **37.77%** | 33.33% | 4.02% | 0.42% |
| *Duke v. Apache* | 2002 | $1,967,500 | **37.02%** | 33.33% | 3.69% | 0.00% |
| *Barnaby v. Marathon* | 2003 | $3,645,241 | **35.51%** | 33.33% | 1.85% | 0.33% |
| *Booth v. Cross Timbers* | 2003 | $2,500,000 | **35.33%** | 33.33% | 1.60% | 0.40% |
| *Kouns v. Kaiser-Francis* | 2003 | $3,100,000 | **34.69%** | 33.33% | 0.97% | 0.39% |
| *Kouns v. Louis Drefus* | 2003 | $2,778,125 | **34.56%** | 33.33% | 0.79% | 0.43% |
| *Bridenstine v. Kaiser-Francis* | 2001-04 | $109,974,437 | **33.89%** | 30.00% | 3.08% | 0.81% |
| *Duke v. Samson* | 1996 | $1,454,375 | **30.21%** | 30.00% | 0.21% | 0.00% |
| *Cactus Petrol. v. Chesapeake* | 2005 | $6,500,000 | **30.00%** | 26.37% | 3.29% | 0.35% |
| *Greghol v. Barrett* | 1996 | $180,000 | **30.00%** | 30.00% | Undetermined | 0.00% |

percent) than is requested here. However, this matter was settled within three months of the litigation being filed, and this amid controversy about whether the settlement was proper. The trial court found said settlement to be fair and reasonable, and approved the same. His order only indicates that class counsel requests this 26 percent fee. I do not find this comparable to the settlement and litigation at bar so as to consider it in determining this attorneys' fee.

The differences are clear, but I list only three[27]. Here the litigation was quite complex and had been pursued for a number of years (ten) so that this matter was on the eve of trial when settled. Further, there is no question here but that the settlement was fair, and there were no objectors to the same.

A more closely parallel case is *Continental v. Conoco* where the litigation had progressed for ten years. Settlement was in 2005, and the initial action filed in 1995[28]. The initial certification had been granted by the trial court, and then reversed on appeal. Then, I believe, after the second certification hearing it was settled. This required 7,500 attorney hours. The settlement was apparently quite favorable, giving class members 22 percent in addition to their claimed losses.

Also in *Continental*, the court approved an attorneys' fee of forty percent of the common fund, as requested[29]. I believe that this decision, is quite analogous to the facts at bar.

---

[27] The testimony indicated that Class Counsel there was not as tenacious as here. I make no comment on this.
[28] A second matter was apparently filed against Conoco in 2000. This was then consolidated with the earlier case.
[29] The lodestar multiplier there was 3.6.

Further, this, with the remaining decisions on this table and the testimony of the experts presented by Class Counsel clearly indicate that the requested forty percent of the common fund for this attorneys' fee is reasonable.

*Application to the Particular Facts at Bar:*

Even so, to reach a decision in this case, the authorities indicate that this amount must be determined ultimately by the specific facts of this case. These findings have generally been made via my determinations above based upon the *Burk* factors, and this court's findings on the factors within which I am now working from the *Manuel for Complex Litigation*. Thus, I will only comment generally on a few of these facts.

First, this litigation was quite complex and difficult, and it was in an advanced stage of litigation when it was settled. Secondly, the settlement reached was clearly quite advantageous for each of the class members even after the requested attorneys' fees are removed. Thirdly, the Class has not objected to said request for attorneys' fee[30] and one large class member urged this court to approve the same. Fourthly, Class Counsel clearly has taken great risks, and exercised considerable skill and tenacity over an extended length of time to achieve this result. Finally, as noted by Class Counsel's experts, the forty percent figure is reasonable and normal for this type of litigation – especially in light of the other factors listed herein. For all of this reasons, it appears that the requested attorneys' fee request of forty percent is reasonable, especially for this set of facts.

Based upon the Court's analysis of all of the factors above-listed, the Court finds a reasonable fee in this case to be forty percent of the settlement fund (or $60,000,000.00), plus accrued interest thereon is reasonable in this particular case.

---

[30] Save the one objector noted in footnote 11 who failed to appear and whose comments indicated that he did not understand this case.

- 16 -

**Expert Witness Fees, Litigation Expenses and Class Representatives Fee:**

The Court, having reviewed the accounting records which detail the expert witness fees and litigation expenses incurred in pursuit of class claims, and having heard testimony of Class Counsel regarding the necessity of such expenditures in preparation of the case, finds that reasonable expert witness fees and litigation expenses were incurred in the amount of $621,760.69.

The Court finds the Class Representative has made substantial time and labor commitments to the Class, and has incurred both legal and financial risks while pursuing this case on behalf of the Class, all of which resulted in obtaining an excellent benefit for the Class. The granting of a Class Representative fee is based upon the same equitable considerations discussed above which related to a party's efforts in the creation of a common fund for the mutual benefit of a class. Court awards to Class Representatives of 1% of the common fund are typical in these types of actions, with some awards approaching 5% of the common fund. In this action, Class Counsel has recommended and requested a Class Representative's fee of one-half of one percent (0.5 %) of the Settlement Fund. The Court finds that compensation to the Class Representative in the amount of one-half of one percent (0.5 %) of the Settlement Fund is fair and reasonable compensation for Lobo's services to the Class.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED** that (1) Class Counsel are awarded attorney fees in the amount of 40% of the Common Fund; (2) Class Counsel are awarded reimbursement of litigation expenses in the amount of $621,760.69; and (3) Class Representative is awarded fees in the amount of one-half of one percent (0.5 %) of the Settlement Fund. The Court also finds that said amounts are payable to Class Counsel and the

- 17 -

Class Representative "upon the Settlement becoming Final and Unappealable, or on January 2, 2006, whichever is later," as set forth in the Settlement Administration Plan.

IT IS SO ORDERED this _____ day of December, 2005.

_____
Gerald Riffe
Judge of the District Court

## Certificate of Service

This is to certify that on the _____ day of December, 2005, a true and correct copy of the foregoing document was delivered via e-mail to the too the following:

| | |
|---|---|
| David Petty | Robert J. Kee |
| Richard C. Godfrey | Alan DeVore |
| Matthew Regan | Terry Stowers |
| Jeffrey S. Powell | Daniel Payton |

This is to certify that on the _____ day of December, 2005, a true and correct copy of the foregoing document was mailed, postage prepaid, to:

David K. Petty
301 West 5th Street
P. O. Box 1187
Guymon, OK 73942-1187

Allan DeVore
Jane Good Rowe
Marjorie Ramana
The DeVore Law Firm
A Professional Corporation
1318 North Robinson
Oklahoma City, OK 73103

Richard C. Godfrey
Jeffrey S. Powell
Matthew T. Regan
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Douglas E. Burns
Daniel Payton
Terry Stowers
Burns & Stowers P.C.
1300 W. Lindsey
Norman, OK 73069

Robert J. Kee
Trippet & Kee
A Professional LLC
P.O. Box 728
Beaver, Oklahoma 73932



Sharon Raven, Beaver County Court Clerk
By:_____
Deputy

- 18 -

# EXHIBIT 4

*1001967197*

**IN THE DISTRICT COURT OF GARFIELD COUNTY**
**STATE OF OKLAHOMA**

CONTINENTAL RESOURCES, INC., and )
BUFFALO ROYALTY CORPORATION, )
)
Plaintiffs, )
)
and )
)
FARRAR OIL COMPANY, )
)
Plaintiff, Intervenor, )
)
v. )  Case No. CJ-95-739
)
CONOCO INC., and )
E.I. DUPONT DeNEMOURS & COMPANY, )
)
Defendants. )

**CONSOLIDATED WITH**

FARRAR OIL COMPANY, )
)
Plaintiff, )
)
vs. )  Case No. CJ-2000-356
)
CONOCO INC. and E.I. DUPONT )
DeNEMOURS & CO., )
)
Defendants. )

FILED
GARFIELD COUNTY, OKLA.

AUG 2 2 2005

SHARON MELROSE
COURT CLERK

BY
DEPUTY COURT CLERK

**ORDER ON MOTION FOR ATTORNEY FEES, LITIGATION
EXPENSES, AND CLASS REPRESENTATIVES FEE**

This matter came on for hearing on the 17th day of August, 2005, on Class

Representatives' and Class Counsel's motion for attorney fees, litigation expenses and Class

Representatives fee. All named parties were present and represented by counsel. Also appearing

were Robert Bishop, Stuart Yoes, and Michael Bigheart,, all three as attorneys for the sole

objector to the motion, Diane Mason ("Ms. Mason"). After reviewing the motion and all related pleadings, having reviewed the evidence submitted, having heard the testimony and arguments presented, being fully advised in the premises, and having announced its ruling in open court on the 17th day of August, 2005, **THE COURT FINDS AND ORDERS AS FOLLOWS**:

**Notice and Objections:**

1.    Notice of this hearing was properly mailed by ConocoPhillips to the Putative Class Members with known valid mailing addresses and was published as required by this Court's previous order (*see* Report concerning notice previously filed with the Court).

The Notice provided:

> Class Counsel has requested that the Court award Class Counsel an attorney's fee of 40% of the Settlement Proceeds; award the Class Representatives a combined fee of $115,000.00 to be divided among them; and award reimbursement to Class Counsel for expert and consulting fees and litigation expenses actually incurred in an amount not to exceed $500,000.00. If the Court approves these requests for fees and expenses, said amounts will be deducted from the Settlement Proceeds before distribution to the Class. In addition, the Settlement Agreement requires certain costs of notice, printing and mailing associated with the implementation of the terms of the Settlement Agreement be paid by and deducted from the Settlement Proceeds prior to any other disposition of the proceeds.
>
>                 \*    \*    \*
>
> You May Remain a Member of the Settlement Class, but Object to the Proposed Class Settlement or to Class Counsel's Request for Attorney's Fees, Class Representatives' Award, Expert and Consulting Expenses and other Litigation Expenses.
>
> Only a person or entity who remains a member of the Settlement Class shall have the right to object to the proposed settlement with ConocoPhillips and/or the requested fees and expenses as set forth above. Persons who desire to object to the Settlement or the fees and expenses must file a written statement with the Garfield County Court Clerk, P.O. Box 1664 Enid, Oklahoma 73942-1081, and provide a copy of same to Class

Counsel, Allan DeVore, 1318 N. Robinson, Oklahoma City, OK 73102, and counsel for ConocoPhillips, Gary Davis, Crowe and Dunlevy, 20 North Broadway, Suite 1800, Oklahoma City, Oklahoma 73102, on or before August 1, 2005. The written statement must contain:

(1) A heading referring to Case Nos. CJ-95-739 and CJ-2000-356 and to the District Court of Garfield County, Oklahoma;

(2) A statement as to whether the objector intends to appear at the Settlement Fairness Hearing, either in person or through counsel, and, if through counsel, identifying counsel by name, address and telephone number;

(3) A detailed statement of the specific legal and factual basis for each and every objection;

(4) A list of any witnesses the objector may call at the Settlement Fairness Hearing, together with a brief summary of each witness's expected testimony;

(5) A list of and copies of any exhibits which the objector may seek to use at the Settlement Fairness Hearing;

(6) A list of any legal authority the objector may present at the Settlement Fairness Hearing;

(7) The objector's current address;

(8) The objector's current telephone number;

(9) The objector's signature executed before a Notary Public; and,

(10) Identification of the objector's interest in Class Wells by identifying each Class Well (by Well name, ConocoPhillips well number, Section, Township and Range).

The Court previously approved such notice and now finds that the notice to the Class of this hearing is proper and sufficient under 12 Okla. Stat. § 2023 (E), the Due Process Clause of the United States Constitution and the Due Process Clause of the Oklahoma Constitution.

2. The Court notes that only one Putative Class Member, Ms. Mason, has filed an objection to the motion for attorney fees, litigation expenses and Class Representatives award. The Court notes that Ms. Mason's total estimated aggregate claim is $16.33 (i.e., approximately 0.0000007 of the settlement fund) and her share of the requested fees and expenses would be $6.73 (The Court notes that each Class Member will receive an approximate 22% increase in their net distribution over their claim amount as a result of

the Putative Class Members who opted out of the Class Settlement.) Although the Court has considered the objection of Ms. Mason, filed by, and presented to the Court by her attorneys, the Court finds that such objection is without merit and that the participation by Ms. Mason, or Ms. Mason's attorneys, in this case neither aided the Court in its determination of the proper fees and expenses to be awarded nor in any way was a benefit to the Class or added any value to the Common Fund.

The Settlement Agreement approved by the Court, provides that "[i]ndividual objections to the award of Class Fees and Expenses by a Settlement Class Member will be severed for separate review and will not affect the distribution to other Settlement Class Members of their share of the Settlement Fund." Settlement Agreement, ¶5.5. Furthermore, the Notice to the Class approved by the Court provided that "[i]f the Court determines that the settlement and the awards of fees and expenses are fair to the Settlement Class as a whole, individual objections may be severed for separate review." Therefore, the Court finds that Ms. Mason's objection to the award of fees and expenses is hereby severed for possible separate appellate review and any appeal of this order by Ms. Mason will not affect the distribution to other Settlement Class Members of their share of the Settlement Fund

**Class Counsel's Attorney Fees:**

3.     Class Counsel have made substantial time and labor commitments which have now inured to the financial benefit of the Plaintiff Class and which have resulted in the creation of a Common Fund of $23,000,000.00, plus accrued interest.[1]

---

[1] The Common Fund Doctrine is well recognized by the Oklahoma Supreme Court (as well as the United States Supreme Court). If the plaintiff and/or his counsel have **created, preserved, protected, or increased a common fund (or common property), or have brought into court**, a fund in which others may share with him, a court, in

4.     Under the Common Fund Doctrine, and in particular in a "class action" (which is one type of action that can create a common fund), the Court has the authority to extend contingency fee agreements entered into between the Class Representative and Class Counsel to the entire Class.

> **Contingent fee agreements may be appropriate in class action cases. . . .** Many courts have held . . . that once a class is certified and a decision on the merits is had, **the trial court may decide whether to approve the contingent fee agreement, and whether to extend the contingent arrangement to all class members.** [Emphasis added.]

*Sholer v. State of Oklahoma*, 1999 OK CIV APP 100, ¶¶ 13-14, 990 P.2d 294.

5.     The Court finds that Class Counsel and the Class Representatives entered into contingency fee agreements whereby Class Counsel agreed to prosecute this action in exchange for receiving of fee of 40% of the gross recovery for the Class. The Court further recognizes the importance of contingency fees in our justice system, and in particular in class actions.

---

the exercise of equitable jurisdiction, may order the allowance of attorney fees and litigation expenses to counsel.

> **The conceptual underpinnings for the chancery common-fund doctrine teach us that an equitable charge may be impressed in favor of its creator *when the fund is within the direct control of the court.*** The "pre-existing fund" must be immediately subject to counsel-fee assessment, and the benefits conferred have to be traceable with some accuracy to each beneficiary. [Footnotes and citations omitted. Emphasis added.]

*Oklahoma Tax Com'n v. Ricks* 1994 OK 115, ¶7-8, 885 P.2d 1336.

> It is well settled that ordinarily "a court in the exercise of equitable jurisdiction, will, in its discretion, order an allowance of counsel fees, or, as it is sometimes said, allow costs as between solicitor and client, to a complainant (and sometimes directly to the attorney) who at his own expense has maintained a successful suit for the **preservation, protection, or increase of a common fund, or of common property, or who has created at his own expense, or brought into court, a fund in which others may share** with him." [Citations omitted. Emphasis added.]

*State ex rel. Board of Com'rs of Harmon Co. v. OTC*, 1944 OK 250, ¶4 151 P.2d 797; *see also, Kellough v. Taylor,* 1941 OK 320, 119 P.2d 556.

> Although contingent fee contracts are subject to restrictions . . . such agreements have generally been enforced unless the contract is unreasonable. **Often contingent fee agreements are the only means possible for litigants to receive legal services ---- contingent fees are still the poor man's key to the courthouse door. The contingent fee system allows persons who could not otherwise afford to assert their claims to have their day in Court.** [Emphasis added. Footnotes omitted.]

*Sneed v. Sneed*, 1984 OK 22, ¶3, 681 P.2d 754.

6.      In class actions, the percentage fee or contingency fee has important advantages to the Class in that it provides self-regulating incentives for efficiency. First, it compensates counsel on the real value of the services provided (the amount of benefit conferred). Second, the percentage approach awards efficiency. Not only is there no reward for inefficiency, there is a penalty due to the fact that, if the work is unnecessary, the lawyer has wasted his time. Third, the percentage method encourages counsel to go the extra mile. Counsel has an incentive to push beyond a "good" recovery to an "excellent" recovery. The Court certainly considers the existing Common Fund to be an excellent recovery to the Class Members. Thus, under this percentage approach, the interests of the Class and Class Counsel are consistent and aligned.

7.      The Court finds that the 40% contingency fee percentage contained in the agreement between Class Counsel and the Class Representatives is within the typical range of contingency fee percentages for oil and gas class action litigation approved in this State.

8.      The Court finds: (a) that the 40% contingency fee agreement between Class Counsel and the Class Representatives is fair and reasonable and should be, and is hereby, approved and extended to the members of the Class and (b) that based upon the additional analysis described below, an attorney fee award of 40% of the Settlement Proceeds (as defined in

Compromise and Settlement Agreement), together with accrued interest thereon, is a fair and reasonable amount of compensation to Class Counsel for establishing the Common Fund.

9.   The Court considered the basic guidelines established by the Oklahoma Supreme Court set forth in *State ex rel. Burk v. City of Oklahoma City*, 1979 OK 115, 598 P.2d 659.[2]

10.   The Court has reviewed the detailed time records submitted by Class Counsel and finds that the time reflected in the record (in excess of 7512 hours) was reasonably expended for the benefit of the Class. The Court has also reviewed the hourly rates of Class Counsel as set forth in the record and finds them to be reasonable and within the acceptable range in the legal community for this type of legal services. Thus, the Court further finds the base hourly fees (hours X rates), prior to consideration of the enhancement factors under a "lodestar" approach, in this case to be in excess of $2,521,000.00. (The Court notes, however, that Class Counsel has expended substantial additional time during July and August of 2005, after the time frame of the itemized billing schedule, and will be expending substantial time monitoring the distribution of the Settlement Fund, thus substantially increasing the base hourly fees.)

11.   In *Burk*, the Supreme Court enunciated twelve factors to be considered by the District Court in fixing fees under the lodestar approach.

A.   Time and labor required. Counsel have made substantial time and labor commitments which have now inured to the financial benefit of the Plaintiff Class.

---

[2] The Court recognizes that *Burk* was not a class action and that the equitable fund created by the attorneys' effort benefited only the City of Oklahoma City. The attorneys' fee awarded in that case amounted to 100% of the equitable fund currently available and all of the benefit due the City for several years into the future.

-7-

B. **The novelty and difficulty of the question.** Class certification questions are known to be vigorously contested. Furthermore, the oil and gas accounting issues involved in this case are also very complex.

C. **The skill requisite to perform the legal services properly.** The unique nature of this case, coupled with the issues, mandated that the Class be represented by highly skilled counsel. To prosecute these claims against a large corporate defendant represented by highly capable defense counsel with extensive resources necessitated assembling a team of Class Counsel skilled in oil and gas litigation, as well as details of complex litigation. Counsels' qualifications, skills and experience are well known throughout the oil and gas legal community. Class Counsel are certainly highly skilled and capable counsel.

D. **The preclusion of other employment.** Class Counsel are engaged in the on-going practice of law. Had Class Counsel not committed their resources to this case, Class Counsel could have accepted other matters, but did not. The prosecution of this case has very substantially reduced the Class Counsel's opportunity for employment in other matters.

E. **The customary fee.** These types of cases (oil and gas class action cases, are handled on a contingent fee.) The fee percentage in these types of cases is typically 40% of the gross fund.

F. **Whether the fee is fixed or contingent.** Class Counsel entered into contingency fee agreements with the Class Representatives that provides for attorneys' fee of 40% of the gross consideration received as discussed in detail above. Counsel for the Class have represented the Class with vigor and without prior compensation of any kind for their time.

G. **Time limitations imposed by client or circumstances.** Numerous time limitations were imposed on Class Counsel throughout the course of the proceedings, beginning with time constraints imposed by statute for the filing of a case for punitive damages before the new statute restricting the amount of such damages went into effect the day following the filing of the case. Many subsequent time constraints were imposed on Class Counsel. This Court and the appellate courts imposed time limitations through case scheduling over the last ten years that forced Class Counsel to perform services of great magnitude by certain dates. The schedules of the courts, witnesses and clients were also accommodated on a regular basis by Class Counsel. A case of the size and complexity existing here required the commitment of a large percentage of the total time and resources of the firms of Class Counsel and worked significant hardships on them over the course of a decade or more. The circumstances of the case required the litigation to be vigorously pursued if an excellent

- 8 -

recovery through settlement was to be achieved. Class Counsel, in fact, did vigorously prosecute the case and obtained excellent results for the Class.

H. <u>The amount involved and the results obtained.</u> There can be no doubt that at the outset, Plaintiffs' Counsel had no assurance of any recovery. When the Continental Resources Class Action was filed, there had never been another class action case based on similar facts anywhere in the country to the Court's knowledge. Considering all involved, the amount and terms of the settlement reflect the quality of the result and the outstanding benefits provided by Class Counsel to the Class. The Court considers this settlement to be an excellent result for the Class.

I. <u>Experience, reputation and ability of counsel.</u> Class Counsel's qualifications, skill, experience, ability and reputation are well known throughout the oil and gas and complex litigation legal communities. Class Counsel are exceptional litigators.

J. <u>The undesirability of the case.</u> Compared to most civil, contingent litigation attracting counsel to represent plaintiffs, this litigation clearly fits the initially "undesirable" test. Not many law firms would be willing, or able, to risk investing the time and expenses necessary to prosecute this litigation. The Defendants were well-financed, and well represented. Certainly, the possibility of a recovery was a risky matter.

K. <u>Nature and length of the professional relationship with the client.</u> Class Counsel have various long-term relationships with various Class Members.

L. <u>Awards in similar cases.</u> The awards in similar cases were discussed in detail in Class Counsel's motion, exhibits and testimony. The Court incorporates said discussion herein by reference. The Court finds that a 40% fee is customary in these types of cases.

12. In 1980, the Oklahoma Supreme Court followed and modified *Burk, supra,* to further instruct District Courts that counsel fees cannot be fairly awarded on the basis of time alone, but other factors, particularly the litigation risk factor, must be considered. See *Oliver's Sportcenter, Inc. vs. National Standard Ins. Co.,* 1980 OK 120, 615 P.2d 291.

13.     Based upon the Court's analysis of the *Burk* factors, the Court finds a reasonable fee in this case to be $9,200,000.00, plus accrued interest thereon (which represents 40% of the Settlement Proceeds, and a total multiplier of the base hourly fees of approximately 3.6 under a lodestar approach which is well within the range of reasonableness).[3]

IT IS THEREFORE ORDERED that Class Counsel be, and hereby are, awarded an attorney fee of 40% of the Settlement Proceeds, plus accrued interest thereon.

## Expert Witness Fees, Litigation Expenses and Class Representatives Fee:

1.     The Court, having reviewed the accounting records which detail the expert witness fees and litigation expenses incurred in pursuit of class claims, and having heard testimony of Class Counsel regarding the necessity of such expenditures in preparation of the case, finds that reasonable expert witness fees and litigation expenses were incurred in the amount of $170,780.59.

2.     The Court finds the Class Representatives have made substantial time and labor commitments to the Class, and have incurred serious legal and financial risks while pursuing this case on behalf of the Class, all of which resulted in obtaining an excellent

---

[3] In appropriate cases where Class Counsel have created a large common fund, such as in the present case, multipliers of even 5 to 10 have been awarded. See, *Herbert Newberg*, Newberg on Class Actions (3rd), § 14.03 (emphasis added):

> Courts applying the lodestar approach will often use large multipliers or monetary enhancements of the time/rate (lodestar) calculation in order to reach fee award results comparable to percentage of recovery fees. **Multiples ranging from one to four frequently are awarded in common fund cases when the lodestar method is applied. A large common fund award way warrant an even larger multiple.**[21]

> [Fn. 21] *See e.g., In re Beverly Hills Fire Litig*, 639 F. Supp. 915 (ED Ky 1986) (personal injury class action; **multiplier of 5 for lead counsel for contingency and superior trial skill**); *Wilson v. Bank of Am Natl Trust & Savs Assn*, No. 643872 (Cal Sup Ct Aug 16, 1982) (illegal use of escrow funds by lender for profit; noncontingent hourly rates of up to $150/hour and a **multiplier of up to 10 times** the hourly rate). [End of Fn. 21]

- 10 -

benefit for the Class. The granting of a Class Representative fee is based upon the same equitable considerations discussed above with related to a party's efforts in the creation of a common fund for the mutual benefit of a class. Court awards to Class Representatives of 1% of the common fund are typical in these types of actions, with some awards approaching 5% of the common fund. In this action, Class Counsel has recommended and requested a Class Representatives' fee of $115,000.00 (one-half of one percent (0.5 %) of the Settlement Proceeds). The Court finds that compensation to the Class Representatives in the amount of $115,000.00 (to be divided among the three Class Representatives) is fair and reasonable compensation for their services to the Class.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED** that (1) Class Counsel are awarded attorney fees in the amount of 40% of the Common Fund (i.e., $9,200,000.00 plus accrued and accruing interest thereon); (2) Class Counsel are awarded reimbursement of litigation expenses in the amount of $170,780.59; and (3) Class Representatives are awarded fees in the amount of $115,000.00.

IT IS SO ORDERED this 22nd day of August, 2005.

Richard Perry
Judge of the District Court

## CERTIFICATE OF MAILING

This is to certify that on the 22nd day of August, 2005, a true and correct file-stamped copy of the above and foregoing *Order on Motion for Attorney Fees, Litigation Expenses and Class Representatives Fee* was mailed, postage prepaid, to:

Gary Davis, Esq.
Mark Christiansen, Esq.
Paul Trimble, Esq.
Crowe & Dunlevy, P.C.
20 N. Broadway, Suite 1800
Oklahoma City, OK 73102

Bradley A. Gungoll, Esq.
Gungoll, Jackson, Collins & Box
323 West Broadway Avenue
P. O. Box 1549
Enid, OK 73702-1549

Michael C. Bigheart, Esq.
MITCHELL & DECLERK, P.L.L.C.
202 W. Broadway
Enid, OK 73701

Robert Whitsitt Bishop
Bishop & Associates, PSC
6520 Glenridge Park Place, Ste. 6
Louisville, KY 40222-3412

Stuart Cooper Yoes
The Yoes Law Firm, LLP
3535 Calder Ave. #235
Beaumont, TX 77706

Tom Newby
Elliott, Enabnit, Newby, Ezzell
  & Overstreet, PLLC
114 East Broadway, Suite 500
P. O. Box 5589
Enid, OK 73702-5589

Allan DeVore
Jane Good Rowe
Jacquelyn Thompson
The DeVore Law Firm, P.C.
1318 North Robinson
Oklahoma City, OK 73103

Tom L. Newby

# EXHIBIT 5

# IN THE DISTRICT COURT OF CADDO COUNTY
## STATE OF OKLAHOMA

ALTHA M. ROBERTSON, INDIVIDUALLY AND AS )
TRUSTEE OF THE DONALD C. ROBERTSON )
FAMILY TRUST DATED JANUARY 4, 1994, AND )
TAYLOR MANAGEMENT, L.L.C. )
IN ITS OWN CAPACITY AND AS SURVIVING )
ENTITY OF THE TAYLOR ESTATES, AN )
OKLAHOMA PARTNERSHIP, )
)
FOR THEMSELVES AND ALL OTHERS )
SIMILARLY SITUATED, )
)
PLAINTIFFS, )
)
VS. )    CASE NO. CJ-02-150
)
SANGUINE, LTD., ET AL.; )
)
DEFENDANTS. )

STATE OF OKLAHOMA
CADDO CO.
F I L E D
JUL 1 1 2003
At_____O'Clock_____M.
JUDY CAIN, Court Clerk
By_____Deputy

## ORDER ON CLASS COUNSELS' MOTION FOR ATTORNEYS' FEE, REPRESENTATIVES' FEE AND REIMBURSEMENT OF LITIGATION EXPENSES FROM THE COMMON FUND

This matter comes on this 11TH day of July, 2003, on Class Counsels' Motions for Attorneys' Fee, Representatives' Fee and Reimbursement of Litigation Expenses from the Common Fund. All parties were present and represented by counsel.

After reviewing the motion and all related pleadings, having heard the testimony and arguments presented, and being fully advised in the premises, THE COURT FINDS AND ORDERS AS FOLLOWS:

1.  Notice of this hearing, and Class Counsels' requested fees and costs, was properly mailed by Sanguine to Class Members with known valid mailing addresses and was published as required by this Court's previous order (see Sanguine's reports concerning notice previously filed with the Court).

The Notice provided:

> Class Counsel has requested that the Court: 1) award Class Counsel
> an attorney's fee of 40% of the Settlement Proceeds, plus accrued
> interest; 2) award the Class Representatives a fee of 1% of the
> Settlement Proceeds, plus accrued interest; and 3) reimburse Class
> Counsel for litigation expenses not to exceed $20,000. If the Court
> approves this request, said amounts will be deducted before
> distribution to the Class. Assuming the Court grants these requested
> fees and litigation expenses, the net distribution to the Class will be
> approx. $7,797,900, which represents the equivalent net recovery to
> the Class Members of 100% of the deductions made from their
> royalties (approx. $5,641,500) plus approx. $2,566,400 in interest,
> totaling approx. 140% of the principal damage of the Class, not
> including the value of Sanguine's agreement not to make future
> Gathering and Marketing Fee charges.
> If you object to the requested fees and expense reimbursement, you
> must file a written statement with the Court and provide a copy of
> same to Class Counsel at least ten (10) days prior to the Fairness
> Hearing containing the information set forth in Paragraph VII (B)
> below.

The Court previously approved such notice and now finds that the notice to the class of this

hearing is proper and sufficient under 12 O.S. § 2023 (E) and the Due Process Clause of the

United States Constitution.

2.   This Court gave preliminary approval to these requested fees and expenses after the requests

were announced to the Court by counsel and after the filing of the motion and supporting

brief with the Court Clerk of Caddo County.

**Class Representatives' Fee:**

3.   No objections were received as to the proposed 1% Class Representatives' fee. The

requested 1% fee to the Class Representatives should be, and is hereby approved by the

Court as a fair and reasonable compensation for their services to the Class.

- 2 -

**IT IS THEREFORE ORDERED** that on the date that this order becomes Final and Unappealable, as that term is defined in the Settlement Agreement, Sanguine shall wire transfer from the Settlement Distribution Account to Burns & Stowers, P.C.'s Client Trust Account (for further distribution by Class Counsel to the Class Representatives) 1% of balance of said Settlement Distribution Account on that date (plus estimated interest accrued on said amount to that date)[1] as a Class Representatives Fee.

## Litigation Expenses:

4.    No objections were received as to the proposed reimbursement of Litigation Expenses not to exceed $20,000. Class Counsel has advised the Court that actual Litigation Expenses are slightly more than $10,000. The requested reimbursement of $10,000 in Litigation Expenses should be, and is hereby approved by the Court as fair and reasonably necessary expenses incurred for the benefit of the Class.

**IT IS THEREFORE ORDERED** that on the date this order becomes Final and Unappealable, as that term is defined in the Settlement Agreement, Sanguine shall wire transfer from the Settlement Distribution Account to Burns & Stowers, P.C.'s Client Trust Account (for further distribution to Class Counsel) $10,000.00 as reimbursement of Litigation Expenses.

## Attorneys' Fee:

5.    The Court notes that total of fourteen objections, out of approximately 6,000 notices mailed out, were received related to the amount of the requested fees by Class Counsel (in other words, approximately 99.8% of the Class Members did not express an objection to the

---

[1]Said amount will be $132,506.06 plus 1% of the accrued interest on the Settlement Proceeds.

- 3 -

requested fees). The Court has reviewed and considered these objections as part of the Court's process of determining a reasonable attorneys' fee.

6.  Class Counsel request an award of a 40% attorneys' fee from the gross settlement, which includes the accrued interest on said proceeds (hereinafter "Common Fund").[2] Therefore, Class Counsel seek an attorneys' fee of $5,300,242.31 plus 40% of the accrued interest through the date this order becomes Final and Unappealable.

7.  Class Counsel have made substantial time and labor commitments which have now inured to the financial benefit of the Plaintiff Class and have resulted in the Common Fund.

8.  An attorneys' fee award of 40% of the Common Fund is a fair and reasonable amount of compensation to Class Counsel for establishing the Common Fund. The percentage fee has important advantages to the Class in that it provides self-regulating incentives for efficiency. First, it compensates counsel on the real value of the services provided (the amount of benefit conferred). Second, the percentage approach awards efficiency. Not only is there no reward for inefficiency, there is a penalty due to the fact that, if the work is unnecessary, the lawyer has wasted his time. Third, the percentage method encourages counsel to go the extra mile. Counsel has an incentive to push beyond a "good" recovery to an "excellent" recovery. The Court certainly considers the existing Common Fund to be an excellent recovery to the Class Members. Thus, under this percentage approach, the interests of the Class and Class Counsel are consistent and aligned.

---

[2] The "Common Fund" shall equal the gross balance of the Settlement Proceeds, as that term is defined in the Settlement Agreement ($13,250,605.78), plus all accrued interest of the Settlement Distribution Account until the date that the requested fees herein are paid out of the account. The Court notes that Class Counsel and Class Representatives are not seeking a fee on the future value of the Sanguine Defendants' agreement that no fee will be deducted in the future. The value of Sanguine's agreement not to charge fees in the future has an estimated $3,000,000 value to the Class.

- 4 -

9. In determining what a "reasonable" fee should be, Oklahoma Courts routinely approve a percentage of the common fund as an appropriate measure of a reasonable attorney's fee. The fee percentage of the common fund is typically 30% to 40% of the gross fund. (*See* authority cited by Class Counsel in their motion, which is incorporated herein by reference.) The Court notes that on the average the net recovery to Class Members, after the requested fees and expenses are paid, will be approximately 140% of the amount actually deducted from their royalties. The Court finds this recovery certainly is on the "excellent" side of the scale and justifies the Court's consideration of the 40% requested fee.

10. The Court considered the basic guidelines established by the Oklahoma Supreme Court, to be followed by District Courts, in the fixing the reasonableness of fees. *State ex rel. Burk vs. City of Oklahoma City*, 1979 OK 115, 598 P.2d 659.

11. The Court has reviewed the detailed time records submitted by Class Counsel and finds that said time was reasonably expended for the benefit of the Class.[3] The Court has also reviewed the hourly rates of Class Counsel and finds them to be reasonable and within the acceptable range in the local legal community for this type of legal services. The Court further finds the lodestar (hours X rates) in this case is extremely low as a result of Class Counsel's efficiencies and when considering the excellent results obtained in this case.

12. Beyond the lodestar, in *Burk*, the Supreme Court enunciated twelve factors to be considered by the District Court in fixing fees.

---

[3] In fact, the Court commends Class Counsel for the efficiency reflected in their time records and the efficient use of the Court's resources.

- 5 -

A. **Time and labor required.** Counsel have made substantial time and labor commitments which have now inured to the financial benefit of the Plaintiff Class.

B. **The novelty and difficulty of the question.** Class certification questions are known to be vigorously contested. Furthermore, the oil and gas accounting issues involved in this case are also very complex.

C. **The skill requisite to perform the legal services properly.** The unique nature of this case, coupled with the issues, mandated that the Class be represented by highly skilled counsel. To prosecute these claims against a large corporate defendant represented by highly capable defense counsel with extensive resources, necessitated assembling a team of Class Counsel skilled in oil and gas litigation, as well as details of complex litigation. Counsels' qualifications, skills and experience is well known throughout the oil and gas legal community. Class Counsel are certainly highly skilled and capable counsel.

D. **The preclusion of other employment.** Class Counsel are engaged in the on-going practice of law. Had Class Counsel not committed their resources to this case, Class Counsel could have accepted other matters, but did not. The prosecution of this case has very substantially reduced the Class Counsel's opportunity for employment in other matters.

E. **The customary fee.** The fee percentage of a common fund is typically 30% to 40% of the gross fund.

F. **Whether the fee is fixed or contingent.** Class Counsel entered into contingency fee agreements with the Class Representative that provides for an attorneys' fee of 40% of the gross consideration received. Pre-arranged fees, whether fixed or contingent, are not binding on the Court, but can be helpful in setting court awarded fees in a class action. Counsel for the Class has represented the Class with vigor and without prior compensation of any kind for their time.

G. **Time limitations imposed by client or circumstances.** While this Litigation has not involved any client-imposed time limitations, the circumstances of the case required the litigation to be vigorously pursued if an excellent recovery through settlement was to be achieved. Class Counsel, in fact, did vigorously prosecute the case and obtained excellent results for the Class.

H. **The amount involved and the results obtained.** Clearly, there can be no doubt that at the outset, Plaintiffs' Counsel had no assurance of any recovery. The

- 6 -

Marketing Fee Settlement Proceeds represent 100% of the Marketing Fee deducted from the royalty owners (approximately $851,563) plus 12% interest on said Marketing Fee deductions (approximately $409,043). The Gathering Fee Settlement Proceeds represent 100% of the Gathering Fee deducted from the royalty owners (approximately $4,790,000) plus approx. $7,200,000 interest on said Gathering Fee deductions. Assuming the Court grants these requested fees and litigation expenses, the net distribution to the Class will be approximately $7,797,900, which represents the equivalent net recovery to the Class Members of 100% of the deductions made from their royalties (approximately $5,641,500) plus approximately $2,566,400 in interest, totaling approximately 140% of the principal damage of the Class, not including the value of Sanguine's agreement not to make future Gathering and Marketing Fee charges. The estimated value of this agreement not to make deductions in the future is in excess of $3,000,000. Class counsel are not seeking fees on this benefit. However, this additional benefit would lower the effective requested fee rate from 40% of the cash consideration to 32.6% of the total settlement consideration. Considering all involved, the benefit recovered is indicative of an extremely outstanding result. As demonstrated above, but for the efforts of Counsel, no Common Fund would exist.

I. Experience, reputation and ability of counsel. Counsels' qualifications, skill, experience, ability and reputation are well known throughout the oil and gas and complex litigation legal communities. Class Counsel are exceptional litigators.

J. The undesirability of the case. Compared to most civil, contingent litigation attracting counsel to represent Plaintiffs, this Litigation clearly fits the initially "undesirable" test. Not many law firms would be willing to risk investing the time and expenses necessary to prosecute this Litigation. The Sanguine Defendants are well-financed, and are well represented. Certainly, the possibility of a recovery was a risky matter.

K. Nature and length of the professional relationship with the client. Kerry Caywood has an ongoing attorney/client relationship with Ms. Robertson. Burns & Stowers, P.C. have an ongoing attorney/client relationship with Taylor Management, L.L.C.

L. Awards in similar cases. The awards in similar cases was discussed in detail in Class Counsels' motion. The Court incorporates said discussion herein by reference. The Court finds that a 40% fee is reasonable.

- 7 -

13. In 1980, the Oklahoma Supreme Court followed and modified *Burk, supra,* to further instruct District Courts that counsel fees cannot be fairly awarded on the basis of time alone, but other factors, particularly the litigation risk factor, must be considered. See *Oliver's Sportcenter, Inc. vs. National Standard Ins. Co.,* 1980 OK 120, 615 P.2d 291. Certainly, the "litigation risk factor" and the investments of time and money required to create the Common Fund justify the requested fee.

14. The Court finds that attorneys' fees of 40% of the Common Fund created by the efforts of counsel for the class are appropriate, and should be, and are hereby, awarded.

**IT IS THEREFORE ORDERED** that on the date this order becomes Final and Unappealable, as that term is defined in the Settlement Agreement, Sanguine shall wire transfer from the Settlement Distribution Account to Burns & Stowers, P.C.'s Client Trust Account (for further distribution to Class Counsel) 40% of the balance of said Settlement Distribution Account on that date (plus estimated interest accrued on said amount to that date)[4] as reasonable attorneys' fees.

IT IS SO ORDERED this 11th day of July, 2003

_____
DISTRICT JUDGE

---

[4]Said amount will be $5,300,242.31 plus 40% of the accrued interest on the Settlement Proceeds.

- 8 -

Approved as to Form:

Douglas E. Burns, OBA #1342
Terry L. Stowers, OBA #17453
Daniel W. Peyton, OBA #19355
Burns & Stowers, P.C.
1300 W. Lindsey
Norman, Oklahoma 73069
(405) 360-6191

Allan DeVore, OBA #2328
Jane Good Rowe, OBA #11323
THE DeVORE LAW FIRM
1318 North Robinson
Oklahoma City, Oklahoma 73103
(405) 232-4997

Kerry W. Caywood, OBA #1580
PARK, NELSON, CAYWOOD & JONES
P.O. Box 968
Chickasha, Oklahoma 73023
(405) 224-0386

**Attorneys for Plaintiffs**

Counsel for Defendants

- 9 -

# EXHIBIT 6

IN THE DISTRICT COURT OF CADDO COUNTY
STATE OF OKLAHOMA

STATE OF OKLAHOMA
CADDO CO.
F I L E D
MAY 1 0 1995
At_____ O'Clock_____ M.
SHARON WINCHESTER, Court Clerk
By_____ Deputy

ELIZABETH MORGAN MODRALL,       )
on behalf of herself and as     )
representative of a class of    )
all those similarly situated,   )
                                )
            Plaintiff,           )
                                )
v.                              )         Case No. CJ-94-266
                                )
HAMON OPERATING COMPANY,        )
a Texas Corporation,            )
                                )
            Defendant.           )

**ORDER ON CLASS COUNSELS' APPLICATION FOR ATTORNEY FEES
AND REIMBURSEMENT OF EXPENSES**

This matter comes before the Court this 10th day of May, 1995, for consideration of class counsels' application for attorney fees and reimbursement of expenses. The Court notes that it has this day approved a settlement between the class members, composed of royalty and overriding royalty interest owners and the defendant Hamon Operating Company which results in a payment to the royalty and overriding royalty interest owners of approximately 100% of their proportionate share of the various settlements Hamon has entered into with gas pipelines. The Court having considered class counsels' application, and having thoroughly reviewed class counsels' affidavit which has attached to it a complete description of all time expended by class counsel and out of pocket expenses for the benefit of the class as well as being fully aware of the amounts of the various settlements and taking into consideration the affidavit of Merco of Oklahoma, Inc., a mineral interest owner under some of the wells involved in this settlement and after considering the testimony offered by

1

95619sp.grr

Robin Stead, Esq., who is a practicing attorney, director of the University of Oklahoma continuing legal education program and the president of the National Association of Royalty Owners, the Court finds and orders as follows:

1.      The Court considers the work and effort expended by class counsel exemplary in bringing this matter to a swift conclusion without the necessity of needless motions and the taxing of scare judicial resources of this Court.  The Court is mindful of and has experience in other complicated oil and gas cases involving the breach of various take or pay gas contracts and is aware that attorneys fees on an hourly basis have exceeded $1 million dollars on the part of plaintiff's counsel in other cases.

2.      The causes of action pursued in this matter on behalf of the plaintiff and the various defenses raised by the defendant Hamon are very difficult legal questions and could have involved matters of first impression concerning the royalty and overriding royalty interest owners right to recover in settlements entered into by their lessee.

3.      The Court is aware that this matter has been removed to the United States District Court for the Western District of Oklahoma and remanded by agreed order to this Court and subsequent to remand tremendous effort have been made on behalf of class counsel and John R. Morris, to achieve a settlement in this matter and a prompt and expeditious payment to over seven hundred members of this class which has been previously certified by the Court pursuant to 12 O.S. § 2023.

4.      Class counsel, with the cooperation of Mr. John R. Morris have moved very expeditiously to comply with all orders of this Court and to ensure that all class members have been given notice and have developed very extensive and accurate allocation tables on

2

95619sp.grr

each of the wells involved in this settlement in order to ensure that all class members are correctly paid.

5.      The Court notes that in accordance with Rule 1.5(c), Rules of Professional Conduct, class counsel has entered into a contingency fee contract with the representative plaintiff providing for forty percent (40%) attorney fees at this stage of the litigation, after expenses are subtracted.   The Court specifically finds that an attorney and client may contract between themselves and that contingency fee contracts are not illegal and not against public policy and additionally the Court finds that the particular contingency fee contract entered into here as not being offensive or otherwise avoidable for excessiveness and noting that only through a contingency fee contract could this action be brought due to the small nature of the claims of hundreds of royalty and overriding royalty interest owners.

6.      The Court is also aware through the testimony of Mr. Renegar offered to this Court as well as his affidavit and the testimony of class counsels' expert witness, Robin Stead, that hundreds of thousands of dollars have been spent on research which was used in this case by class counsel to bring this matter to a expeditious conclusion, which time is not reflected upon the time sheets of Mr. Ruble and Kornfeld Franklin Renegar & Randall but of which this Court is very well aware.

7.      The Court considers this matter as properly being encompassed by the common fund doctrine which allows counsel for the representative plaintiff to be reimbursed from the fund for the litigation expenses incurred and the Court relies on the common fund doctrine in its ability to award attorney fees and expenses in this matter to the party who

3

95619sp.grr

created the value in the fund which will benefit all members of the class as previously certified by this Court.

8.      The Court understands its duty and responsibility to the members of the class in awarding attorney fees out of the common fund and has thoughtfully and thoroughly considered all evidence presented to it in order to split a reasonable fee between all members of the class in direct proportion to the amount they will recover.

9.      The Court is mindful that in a common fund case, attorney fees are not shifted against the adversary or losing parties but rather these are shifted to the third-party class members which this Court views as beneficiaries of the fund, who must pay their fair share in order to avoid a windfall or their unjust enrichment.

10.      This Court has thoroughly reviewed the Lindy I and II cases arising from the Third Circuit in 1973 as well as the 1974 case of *Johnson v. Georgia Highway Express, Inc.,* which adopted the 12 factor test as relied upon by the Oklahoma Supreme Court in *State ex rel. Burk v. City of Oklahoma City* in 1979 as modified by Oliver's Sports Center in 1980.

11.      This Court is also aware and has considered the difference in an award of attorney fees in a common fund situation as opposed to a statutory award of attorney fees and has studied the critical analysis of the Lindy rationale in the report of a Third Circuit Task Force on court awarded attorney fees, 108 F.R.D. 237 (1985).

12.      The Court is aware of the growing trend in the federal court's of this nation and especially in the 10th Circuit of not using the lode star approach and moving in the direction of a percentage of recovery approach, especially in common fund cases. It is this Court's opinion that a contingency fee arrangement under a written contract as we have in this instance, unlike in *Burk*, more closely parallels what is worked out daily in law offices

4

throughout the State of Oklahoma, with counsel considering all anticipated contingencies, especially including the fact that counsel may not be paid at all. Additionally, the members of this class do not consider the hours worked by the attorneys and this is of no interest to them. The class members prime concern is how much they will recover and indeed whether or not they will recover at all.

13. If the time expended was this Court's sole item to consider, then in that event the Court can visualize instances where attorneys in a class action matters would never attempt to settle a matter and would attempt to work the file for years in an attempt to increase their hours and their resultant compensation. This is the wrong approach. It would penalize efficiency and it would unduly tax this Court with the burdens of motions and no doubt dilatory pleadings.

14. However, noting the direction of our Supreme Court in considering the lode star factors even though recognizing efficiency to be very important, this Court has undertaken an evaluation of each of the twelve lode star factors as well as consulting and considering the Oklahoma Rules of Professional Conduct and makes the following specific findings:

(a) Time and labor required: The present action has required intensive time in a very short period of time and the prior preparation of class counsel before bringing this action has greatly contributed to its prompt resolution, even though this time is not reflected on the statements submitted to this Court.

(b) The novelty and difficulty of the question: This Court having tried other matters dealing with breach of gas contracts is aware of the

5

95619sp.grr

difficulty of these types of cases and some of the questions to be raised. The preparation by class counsel for five or six years has greatly contributed to the resolution of this matter and has resulted in cutting through difficult questions of law and an early resolution of the controversy.

(c) <u>The skill requisite to perform the legal service properly</u>: This Court having supervised each stage of this litigation and the settlement of this matter is aware of the competence and skill of class counsel as well as counsel for the defendant. The Court is mindful that matters as complicated as this case could not be handled except by attorneys skilled and experience not only in oil and gas matters but class action matters which result in the benefit to hundreds of people and the sparing of the Court from numerous individual actions which would clog the judicial machinery.

(d) <u>The preclusion of other employment by the attorney due to acceptance of this case</u>: The Court has considered the testimony presented to it and is aware of the tremendous effort made in a short period of time by class counsel which would preclude them from working on an hourly basis for other clients where payment is guaranteed and is also aware and has considered the fact that Kornfeld Franklin Renegar & Randall has lost many of its oil and gas clients due to the representation of royalty and overriding royalty interest owners in the State of Oklahoma.

6

95619sp.grr

(e)   <u>The customary fee</u>: After considering the evidence, this Court believes that a customary fee in this type of case in a contingency matter would be in the range of forty to fifty percent and that an attorney would consider a multiple of time costs involved between three and four times the anticipated hours when considering whether to accept a case of this difficulty.

(f)   <u>Whether the fee is fixed or contingent</u>: Here, the fee is contingent, based upon the success of class counsel and the Court has considered the contingent fee contract entered into by the class representative of class counsel.

(g)   <u>Time limitations imposed by the client or circumstances</u>: The Court does not believe that the time limitations imposed by the client is important; however, the Court is aware of the swiftness of class counsel in hammering out a very detailed settlement agreement, moving for certification and the preparation of a detailed notice advising all class members of this settlement.

(h)   <u>The amount involved and the results obtained</u>: This Court's prior approval in the settlement agreement resulting in payment of approximately $475,000 to the class members, amounting to approximately 100 cents on the dollar should be commended, especially considering that this was a settlement and not a matter which was taken to judgment.

(i)   <u>The experience, reputation and the ability of the attorney</u>: The Court has considered the many years of oil and gas practice of Tom J. Ruble,

7

95619sp.grr

and the experience of Gregg R. Renegar, Tom M. Moore and James W. Bruce as having a direct bearing resolution of this matter and its positive result.

(j) The "undesirability" of the case: Many knowledgeable oil and gas attorneys would not undertake this type of case. The Court believes that for most knowledge oil and gas attorneys this case would be considered undesirable and this point must be considered by the Court in its award of fees.

(k) The nature and length of professional relationship with the client: The Court feels that this particular factor has no bearing in this type of case.

(l) Awards in similar cases: The Court is aware that in many personal injury type of actions, a contingency fee is entered into and will provide for fees ranging from 33 1/3% to 50% of the recovery. The Court is not aware of a similar award in a class action of this magnitude, with the difficult legal issues presented, nor has any evidence been adduced which would pinpoint an appropriate fee, other than the testimony of Robin Stead, who stated that in her opinion, a royalty owner would be well served by a fee in the range of forty to fifty percent.

15. Having considered the various twelve factors and considering an appropriate multiplier due to the time and effort of class counsel and also considering the prompt resolution of this matter due to advanced preparation,

8

the Court is of the opinion that a percentage of recovery more closely reflects market realty and approximates the same result this Court would reach in the lode star approach with a multiple of three to four times time costs.

IT IS THEREFORE ORDERED ADJUDGED AND DECREED that class counsel shall be reimbursed their out of pocket expenses for the benefit of the class and to be expended for the benefit of the class until all class members are paid in the amount of $5,787.29 and in addition thereto that class counsel be awarded attorney fees based on the common fund theory and the creation of this fund in the amount of $~~182,171.91~~ *4 percent of the net recovery*

IT IS FURTHER ORDERED ADJUDGED AND DECREED that pursuant to this Court's contemporaneous order, that the defendant, Hamon Operating Company, shall compute the total amount of attorney fees herein awarded and the reimbursement of expenses as a percentage of the total amount shown owing to all royalty and overriding royalty interest owners in the schedules examined and approved by this Court, and that such percentage be deducted from the gross amount attributable to each class member thereby arriving at a net payment to be sent by Hamon by first class mail to each class member pursuant to this Court's contemporaneous order.

IT IS SO ORDERED.

James R. Winchester,
Judge of the District Court

9

95619sp.grr

Approved:

_____
Gregg R. Renegar, OBA #7500
Tom M. Moore, OBA #13740
James W. Bruce, OBA #13663
KORNFELD FRANKLIN RENEGAR
& RANDALL
301 N.W. 63rd, Suite 600
Oklahoma City, Oklahoma 73116
(405) 840-2731

-and-

_____
Tom J. Ruble, OBA #7809
RUBLE & BOZARTH
P.O. Box 8
Taloga, Oklahoma 73667-0008
(405) 328-5581

Attorneys for Plaintiff

_____
Bradley D. Brickell, OBA #1117
Mahaffey & Gore
A Professional Corporation
Suite 1100 Two Leadership Square
211 North Robinson
Oklahoma City, Oklahoma 73102-7107

_____
Matthew L. Standard, OBA #12001
Kirk & Chaney
101 Park Avenue, Suite 800
Oklahoma City, OK 73102
Attorneys for Samson Resources
Company and Geodyne
Resources, Inc.

_____
John R. Morris, OBA #6425
McAfee & Taft
A Professional Corporation
10th Floor, Two Leadership Square
211 North Robinson
Oklahoma City, OK 73102

Attorney for Defendant Hamon
Operating Company

10

95619sp.grr

IN THE DISTRICT COURT OF CADDO COUNTY
STATE OF OKLAHOMA



STATE OF OKLAHOMA

F I L E D

MAY 10 1995

AT_____O'CLOCK_____M.
SHARON WINCHESTER, Court Clerk
By _____ Deputy

ELIZABETH MORGAN MODRALL, )
on behalf of herself and as )
representative of a class of )
all those similarly situated, )
)
      Plaintiff, )
)
v. )  Case No. CJ-94-266
)
HAMON OPERATING COMPANY, )
a Texas corporation, )
)
      Defendant. )

## ORDER APPROVING SETTLEMENT

On this 10th day of May, 1995, the matter of the Court's final decision on the Settlement Agreement (the "Agreement") previously submitted by the parties to the Court in this case and tentatively approved on April 12, 1995, including the matter of the proper allocation of the settlement funds to the wells involved in the Agreement, came before the Court for consideration. Appearing on behalf of Plaintiff and the Class (previously certified by the Court on April 12, 1995) are Gregg R. Renegar of Kornfeld, Franklin, Renegar & Randall and Tom J. Ruble of Ruble & Bozarth (collectively "Class Counsel"). Appearing on behalf of Defendant is John R. Morris of McAfee & Taft.

Having reviewed the Agreement and the evidence presented, and considered the factual and legal arguments of counsel, the Court finds and concludes as follows:

1.    Class Counsel have given notice to members of the Class ("Class Members") as directed in this Court's prior Order of April 12, 1995. Such notice complies with the requirements of 12 O.S. §2023.E regarding dismissal and compromise of a class action after notice to the Class in a manner directed by the Court.

2.     None of the royalty or overriding royalty owners who were initially excluded from the Class (as shown on page 1 of the notice) appeared at the Settlement Fairness Hearing to request that they be allowed to participate in the settlement, despite having been given notice by Class Counsel as directed in the Court's prior Order of April 12, 1995.

3.     Notice was also given to and received by Geodyne Resources Company and Samson Resources Company. These corporate entities are royalty or overriding royalty owners whom Plaintiff, Class Counsel and Defendant intended to exclude initially from the Class but who were inadvertently included in the Class. In addition to appearing by counsel at the Settlement Fairness Hearing, Geodyne Resources Company, certain affiliated Geodyne partnerships and Samson Resources Company (hereinafter collectively referred to as "Samson") filed a statement of objections and comments, a motion to intervene and a motion to decertify the Class. After duly considering these matters, the Court finds and concludes as follows:

a.     Samson appeared and were fully heard at the Settlement Fairness Hearing, so their motion to intervene is moot.

b.     Samson stated on the record that they do not desire to participate in the proposed settlement; ~~indeed,~~ but they do ~~not~~ want to be a part of the Class, ~~at all and do~~ Q-hw ~~not want any compensation in this case.~~ Furthermore, the Court has this day granted Plaintiff's prior motion to amend the Court's April 12, 1995 Order Certifying Class by excluding Samson from the Class. Thus, they have no interest relating to the proposed settlement or the subject of this case that could, as a practical matter, be impaired or impeded by the disposition of this case, and they therefore do not have standing to move

-2-

to decertify the Class. Even if they had standing to move to decertify the Class, they have failed to offer, in their motion or at the Settlement Fairness Hearing, any factual or legal basis for decertifying the Class, or for certifying a class under any provision other than 12 O.S. § 2023(b)(1), so the Court would have denied their motion in any event. Specifically, the Court finds that there is no conflict whatsoever between Plaintiff, as Class Representative, and any of the other Class Members.

4. Certain Class Members have appeared individually or through counsel to comment on the proposed Agreement. The Court has fully considered their comments in its consideration of the matters in issue.

5. The Agreement is fair, reasonable, adequate and in the best interests of the Class Members. Specifically, the allocation of the settlement funds to the wells involved in the Agreement, and the related damage allocation tables used to calculate each Class Member's share of the settlement funds, are fair and reasonable.

IT IS THEREFORE ORDERED that the Agreement is, in all respects, including the allocation of the settlement funds to the wells involved, approved and confirmed by the Court for each and every Class Member.

SO ORDERED this 10th day of May, 1995.

JAMES R. WINCHESTER
JUDGE OF THE DISTRICT COURT

-3-

APPROVED:

---

Gregg R. Renegar, OBA #7500
Tom M. Moore, OBA #13740
James W. Bruce, OBA #13663
Kornfeld Franklin Renegar & Randall
301 N.W. 63rd, Suite 600
Oklahoma City, Oklahoma  73116
(405) 840-2731

     -and-

Tom J. Ruble, OBA #7809
Ruble & Bozarth
P.O. Box 8
Taloga, Oklahoma 73667-0008
(405) 328-5581

Attorneys for Plaintiff

---

John R. Morris, OBA #6425
McAfee & Taft
A Professional Corporation
10th Floor, Two Leadership Square
211 North Robinson
Oklahoma City, Oklahoma  73102
(405) 235-9621

Attorney for Defendant

---

Matthew L. Standard, OBA #5046
Kirk & Chaney
101 Park Avenue, Suite 800
Oklahoma City, OK  73102
(405) 235-1333

Attorneys for The Geodyne Partnerships,
Geodyne Resources Company and
Samson Resources Company

-4-

Bradley D. Brickell, OBA #1117
Mahaffey & Gore, P.C.
Suite 1100, Two Leadership Sq.
211 North Robinson
Oklahoma City, OK 73102-7101
(405) 236-0478

Attorneys for Kathe Claborn, Rodney
Claborn, Forest Laurence Loflin,
Eva Burch, Elmer Leon Nunn and
Etheyel Fern Nunn

# EXHIBIT 7

# IN THE DISTRICT COURT OF BLAINE COUNTY
## STATE OF OKLAHOMA

MARK STEPHEN STRACK, SOLE SUCCESSOR TRUSTEE ) 
OF THE PATRICIA ANN STRACK REVOCABLE TRUST DTD ) 
2/15/99 AND THE BILLY JOE STRACK REVOCABLE TRUST ) 
DTD 2/15/99, AND ) 
DANIELA A. RENNER, SOLE SUCCESSOR TRUSTEE ) 
OF THE PAUL ARIOLA LIVING TRUST AND THE ) 
HAZEL ARIOLA LIVING TRUST, ) 
    ) 
    ) 
    FOR THEMSELVES AND ALL OTHERS ) 
    SIMILARLY SITUATED, ) 
    ) 
    ) 
    PLAINTIFFS, ) 
    ) 
VS. )    CASE NO. CJ-10-75
    )    (JUDGE HLADIK)
CONTINENTAL RESOURCES, INC., ) 
    ) 
    DEFENDANT. ) 

BLAINE COUNTY, OKLAHOMA
F I L E D
JUL 1 3 2018
CHRISTY MATLI, CT. CLERK
BY
DEPUTY

## JUDGMENT AND ORDER APPROVING ATTORNEYS' FEES AND CLASS REPRESENTATIVES' CASE CONTRIBUTION AWARD

This matter came on for hearing on the 11th day of June, 2018, on Class Representatives' and Class Counsels'[1] "Motion For Attorneys' Fees, Litigation Costs And A Class Representatives Award From The Common Fund" (the "Motion")[2] in the above-styled Class Action Litigation. All Parties were present and represented by counsel. Objector Daniel McClure, a Houston attorney, was also present; Objectors Kelly McClure Callant (Daniel McClure's sister) and Bruce McLinn (who sent a letter) were not present. The Court, having conducted an evidentiary hearing on June 11, 2018;[3] having taken the matter under advisement; having considered all of the evidence

---

[1] Capitalized terms used herein shall have the same meaning as defined in the Settlement Agreement.

[2] This Journal Entry relates only to that portion of the Motion seeking attorneys' fees and a case contribution award to the Class Representatives; the remaining portion of the Motion related to reimbursement of litigation and administrative expenses shall be addressed in a separate Journal Entry.

[3] "In a certified class action, the court may award reasonable attorney fees and nontaxable costs that are authorized by

1

presented, the filed declarations, the arguments of counsel, and all other related filings related to the Motion, and having given due consideration and evidentiary value, if any, to such materials;[4] having entered a Minute Order on June 19, 2018, which is incorporated herein by reference; and being fully advised in the premises, **FINDS, ORDERS, AND ADJUDGES** as follows:

## Findings of Fact - Notice

1. A detailed recitation of the Notice Campaign is set forth in the "Declaration of Douglas E. Burns and Terry L. Stowers on Behalf of Class Counsel" (the "B&S Declaration"), p. 16-20, ¶¶36-44, which the Court incorporates herein by reference as though fully restated, and adopts said paragraphs as the Court's findings of fact.

## Conclusions of Law - Notice

2. The Court finds that notice of Class Counsel's intent to seek: (a) an award of an attorneys' fee of 40% of the Gross Settlement Payments for Claim Period 1 and Claim Period 2; and (b) a Class Representatives award (sometimes called a "Case Contribution Award") of $100,000.00 to each of the four (4) Plaintiff trusts (i.e., a total award of $400,000.00), was given to members of the Settlement Class as required by law.

3. Specifically, notice of this hearing was properly mailed by Class Counsel and the Settlement Administrator to Settlement Class Members with known valid mailing addresses and

---

law or by the parties' agreement. . . . In considering a motion for attorney fees filed after November 1, 2009: . . . **[T]he court shall conduct an evidentiary hearing to determine a fair and reasonable fee for class counsel.**" [Emphasis added.] 12 O.S. §2023(G)(1) & (4)(a).

[4] This was a matter tried to the Court sitting in its fiduciary capacity on behalf of the Class ("In a certified class action, the court may award reasonable attorney fees and nontaxable costs that are authorized by law or by the parties' agreement. . . . In considering a motion for attorney fees filed after November 1, 2009: . . . **[T]he court shall act in a fiduciary capacity on behalf of the class in making such determination.**" [Emphasis added.] 12 O.S. §2023(G)(1) & (4)(b). Accordingly, considering this special statutory mandate, the Court gave all materials presented due consideration and the appropriate evidentiary value, if any, such materials were entitled to receive, with or without an objection being raised by a Party or the Objector. Therefore, all objections by Objector McClure to the evidence, including testimony and exhibits, that were not ruled on at the hearing were, and are hereby, overruled by the Court.

2

was published as required by this Court's Order on Plan of Notice (*see* Affidavits of Publication and Affidavit of Markham Sherwood concerning notice, previously filed with the Court). The Court previously approved such notice and now finds, orders, and adjudges the notice to the Settlement Class of this hearing was proper and sufficient under 12 O.S. § 2023, the Due Process Clause of the United States Constitution, and the Due Process Clause of the Constitution of the State of Oklahoma, and the members of the Settlement Class have been afforded a reasonable opportunity to object to the Motion.

### Findings of Fact

4. A Summary of the Settlement and Litigation is set forth in the B&S Declaration, p. 1-15, ¶1-35; p. 20-29, ¶45-71, which the Court incorporates herein by reference as though fully restated, and adopts said paragraphs as the Court's findings of fact herein.

5. The Court approved the Settlement as adequate, fair and reasonable prior to conducting the hearing on the instant Motion.

6. Of the total of 33,890 putative Class Members, only three (3) objected to the requested attorneys' fee and class representatives' award. They include Bruce McLinn, who sent a letter, but did not appear, Dan McClure, and his sister Kelly McClure Callant.[5] None of them objected to the settlement. Each of their positions is the same: the attorney fees are too much. Their interests are miniscule when compared to the total, and none of them are disputing the risks undertaken, the difficulty of the case, or complaining about the quality of the legal work performed by Class Counsel, or the results obtained.[6]

---

[5] Dan McClure, a Houston attorney, appeared on behalf of himself contending a 40% contingency was too much, and he felt class action attorney fee requests were getting out of hand. He believed the attorney fees should be set at the $275-425 hourly rate charged by lawyers in Northwest Oklahoma with a multiplier rewarding success. Mr. McClure defends class action matters and represents oil companies regularly.

[6] *See* B&S Declaration, p. 30-31, ¶76, which is incorporated herein.

3

7.     In his testimony and declaration, Judge William Heatherington provided a clear summary of the law regarding attorney fees in class action cases, which this Court found quite helpful. This Court concurs with Judge Heatherington's analysis and incorporates herein by reference as though fully restated the "Declaration of William C. (Bill) Hetherington, Jr." (the "Hetherington Declaration"), as well as the testimony of Judge Heatherington (the "Hetherington Testimony"), which the Court adopts as the Court's findings of fact herein.

8.     Robert Gum's testimony and declaration (the "Gum Testimony" and "Gum Declaration") explaining the risks of litigation and listing the number of these cases with no recovery was sobering. This Court incorporates herein by reference as though fully restated the Gum Declaration and Gum Testimony, which the Court adopts as the Court's findings of fact herein.

9.     In summary, Class Counsel is seeking an order from the Court, pursuant to 12 O.S. §2023(G) and relevant common law: (1) extending to the Settlement Class the contingency fee agreements entered into between the Class Representatives and Class Counsel; (2) awarding Class Counsel an attorneys' fee of 40% of the Gross Settlement Payments; and (3) awarding Class Representatives compensation for their contribution to this Settlement (sometimes called a "Case Contribution Award") of $100,000.00 to each of the four (4) Plaintiff trusts (*i.e.*, a total award of $400,000.00).

## CONSIDERING THE THIRTEEN (13) STATUTORY FACTORS WHEN DETERMINING A REASONABLE FEE:

10.     Pursuant to 12 O.S. §2023(G), in arriving at a fair and reasonable fee for class counsel, the court must consider the following factors:

(1)   time and labor required,
(2)   the novelty and difficulty of the questions presented by the litigation,
(3)   the skill required to perform the legal service properly,

4

(4) the preclusion of other employment by the attorney due to acceptance of the case,

(5) the customary fee,

(6) whether the fee is fixed or contingent,

(7) time limitations imposed by the client or the circumstances,

(8) the amount in controversy and the results obtained,

(9) the experience, reputation and ability of the attorney,

(10) whether or not the case is an undesirable case,

(11) the nature and length of the professional relationship with the client.

(12) awards in similar causes, and

(13) the risk of recovery in the litigation.

11.    Extensive and detailed evidence and testimony was presented to the Court as to each of these thirteen (13) statutory factors.   In addition to the Hetherington Declaration, Hetherington Testimony, Gum Declaration and Gum Testimony, the Court incorporates herein by reference as though fully restated, B&S Declaration, p. 35-46, ¶83-97; p. 53-59, ¶103-123, and adopts said paragraphs as the Court's findings of fact herein. In addition to these incorporated findings of fact, the Court makes the following additional findings of fact as to several of the factors:

a.  **TIME AND LABOR REQUIRED**: The Court has reviewed Counsel's time records showing 7,961 hours expended in this matter.   Counsel also notes an additional 500 hours were expended since the records were compiled.   Judge Hetherington estimated an additional 500 hours would be spent implementing the settlement over the next two years.  At a minimum, this Court concludes at least 9,000 hours have been or will be expended in directly serving the members of this Class.  Also, Counsel have expended many uncompensated hours filing *Amicus Curiae* Briefs in other cases and monitored and lobbied the legislature in order to protect royalty owners.

5

In addition to time and effort, Counsel have advanced nearly $400,000 in litigation expenses. Law firms having the ability to advance this much time and money are very rare, and in Northwest Oklahoma may be impossible to find.

b. **NOVELTY AND DIFFICULTY OF THE QUESTIONS PRESENTED**: When Class Counsel accepted this case, they agreed to take on a legal Goliath. Had they been unsuccessful, they would have faced an emotional and financial loss that would have been devastating to most lawyers. Robert Gum stated that the lack of cash flow caused by a case such as this would crush an ordinary law firm.

This case was highly complex, and involved novel and difficult questions of law, in a legal area appearing to be in a state of flux. Even if counsel were successful on the legal questions, the nature and amount of damages would be disputed, and the facts would have been difficult to convey to a jury. The legal and factual uncertainties allowed Continental to take an aggressive defensive posture, and the outcome was always in doubt. Final resolution could have taken many more years. Given the stakes, Continental's Board of Directors likely instructed their staff to take whatever measures necessary to defeat this action and deter future actions.

c. **THE SKILL REQUIRED TO PERFORM THE LEGAL SERVICE PROPERLY**: This case required counsel with substantial experience in both oil and gas royalty actions plus appellate practice and the willingness to invest nearly $400,000 of their personal funds.

This court was very impressed with the talent of Continental's legal team, all highly skilled lawyers with supporting staff. They included Taylor Pope, Eric Eissenstat, and Brooks Richardson, in-house counsel for Continental; Terry Tippens, Jay

Walters, Steve Adams, and Graydon Luthey of Fellers, Snider, Blankenship, Bailey and Tippens and Gable Gotwals; Mark Christiansen of Crowe & Dunlevy; Glen Devoll of Gungoll, Jackson, Collins, Box and Devoll; and Guy Lipe of Vinson & Elkins of Houston, TX. Douglas E. Burns and Terry L. Stowers were an equal match. Robert Gum believed Burns and Stowers were the best plaintiff lawyers in their area of practice, and that is a complement appearing to be well earned.

d. **THE PRECLUSION OF OTHER EMPLOYMENT BY THE ATTORNEY DUE TO ACCEPTANCE OF THE CASE**: No doubt counsel are always in the process of evaluating potential cases and starting or finishing others, but the time records show this case prevented them from spending significant time on other matters.

e. **THE CUSTOMARY FEE**: The prevailing customary fee in these types of royalty owner class actions is a contingency fee of 40% of the common fund, and this is the amount the original plaintiffs agreed upon. Both plaintiffs and their counsel agreed it was fair and reasonable, and this is the best evidence of risks and benefits each of the parties believed acceptable. These types of cases are never taken on an hourly basis, and it is not a fee shifting case.

## EXTENDING THE FEE AGREEMENT TO CLASS MEMBERS:

12. The Court has the duty to determine whether to extend the contingency fee agreement entered into between the Class Representatives and Class Counsel to the Class. By statute, it has the authority: "In a certified class action, **the court may award reasonable attorney fees** and nontaxable costs **that are authorized** by law or **by the parties' agreement**." [Emphasis

7

added.] 12 O.S. § 2023(G)(1 ). 12 O.S. §2023(G)(4)(b) requires the court to act in a fiduciary capacity on behalf of the class in making this determination.

13.     "**Contingent fee agreements may be appropriate in class action cases**. . . . Many courts have held . . . that once a class is certified and a decision on the merits is had, **the trial court may decide whether to approve the contingent fee agreement, and whether to extend the contingent arrangement to all class members**." [Emphasis added.] *Sholer v. State of Oklahoma*, 1999 OK CIV APP 100, ¶¶ 13-14, 990 P.2d 294.

14.     In addition to the Hetherington Declaration, Hetherington Testimony, Gum Declaration and Gum Testimony, the Court incorporates herein by reference as though fully restated, B&S Declaration, p. 30, ¶74-75; p. 31-35, ¶77-82, and adopts said paragraphs as the Court's findings of fact herein.

15.     From the Common Fund, the Class Members not opting out will receive an average of $1,703, less $681 attorney fees, netting an average of $1,022.  To reap their benefit, they only need to open their mail.  The Class Members shared none of the risks and obtained the same benefit as the original Plaintiffs. If Class Counsel had not invested their efforts and assumed the risk, it is likely the Class Members would have not known they had a claim.  This court finds it hard to believe that any of the Class Members would begrudge Class Counsel for their 40% request (which is borne out by the fact that only 3 out of 33,890 filed an objection to the fee request.)  Finally, because the fees are only calculated on the Common Fund from Claim Periods 1 and 2, the Class Members will benefit during the Future Production Period without cost.  Potentially, this future amount could approach the amount of the Common Fund, reducing the percentage paid to Class Counsel to approximately 20%.

8

16.     The court finds the 40% contingency fee based upon the common fund is fair and reasonable. To award less than a 40% contingency would allow the Class Members to net more than the Class Representatives.

## LODESTAR ANALYSIS:

17.     The Court notes that the statutory guidelines for determining a "reasonable fee" in class actions (12 O.S. §2023(G)) neither references either the "Percentage of Fund" or "Lodestar" approach to calculating the fee, nor mandates the use of either approach over the other. Whether the Court utilizes the Lodestar approach in the first instance to determine a reasonable fee, or if the Court utilizes the Percentage of Fund approach after considering the factors set forth in 12 O.S. §2023(G), the result will be, and is, the same – **a "reasonable fee" is a "reasonable fee" regardless as to how it is determined**.

18.     As testified to by Judge Hetherington, many courts utilize the Lodestar calculation as a cross-check to the reasonableness of the fee calculated using the Percentage of Fund method, after examining the required statutory factors.

19.     The Court has reviewed the Lodestar evidence and testimony, and has performed a Lodestar analysis (*Burk v. City of Oklahoma City*, 1979 OK 115, 598 P.2d 659).[7] In addition to the Hetherington Declaration, Hetherington Testimony, Gum Declaration and Gum Testimony, the Court incorporates herein by reference as though fully restated, B&S Declaration, p. 46-53, ¶98-102; p. 59-63, ¶124-129, and adopts said paragraphs as the Court's findings of fact herein concerning the Lodestar and enhancement analysis.

---

[7] The Lodestar analysis was performed even though the Oklahoma Supreme Court has held that the Burk analysis (Lodestar) is not required when there is a controlling statute such as 12 O.S. §2023(G) ("*We agree that generally the correct procedure for calculating a reasonable fee is to: 1) determine the compensation based on an hourly rate; and 2) to enhance the fee by adding an amount through application of the Burk factors. Nevertheless, **Burk applies in determining a reasonable attorney's fee in absence of a contract or statute***." [Emphasis added.] *State ex rel. Dept. of Transp. v. Norman Indus. Development Corp.*, 2001 OK 72, ¶8.

9

20. The Court finds: (a) the time expended by Class Counsel was reasonable and necessary to advance and protect the interests of the Class (*see* ¶11(a) above and B&S Declaration, ¶84-88 incorporated herein); (b) consistent with Objector McClure's hourly rate (¶24 below) and the hourly rates charged and/or found to be reasonable for similar oil and gas class action litigation in Oklahoma and Northwest Oklahoma (*see* B&S Declaration, ¶98-91 incorporated herein), Class Counsel's hourly rates, as reflected in B&S Declaration, ¶102 incorporated herein, are fair, reasonable, and are *"predicated on the standards within the local legal community"* (*Burk v City of Oklahoma City*, 1979 OK 115, ¶20) for this type of complex litigation in Oklahoma and Northwest Oklahoma; and (c) an "enhancement multiplier" of approximately 3.17 is fair and reasonable, and warranted in this case (*see* B&S Declaration, ¶129 incorporated herein).

21. Under both the statutory procedure set forth in 12 O.S. §2023(G) and the Lodestar approach (*Burk*), the amount the Court has determined as a "reasonable fee" in this case is same; 40% of the Common Fund, or an award of $19,920,000.00 from the Sub-Class 1 Payment, plus 40% of the actual Gross Settlement Payments for the Claim 2 Period.

**OBJECTORS:**

22. Dan McClure, a Houston attorney, appeared on behalf of himself and his sister contending a 40% contingency was too much, and he felt class action attorney fee requests were getting out of hand. He believed the attorney fees should be set at the $275-425 hourly rate charged by some lawyers in Northwest Oklahoma with a multiplier rewarding success.

23. Mr. McClure defends class action matters and represents oil companies regularly. His financial interest as a royalty owner in this matter is minuscule, but his interest as an attorney responsible for defending oil and gas companies appears great. Mr. McClure's position in this

10

matter appears to be more in the nature of an *amicus curiae* acting on behalf of oil and gas class action defendants than as a class member.

24.     Mr. McClure testified that the hourly rate that he typically charges oil companies to defend them in similar class actions brought by royalty owners, including here in Oklahoma, is $700 to $850 per hour (with his bill to be paid monthly).

**CLASS CONTRIBUTION AWARD**:

25.     The Declaration of B&S, sets forth valid reasons each of the class representatives should be awarded $100,000, for a total of $400,000 as compensation for their time and effort in this action. In addition to the Hetherington Declaration, Hetherington Testimony, Gum Declaration and Gum Testimony, the Court incorporates herein by reference as though fully restated, B&S Declaration, p. 66-69, ¶133-143, and adopts said paragraphs as the Court's findings of fact herein

26.     This court sees an additional reason. If Plaintiffs had been unsuccessful at trial, in order to deter future class actions, it is likely Continental would have asked that costs and attorney fees be assessed against the Class Representatives. Assuming Continental had similar costs and fees as Class Counsel, the Class Representatives were exposed to a considerable financial risk which could have easily been deducted from their future royalty. The Class Representatives assumed this risk, but the remaining Class Members had no risk. Given their success, equity requires the Class Representatives be compensated. In light of the risks and result, their request is reasonable.

**Conclusions of Law**

27.     The Court finds the 40% contingency fee based upon of the Common Fund is fair and reasonable.

11

28.    The contingency fee agreement entered into between the Class Representatives and Class Counsel is extended to the Class.

29.    The Gross Settlement Payment for the Claim 1 Period is $49,800,000.  The court awards Class Counsel 40% of the Gross Settlement Payment for the Claim 1 Period, or an award of $19,920,000.00.

30.    The Gross Settlement Payment for the Claim 2 period is estimated at $7,500,000, and the court awards Class Counsel 40% of the actual Gross Settlement Payments for the Claim 2 Period.

31.    The Court hereby finds Class Counsel's request for the Class Representatives to be awarded a case contribution fee in the amount of $400,000.00 to be fair and reasonable.

**SEVERING THE CLAIMS OF THE OBJECTORS FOR APPEAL PURPOSES:**

32.    Of the total of 33,890 class members, three objected to the attorney fee and class representatives' award.  They include Bruce McLinn, who sent a letter, but did not appear, Dan McClure, and his sister Kelly McClure Callant.  None of them objected to the settlement. Each of their positions is the same:  the attorney fees are too much.  Their interests are miniscule when compared to the total, and none of them are disputing the risks undertaken, the difficulty of the case, or complaining about the quality of the legal work performed by Class Counsel, or the results obtained.

33.    Without question, the attorney fee award is a helluva lot.  However, this Court is convinced it was earned, justified, and comparable to awards in similar cases.  The percentage was agreed upon by the Class Representatives and Class Counsel, and it is the best evidence of risks and benefits each of the parties believed acceptable before proceeding.

12

34.    This court is unaware of any court denying or reducing an attorney fee award that satisfied these conditions because a Class Member complained that it was too much, particularly if it appeared the objectors were acting as friends of oil and gas companies routinely involved in these matters.

35.    For these reasons, the objections of Bruce McLinn, Dan McClure, and Kelly McClure Callant are severed from the other Class Members for appeal purposes.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED,** that Class Counsel is awarded attorneys' fees to be paid from the Common Fund as follows: (1) 40% of the Gross Settlement Payment for the Claim 1 Period ($49,800,000.00) for an award of $19,920,000.00; and (2) 40% of the actual Gross Settlement Payments for the Claim 2 Period.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED,** that Class Representatives are awarded a case contribution fee in the amount of $400,000.00, to be divided as follows: (1) Mark Stephen Strack, as successor trustee of the Patricia Strack Revocable Trust is awarded $100,000; (2) Mark Stephen Strack, as successor trustee of the Billie Joe Strack Revocable Trust is awarded $100,000; (3) Daniela Renner, as successor trustee of the Paul Ariola Living Trust is awarded $100,000; and (4) Daniela Renner, as successor trustee of the Hazel Ariola Living Trust is awarded $100,000.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED,** that pursuant to ¶3.1(i) of the Settlement Agreement, Defendant Continental Resources, Inc. is directed to wire transfer $20,320,000.00 ($19,920,000.00 + $400,000.00) from the Common Fund (*i.e.,* the Sub-Class 1 Payment) to a designated and segregated client trust account to be established and maintained by Burns & Stowers, P.C.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED,** that the claims of Objectors Bruce McLinn, Dan McClure, and Kelly McClure Callant are severed from the claims of the other Class Members for appeal purposes.

**AND FINALLY**, the Court expressly finds and determines there is no just reason to delay the finality of this Judgment and, pursuant to 12 O.S. § 994 (A), the Court expressly directs the filing of this Judgment as a Final Judgment.

IT IS SO ORDERED this _12_ day of July, 2018.

_____
The Honorable Dennis Hladik

Approved as to Form:

_____
Class Counsel

_____
Attorney for Continental Resources, Inc.

_____
Objector Daniel McClure

14

## CERTIFICATE OF SERVICE BY COURT CLERK

I hereby certify that on or before the __17__ day of July, 2018, a Certified Copy of the foregoing was mailed, postage pre-paid, to:

**Objectors:**
Daniel M. McClure
2 Long Timbers Lane
Houston, TX 77024

Kelly McClure Callant
3312 Whippoorwill Ln
Enid, OK 73703

Bruce McLinn
6408 Gold Cypress Dr.
Edmond, OK 73025

**Counsel for the Parties:**

Douglas E. Burns
Terry L. Stowers
**BURNS AND STOWERS, P.C.**
1300 W. Lindsey
Norman, Oklahoma 73069

Kerry W. Caywood
Angela Caywood Jones
**PARK, NELSON, CAYWOOD, JONES, LLP**
P.O. Box 968
Chickasha, OK 73023

Jay P. Walters
**GABLE GOTWALS**
One Leadership Square, 15th Floor
211 North Robinson
Oklahoma City, Oklahoma 73102-7101

Taylor Pope
Eric S. Eissenstat
**CONTINENTAL RESOURCES, INC.**
20 North Broadway
Oklahoma City, OK 73102

15

Guy S. Lipe
**VINSON & ELKINS, L.L.P.**
1001 Fannin, Suite 2500
Houston, Texas 77002

Steven J. Adams
**GABLE GOTWALS**
1100 Oneok Plaza
100 West 5th Street, Suite 1100
Tulsa, Oklahoma 74103-4217

Glenn A. Devoll
**GUNGOLL, JACKSON, COLLINS, BOX & DEVOLL, P.C.**
323 W. Broadway Avenue
Enid, Oklahoma 73701

CHRISTY MATLI, COURT CLERK

_____
Court Clerk Deputy

16

# EXHIBIT 8

# IN THE DISTRICT COURT OF TEXAS COUNTY
## STATE OF OKLAHOMA

MARVIN TAYLOR,
MARGARET SHEPPARD AND
ALESEN SHEPPARD
    **FOR THEMSELVES AND ALL OTHERS**
    **SIMILARLY SITUATED,**

        PLAINTIFFS,

VS.

CHEVRONTEXACO CORPORATION,
TEXACO, INC.;
TEXACO EXPLORATION AND PRODUCTION, INC.;
CHEVRON U.S.A., INC.,
    FOR ITSELF AND AS GUARANTOR OF TEXACO
    EXPLORATION AND PRODUCTION, INC.; AND
FOUR STAR OIL & GAS COMPANY

        DEFENDANTS.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO. CJ-2002-104

**TEXAS COUNTY**
# F I L E D

## DEC 2 2 2009

**KAREN PARISH**
**COURT CLERK**
By _____ Deputy

## ORDER ON ATTORNEY FEES, LITIGATION
## EXPENSES, AND CLASS REPRESENTATIVES FEE

This matter comes on this 22nd day of December, 2009, on Class Representatives' and Class Counsel's motion for attorney fees, litigation expenses and Class Representatives fee. All named parties were present and represented by counsel. After reviewing the motion and all related pleadings, having reviewed the evidence submitted, having heard the testimony and arguments presented today, and being fully advised in the premises, **THE COURT FINDS AND ORDERS AS FOLLOWS:**

**Notice and Objections:**

1. Notice of this hearing was properly mailed to the Class Members with known valid mailing addresses and was published as required by this Court's previous order (see Affidavit of Notice previously filed with the Court). The Court previously approved such notice and now finds that the notice to the Class of this hearing is proper and sufficient under

- 1 -

12 Okla. Stat. § 2023 (E), the Due Process Clause of the United States Constitution and the Due Process Clause of the Oklahoma Constitution.

2. The Court notes that with over 17,000 Class Members, only one (1) person filed an objection. The one (1) Class Member objector objected to the attorney fee request only. There were no objections to reimbursement of expenses that were incurred on behalf of the Class or the requested award of the Class Representative fee. The Court notes that the one objection to the attorney fee was neither made in conformity with the requirements set forth in the Notice nor did he appear at the hearing or submit any evidence for the Court to consider. As recently explained by the Oklahoma Court of Appeals in *Velma-Alma Independent School Dist. No. 15 v. Texaco, Inc.*, 2007 OK CIV APP 42, 162 P. 3d 238, ¶13, while written comments and objections can be submitted by class members, those class members must file objections in compliance with the order and notice of the settlement court, state their intent to appear at the fairness hearing, and appear **in person** or through their disclosed counsel at the hearing for their objection to be preserved.

**Class Counsel Fees:**

3. Not including Class Counsel's involvement in the Prior Litigation which began as early as 1997, Class Counsel's efforts in this lawsuit began in 2002 with an investigation that led to the filing of this lawsuit. Over the past seven years Class Counsel conducted extensive discovery, motion practice and other demanding prosecution of this case. The issues in this case have been aggressively advanced throughout the history of this case. A further overview of the history of this case can be gleaned from the Court Clerk's docket sheet.

4. Class Counsel and the Class Representatives have devoted thousands of hours of time and effort, and have paid large sums of money, to achieve a fair and reasonable settlement for the benefit of the Class. Class Counsel and the Class Representatives have borne the hardships of the litigation and the risk of potential loss solely on their own shoulders. To date, Class Counsel and the Class Representatives have received no compensation for their efforts or reimbursement of their expenses. Class Counsel and the Class Representatives now request that the contingent fee and expense reimbursement contract they negotiated be extended to the Class.

5. Class Counsel have made substantial time and labor commitments which have now inured to the financial benefit of the Plaintiff Class and which have resulted in the creation of a Common Fund of $12,000,000.00, plus accrued interest.[1]

6. Under the Common Fund Doctrine, and in particular in a "class action" (which is one type of action that can create a common fund), the Court has the authority to extend

---

[1] The Common Fund Doctrine is well recognized by the Oklahoma Supreme Court (as well as the United States Supreme Court). If the plaintiff and/or his counsel have **created, preserved, protected, or increased a common fund (or common property), or have brought into court** a fund in which others may share with him, a court, in the exercise of equitable jurisdiction, may order the allowance of attorney fees and litigation expenses to counsel.

> **The conceptual underpinnings for the chancery common-fund doctrine teach us that an equitable charge may be impressed in favor of its creator *when the fund is within the direct control of the court*. The "pre-existing fund"** must be immediately subject to counsel-fee assessment, and the benefits conferred have to be traceable with some accuracy to each beneficiary. [Footnotes and citations omitted. Emphasis added.]

*Oklahoma Tax Com'n v. Ricks* 1994 OK 115, ¶7-8, 885 P.2d 1336.

> It is well settled that ordinarily "a court in the exercise of equitable jurisdiction, will, in its discretion, order an allowance of counsel fees, or, as it is sometimes said, allow costs as between solicitor and client, to a complainant (and sometimes directly to the attorney) who at his own expense has maintained a successful suit for the **preservation, protection, or increase of a common fund, or of common property, or who has created at his own expense, or brought into court, a fund in which others may share with him.**" [Citations omitted. Emphasis added.]

*State ex rel. Board of Com'rs of Harmon Co. v. OTC*, 1944 OK 250, ¶4 151 P.2d 797; *see also, Kellough v. Taylor,* 1941 OK 320, 119 P.2d 556.

contingency fee agreements entered into between the Class Representative and Class Counsel to the entire Class.

> **Contingent fee agreements may be appropriate in class action cases**.... Many courts have held . . . that once a class is certified and a decision on the merits is had, **the trial court may decide whether to approve the contingent fee agreement, and whether to extend the contingent arrangement to all class members**. [Emphasis added.]

*Sholer v. State of Oklahoma*, 1999 OK CIV APP 100, ¶¶ 13-14, 990 P.2d 294.

7. This Court recognizes the importance of contingent fees in our judicial system, especially in class actions.

> Although contingent fee contracts are subject to restrictions . . . such agreements have generally been enforced unless the contract is unreasonable. **Often contingent fee agreements are the only means possible for litigants to receive legal services ---- contingent fees are still the poor man's key to the courthouse door. The contingent fee system allows persons who could not otherwise afford to assert their claims to have their day in Court**. [Emphasis added. Footnotes omitted.] *Sneed v. Sneed*, 1984 OK 22, ¶3, 681 P.2d 754.

8. *Newberg on Class Actions* §14:6 (4th ed. 2002) recognizes that it is appropriate to award an attorney's fee based on a percent of the value of the common fund established for the benefit of the class.

9. A review of other Oklahoma District Courts' orders reveals similar sound logic. In *Bridenstine v. Kaiser-Francis, et al.*, Case No. CJ-2000-1, District Court of Texas County, State of Oklahoma, ¶3, the Honorable Ronald Kincannon explained his rationale for using the percentage of fund method for determining the appropriate attorney's fee:

> The percentage fee has important advantages to the Class in that it provides self-regulating incentives for efficiency. First, it compensates counsel on the real value of the services provided (the amount of benefit conferred). Second, the percentage approach awards efficiency. Not only is there no reward for inefficiency, there is a penalty due to the fact that, if the work is unnecessary, the lawyer has wasted his time. Third, the

-4-

6:16-cv-00403-JHL-w Document 235-5 Filed in ED/OK on 05/26/18 Page 160 of 351

percentage method encourages counsel to go the extra mile. Counsel has an incentive to push beyond a "good" recovery to an "excellent" recovery. The Court certainly considers the existing Common Fund to be an excellent recovery to the Class Members. Thus, under this percentage approach, the interests of the Class and Class Counsel are consistent and aligned.

In *Brumley v. ConocoPhillips,* Case No. CJ-2001-5, District Court of Texas County, Oklahoma, Judge Zigler stated additional rationales for awarding the full percentage fee:

> **To award Class Counsel a lesser percentage of the Total Common Fund because the efforts of Class Counsel have created an exceptionally large Fund would amount to penalizing Class Counsel for their success which the Court is unwilling to do.** This Court makes no myth as to Class Counsel's attorney fee award herein. It is significant. Yet, it is reasonable and proper. It is fair and equitable. **Additionally, the common sense reality is, when the efforts of Class Counsel create an exceptionally large Total Common Fund for the benefit of the Class and if Class Counsel's fees awarded therefrom are greatly restricted, then forseeably [sic] so goes later access to the Courthouse for other potential and future class members.** From that common sense viewpoint and understanding it is all a matter of economics. So in conclusion, as in the many other class cases referenced herein, under this percentage approach as thoroughly addressed hereinabove, the interests of the Class and Class Counsel will be consistent and aligned.

> * * *

> **Knowing the rewards for Class Counsel can be great, so travels the path of loss for Class Counsel if defeat is the end result. Financial, personal, and emotional devastation are the potential events for a very few members of this Profession willing and able to represent thousands of strangers in order to obtain monetary benefit for those strangers that otherwise, without question, is unattainable through known legal means. From this aspect, the potential rewards of a Class Counsel's success and the potential devastation realized of a Class Counsel's defeat must be considered with [an] open judicial mind.**

Emphasis added.

10. The reasoning of the above-quoted Oklahoma courts on the award of attorney fees in cases such as the present action is compelling, and this Court adopts their reasoning in this

case. The Court will not reduce Class Counsel's percentage of fees from the common fund because of the success they achieved. To do so would effectively penalize Class Counsel for their success in this case and thereby restrict later access to the courthouse for potential class members in other cases who look to effective lawyers like Class Counsel in this case as their keys to the courthouse doors.

11. The Court finds that Class Counsel and the Class Representatives entered into contingency fee agreements whereby Class Counsel agreed to prosecute this action in exchange for receiving a fee of 40% of the gross recovery for the Class plus reimbursement of litigation expenses.

12. The Court finds that the 40% contingency fee percentage contained in the agreement between Class Counsel and the Class Representatives is within the typical range of contingency fee percentages for oil and gas class action litigation approved in this State.

13. The Court finds: (a) that the 40% contingency fee agreement between Class Counsel and the Class Representatives is fair and reasonable and should be, and is hereby, approved and extended to the members of the Class, and (b) that based upon the foregoing factors and reasoning, as well as the additional analysis described below, an attorney fee award of 40% of the Settlement Proceeds (as defined in Settlement Agreement), is a fair and reasonable amount of compensation to Class Counsel for establishing the Common Fund.

14. The Court has reviewed the detailed time records submitted by Class Counsel and finds that the time reflected in the record (in excess of 8,250 hours) was reasonably expended for the benefit of the Class. The Court has also reviewed the hourly rates of Class Counsel as set forth in the record and finds them to be reasonable and within the acceptable range in the

legal community for this type of legal services. Thus, the Court finds the base "lodestar" fees in this case (i.e., hours X rates, before any enhancement consideration) to be just over $2,725,000.00. Under a lodestar approach, the Court is then required to consider the appropriateness of a fee enhancement.

15. The Court considered the basic guidelines established by the Oklahoma Supreme Court set forth in *State ex rel. Burk v. City of Oklahoma City*, 1979 OK 115, 598 P.2d 659.[2] In *Burk*, the Supreme Court enunciated twelve factors to be considered by the District Court in fixing fees under the lodestar approach.[3]

A. <u>Time and labor required</u>. Counsel have made substantial time and labor commitments which have now inured to the financial benefit of the Plaintiff Class.

B. <u>The novelty and difficulty of the question.</u> Class action issues are known to be difficult and vigorously contested. Furthermore, the oil and gas royalty issues involved in this case are also very complex.

C. <u>The skill requisite to perform the legal services properly</u>. The unique nature of this case, coupled with the issues, mandated that the Class be represented by highly skilled counsel. To prosecute these claims against a large corporate defendant represented by highly capable defense counsel with extensive resources necessitated assembling a team of Class Counsel skilled in oil and gas litigation, as well as details of complex litigation and knowledge of Chevron's historic payment practices. Counsel's qualifications, skills and experience are well known throughout the oil and gas legal community. Class Counsel are certainly highly skilled and capable counsel.

D. <u>The preclusion of other employment.</u> Class Counsel are engaged in the on-going practice of law. Had Class Counsel not committed their resources to this case, Class Counsel could have accepted other matters, but did not. The prosecution of this case has very substantially reduced Class Counsel's opportunity for employment in other matters.

---

[2] The Court recognizes that *Burk* was not a class action and that the equitable fund created by the attorneys' effort benefited only the City of Oklahoma City. The attorneys fee awarded in that case amounted to 100% of the equitable fund currently available and all of the benefit due the City for several years into the future.

[3] The Court notes that statutorily these are the same factors that must be considered for attorneys fees motions filed after November 1, 2009. *See,* 12 O.S. §2023(G), effective 11/1/09.

-7-

E.  The customary fee.    These types of cases (oil and gas class action cases), are typically handled on a contingent fee basis. The fee percentage in these types of cases is typically 40% of the gross fund.

F.  Whether the fee is fixed or contingent. Class Counsel entered into contingency fee agreements with the Class Representatives that provide for an attorneys' fee of 40% of the gross consideration received, as discussed in detail above. Counsel for the Class have represented the Class with vigor and without prior compensation of any kind for their time and have advanced hundreds of thousands of dollars of litigation expenses out of their own pockets.

G.  Time limitations imposed by client or circumstances. Numerous time limitations were imposed on Class Counsel throughout the course of the proceedings.  A case of the size and complexity existing here required the commitment of a large percentage of the total time and resources of the firms of Class Counsel. The circumstances of the case required the litigation to be vigorously pursued if an excellent recovery through settlement was to be achieved.  Class Counsel, in fact, did vigorously prosecute the case and obtained excellent results for the Class.

H.  The amount involved and the results obtained. There can be no doubt that at the outset, Plaintiffs' Counsel had no assurance of any recovery. Considering all involved, the amount and terms of the settlement reflect the quality of the result and the outstanding benefits provided by Class Counsel to the Class. The Court considers this settlement to be an excellent result for the Class.

I.  Experience, reputation and ability of counsel. Class Counsel's qualifications, skill, experience, ability and reputation are well known throughout the oil and gas and complex litigation legal communities. Class Counsel are exceptional litigators.

J.  The undesirability of the case. Compared to most civil litigation attracting counsel to represent plaintiffs, this litigation clearly fits the initially "undesirable" test. Few law firms would be willing, or able, to risk investing the time and expenses necessary to prosecute this litigation. The Defendants were well-financed, and well represented.  Certainly, the possibility of a recovery was a risky matter.

K.  Nature and length of the professional relationship with the client. Class Counsel have established an excellent working relationship with each of the named Plaintiffs. There is always significant risk to a client who participates as a plaintiff in an oil and gas royalty owner class action, in

- 8 -

terms of the client's reputation, future business dealings, liability for costs, and other potentially adverse considerations.

L.      Awards in similar cases.  The awards in similar cases were discussed in detail in Class Counsel's motion, exhibits and testimony. The Court incorporates said discussion herein by reference. The Court finds that a 40% fee is customary in these types of cases.

16. In 1980, the Oklahoma Supreme Court followed and modified *Burk, supra,* to further instruct District Courts that counsel fees cannot be fairly awarded on the basis of time alone, but other factors, particularly the litigation risk factor, must be considered. See *Oliver's Sportcenter, Inc. vs, National Standard Ins. Co.,* 1980 OK 190, 615 P.2d 291.

*The oal record indicated this was significant . [initials]*

17. Based upon the Court's analysis of the *Burk* factors, the Court finds a reasonable fee in this case to be $4,800,000.00, plus accrued interest thereon (which represents 40% of the Settlement Proceeds, and a lodestar multiplier on the base hourly fees of approximately 1.76, which is well within the range of reasonableness).[4]

**IT IS THEREFORE ORDERED** that Class Counsel be, and hereby are, awarded a fee of forty percent (40%) of the gross Settlement Proceeds, for an attorney fee in the amount of $4,800,000.00, plus accrued interest thereon.

---

[4] In appropriate cases where Class Counsel have created a large common fund, such as in the present case, multipliers of even 5 to 10 have been awarded. See, *Herbert Newberg,* Newberg on Class Actions (3rd), §14.03 (emphasis added):

> Courts applying the lodestar approach will often use large multipliers or monetary enhancements of the time/rate (lodestar) calculation in order to reach fee award results comparable to percentage of recovery fees. **Multiples ranging from one to four frequently are awarded in common fund cases when the lodestar method is applied. A large common fund award way warrant an even larger multiple.**[21]
>
> [Fn. 21] *See e.g., In re Beverly Hills Fire Litig,* 639 F. Supp. 915 (ED Ky 1986) (personal injury class action; **multiplier of 5 for lead counsel for contingency and superior trial skill**); *Wilson v. Bank of Am Natl Trust & Savs Assn,* No. 643872 (Cal Sup Ct Aug 16, 1982) (illegal use of escrow funds by lender for profit; noncontingent hourly rates of up to $150/hour and a **multiplier of up to 10 times** the hourly rate). [End of Fn. 21]

-9-

**Expert Witness Fees, Litigation Expenses and Class Representatives Fee:**

18. The Court, having reviewed the accounting records which detail the expert witness fees and litigation expenses incurred in pursuit of class claims, having heard testimony regarding the necessity of such expenditures in preparation of the case, and having no objections filed as to these expenses, finds that reasonable expert witness fees and litigation expenses were incurred in the amount of $730,726.19. However, as reflected in the Notice, Class Counsel has agreed to limit the recovery of litigation expenses from the Common Fund to $600,000.00. The remaining $130,726.19 of un-reimbursed litigation expenses will be absorbed by Class Counsel through their attorney's fee award.

19. The Court finds the Class Representatives have made substantial time and labor commitments to the Class, and have incurred serious legal and financial risks while pursuing this case on behalf of the Class, all of which resulted in obtaining an excellent benefit for the Class. The granting of a Class Representative Fee is based upon equitable considerations discussed above which relate to a party's efforts in the creation of a common fund for the mutual benefit of a class. Court awards to Class Representatives of 1% of the common fund are typical in these types of class actions with recoveries of this magnitude. In this action, Class Counsel has recommended and requested a Class Representatives' fee of $120,000.00 (i.e., one percent (1%) of the Settlement Proceeds). The Court finds that compensation to the Class Representatives of $120,000.00 (to be divided equally among the three Class Representatives) is fair and reasonable compensation for their services to the Class.

## Administrative Expenses to be Paid by the Class:

20. The Settlement Agreement provides that "[t]he ordinary Administration Expenses for implementation of the proposed Plan of Notice and the Plan of Allocation and Distribution shall be borne by Chevron, **except that the Plaintiff Class shall be responsible for Allocation Expenses incurred for its own expert consultant(s)."[5]** [Emphasis added.] Settlement Agreement, ¶4.7(c).

21. Class' Expert Consultants have estimated that the Class' Allocation Expenses will exceed 1% ($120,000.00) of the Common Fund. However, subject to this Court's approval, Class Counsel have entered into an agreement to retain the Consultants for a fixed fee of 1% of the Common Fund ($120,000.00) to cover the Class' portion of the necessary and ordinary Allocation Expenses contemplated by the terms of the Settlement Agreement.

22. The Court hereby approves the compensation arrangement with the Consultants to provide the Class' portion of the necessary and ordinary Allocation Expenses contemplated by the terms of the Settlement Agreement (i.e., a fixed fee of $120,000.00).

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED** that (1) Class Counsel are awarded an attorney fee of forty percent (40%) of the gross Settlement Proceeds in the amount of $4,800,000.00, plus accrued and accruing interest thereon until paid; (2) Class Counsel are also awarded reimbursement of litigation expenses in the amount of $600,000.00; (3) Class Representatives are awarded fees in the amount of $120,000.00, to be divided equally among them; and (4) the Class Consultants retained by Class Counsel to provide the Class' portion of the necessary and ordinary Allocation Expenses contemplated by the terms of the

---

[5] "'Allocation Expenses' mean the reasonable expenses actually incurred to formulate and implement the procedures to allocate the Net Settlement Amount to the Class Wells and then to the individual Class Members pursuant to the Plan of Allocation and Distribution." Settlement Agreement, ¶1.1.

Settlement Agreement are hereby awarded a fee in the amount of $120,000.00.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that upon notification by Class Counsel that this Order has become Final and Unappealable (a date that shall not be any earlier than 30 days from the date of this Order), J.P. Morgan Chase Bank is authorized to accept instructions from Class Counsel to transfer the amounts awarded herein from the "Taylor v. Chevron Class Action Settlement Fund" to any account or accounts so designated by Class Counsel.

IT IS SO ORDERED this 22nd day of December, 2008.

_____
The Honorable Gerald Riffe
Associate District Court

- 12 -

# EXHIBIT 9

NOT FOR OFFICIAL PUBLICATION

IN THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA

DIVISION III

FILED
COURT OF CIVIL APPEALS
STATE OF OKLAHOMA

AUG - 7 2009

MICHAEL S. RICHIE
CLERK

SAM ADKISSON; RONNY MOSELEY;　　　　)
RALPH MORRISON; IRIS ANDROPHY;　　　　)
THE CITY OF ELK CITY; and AMERICAN　　)
PETROLEUM & MINERAL CO., INC.,　　　　　)
　　　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　Plaintiff/Appellee/　　　　　　)
　　　　　　　　Counter-Appellants,　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　　)　　Case No. 106,452
　　　　　　　　　　　　　　　　　　　　　　　)　　(cons. w/106,455)
vs.　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　　)
KOCH INDUSTRIES, INC.; KOCH OIL　　　　)
COMPANY, a division of Koch Industries, Inc.;　)
KOCH EXPLORATION COMPANY; KOCH　　　)
MIDSTREAM PROCESSING COMPANY;　　　　)
KOCH MIDSTREAM SERVICES COMPANY;　　)
KOCH SERVICE, INC.; KOCH GATHERING　　)
SYSTEMS, INC.; KOCH PIPELINES, INC.;　　　)
and KOCH PIPELINES, L.P.,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　Defendant/Appellee/　　　　　　)
　　　　　　　　Counter-Appellees,　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　　)
CHARLES DAVID NUTLEY, and　　　　　　　)
CHESAPEAKE ENERGY CORPORATION,　　　)
on behalf of itself and its subsidiary and affiliated　)
entities,　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　Appellant/Counter-Appellees.　　)

APPEAL FROM THE DISTRICT COURT OF
SEMINOLE COUNTY, OKLAHOMA

HONORABLE JOHN H. SCAGGS, TRIAL JUDGE

<u>AFFIRMED</u>

Jack Mattingly, Sr.,
Jack Mattingly, Jr.,
THE MATTINGLY LAW FIRM, P.C.,
Seminole, Oklahoma,

and

Marvin L. Kaiser,
KAISER LAW FIRM,
Williston, North Dakota,

and

Ronald H. McLean,
SERKLAND, LUNDBERT, ERICKSON,
  MARCIL & McLEAN, LTD.,
Fargo, North Dakota,

and

Gary J. Gordon
McCOLLUM, CROWLEY, MOSCHET
  & MILLER, LTD.,                              For Plaintiff/Appellee/
Minneapolis, Minnesota,                       Counter-Appellants,

John R. Hargrave,
Brandon P. Wilson,
EDMONDS, COLE LAW FIRM,
Oklahoma City, Oklahoma,

2

and

J. Kory Parkhurst,
KOCH INDUSTRIES, INC.,
Wichita, Kansas,

and

Jerry W. Snider,
Charles F. Webber,
FAEGRE & BENSON,                                For Defendant/Appellee/
Minneapolis, Minnesota,                         Counter-Appellees,

Fred R. Gipson,                                 For Appellant/Counter-Appellee,
Oklahoma City, Oklahoma,                        Chesapeake Energy Corporation,

Stephen C. Griffis,
ATKINS & MARKOFF,                               For Appellant/Counter-Appellee,
Oklahoma City, Oklahoma,                        Charles D. Nutley.

OPINION BY CAROL M. HANSEN, PRESIDING JUDGE:

¶1    These consolidated appeals and counter-appeals arise from the award of attorney fees to class counsel and incentive payments to the class representatives in a class action against Defendant/Appellee/Counter-Appellees, Koch Industries, Inc. and related entities (Koch), for underpayment of oil. We find the trial court did not abuse its discretion and affirm.

¶2    The Plaintiff/Appellee/Counter-Appellants, Sam Adkisson, Ronny Moseley, City of Elk City, Ralph Morrison, American Petroleum and Mineral Co., and Iris

3

Androphy (collectively Class Representatives), filed suit against Koch on December 22, 1999. They alleged that from 1975 through 1989, Koch purchased crude oil and gas condensate from them, paying based on measurement at the well by a hand gauging method. Koch then measured the oil and gas again by a volumetric meter at the shipping or selling point. Class Representatives alleged Koch's internal documents consistently reported volume gains between the measurements taken at the well and those taken at the selling point, and these volume gains resulted in Koch receiving hundreds of thousands of barrels of oil or condensate in Oklahoma for which it had not paid.

¶3    On October 9, 2007, Koch and the Class Representatives jointly moved for an order preliminarily approving class settlement. The trial court issued the order, certifying the class (Class) as "[a]ll persons and entities who owned royalty interests and leasehold interest in wells in Oklahoma from which [Koch] purchased or sold oil between January 1, 1975, through December 31, 1989, where the oil was measured by hand gauging," except certain named large companies and governmental entities. The trial court appointed Class Representatives as representatives of the Class and authorized Class counsel to enter the proposed settlement agreement subject to final approval. It directed Koch to retain a claims administrator to notify Class members of the proposed settlement and to administer their claims.

4

¶4     The notice of proposed settlement stated:

> Koch has agreed to create a settlement fund of $18,800,000 (the "Class Fund") to settle all outstanding claims that the Plaintiffs and Class Members have against Koch.... Koch has also agreed to create a fund totaling $11,200,000 for payment of any attorneys' fees, costs and expenses, and incentive payments to the named Plaintiffs that the Court may award to Plaintiffs and Class Counsel (the "Fee Fund")....
>     ... Class Counsel intend to request that the Court award attorneys' fees and incentive payments not exceeding $11,200,000.... Such attorney fees, costs, incentive payments and expenses would not reduce the amount of money that is available for payment to the Class Members. Koch has agreed in the Settlement Agreement not to oppose Class Counsel's request for an award of attorneys' fees, costs, and expenses.

The notice set June 2, 2008 as the date for hearing on approval of the settlement and on attorney fees and costs. It set May 2, 2008 as the deadline for filing a request to be heard at the final settlement and July 8, 2008 as the deadline for filing a proof of claim. It stated Class counsel's fee request and "the justification for the request" would be available for review by May 5, 2008.

¶5     Appellant/Counter-Appellees, Chesapeake Energy Corporation (Chesapeake) and Charles David Nutley (Nutley), as well as other Class members, filed objections to the settlement, attorney fees, and incentive payments. Chesapeake contended the negotiated Fee Fund was excessive and reduced the amount available to the Class. It argued the statement in the notice that the Fee Fund would "not reduce the amount of money that is available for payment to Class Members" was misleading.

5

Chesapeake sought discovery regarding settlement negotiations and requested appointment of a receiver to review Class counsel's fees and costs.

¶6    Nutley argued the requested fee and incentive awards were excessive and the agreement to establish a separate Fee Fund was unfair to the Class. He proposed a fee award not to exceed 25% of $30,000,000.00 or 1.5 times a lodestar rate of $150.00 per hour, whichever was less.

¶7    On May 5, 2008, the Class Representatives and Class counsel moved for an order (1) extending to the Class the fee agreement, for up to a 40% contingent fee, between the Class Representatives and Class counsel, (2) awarding an attorney fee of 35.3% of the total settlement fund of $30,000,000.00, (3) approving reimbursement of actual litigation expenses of $95,373.22, and (4) awarding an incentive fee to Class Representatives of 1.67% of the total settlement fund. Chesapeake and Nutley objected.

¶8    The trial court denied appointment of a receiver, allowed certain discovery, and continued the hearing for final approval of the settlement to August 11, 2008. In chambers prior to the hearing, the trial court advised the parties it would not approve a settlement in which the Fee Fund was separated from the total fund. It then recessed the hearing to allow the parties to determine whether they agreed to the settlement fund being a single common fund. The Class Representatives and Koch

6

reached an agreement and submitted an amendment to the settlement agreement treating the Class Fund and Fee Fund as a common fund, and providing the Class recovery would be based on the common fund less the amount awarded by the trial court for fees and expenses.

¶9      The parties and the objectors tried the motion for final approval of settlement and the application for attorney fees, incentive fees, and expenses to the trial court. After the close of evidence, argument, and briefing, the trial court issued its order approving the settlement agreement, accompanied by a notice of decision stating its rationale.  In awarding attorney fees and expenses in the amount of $7,624,556.46, the trial court discussed the criteria established in *State ex rel. Burk v. City of Oklahoma City* (*Burk*), 1979 OK 115, 598 P.2d 659, for an attorney fee award.  It found Class counsel expended 3,652 hours in prosecuting the case and a proper hourly rate for this type of action was $400.00 per hour, resulting in a lodestar fee of $1,460,800.00.  However, the trial court reasoned a contingent fee was appropriate in this case because it was customary in class actions and Class counsel took a financial risk, bearing the expenses when the likelihood of recovery was slim.  It stated it also considered the difficulty of pursuing a thirty-year old case with more than 150,000 Class members, the skill and experience of Class counsel, and the excellent result obtained for the Class, among other factors.  The trial court approved

7

extending the contingent fee contract to the Class as a whole, and found $7,520,000.00 was a reasonable fee. It approved recovery of expenses in the amount of $104,556.46 based on the lack of objection. In addition, it awarded incentive fees of $35,000.00 to Adkisson, $25,000.00 to American Petroleum & Mineral Co., Inc., and $1,000.00 each to Moseley, Androphy, and Elk City.

¶10   Nutley appealed the order in Case No. 106,452, and Class Representatives counter-appealed. Chesapeake appealed the order in Case No. 106,455. The Oklahoma Supreme Court consolidated the cases under surviving Case No. 106,452.

¶11   When a question on appeal presents the issue of reasonableness of an attorney fee award, we will review the trial court's decision for abuse of discretion. *Burk*, 598 P.2d at 663. Chesapeake contends 5 O.S.Supp.2004 §7.1,[1] imposing a "fiduciary capacity" on the trial court in setting attorney fees in a class action, changes the standard of review of the trial court's decision. Chesapeake argues the appropriate standard of review is whether the trial court exercised the highest good faith toward the class and not whether it merely abused its discretion as a neutral arbiter of an adversarial dispute. In our view, "the highest good faith" is merely a restatement of

---

[1]   5 O.S.Supp.2004 §7.1 provides,
In class actions, in making an award of attorney fees, the court shall conduct an evidentiary hearing to determine a fair and reasonable fee for class counsel. In making such determination, the court shall act in a fiduciary capacity on behalf of the class.

8

the standard owed to all litigants by an independent and honorable judiciary. *See Code of Jud.Conduct*, 5 O.S.2001 Ch. 1, App. 4, Canon 1. Nothing in the statute indicates the Legislature intended to modify the standard for appellate review of trial court decisions awarding attorney fees in class actions.

I

¶12    Both Chesapeake and Nutley contend the trial court's award of a contingent fee in a class action violated the *Oklahoma Rules of Professional Conduct*, 5 O.S.Supp.2007, Ch. 1, App. 3-A, Rule 1.5(c), which requires a contingent fee agreement to be in writing and signed by the client. The Rules of Professional Conduct regulate lawyers, and are enforced through disciplinary proceedings. The rules are not designed to be a basis for civil liability. 5 O.S.Supp.2007, Ch. 1, App. 3-A, Scope. The trial court itself is not constrained by the requirements of Rule 1.5(c) in determining civil liability for attorney fees, but by statutory and case law. The trial court appropriately may consider whether Class counsel properly entered a contingent fee agreement with Class Representatives pursuant to Rule 1.5(c) in setting fees under the *Burk* factors. However, Class counsel's lack of a written contingent fee agreement with each unnamed class member does not prevent the trial court from extending the Class Representatives' contingent fee agreement to the entire class.

9

6:16-cv-00183-JHP Document 295-9 Filed in ED/OK on 11/28/18 Page 178 of 351

II

¶13    Both Chesapeake and Nutley contend the trial court erred in awarding a percentage fee rather than an hourly fee. Chesapeake argues the Oklahoma Supreme Court has never adopted a percentage method for awarding attorney fees in a class action, and the highest incentive bonus ever approved in reported Oklahoma decisions was the 40% incentive award in *Burk*, 598 P.2d at 662. Both Chesapeake and Nutley argue the percentage fee represents an unreasonable multiplier over the lodestar fee, and both argue the trial court's calculation of a lodestar fee was based on an excessive hourly rate. Both Chesapeake and Nutley argue the trial court failed to act in a fiduciary capacity on behalf of the Class in making the attorney fee award.

¶14    Because Oklahoma's class action scheme closely parallels that provided in the Federal Rules of Civil Procedure, Oklahoma courts often look to federal authority for guidance regarding its rationale. *Shores v. First City Bank Corp.*, 1984 OK 67, ¶ 5, 689 P.2d 299, 301. The Oklahoma Court of Civil Appeals did so in *Sholer v. State ex rel. Dept. of Public Safety*, 1999 OK CIV APP 100, 990 P.2d 294, in refusing a challenge to class certification based on the defendant's objection to the contingent fee agreement between the named plaintiff and class counsel. The Court remanded for further proceedings, including an attorney fee application, and directed that "the trial court may decide whether to approve the contingent fee agreement, and whether

10

to extend the contingent arrangement to all class members." *Id.* at 299. In support, it cited *Deposit Guaranty Natl. Bank v. Roper*, 445 U.S. 326, 100 S.Ct. 1166, 1174, 63 L.Ed.2d 427 (1980), which acknowledged contingent fee agreements in class action cases play a role "in vindicating the rights of individuals who otherwise might not consider it worth the candle to embark on litigation in which the optimum result might be more than consumed by the cost."[2]

¶15    The Oklahoma Supreme Court's directive in *Burk* is consistent with federal cases allowing the extension of contingent fee agreements to the class. *Burk* involved a common fund like that created in class actions.[3] It directed the trial court to establish a reasonable attorney fee by first determining a lodestar fee by multiplying the numbers of hours expended by an hourly rate, and to that lodestar fee add an

---

[2] We find one case in which the Oklahoma Supreme Court partially supported its ruling by an extension of a contingent fee agreement to all class members. In *Tibbetts v. Sight 'n Sound Appliance Centers, Inc.*, 2003 OK 72, 77 P.3d 1042, the plaintiffs brought a class action alleging the defendant retailer violated the Oklahoma Consumer Protection Act, 15 O.S.2001 §761.1, through a bait-and-switch scheme. A jury found for the plaintiffs but awarded no damages. The trial court awarded an attorney fee to the plaintiffs' attorney, and the defendant appealed. In reversing the attorney fee award, the Oklahoma Supreme Court included in its reasoning the observation plaintiffs owed their attorney nothing under their contingent fee contract when counsel sought only monetary relief but recovered no monetary relief at all. *Id.* at 1049.

[3] Under the common fund doctrine, "[w]hen an individual's efforts succeed in creating or preserving a fund which benefits similarly situated non-litigants, equity powers may be invoked to charge that fund with attorney's fees for legal services rendered in its creation or preservation." *Oklahoma Tax Com'n v. Ricks*, 1994 OK 115, 885 P.2d 1336, 1339.

11

incentive or bonus fee determined from a list of factors including the customary fee and whether the fee is fixed or contingent. 598 P.2d at 661. *Burk* expressly authorizes the trial court to consider whether the attorney took the case pursuant to a contingent fee agreement in determining a reasonable fee. Accordingly, we conclude *Burk* contemplates the trial court may in its discretion award the incentive or bonus fee by extending a contingent fee agreement to the beneficiaries of the common fund, especially in the types of cases in which a contingent fee is customary.

¶16 In the present case, Class counsel put on evidence they took the case pursuant to contingent fee agreements with Class Representatives. A former federal judge and oil and gas attorney testified oil and gas class actions were very difficult, accounting-intensive cases. He testified contingent fees were customary in class actions, and he had never heard of hourly fees in such cases. He said Oklahoma courts had awarded compensation based on a percentage of the common fund. The attorney testified he charged $400.00 per hour for his time and Chesapeake paid its attorney $500.00 per hour in another oil and gas class action.

¶17 Another oil and gas attorney testified the market area for lawyers who defend oil and gas class actions is nationwide, and their fee rates exceeded $1,000.00 per hour in some cases. He said the fee rate for a Seminole County lawyer was not the appropriate rate to apply to the case. He testified his own rate was $500.00 per hour.

12

¶18    This record supports the trial court's order finding the lodestar fee to be $1,460,800.00, based on 3652 hours at $400.00 per hour.  The testimony Class counsel had a contingent fee agreement with Class Representatives and that contingent fees are customary in oil and gas class actions supported the trial court's decision to award an incentive or bonus fee by extending the contingent fee agreement to the Class.  We find no abuse of discretion.

### III

¶19    Both Nutley's appeal and Class Representatives' counter-appeal challenge the trial court's decision to base the contingent fee upon a percentage of the Class Fund of $18,800,000.00.  Nutley contends the trial court should have calculated the fee as a percentage of the amount actually paid to the Class after all claims were filed, which Nutley estimated would be less than $3,000,000.00 based upon only 21,116 claims being filed by the deadline, while Class Representatives contend the trial court should have assessed the fee against the total common fund of $30,000,000.00.

¶20    In *Boeing Co. v. Van Gemert*, 444 U.S. 472, 100 S.Ct. 745, 62 L.Ed.2d 676, the U.S. Supreme Court considered whether a proportionate share of the attorney fees awarded to class counsel could be assessed against the unclaimed portion of the common fund.  The Court approved a fee award against the entire fund pursuant to the common fund doctrine when a litigant or lawyer recovers a common fund for the

13

6:16-cv-00184-LK-w-0CLO-cum Document 295-9 Filed 08/17/18 Page 183 of 351

benefit of others and each member of the class has a mathematically ascertainable claim to part of the fund. The Court reasoned the class members were the equitable owners of their respective shares of the recovery whether or not they asserted their rights, and a fee award against the entire fund would shift the costs of litigation to each absent member in the same proportion that the value of the member's claim bears to the total recovery. 444 U.S. at 479-481, 100 S.Ct at 750-751.

¶21 The present case bears the features necessary for an attorney fee award against the total recovery. The Class Representatives and Class counsel recovered a common fund for the benefit of the entire Class, and each Class member's share of the fund is calculable pursuant to the formula set forth in the settlement agreement. Therefore, the trial court did not abuse its discretion in basing the attorney fee on a percentage of the total recovery.

¶22 We also find no abuse of discretion in the trial court's use of the amount of the Class Fund as the total recovery in calculating a percentage fee. Under the original settlement agreement procured by the Class Representatives and Class counsel, the Class Fund in the amount of $18,800,000.00 was the amount recovered for the benefit of the entire Class. Furthermore, the trial court could have applied the *Burk* factors to award a smaller fee than the contingent fee provided by the contract between Class Representatives and Class counsel, and the contract itself acknowledged the trial

14

court might award less than 40% of the total recovery.

## IV

¶23    Chesapeake contends the trial court erred in denying discovery regarding the settlement negotiations between Class counsel and Koch.  It argued the trial court should have investigated the circumstances that lead to a separate Fee Fund and an agreement that Koch would not object to attorney fees and incentive payment up to the amount of the Fee Fund.

¶24    The trial court has broad discretion in deciding discovery matters, and we will not disturb its determination in such matters unless the trial court abused its discretion or its decision is contrary to law.  *Bank of Oklahoma, N.A. v. Briscoe*, 1995 OK CIV APP 156, 911 P.2d 311, 318.  Information is discoverable if it appears reasonably calculated to lead to the discovery of admissible evidence.  12 O.S.Supp.2004 §3226(B)(1).  "Evidence of conduct or statements made in compromise negotiations is not admissible.  12 O.S.2001 §2408.  We find no abuse of discretion or error of law.

## V

¶25    Chesapeake's last contention of error is the notice to the Class was misleading in that it stated there were two funds, a Class Fund and a Fee Fund, and the Fee Fund would not reduce the amount of money available for payment to Class members.

15

Chesapeake contends the trial court should have ordered an amended notice that the Class's ultimate recovery would be reduced by the amount of attorney fees.

¶26 Notice of a proposed compromise shall be given to the Class members "in such manner as the court directs." 12 O.S.2001 §2023(E). The adequacy of notice in providing due process and complying with procedural rules is measured by a reasonableness standard; the notice must fairly apprise prospective class members of the terms of the proposed settlement and of their options. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 113-114 (2d Cir. 2005). When an amendment to the settlement benefits the class, new notice is not required. *See In re Integra Realty Resources, Inc.*, 262 F.3d 1089, 1111 (10th Cir. 2001).

¶27 The notice of proposed settlement in the present case fairly apprised the Class members of the terms of the settlement as then negotiated. After the trial court rejected the settlement because it separated the Fee Fund from the total fund, the parties renegotiated the settlement to treat the settlement fund as a single common fund from which the attorney fee and incentive payment awards would reduce the amount available to the Class. However, that change to the settlement agreement had the effect of increasing the amount available to the Class, because the attorney fee and incentive payments awards approved by the trial court were less than the amount Koch had agreed to place in the Fee Fund. Accordingly, new notice was not required.

## VI

¶28 Lastly, Class Representatives contend the trial court should have awarded Class Representatives Moseley, Androphy, and Elk City more than $1,000.00 in incentive fees. The relevant factors in whether such an incentive award to class representatives is warranted "include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).

¶29 The two Class Representatives who received incentive payments of $35,000.00 and $25,000.00 testified at the evidentiary hearing regarding their efforts in the case. The three Class Representatives who received only $1,000.00 each did not testify, and the trial court found "nothing in the record suggests [they] participated in any vital way in the litigation." Based on the absence of evidence otherwise, we find no abuse of discretion.

¶30 For the foregoing reasons, the trial court's order is AFFIRMED.

MITCHELL, C.J., and JOPLIN, J., concur.

6:16   Case 5:16-cv-00100   Document Document 295-18   Filed in ED/OK00817261-8   Page 187 of 351

# EXHIBIT 10

## IN THE DISTRICT COURT OF WASHITA COUNTY
## STATE OF OKLAHOMA

BANK OF AMERICA, as TRUSTEE, BRAD )
GLEN GILBERT, STEVE DON GILBERT, )
GLEN JONES and DELLA MAE JONES, )
TRUSTEES, et al., )
                          )
Plaintiffs, )
                          )
v. )
                          )     Case No. CJ-97-68
EL PASO NATURAL GAS COMPANY, a )    (Consolidated)
Delaware corporation; and BURLINGTON )    Judge Ellis Cabaniss
RESOURCES OIL & GAS COMPANY, )
formerly Meridian Oil, Inc. and Meridian Oil )
Production Company, formerly El Paso )
Exploration Company a Delaware corporation, )
et al., and BURLINGTON RESOURCES )
TRADING, INC.,formerly Meridian Oil )
Trading, Inc. )
                          )
Defendants. )

WASHITA COUNTY, OKLAHOMA

F I L E D

JUN 21 2006

TENA ARGANBRIGHT, COURT CLERK
BY _____ DEPUTY

## ORDER ON MOTION FOR ATTORNEY FEES, LITIGATION EXPENSES, CLASS REPRESENTATIVES FEES AND ADMINISTRATION COSTS FROM THE COMMON FUND

This matter came on for hearing on the 23rd and 24th days of May, 2006 on Plaintiffs' and Class Counsel's Motion For Attorney Fees, Litigation Expenses, Class Representatives Fees and Administrative Costs from the Common Fund. Counsel for all Parties being present are as follows: Appearing on behalf of Plaintiffs and the Class were Bradley D. Brickell, Christine R. Fritze, Loyd Benson, Stephen D. Beam, Stephen R. McNamara, Terry W. Tippens and Michael Swaim. Appearing on behalf of Settling Defendants were Shannon H. Ratliff, J. Kevin Hayes, Michael L. Navarre, Terry D. Ragsdale, and Michael Campbell. Class member Chesapeake Energy Corporation was represented by in-house counsel Fred R. Gipson. After reviewing the motion and all related

EXHIBIT

pleadings, having reviewed the evidence submitted, having heard the testimony and arguments presented, and being fully advised in the premises, **THE COURT FINDS AS FOLLOWS:**

### The Request for Class Counsel Attorney Fee:

1. Certain terms as defined in the Settlement Agreement are used in this Order.

2. Over 3,000 class member notices were mailed out and only four (4) objections were filed. No objecting Class Members attended the hearing, except Chesapeake Energy Corporation ("Chesapeake"). Chesapeake stipulated on the record that (a) it did not have a specific recommendation or proposal as to the appropriate percentage of fees which should be awarded or the amount of Litigation Costs to be reimbursed from the Common Fund and (b) its objection was limited to Chesapeake's interest and not the imposition of Class Counsel Fees and Litigation Expenses upon other Class Members.

3. Nancy C. Gaughan, M.E. Benton, Willie Nell Benton and Frederick M. Scott as Trustee of the Scott Family Trust, filed written objections to Class Counsel's request for attorneys' fees. The Court carefully considered each such objection in making this determination.

4. On May 16, 2006, Chesapeake filed a "Request for Appointment of a Receiver to Review Fee Request of Class Counsel." The Court considered the arguments and authorities cited by Chesapeake and, for the reasons set forth below denies Chesapeake's Request for an Appointment of a Receiver, as follows: (1) it is the Court's duty to determine a reasonable attorney's fee, and it is inappropriate for the Court to appoint a receiver to make, or assist in making, that determination, and (2) Chesapeake does not refer to any authority under Oklahoma Law that would authorize this Court to appoint a receiver in this context.

5.      This Court has carefully considered and applied Title 5 O.S. § 7.1 as well as all of the testimony and evidence offered at the hearing. The Court is of the opinion that it must review class counsel's fee request as a fiduciary having due regard for the interests of absent Class Members. The Court takes judicial notice of the time expended by Class Counsel directly before the Court in the two Motions to Certify, dozens of Motions for Partial Summary Judgment and to decertify; the vast amount of pre-trial discovery and proceedings; and the four weeks of continuous trial time expended by Class Counsel directly before this Court.

6.      This Court notes that the Annotated *Manual for Complex Litigation*, Fourth Edition 2005, § 14, p. 207 indicates "[i]n class actions involving monetary stakes, the natural conflict that arises between lawyers and Class Members necessarily draws the judge into the role of regulating and awarding attorney fees. Unless the judge protects the interests of absentee Class Members, those interests may go unrepresented."

7.      This court incorporates the recital of governing authorities and standards set forth in the Order approving attorney fees in *Lobo Exploration Company vs. BP American production Company*, Case No. CJ-97-72, District Court of Beaver County, Oklahoma, the *Manual for Complex Litigation* and Oklahoma jurisprudence all of which approve the award of fees as a percentage of the common fund. In class actions, such as these, percentage or contingency fees have important advantages that provide self-regulating incentives for efficiency and compensates counsel on the real value of the services provided.

-3-

8.    These sources list factors to be considered by the trial court in making this decision. First, in Oklahoma, the *Burk*[1] factors are to be considered. Then, the *Manual for Complex Litigation* lists certain additional factors[2].

9.    In *Burk*, the factors listed are: time and labor required, novelty and difficulty of the question; the skill requisite to perform the legal services properly; preclusion of other employment; customary fee; whether the fee is fixed or contingent; time limitation imposed by client or circumstances; the amount involved and results obtained; and, experience, reputation and ability of counsel.

10.    Class Counsel presented as witnesses two attorneys. Allan DeVore has significant experience in representing classes in similar class action litigation and the other, Denver Meacham has extensive knowledge of the local bar and their ability to represent parties in complex oil and gas litigation. The following nine factors were the focus of testimony by Mr. DeVore in detail and generally by Mr. Meacham.

    1)    <u>Time and labor required</u>.  Counsel has made substantial time and labor commitments which have now inured to the financial benefit of the Plaintiff Class.

---

[1] *State ex rel. Burk v. City of Oklahoma City*, 1979 OK 115, 598 P.2d 659.

[2] Annotated *Manual for Complex Litigation*, Fourth Edition 2005, § 14.12, p. 214. These are as follows:
    The size of the fund and the number of persons who actually receive monetary benefits;
    Any agreements or understandings, including side agreements, between attorneys and their clients or other counsel involved in the litigation;
    Any substantial objections to the settlement terms or fees requested by counsel for the class by class members (it is, however, a court's duty to scrutinize applications for fees, independently of any objection . . .;
    The skill and efficiency of the attorneys;
    The risks of non-recovery and nonpayment;
    The amount of time reasonably devoted to the case by counsel; even where fees are to be awarded on a percentage-of-fund basis, some judges cross-check the percentage by conducting a modified lodestar analysis; and
    The awards in similar cases.

-4-

2)      The novelty and difficulty of the question. The oil and gas accounting issues involved in this case have proved to be very complex. Without question the issues in the litigation were complex and difficult.

3)      The skill requisite to perform the legal services properly. The unique nature of this case, coupled with the issues, mandated that the Class be represented by skilled counsel. To prosecute these claims against large corporate defendants represented by highly capable defense counsel with extensive resources necessitated assembling a team of Class Counsel skilled in oil and gas litigation, as well as details of complex litigation. Counsel's qualifications, skills and experience are well known throughout the oil and gas legal community. Class Counsel are certainly highly skilled and capable counsel.

4)      The preclusion of other employment. Class Counsel are engaged in the on-going practice of law. Class Counsel are either sole practitioners or members of small firms. The prosecution of this case has substantially reduced Class Counsel's opportunity for employment in other matters.

5)      The customary fee. These types of cases (oil and gas class action cases) are typically handled on a contingent fee basis.

6)      Whether the fee is fixed or contingent. Class Counsel entered into contingency fee agreements with the Class Representatives as discussed herein. Counsel proposed that the 40% contracted rate with the Plaintiffs also be applied to the entire Class.

7)      Time limitations imposed by client or circumstances. Numerous time limitations were imposed on Class Counsel throughout the course of the proceedings. This Court and the appellate courts imposed time limitations through case scheduling over the last nine years that forced Class Counsel to perform services of great magnitude by certain dates. The schedules of the courts, witnesses and clients were also accommodated on a regular basis by Class Counsel. A case of the size and complexity existing here required the commitment of a large percentage of the total time and resources of the firms of Class Counsel and worked significant hardships on them over the course of this case. The circumstances of the case required the litigation to be vigorously pursued if an excellent recovery through settlement was to be achieved. Class Counsel, in fact, did vigorously prosecute the case and obtained excellent results for the Class.

8)      The amount involved and the results obtained. There can be no doubt that, at the outset, Class Counsel had no assurance of any recovery. Considering all involved, the amount and terms of the settlement reflect the quality of the result and

the outstanding benefits provided by Class Counsel to the Class. The Court considers this settlement to be an excellent result for the Class.

9)    Experience, reputation and ability of counsel. Class Counsel's qualifications, skill, experience, ability and reputation are well known throughout the oil and gas and complex litigation legal communities. Further, Class Counsel illustrated superior skills to this Court and appear to be excellent litigators.

11.    The tenth factor listed in *Burk* is the undesirability of the case. A case like this is desirable should counsel hit a home run. However, it is undesirable because it is extremely risky, expensive and stressful and takes years of effort and energy. Few solo and small firms can afford to take on major law firms representing major oil companies because of that. Both witnesses, DeVore and Meacham, indicated that in their extensive experience they knew of few firms within this state who handle such litigation due both to the extreme risks and the amount of expertise involved.

12.    Multiplier as an additional factor: In 1980, the Oklahoma Supreme Court has followed and modified *Burk, supra,* to further instruct District Courts that counsel fees cannot be fairly awarded on the basis of time alone, but other factors, particularly the litigation risk factor, must be considered. In this case, the summary of attorney fee hours shows a multiplier of approximately 3.6 results in the fee as requested. This multiplier is within an acceptable range as a cross-check.

13.    Most jurisdictions agree that the time and labor spent by the attorney(s) should be considered in connection with other factors in setting a reasonable fee. However, fees cannot fairly be awarded on the basis of time alone. Time as the sole criterion is of dubious value because economy of time could cease to be a virtue; and inexperience, inefficiency, and incompetence may be rewarded to the detriment of expeditious disposition of litigation. Although the court initially looks to the hourly rate for comparable representation where compensation is guaranteed, it must

-6-

adjust the basic hourly rate where compensation is contingent by assessing the likelihood of success at the outset of the representation, which herein was in 1997. See *Oliver's Sportcenter, Inc. vs. National Standard Ins. Co.*, 1980 OK 120, 615 P.2d 291.

14. Stated more clearly in terms that we are dealing with here, once the amount of reasonable hourly billing has been determined, the court may use this as a cross-check to determine whether the percentage recovery sought from the common fund is reasonable. Here the fee request is approximately 3.6 times the billed amount.

**Application:**

15. The *Manual for Complex Litigation*[3], and Oklahoma jurisprudence[4] approve of the common fund doctrine, and allow a percentage or contingency of the fund created in settlement of the case as the attorney's fees for plaintiff's counsel. In class actions such as this, the percentage fee or contingency fee has important advantages to the Class in that it provides self-regulating incentives for efficiency. First, it compensates counsel on the real value of the services provided (the amount of benefit conferred). Second, the percentage approach rewards efficiency. Not only is there no reward for inefficiency, there is a penalty due to the fact that, i.e. if the work is unnecessary, the lawyer has wasted his time. Third, the percentage method encourages counsel to go the extra mile. Counsel has an incentive to push beyond a "good" recovery to an "excellent" recovery. The Court certainly considers the existing Common Fund herein to be an excellent recovery to the Class Members. Thus, under this percentage approach, the interests of the Class and Class Counsel are consistent and aligned.

---

[3] Annotated *Manual for Complex Litigation*, Fourth Edition 2005, § 14.121

[4] *Oklahoma Tax Commission v. Ricks*, 1994 OK 115, 885 P.2d 1336, 1339.

16. This court must now determine what a reasonable and fair percentage is for both counsel and the Class.

17. In arriving at a fair percentage, this Court considered the basic guidelines established in *State ex rel. Burk v. City of Oklahoma City*, 1979 OK 115, 598 P.2d 659, and also the additional factors from the *Manual for Complex Litigation*.

18. Reviewing the facts in light of the additional factors from *the Manual for Complex Litigation* provides the following:

a. *The size of the fund and the number of persons who actually receive monetary benefits:* Here, there are thousands of class members. Clearly this is a significant fund, $66,000,000, for which the class members shall receive a benefit. It is estimated that approximately 650 class members will receive a gross recovery between $10,000 and $1,000,000 and 8 will receive in excess of $1,000,000

b. *Any agreements or understandings, including side agreements, between attorneys and their clients or other counsel involved in the litigation:* Here, there are at least 90 contingency agreements of 40 percent between Class Counsel and class representatives, entered into at the onset of this case.

c. *Any substantial objections to the settlement terms or fees requested by counsel for the class by class members*: Here, the only objector appearing at the hearing was Chesapeake Energy, who objected solely to the issue of attorney fees, and not the fairness of the settlement.

d. *The skill and efficiency of the attorneys:* It is clear that this result could not have been reached except for the great skill, tenacity, risk, endurance, and insight of Class Counsel into both the merits of this litigation, and what was a reasonable damage amount. It is also clear that without such Class Counsel that the class would likely not have benefitted at all, or very little.

e. *The amount of time reasonably devoted.* The Court has no reason to question 19,200 hours were involved in prosecuting this case. While this is a lot of time, Class Counsel had to do a lot to prepare; they were not outworked nor outspent by the five (5) large firms representing the defendants; they worked hard and the results showed.

-8-

19. Further, this litigation has been hard fought at least since its filing in 1997, and only settled at the eve of the jury beginning their deliberation. Previous offers of settlement were significantly less than the current settlement amount. The settlement became possible due to Class Counsel expending tremendous amounts of time and money – so that they discovered the strengths of their case, and the damages – so that the amounts of loss could be accurately determined. It was only at a late hour, after the many issues were developed and tried was this matter able to settle. This, again, was due to the skill and tenacity of Class Counsel.

20. In summation, Class Counsel has conferred great benefits on this class without which they otherwise would have otherwise received nothing.

**Application to the Particular Facts at Bar:**

21. To reach a decision upon the pending request for fees and costs in this case, the authorities indicate that this amount must be determined ultimately by the specific facts of this case. These findings have generally been made via the *Burk* factors, and this court's findings on the factors within the *Manual for Complex Litigation*. Thus, I will only comment generally on a few of the facts considered, to wit.

1. NationsBank Trustee, et. al v. El Paso Natural Gas Co., et. al (CJ-97-68) was filed on July 21, 1997 and Moore, et. al v. Burlington Northern Inc. et. al (CJ-97-132) was filed on December 15, 1997; after initial discovery in both cases and hearings, the trial court on July 9, 1999 and December 2, 1999, certified each case as class actions. Each order certifying the actions as class actions were appealed and the Oklahoma Court of Civil Appeals affirmed both orders.(*Nationsbank N.A. v. EPNG*, IN-93472 - *Moore v. Burlington Northern, Inc.*, IN-94108). After the appeals, the two cases were consolidated.

2. From that time the class attorneys have conducted extensive discovery: approximately 45 gigabytes of accounting data; an additional 1,000 boxes of documents, 6.61 gigabytes of additional electronic data, and 92 depositions.

-9-

Additionally, there have been many contested hearings and extensive briefing.

3. Notice of the action to the approximate 3,500 class members was mailed in 2004 and of the Settlement in 2006; additionally the Notices were published, the later being published in Cheyenne Star, Cordell Beacon, Journal Record, Daily Oklahoman, Sayre Record/Beckham Co. Democrat and Tulsa World. After the first Notice 26 class members opted out. After the 2006 Settlement Notice only 5 additional class members opted out.

4. Both parties retained a number of experts; these experts submitted written reports and were subsequently deposed. There were a number of motions filed pertaining to these experts, including *Daubert* motions and numerous motions in limine objecting to the tendered expert testimony and other evidence.

5. Additionally, there have been a large number of other motions filed, briefed and heard and re-heard by this court including, many motions for partial summary judgment (on a number of issues).

6. This matter was set for pretrial where in numerous matters, including extensive motions in limine were argued. On October 10, 2005 the trial began and continued until November 9, 2005.

22. In accomplishing all of the above, to date Class Counsel have expended significant sums of money (the "litigation expenses" requested were $1,759,905.59), plus more than 19,000 hours of billable time (the billing summary submitted showed the respective hourly rates for each of the respective attorneys and an aggregate total of approximately $7,340,000). These hours were documented by a summary, which was prepared from the actual billing records. The Court finds that an examination of the line by line time records is not necessary, based on the known veracity of class counsel, the testimony of the expert who reviewed the time records, Allan DeVore, and the Court's personal knowledge of the case. These expenditures by class counsel translate to a great amount of risk of time and money, plus skill and effort expended over a lengthy period of time by the highly skilled and tenacious counsel for the Class.

-10-

a. A settlement agreement has been executed by the parties, and approved by this court for $66 million, which amount is now drawing interest; this is an outstanding settlement.

b. Only four objections were filed. Only one of these, Chesapeake, appeared at the hearing to object to the amount of attorneys fees requested.

c. Finally, over 90 Class representatives executed a contingency fee agreement with Class Counsel providing for attorneys' fee of forty percent (40 %) percent [of the recovery].

23. Based upon the Court's analysis of all of the factors, including those above-listed, the Court finds a reasonable fee in this case to be awarded from the Class Members' share is thirty-seven percent (37%) percent of the Settlement Fund, including accrued interest thereon. The Court further finds that the objection of Chesapeake specifically objecting as to the fees and costs proposed against their its own interest should be granted, and the proposed 40% attorney fee attributable to Chesapeake's interest is reduced to 37%, as well. The Court further finds that Chesapeake stipulated that it did not propose any alternative proposal/percentage to the Court, nor did it state that its attorney fee share should be zero.

## The Request for Expert Witness Fees, and Litigation Expenses

24. The Court, having reviewed the request for reimbursement of Litigation Expenses, including the expert witness fees and other Litigation Expenses incurred in pursuit of the class claims, and having heard testimony of Class Counsel regarding the necessity of such expenditures in preparation of the case, and having seen the results of such expenditures in the pre-trial and trial activities conducted herein, finds that reasonable expert witness fees and Litigation Expenses were incurred in the amount of $1,692,646.45 which is a reduction of $67,259.14 from that requested by Class Counsel. The objector, Chesapeake, stated that it was not denied any pre-hearing access to the

back-up information on either attorney's fees or costs; the court does not need further amplification of the litigation expenditures awarded, having seen the evidence of such expenditures by the extent of witnesses and documents produced at trial.

### The Request for Class Representatives Fee:

25. The Court finds the Class Representatives have also made substantial time and labor commitments to the Class, and have incurred both legal and financial risks while pursuing this case on behalf of the Class, all of which resulted in obtaining an excellent benefit for the Class. The granting of a Class Representative fee is based upon the same equitable considerations discussed above which related to a party's efforts in the creation of a common fund for the mutual benefit of a class. Awards to Class Representatives of 1% of the common fund are typical in these types of actions, with some awards approaching 5% of the common fund. In this action, Class Counsel has recommended and requested an aggregate Class Representatives' fee of less than one-half of one percent, (.34%) of the Settlement Fund. The Court finds that compensation to the Class Representatives in the amount of $224,000.00 to be distributed to the Class Representatives pursuant to the plan of allocation proposed by Class Counsel and admitted into evidence is fair and reasonable compensation.

26. The Court further finds that the Class Counsel's Proposed Administrative Procedure Number 1 (denoted as Court aid No. 60) will be utilized in the administration of the Settlement Fund and that the estimated Administrative Costs of $414,130.92 are approved.

### IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT:

(1) Class Counsel are awarded attorney fees in the amount of 37% of the Common Fund together with interest in accordance with the Settlement Agreement;

(2) Class Counsel are awarded reimbursement of Litigation Expenses in the amount of $ 1,692,646.45;

(3) Class Representatives are awarded fees in the aggregate amount of $ 224,000 or .34% of the Settlement Fund; and

(4) $ 414,130.92 is allowed as proposed Administration Costs subject to further adjustments and/or modifications of this Court.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED THAT, as shown in the Court's Findings above, Chesapeake's objection is limited by stipulation solely to Chesapeake's own individual interest; the Court, therefore, orders that the objection of Chesapeake is applicable to its own allocated share of the proceeds and not to allocations made to all other Plaintiffs and Class Members. The Settlement Administrator shall proceed to prepare a proposed allocation of the Settlement Proceeds to all Plaintiffs and Class Members in accordance herewith, to be submitted by Class Counsel in an application for distribution upon the deposit of the Settlement Funds in the Bank of America Settlement Distribution Account I.

Finding no just reason to delay the finality of this Order, the Court directs that it be filed as a final judgment. The Court hereby retains jurisdiction of the allocation of Litigation Expenses, Administrative Expenses, Attorney Fees, and Class Representative Fees.

IT IS SO ORDERED this 21 day of June, 2006

JUDGE ELLIS CABANISS
Associate Judge of the District
Court of Washita County
State of Oklahoma

Approved as to Form:

Bradley D. Brickell OBA #1117
Christine Fritze, OBA 13942
BRICKELL & ASSOCIATES, P.L.C.
950 Hightower Building, 105 North Hudson
Oklahoma City, OK 73102
Telephone: (405) 236-0008
Facsimile: (405) 236-0013

Stephen R. McNamara, OBA #6071
Stephen K. Balman, OBA #492
SNEED LANG, P.C.
1700 Williams Center Tower I
Tulsa, OK 74103-3522
Telephone: (918) 583-3145
Facsimile: (918) 582-0410

Loyd Benson, OBA #721
McBee, Benson & Benson
124 N. Ninth
P.O. Box 486
Frederick, Oklahoma 73542
Telephone:(580) 335-7541
Facsimile: (580) 335-7543

Michael T. Swaim
14300 Cornerstone Village II, Suite 300
Houston, Texas 77014
Telephone: (281) 440-2010
Facsimile: (281) 440-2012

Stephen D. Beam, OBA #625
P.O. Box 31
Weatherford, OK 73096
Telephone: (580) 772-2900

Terry W. Tippens, OBA #9027
Fellers, Snider
100 N. Broadway, Suite 1700
Oklahoma City, OK 73102
Telephone: (405) 232-0621
Facsimile: (405) 232-9659
**ATTORNEYS FOR PLAINTIFF**

Kevin Hayes, OBA #4001
Mark Banner, OBA #13243
HALL, ESTILL, HARDWICK, GABLE,
GOLDEN & NELSON
320 South Boston Avenue, Suite 400
Tulsa, Oklahoma 74103
Telephone: (918) 594-0400
Facsimile: (918) 594-0505
**ATTORNEYS FOR DEFENDANTS,
EL PASO NATURAL GAS COMPANY
AND BURLINGTON RESOURCES OIL
& GAS COMPANY**

Shannon Ratliff
Michael Navarro
Ratliff Law Offices
600 Congress Avenue, Suite 3100
Austin, Texas 78701-2984
**ATTORNEYS FOR DEFENDANTS,
BURLINGTON RESOURCES OIL &
GAS COMPANY**

M. Benjamin Singletary, OBA #008273
Dennis C. Cameron, OBA #012236
Terry Ragsdale, OBA #015333
Lisa T. Silvestri, OBA #019239
1100 ONEOK Plaza
100 West Fifth Street
Tulsa, Oklahoma 74103-4217
Telephone: (918) 595-4800
Facsimile: (918) 595-4990
**ATTORNEYS FOR DEFENDANT
EL PASO NATURAL GAS COMPANY**

Clyde A. Muchmore, OBA #6482
Mark D. Christiansen, OBA #1675
Crowe & Dunlevy
20 N. Broadway, Suite 1800
Oklahoma City, OK 73102
Telephone: (405) 235-7734
Facsimile: (405) 272-5211
**ATTORNEYS FOR DEFENDANTS,
EL PASO NATURAL GAS COMPANY
AND BURLINGTON RESOURCES OIL
& GAS COMPANY**

-14-

# EXHIBIT 11

IN THE DISTRICT COURT WITHIN AND FOR BEAVER COUNTY
STATE OF OKLAHOMA

JERALD LYNN LAVERTY, for himself and )
all others similarly situated, ) Case No. CJ-2002-101
)
      Plaintiff, )
)
vs. )
)
NEWFIELD EXPLORATION )
MID-CONTINENT INC. )
)
      Defendant. )

FILED
BEAVER COUNTY, OK
2007 AUG 27 PM 1:52
SHARON RAVEN
COURT CLERK

## ORDER ON MOTION FOR ATTORNEY FEES, LITIGATION EXPENSES, AND CLASS REPRESENTATIVE'S FEE

This matter came on for hearing on the 27th day of August, 2006, on Class Representative's and Class Counsels' motion for attorney fees, litigation expenses and Class Representative's fee. All named parties were present and represented by counsel, and no opposing parties appeared. After reviewing the motion and all related pleadings, having reviewed the evidence submitted, having heard the testimony and arguments presented, and being fully advised in the premises, **THE COURT FINDS AND ORDERS AS FOLLOWS:**

Attorneys' Fees: This court notes that the Annotated *Manual for Complex Litigation,* Fourth Edition 2005, § 14, p. 207 indicates "In class actions involving monetary stakes, the natural conflict that arises between lawyers and class members necessarily draws the judge into the role of regulating and awarding attorney fees. Unless the judge protects the interests of absentee class members, those interests may go unrepresented." In addition, the Court is well aware of its obligations under 5 O.S. § 7.1 which provides as follows:

- 1 -

> In class actions, in making an award of attorney fees, the court shall conduct an evidentiary hearing to determine a fair and reasonable fee for class counsel. In making such determination, the court shall act in a fiduciary capacity on behalf of the class.

The Court, in rendering this opinion, has carefully and independently considered the testimony of class counsel, the pleadings filed herein, including the authority attached to class counsel's fee application and the testimony of the class expert. The Court takes judicial notice of the time expended by Class Counsel directly before the Court on Motions to Dismiss, Motions for Summary Judgment, discovery motions, the class certification hearing and the vast amount of work required to advance a case of this complexity. In addition, the Court has taken into consideration the numerous years of experience this Court has in awarding, evaluating and determining reasonable attorney fees. The Court takes its role seriously and has taken independent and reasonable precautions to protect the interests of the class in undertaking its duties.

*Newberg on Class Actions*, Fourth Edition, § 14.6, p. 550, indicates that a fixed percentage, no matter the size of the common fund, aligns the interests of the class and class counsel so that as the settlement/judgment amount increases, the attorneys' fees do so proportionately. This suggests that a system using such a fixed percent mimics the market, and is best for both the class and class counsel. The Court's analysis is that the award must be based upon the specific facts of the case. Clearly, the settlement amount is to be considered within the facts of the particular case.

The Court incorporates the authorities and standards set forth in Plaintiff's Motion, including the authorities set forth within the exhibits thereto, and in the *Manual for Complex Litigation* and Oklahoma jurisprudence all of which approve the award of fees in a case such as

- 2 -

this as a percentage of the common fund. In class actions, percentage or contingency fees have important advantages that provide self-regulating incentives for efficiency and compensates counsel on the real value of the services provided.

In Oklahoma, the *Burk*[1] factors are to be considered. Then, the *Manual for Complex Litigation* lists certain additional factors[2]. Based upon these factors this court will evaluate the requests of counsel in light of the facts of this particular case, to wit:

a. This case was filed in December, 2002, after class counsel and the class representative conducted a preliminary investigation and research. After initial discovery, a two-day evidentiary trial was held in July, 2004, and the class was certified by the trial court on August 9, 2005. The Oklahoma Court of Civil Appeals affirmed this order in an unpublished opinion on August 25, 2006.

b. Class Counsel successfully overcame a motion to dismiss and motions for summary judgment. In addition, class counsel have engaged in extensive discovery, depositions and reviewing a significant number of boxes of documents in addition to electronic discovery. There have been contested hearings pertaining to this discovery.

c. Notice has been mailed and published to approximately 17,000 class members. The opt-outs were few and there were no substantive objections to the settlement itself.

d. The parties have retained and worked extensively with accounting and gas marketing experts.

e. Each portion of these matters heard by this court was skillfully and hotly contested by counsel; including both extensive pre-hearing briefs, and then supplementary verbal arguments.

f. In accomplishing all of the above, to date Class counsel has expended significant sums of money (the "litigation expenses" requested were $504,444.16), plus approximately 4,675 hours of billable time (the bill submitted for this calculated as the respective hourly rates for each of the respective attorneys aggregates approximately $1,636,390). This translates to great risks, skill and effort expended over a lengthy period of time by very tenacious counsel for the Class.

g. A settlement agreement has been executed by the parties, and approved by this court for $17,250,000. This amount has been deposited in a secure account where it is now drawing interest. The gross recovery equates to approximately ¢58/MCF for class members, the largest known royalty class settlement of 3rd party marketing fee deductions. Thus, this is an outstanding settlement.

h. Only three objections were filed[3]. A certain number of objections are expected in cases with a large number of class members. If only a small number of objections

---

[1] *State ex rel. Burk v. City of Oklahoma City*, 1979 OK 115, 598 P.2d 659.
[2] Annotated *Manual for Complex Litigation*, Fourth Edition 2005, § 14.12, p. 214. See below.

- 3 -

are received, that fact can be viewed as indicative of the adequacy of the settlement. *See generally,* Newberg on Class Actions, 4th ed., §11:41 (2002), citing to *In re Austrian and German Bank Holocaust Litigation,* 80 F.Supp.2d 164, 174-75 (S.D.N.Y. 2000). A small number of objectors is one indication to the fairness of a settlement. *See generally,* Newberg on Class Actions, 4th ed., §11:48 (2002). The court considers the class response to the settlement as an indication that the settlement is an excellent recovery.

i. Finally the Class representative executed a contingency fee agreement with Class Counsel allowing them an attorneys' fee of Forty (40%) percent of the common fund.

j. In addition to the facts above, Class Counsel presented an expert witness who has significant experience in similar class action litigation, Allan DeVore. Mr. DeVore indicated as follows:

   i. He has extensive experience in similar class action litigation, and that there were few firms within this state who handle such litigation due both to the extreme risks and the amount of expertise involved.

   ii. The case at bar was very complex and difficult litigation with excellent defense counsel. Thus, plaintiff's counsel was equally skilled and tenacious. Class Counsel overcame substantial obstacles in getting the case certified which was affirmed on appeal.

   iii. Further, had this matter have gone to trial, the estimate is many more years of litigation which could more than double the time required, expenses, and significantly increase the risks. For example should the class loose one or more of the issues, then their recovery could be significantly reduced. Thus, while recovery could be lower or higher than the settlement, should this have proceeded to trial, the risks and expenses of said trial certainly militate in favor of this excellent settlement.

   iv. As noted above, this was an outstanding settlement. Further, it was accomplished in great part due to the tenacity and skill of class counsel. These attorneys should reap rewards for their diligence, skill and due to the risks involved.

**APPLICATION:**

---

[3] Two objections were filed and limited only to Class Counsel's Fee request. Both of these objections were withdrawn prior to the hearing. The only other objection was the hand-written document filed by Mr. Hubbard which commented on the notice period and the fee request of counsel. The Court notes that Mr. Hubbard's filing failed to comply with the Court's notice regarding objections. In addition, Mr. Hubbard failed to appear at the hearing to present his objection and the request that his appearance be waived is denied. Moreover, Mr. Hubbard failed to provide the court with any factual or legal basis to support his objection nor did he present any argument in support thereof. Notwithstanding the deficiencies of Mr. Hubbard's filing, the Court considered the merits of the objection and, based upon all of the information before the Court, finds that said objection should be overruled and that Plaintiff's Motion for Fees and Costs should be granted.

*Newberg*[4], the *Manuel for Complex Litigation*[5], and Oklahoma jurisprudence[6] approve of the common fund doctrine, and allow taking a percentage or contingency of the fund created in settlement of the case as the attorney's fees for plaintiff's counsel. In class actions such as this, the percentage fee or contingency fee has important advantages to the Class in that it provides self-regulating incentives for efficiency. First, it compensates counsel on the real value of the services provided (the amount of benefit conferred). Second, the percentage approach rewards efficiency. Not only is there no reward for inefficiency, there is a penalty due to the fact that, if the work is unnecessary, the lawyer has wasted his time. Third, the percentage method encourages counsel to go the extra mile. Counsel has an incentive to push beyond a "good" recovery to an "excellent" recovery. The Court certainly considers the existing Common Fund to be an excellent recovery to the Class Members. Thus, under this percentage approach, the interests of the Class and Class Counsel are consistent and aligned.

However, this court must still determine what a reasonable and fair percentage is for both counsel and the Class.

In arriving at a fair percentage, the Court will consider the basic guidelines established in *State ex rel. Burk v. City of Oklahoma City*, 1979 OK 115, 598 P.2d 659[7], and also the additional factors from the *Manuel for Complex Litigation*. In *Burk*, the Supreme Court enunciated twelve factors to be considered by the District Court in fixing fees under the lodestar approach. These factors, evaluated below, give this Court a general indication that the requested forty percent (40%) attorney fee from the common fund is reasonable.

---

[4] *Newberg on Class Actions*, Fourth Edition, § 14.6.

[5] Annotated *Manual for Complex Litigation*, Fourth Edition 2005, § 14.121

[6] *Oklahoma Tax Commission v. Ricks*, 1994 OK 115, 885 P.2d 1336, 1339 and authority cited in Plaintiff's brief are incorporated herein and made a part hereof.

[7] The Court recognizes that *Burk* was not a class action and that the equitable fund created by the attorneys' effort benefited only the City of Oklahoma City. The attorneys' fee awarded in that case amounted to 100% of the equitable fund currently available and all of the benefit due the City for several years into the future.

1)     <u>Time and labor required</u>. Counsel has made substantial time and labor commitments which have now inured to the financial benefit of the Plaintiff Class.

2)     <u>The novelty and difficulty of the question.</u> The oil and gas accounting issues involved in this case have proved to be very complex. Further, as noted in the hearing much of what was done here "plowed new ground". Without question the issues in the litigation were novel, complex and difficult.

3)     <u>The skill requisite to perform the legal services properly</u>. The unique nature of this case, coupled with the issues, mandated that the Class be represented by skilled counsel. To prosecute these claims against a large corporate defendant represented by highly capable defense counsel with extensive resources necessitated assembling a team of Class Counsel skilled in oil and gas litigation, as well as details of complex litigation. Counsel's qualifications, skills and experience are well known throughout the oil and gas legal community. Class Counsel are certainly highly skilled and capable counsel.

4)     <u>The preclusion of other employment.</u> Class Counsel are engaged in the on-going practice of law. Had Class Counsel not committed their resources to this case, Class Counsel could have accepted other matters, but did not. The prosecution of this case has very substantially reduced Class Counsels' opportunity for employment in other matters. Class Counsel are either solo practitioners or members of small firms. The prosecution of this case has substantially reduced Class Counsels' opportunity for employment in other cases.

5)     <u>The customary fee.</u> These types of cases (oil and gas class action cases) are handled on a contingent fee basis. What is reasonable and normal is discussed below, but this is to be determined on a case by case basis, dependant upon the facts of this particular case.

6)     <u>Whether the fee is fixed or contingent.</u> Class Counsel entered into contingency fee agreements with the Class Representative as discussed above.

7)     <u>Time limitations imposed by client or circumstances.</u> Numerous time limitations were imposed on Class Counsel throughout the course of the proceedings. This Court and the appellate courts imposed time limitations through case scheduling over the past several years that forced Class Counsel to perform services of great magnitude by certain dates. The schedules of the courts, witnesses and clients were also accommodated on a regular basis by Class Counsel. A case of the size and complexity

-6-

existing here required the commitment of a large percentage of the total time and resources of the firms of Class Counsel and worked significant hardships on them over the course of this case. The circumstances of the case required the litigation to be vigorously pursued if an excellent recovery through settlement was to be achieved. Class Counsel, in fact, did vigorously prosecute the case and obtained excellent results for the Class.

8) <u>The amount involved and the results obtained</u>. There can be no doubt that, at the outset, Class Counsel had no assurance of any recovery. Considering all involved, the amount and terms of the settlement reflect the quality of the result and the outstanding benefits provided by Class Counsel to the Class. The Court considers this settlement to be an excellent result for the Class. As reflected herein, the settlement represents the largest class recovery on an MCF basis of third party marketing deductions in Oklahoma history.

9) <u>Experience, reputation and ability of counsel.</u> Class Counsels' qualifications, skill, experience, ability and reputation are well known throughout the oil and gas and complex litigation legal communities. Class Counsel are excellent litigators.

10) <u>The undesirability of the case.</u> Compared to most civil, contingent litigation attracting counsel to represent plaintiffs, this litigation clearly fits the initially "undesirable" test. Litigation of this nature is extremely risky, expensive and stressful and takes years of effort and energy. Not many law firms would be willing, or able, to risk investing the time and expenses necessary to prosecute this litigation. The Defendant was well-financed, and well represented. Certainly, the possibility of a recovery was a risky matter.

11) <u>Nature and length of the professional relationship with the client.</u> Mr. Hodgden's firm has maintained an ongoing attorney/client relationship with Mr. Laverty and his family for over 44 years. There is always significant risk to a client who participates as a plaintiff in a large lawsuit, in terms of the client's reputation, future business dealings, liability for costs, and other potentially adverse considerations.

12) <u>Awards in similar cases.</u> This is one of the most critical factors. However, the discussions in both *Newberg* and the *Manuel for Complex Litigation* give this court better guidance on how to evaluate this factor. Thus, this Court incorporates said discussion set out below herein by reference in finding that the requested 40% fee is customary in these types of cases.

- 7 -

13) <u>Multiplier as an additional factor.</u> In 1980, the Oklahoma Supreme Court followed and modified *Burk, supra,* to further instruct District Courts that counsel fees cannot be fairly awarded on the basis of time alone, but other factors, particularly the litigation risk factor, must be considered.

The general agreement in all jurisdictions is that the time and labor spent by the attorney in performing services for which compensation is sought is <u>a</u> factor to be considered in setting a reasonable fee. However, it is also commonly agreed that the time element must be considered in connection with other factors. <u>Fees cannot fairly be awarded on the basis of time alone.</u> The use of time as the sole criterion is of dubious value because economy of time could cease to be a virtue; and inexperience, inefficiency, and incompetence may be rewarded to the detriment of expeditious disposition of litigation. The litigation risk factor must be considered. Although the court initially looks to the hourly rate for comparable representation where compensation is <u>guaranteed,</u> it must adjust the basic hourly rate where compensation is <u>contingent</u> by assessing the likelihood of success at the outset of the representation. See *Oliver's Sportcenter, Inc. vs. National Standard Ins. Co.,* 1980 OK 120, 615 P.2d 291.

In the authorities noted herein, this amounts to a cross-check via the lodestar method. Once the amount of reasonable hourly billing has been determined, the court generally uses this as a cross-check to determine whether the percentage recovery from the common fund is reasonable. Here one must multiply approximately 4.2 times the billed amount to equal the forty percent (40%) recovery that is requested.[8] I evaluate this multiplier below. Based upon the authority presented by Class Counsel, the multiplier of 4.2 awarded herein is consistent with (if not below) the multipliers approved in other class action cases with similar procedural postures.[9]

---

[8] *Newberg on Class Actions,* Fourth Edition, indicates that multipliers of one to four are frequently awarded in common fun cases, but these may be larger in "large common fund" cases. § 14.6, footnote 87 indicates that multipliers from 5 to 10 have been used.

[9] Multipliers of (i) 8.7 approved in *Lobo v. BP* (Beaver County); 5.25 approved in *Lawrence v. Cimarex* (Caddo

- 8 -

In light of the additional factors from *the Manuel for Complex Litigation*, the Court is of the opinion that Class Counsels' fee request is fair and reasonable.

a. *The size of the fund and the number of persons who actually receive monetary benefits:* The Class comprises several thousand members. Clearly this is a significant fund, $17,250,000. As indicated above, the settlement represents an excellent recovery and is the largest known royalty class recovery in Oklahoma history for the claims being released.

b. *Any agreements or understandings, including side agreements, between attorneys and their clients or other counsel involved in the litigation:* This is the contingency agreement as to attorneys' fees between Class Counsel and class representative noted above.

c. *Any substantial objections to the settlement terms or fees requested by counsel for the class by class members (it is, however, a court's duty to scrutinize applications for fees, independently of any objection . . .):* Clearly here there were no real objections to the fairness of the settlement.

d. *The skill and efficiency of the attorneys; (Newberg, states this together with e, below, as "the amount of the benefit conferred upon the Class that could properly be attributed to Class Counsel"[10]):* As noted above it is clear that this result could not have been reached except for the skill, tenacity, and insight of Class Counsel into both the merits of this litigation, and what was a reasonable damage amount. It is also clear that without Class Counsel, that the class would likely not have benefited. First,

---

County); 4.0 – 6.6 approved in *Shockey v. Chevron* (Washita County); 3.85 approved in *Brumley v. ConocoPhillips* (Texas County).

[10] *Newberg on Class Actions*, Fourth Edition, § 14.7, p. 582.

until this action was filed these matters had not been litigated by the class members as this is the only litigation pending against Newfield for the claims being released under the settlement. Thus, the class members elected not to take the risks of litigating for these many years. It is very unlikely that the class would have received any return aside from this lawsuit. The only way that the settlement became possible was via Class Counsel doing tremendous amounts of discovery, both of the merits – so that all were well aware of the strengths of their case, and of the damages – so that the amounts of loss could be accurately determined. This, again, was due to the skill and tenacity of Class counsel. In summation, Class Counsel has conferred great benefits on this class for which they otherwise would have received nothing.

e. *The complexity and duration of the litigation:* I will not reiterate these findings as they were made already above, but this was very difficult and complex litigation.

f. *The risks of nonrecovery and nonpayment:* Prior to settlement, the risks of nonrecovery, as noted above, were great.

g. *The amount of time reasonably devoted to the case by counsel; even where fees are to be awarded on a percentage-of-fund basis, some judges cross-check the percentage by conducting a modified lodestar analysis:* This factor divides the amount of attorneys' fee requested ($6,900,000) by the charge for billable time presented by Class Counsel (approximately $1,363,390) for a multiplier of 4.2. This multiplier is well within the acceptable range of multipliers awarded in other similar class actions[11]. I find that due both to the difficulties of this case and the excellent

---

[11] In appropriate cases where Class Counsel has created a large common fund, such as in the present case, multipliers of 5 to 10 have been awarded. See, *Herbert Newberg*, Newberg on Class Actions (3rd), § 14.03 (emphasis added): Courts applying the lodestar approach will often use large multipliers or monetary enhancements

- 10 -

settlement, this is an acceptable multiplier for these particular facts. Class Counsel has devoted approximately 4,675 hours prosecuting this case. While this is a lot of time, Class Counsel had to do a lot to prepare and they were not outworked by the large law firm representing the Defendant.

h. *The awards in similar cases:* It is here that I review similar awards in other cases. A contingent attorneys' fee of at least forty percent (40%) of the common fund is normative for this type of royalty owner class litigation. The table of cases listed by Class Counsel supports this conclusion and the same is incorporated herein and made a part hereof. Also compelling is the recent decision of *Velma-Alma Ind. School Dist. No. 15 v. Texaco, Inc.*, 2007 Ok CIV APP 42, ___ P3.d ___, wherein the Court concluded that the trial court had not abused is discretion in approving an award of attorney fees equal to forty percent (40%) of the common fund in a royalty owner class settlement.

To reach a decision in this case, the authorities indicate that this amount must be determined ultimately by the specific facts of this case. These findings have generally been made via the *Burk* factors, and this court's findings on the factors within the *Manuel for Complex Litigation*.

First, this litigation was quite complex and difficult, and class counsel had engaged in significant discovery and work in preparing a damage model which, absent the settlement, would have been presented at trial. Secondly, the settlement reached was clearly quite advantageous for

---

of the time/rate (lodestar) calculation in order to reach fee award results comparable to percentage of recovery fees. Multiples ranging from <u>one to four frequently</u> are awarded in common fund cases when the lodestar method is applied. <u>A large common fund award way warrant an even larger multiple.</u> *See e.g., In re Beverly Hills Fire Litig,* 639 F. Supp. 915 (ED Ky 1986) (<u>multiplier of 5</u> for lead counsel); *Wilson v. Bank of Am Natl Trust & Savs Assn,* No. 643872 (Cal Sup Ct Aug 16, 1982) (<u>multiplier of up to 10 times</u> the hourly rate).

- 11 -

each of the class members even after the requested attorneys' fees are removed. Thirdly, the Class has not objected to said request for attorneys' fee[12]. Fourthly, Class Counsel clearly has taken great risks, and exercised considerable skill and tenacity over an extended length of time to achieve this result. Finally, as noted by Class Counsels' experts, the forty percent figure is reasonable and normal for this type of litigation – especially in light of the other factors listed herein. For all of this reasons, it appears that the requested attorneys' fee request of forty percent (40%) is reasonable, especially for this set of facts.

Knowing the rewards for Class Counsel can be great, so travels the path of loss for Class Counsel if defeat is the end result. Financial, personal, and emotional devastation are the potential events for a very few members of this Profession willing and able to represent thousands of strangers in order to obtain monetary benefit for those strangers that otherwise, without question, is unattainable through known legal means. From this aspect, the potential rewards of Class Counsels' success and the potential devastation realized of a Class Counsels' defeat must be considered with open judicial mind.

Because of the self-regulating incentives for efficiency with the percentage fee as noted above, the percentage fee has important advantages to the Class and promotes efficiency rather than inefficiency. The percentage fee compensates Class Counsel on the real value of the services provided. The percentage fee method encouraged Class Counsel to go the extra mile and push beyond a "good" recovery to an "excellent" recovery. The Court in this case certainly considers the Total Common Fund to be an excellent recovery to the Class. To award Class Counsel a lesser percentage of the Total Common Fund because the efforts of Class Counsel have created an exceptionally large Fund would amount to penalizing Class Counsel for their

---

[12] Save the one objection by Mr. Hubbard who failed to appear and whose objection contains no basis or authority to support his objection.

- 12 -

success which the Court is unwilling to do. This Court makes no myth as to Class Counsels' attorney fee award herein. It is significant. Yet, it is reasonable and proper. It is fair and equitable. Additionally, the common sense realty is, when the efforts of Class Counsel create an exceptionally large Total Common Fund for the benefit of the Class and if Class Counsels' fees awarded therefore are greatly restricted, the foreseeable so goes later access to the Courthouse for other potential and future class members.

The Court is satisfied that the most important determinant of the attorneys' fee award is the amount of the client recovery and that the lodestar/multiplier analysis is best used to check that the percentage of the fund award is in line with what a reasonable fee should be. Based upon the Court's analysis of all of the factors above-listed, the Court finds a reasonable fee in this case to be forty percent (40%) of the settlement fund (or $6,900,000.00), plus accrued interest thereon pursuant to the settlement agreement, is reasonable in this particular case.

**Expert Witness Fees, Litigation Expenses and Class Representatives Fee:**

The Court, having reviewed the accounting records which detail the expert witness fees and litigation expenses incurred in pursuit of class claims, and having heard testimony of Class Counsel regarding the necessity of such expenditures in preparation of the case, finds that reasonable expert witness fees and litigation expenses were incurred in the amount of $504,444.16.[13]

The Court finds that the Class Representative has made substantial time and labor commitments to the Class, and has incurred both legal and financial risks while pursuing this

---

[13]    It is apparent that the litigation costs and expenses advanced by Class Counsel will exceed this figure; however, they have limited their reimbursement request to this amount. Under the Settlement Agreement. Newfield is responsible for the first $250,000.00 in Administrative Expenses, with the class being responsible for amounts exceeding $250,000.00. Based upon the testimony of witnesses, it appears that the Administrative Expenses will exceed $250,000.00 and class counsel have reserved the right to file a supplemental application with the court seeking reimbursement for such expenses at a later time.

- 13 -

case on behalf of the Class, all of which resulted in obtaining an excellent benefit for the Class[14]. The granting of a Class Representative fee is based upon the same equitable considerations discussed above which related to a party's efforts in the creation of a common fund for the mutual benefit of a class. Court awards to Class Representatives of 1% of the common fund are typical in these types of actions, with some awards approaching 5% of the common fund. In this action, Class Counsel has recommended and requested a Class Representative's fee of .4% of the Settlement Fund. The Court finds that compensation to the Class Representative in the amount of .4% of the Settlement Fund is fair and reasonable compensation for the Class Representative's services to the Class.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED** that (1) Class Counsel are awarded attorney fees in the amount of 40% of the Common Fund ($6,900,000) plus 40% of accrued interest to the date of distribution pursuant to the Settlement Agreement; (2) Class Counsel are awarded reimbursement of litigation expenses in the amount of $504,444.16; and (3) the Class Representative is awarded fees in the amount of 0.4% ($69,000.00) of the Settlement Fund plus 0.4% of accrued interest to the date of distribution pursuant to the Settlement Agreement.

IT IS SO ORDERED this _27th_ day of August, 2007.

/s/ Greg A. Zigler

---

Greg A. Zigler
District Judge

---

[14] Mr. Laverty personally contacted Newfield prior to contacting Class Counsel about the claims in this lawsuit. After Newfield refused Laverty's request to reimburse him for the royalty deductions, Laverty contacted Class Counsel who further investigated the claims and proceeded with the lawsuit. Mr. Laverty was directly involved in the litigation, responded to numerous discovery requests, attended hearings and the mediation.

- 14 -

# EXHIBIT 12

IN THE DISTRICT COURT OF WOODS COUNTY

STATE OF OKLAHOMA

**FILED**

**MAR  5 2009**

WOODS COUNTY. OKLAHOMA
DELLA DUNNIGAN, COURT CLERK
BY _____
                         DEPUTY

|  |  |  |
|---|---|---|
| GLEN D. SACKET, For Himself and All Others Similarly Situated, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. CJ-2002-70 |
| vs. | ) ) | |
| GREAT PLAINS PIPELINE COMPANY (formerly known as Magic Circle Energy Corporation); CARMEN ACQUISITION CORP.; CARMEN FIELD LIMITED PARTNERSHIP; CARMEN DEVELOPMENT CORPORATION; CARLTON RESOURCES, INC; RAM ENERGY, INC.; RAM ASSET MANAGEMENT COMPANY; TALLEY HOLDINGS, INC.; DLB OIL & GAS, INC.; DLB ACQUISITION, L.L.C.;  CHESAPEAKE EXPLORATION LIMITED PARTNERSHIP; WELLS FARGO BANK, N.A.; AND, MAGIC CIRCLE ACQUISITION CORPORATION, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | | |

### ORDER ON MOTION FOR ATTORNEY FEES, LITIGATION EXPENSES, AND CLASS REPRESENTATIVE'S FEE

This matter came on for hearing on the 5th day of March, 2009, on Class Representative's and Class Counsels' Motion for Attorney Fees, Litigation Expenses and Class Representative's Fee from the Common Fund (the "Fee Application"). All named parties were present and represented by counsel, and no opposing parties appeared.  After reviewing the motion and all related pleadings, having reviewed the evidence submitted, having heard the testimony and arguments presented, and being fully advised in the premises, **THE COURT FINDS AND ORDERS AS FOLLOWS:**

- 1 -

**Notice and Objections:**

1.      Notice of this hearing was properly mailed to Plaintiff Class Members and published pursuant to the Plan of Notice specified in the Settlement Agreement and approved by the Court in its Order dated October 14, 2008. The Court now finds, orders, and adjudges that the notice to the Plaintiff Class of this hearing was proper and sufficient under Okla. Stat. Tit. 12, § 2023 and otherwise applicable law, including the Due Process Clause of the United States Constitution and the Due Process Clause of the Constitution of the State of Oklahoma.

2.      The Court further finds that the only objection timely filed pursuant to the Court's Order dated October 14, 2008, was by Class Member, Kenneth Byrd. The Court further notes that on March 2, 2009, Mr. Byrd withdrew all of his objections to the Fee Application. The Court is satisfied that the lack of any objections alone suggests that the Fee Application is fair and reasonable and indicative of the adequacy of the settlement.

**Attorneys' Fees:**

3. This court notes that the Annotated *Manual for Complex Litigation,* Fourth Edition 2005, § 14, p. 207 indicates "In class actions involving monetary stakes, the natural conflict that arises between lawyers and class members necessarily draws the judge into the role of regulating and awarding attorney fees. Unless the judge protects the interests of absentee class members, those interests may go unrepresented." In addition, the Court is well aware of its obligations under 5 O.S. § 7.1 which provides as follows:

> In class actions, in making an award of attorney fees, the court shall conduct an evidentiary hearing to determine a fair and reasonable fee for class counsel. In making such determination, the court shall act in a fiduciary capacity on behalf of the class.

The Court, in rendering this opinion, has carefully and independently considered the testimony of class counsel, the pleadings filed herein, including the authority attached to class counsel's fee application and the testimony of the class expert. The Court takes judicial notice of the time expended by Class Counsel directly before the Court and the vast amount of work required to advance a case of this complexity. The Court takes its role seriously and has taken independent and reasonable precautions to protect the interests of the class in undertaking its duties.

4.　　*Newberg on Class Actions*, Fourth Edition, § 14.6, p. 550, indicates that a fixed percentage, no matter the size of the common fund, aligns the interests of the class and class counsel so that as the settlement/judgment amount increases, the attorneys' fees do so proportionately. This suggests that a system using such a fixed percent mimics the market, and is best for both the class and class counsel. The Court's analysis is that the award must be based upon the specific facts of the case. Clearly, the settlement amount is to be considered within the facts of the particular case.

5.　　The Court incorporates the authorities and standards set forth in Plaintiff's Motion, including the authorities set forth within the exhibits thereto, and in the *Manual for Complex Litigation* and Oklahoma jurisprudence all of which approve the award of fees in a case such as this as a percentage of the common fund. In class actions, percentage or contingency fees have important advantages that provide self-regulating incentives for efficiency and compensates counsel on the real value of the services provided.

6.    Considering the factors set out in *Burk*[1] and the additional factors listed in the *Manual for Complex Litigation*[2], this court will evaluate the requests of counsel in light of the facts of this particular case, to wit:

    a. The efforts that led to the filing of this class action began in 2001 when the Class Representative began to suspect that his check details did not accurately reflect their fair share of royalty interest. After a preliminary investigation, the Class Representative filed the instant action as a class action against the Defendants. The Class Representative and Class Counsel conducted extensive document, interrogatory and deposition discovery throughout the course of this extended litigation. An extended five day evidentiary trial was held on June 13, 2006 through June 15, 2006, and August 8, 2006 through August 9, 2006, on the issue of class certification. On January 11, 2007, the Court certified the case as a class action. Class certification was appealed by the Defendants and subsequently affirmed by the Oklahoma Court of Civil Appeals. Each of the Defendants has filed a petition for a writ of certiorari with the Oklahoma Supreme Court and all briefing has been completed. The legal issues in this case (including issues related to discovery, class certification and summary judgment on various issues) have been briefed and argued extensively throughout the history of this case.

    b. Class Counsel successfully overcame several motions for summary judgment. In addition, class counsel have engaged in extensive discovery, depositions and reviewing hundreds of boxes of documents in addition to electronic discovery. There have been contested hearings pertaining to this discovery.

    c. Notice was mailed to approximately 1,300 class members and published. The opt-outs were few and there were no objections to the settlement itself.

    d. The parties have retained and worked extensively with accounting and gas marketing experts.

    e. Each portion of these matters heard by this court was skillfully and hotly contested by counsel; including both extensive pre-hearing briefs, and then supplementary verbal arguments.

    f. In accomplishing all of the above, to date Class counsel has expended significant sums of money (the "litigation expenses" requested were $325,000.00), plus in excess of 10,000 hours of billable time (the bill submitted for this calculated as the respective hourly rates for each of the respective attorneys aggregates approximately $3,212,000). This translates to great risks, skill and effort expended over a lengthy period of time by very tenacious counsel for the Class.

    g. A settlement agreement has been executed by the parties, and approved by this court for $25,000,000. This amount has been deposited in a secure account where it is now drawing interest. The gross recovery equates to approximately $3.00/MCF for class members. Thus, this is an outstanding settlement.

---

[1] *State ex rel. Burk v. City of Oklahoma City*, 1979 OK 115, 598 P.2d 659.
[2] Annotated *Manual for Complex Litigation*, Fourth Edition 2005, § 14.12, p. 214. See below.

-4-

h. There are no pending objections before the Court[3]. A certain number of objections may be expected in cases with a large number of class members. If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement. *See generally,* Newberg on Class Actions, 4th ed., §11:41 (2002), citing to *In re Austrian and German Bank Holocaust Litigation,* 80 F.Supp.2d 164, 174-75 (S.D.N.Y. 2000). A small number of objectors is one indication to the fairness of a settlement. *See generally,* Newberg on Class Actions, 4th ed., §11:48 (2002). The court considers the Class response to the settlement as an indication that the settlement is an excellent recovery.

i. Finally the Class representative executed a contingency fee agreement with Class Counsel allowing them an attorneys' fee of Forty (40%) percent of the common fund.

j. In addition to the facts above, Class Counsel presented an expert witness who has significant experience in similar class action litigation, Terry Stowers. Mr. Stowers indicated as follows:

    i. He has extensive experience in similar class action litigation, and that there were few firms within this state who handle such litigation due both to the extreme risks and the amount of expertise involved.

    ii. The case at bar was very complex and difficult litigation with excellent defense counsel. Thus, plaintiff's counsel was equally skilled and tenacious. Class Counsel overcame substantial obstacles in getting the case certified which was affirmed on appeal.

    iii. Further, had this matter have gone to trial, the estimate is many more years of litigation which could more than double the time required, expenses, and significantly increase the risks. For example, should the class lose one or more of the issues, then their recovery could be significantly reduced. Thus, while recovery could be lower or higher than the settlement, should this have proceeded to trial, the risks and expenses of said trial certainly militate in favor of this excellent settlement.

    iv. As noted above, this was an outstanding settlement. Further, it was accomplished in great part due to the tenacity and skill of class counsel. These attorneys should reap rewards for their diligence, skill and due to the risks involved.

7. *Newberg*[4] and the *Manuel for Complex Litigation*[5] approve of the common fund doctrine, and allow taking a percentage or contingency of the fund created in settlement of the case as the attorney's fees for plaintiff's counsel. The Oklahoma Supreme Court has recognized

---

[3] The Court notes that an objection was initially filed by class member, Kenneth Byrd. However, this objection was withdrawn on March 2, 2009.

[4] *Newberg on Class Actions,* Fourth Edition, § 14.6.

[5] Annotated *Manual for Complex Litigation,* Fourth Edition 2005, § 14.121

the long standing common law principal that a party or attorney who helps create a "common fund" is entitled to recover a fee from that common fund.

> As a general rule attorney's fees are not recoverable absent some statutory authority or an enforceable contract. The common-fund (or equitable-fund) doctrine affords a recognized exception to this rule. **When an individual's efforts succeed in creating or preserving a fund which benefits similarly situated non-litigants, equity powers may be invoked to charge that fund with attorney's fees for legal services rendered in its creation or preservation. The doctrine is rooted in historic equity jurisdiction, but owes its sudden appearance in this country to U.S. Supreme Court jurisprudence of the last century. Oklahoma case law has long recognized the doctrine.** [Footnote citations omitted. Emphasis added.]

*Oklahoma Tax Commission v. Ricks*, 1994 OK 115, 885 P.2d 1336, 1339.

> It is well settled that ordinarily "a court in the exercise of equitable jurisdiction, will, in its discretion, **order an allowance of counsel fees, or, as it is sometimes said, allow costs as between solicitor and client, to a complainant (and sometimes directly to the attorney) who at his own expense has maintained a successful suit for the preservation, protection, or increase of a common fund, or of common property, or who has created at his own expense, or brought into court, a fund in which others may share with him.**" [Citations omitted. Emphasis added.]

*State ex rel. Board of Com'rs of Harmon County v. Oklahoma Tax Com'n*, 1944 OK 250, ¶4 151 P.2d 797.

> The plaintiff claims the right to the allowance of an attorney's fee under the rule that a court of equity, or **a court in the exercise of equitable jurisdiction, will, in its discretion, order the allowance of attorney fees to counsel who at his own expense maintained a successful suit for the preservation, protection or increase of a common fund, or common property, or who has created at his own expense, or brought into court, a fund in which others may share with him.** [Emphasis added.]

*Kellough v. Taylor*, 1941 OK 320, ¶4, 119 P.2d 556.

8.      Under the Common Fund Doctrine, and in particular in a "class action" (which is one type of action that can create a common fund), the Court has the authority to extend contingency fee agreements entered into between the Class Representative and Class Counsel to the entire Class.

> Contingent fee agreements may be appropriate in class action cases. . . . Many courts have held . . . that once a class is certified and a decision on the merits is had, the trial court may decide whether to approve the contingent fee agreement, and whether to extend the contingent arrangement to all class members.

*Sholer v. State of Oklahoma*, 1999 OK CIV APP 100, ¶¶ 13-14, 990 P.2d 294.

9.      This Court recognizes the importance of contingency fees in our justice system, and in particular in class actions.

> Although contingent fee contracts are subject to restrictions . . . such agreements have generally been enforced unless the contract is unreasonable. **Often contingent fee agreements are the only means possible for litigants to receive legal services ---- contingent fees are still the poor man's key to the courthouse door. The contingent fee system allows persons who could not otherwise afford to assert their claims to have their day in Court.** [Emphasis added. Footnotes omitted.]

*Sneed v. Sneed*, 1984 OK 22, ¶3, 681 P.2d 754.

10.      A review of other District Court Orders in similar common fund cases reveals similar sound logic. For example, in *Bridenstine v. Kaiser-Francis, et al.*, Case No. CJ-2000-1, District Court of Texas County, Oklahoma, ¶3, the Honorable Ronald Kincannon explained his rationale for using the percentage of fund method for determining the appropriate attorney's fee.

> The percentage fee has important advantages to the Class in that it provides self-regulating incentives for efficiency. First, it compensates counsel on the real value of the services provided (the amount of benefit conferred). Second, the percentage approach awards efficiency. Not only is there no reward for inefficiency, there is a penalty due to the fact that, if the work is unnecessary,

the lawyer has wasted his time. Third, the percentage method encourages counsel to go the extra mile. Counsel has an incentive to push beyond a "good" recovery to an "excellent" recovery. The Court certainly considers the existing Common Fund to be an excellent recovery to the Class Members. Thus, under this percentage approach, the interests of the Class and Class Counsel are consistent and aligned.

11. In *Brumley v. ConocoPhillips*, Case No. CJ-2001-5, District Court of Texas County, Oklahoma, at p. 15, Judge Zigler stated as follows:

> To award Class Counsel a lesser percentage of the Total Common Fund because the efforts of Class Counsel have created an exceptionally large Fund would amount to penalizing Class Counsel for their success which the Court is unwilling to do. This Court makes no myth as to Class Counsel's attorney fee award herein. It is significant. Yet, it is reasonable and proper. It is fair and equitable. Additionally, the common sense reality is, when the efforts of Class Counsel create an exceptionally large Total Common Fund for the benefit of the Class and if Class Counsel's fees awarded therefrom are greatly restricted, then forseeably [sic] so goes later access to the Courthouse for other potential and future class members. From that common sense viewpoint and understanding it is all a matter of economics. So in conclusion, as in the many other class cases referenced herein, under this percentage approach as thoroughly addressed hereinabove, the interests of the Class and Class Counsel will be consistent and aligned.

* * *

> Knowing the rewards for Class Counsel can be great, so travels the path of loss for Class Counsel if defeat is the end result. Financial, personal, and emotional devastation are the potential events for a very few members of this Profession willing and able to represent thousands of strangers in order to obtain monetary benefit for those strangers that otherwise, without question, is unattainable through known legal means. From this aspect, the potential rewards of a Class Counsel's success and the potential devastation realized of a Class Counsel's defeat must be considered with [an] open judicial mind.

- 8 -

12.     The Court finds the 40% contingency fee percentage contained in the agreement between Class Counsel and the Class Representative to be within the typical range of contingency fee percentages for oil and gas class action litigation approved in this state.  The Court finds: (a) that the 40% contingency fee agreement between Class Counsel and the Class Representative is fair and reasonable and should be, and is hereby, approved and extended to the members of the Class, and (b) that based on the foregoing factors and reasoning, as well as the additional analysis described below, an attorney fee award in the amount of 40% of the Gross Settlement Proceeds, together with accrued interest thereon, is a fair and reasonable amount of compensation to Class Counsel for establishing the Common Fund.

13.     In class actions such as this, the percentage fee or contingency fee has important advantages to the Class in that it provides self-regulating incentives for efficiency. First, it compensates counsel on the real value of the services provided (the amount of benefit conferred). Second, the percentage approach rewards efficiency. Not only is there no reward for inefficiency, there is a penalty due to the fact that, if the work is unnecessary, the lawyer has wasted his time. Third, the percentage method encourages counsel to go the extra mile. Counsel has an incentive to push beyond a "good" recovery to an "excellent" recovery.  The Court certainly considers the existing Common Fund to be an excellent recovery to the Class Members. Thus, under this percentage approach, the interests of the Class and Class Counsel are consistent and aligned.

14.     The Court has considered the basic guidelines established in *State ex rel. Burk v. City of Oklahoma City*, 1979 OK 115, 598 P.2d 659[6], and also the additional factors from the *Manuel for Complex Litigation*. In *Burk*, the Supreme Court enunciated twelve factors to be

---

[6] The Court recognizes that *Burk* was not a class action and that the equitable fund created by the attorneys' effort benefited only the City of Oklahoma City.  The attorneys' fee awarded in that case amounted to 100% of the equitable fund currently available and all of the benefit due the City for several years into the future.

-9-

considered by the District Court in fixing fees under the lodestar approach. These factors, evaluated below, confirm that the requested forty percent (40%) attorney fee from the common fund is reasonable.

1) <u>Time and labor required</u>. Counsel has made substantial time and labor commitments which have now inured to the financial benefit of the Plaintiff Class.

2) <u>The novelty and difficulty of the question.</u> The issues, both at the certification phase and on the merits themselves, were exceptionally difficult and vigorously contested. The oil and gas accounting issues involved in this case have proved to be very complex. Without question the issues in the litigation were novel, complex and difficult.

3) <u>The skill requisite to perform the legal services properly</u>. The unique nature of this case, coupled with the issues, mandated that the Class be represented by skilled counsel. To prosecute these claims against several large corporate defendants represented by highly capable defense counsel with extensive resources necessitated assembling a team of Class Counsel skilled in oil and gas litigation, as well as details of complex litigation. Counsel's qualifications, skills and experience are well known throughout the oil and gas legal community. Class Counsel are certainly highly skilled and capable counsel.

4) <u>The preclusion of other employment.</u> Class Counsel are engaged in the on-going practice of law. Had Class Counsel not committed their resources to this case, Class Counsel could have accepted other matters, but did not. The prosecution of this case has very substantially reduced Class Counsels' opportunity for employment in other matters. Class Counsel are either solo practitioners or members of small firms. The prosecution of this case has substantially reduced Class Counsels' opportunity for employment in other cases.

5) <u>The customary fee.</u> These types of cases (oil and gas class action cases) are handled on a contingent fee basis. As indicated above, the fee percentage in these types of cases is typically 40% of the gross fund.

6) <u>Whether the fee is fixed or contingent.</u> Class Counsel entered into a contingency fee agreement with the Class Representative as discussed above. Class Counsel have represented the Class with vigor and without compensation of any kind and have advanced hundreds of thousands of dollars of litigation expenses out of their own pockets.

7)      <u>Time limitations imposed by client or circumstances.</u> Numerous time limitations were imposed on Class Counsel throughout the course of the proceedings. This Court and the appellate courts imposed time limitations through case scheduling over the past several years that forced Class Counsel to perform services of great magnitude by certain dates. The schedules of the courts, witnesses and clients were also accommodated on a regular basis by Class Counsel. A case of the size and complexity existing here required the commitment of a large percentage of the total time and resources of the firms of Class Counsel and worked significant hardships on them over the course of this case. The circumstances of the case required the litigation to be vigorously pursued if an excellent recovery through settlement was to be achieved. Class Counsel, in fact, did vigorously prosecute the case and obtained excellent results for the Class.

8)      <u>The amount involved and the results obtained</u>. There can be no doubt that, at the outset, Class Counsel had no assurance of any recovery. Considering all involved, the amount and terms of the settlement reflect the quality of the result and the outstanding benefits provided by Class Counsel to the Class. The Court considers this settlement to be an excellent result for the Class.

9)      <u>Experience, reputation and ability of counsel.</u> Class Counsels' qualifications, skill, experience, ability and reputation are well known throughout the oil and gas and complex litigation legal communities. Class Counsel are exceptional litigators.

10)     <u>The undesirability of the case.</u> Compared to most civil, contingent litigation attracting counsel to represent plaintiffs, this litigation clearly fits the initially "undesirable" test. Litigation of this nature is extremely risky, expensive and stressful and takes years of effort and energy. Not many law firms would be willing, or able, to risk investing the time and expenses necessary to prosecute this litigation. The Defendant was well-financed, and well represented. Certainly, the possibility of a recovery was a risky matter.

11)     <u>Nature and length of the professional relationship with the client.</u> Class Counsel have various long-term relationships with various Class members. There is always significant risk to a client who participates as a plaintiff in a large lawsuit, in terms of the client's reputation, future business dealings, liability for costs, and other potentially adverse considerations.

12)     <u>Awards in similar cases.</u> This is one of the most critical factors. However, the discussions in both *Newberg* and the *Manuel for Complex Litigation* give this court better guidance on how to evaluate this factor. Thus, this

- 11 -

Court incorporates said discussion set out below herein by reference in finding that the requested 40% fee is customary in these types of cases. The awards in similar cases were discussed in detail in Class Counsel's Motion, exhibits and testimony, all of which are incorporated herein by reference. The Court finds a 40% fee is customary in these types of cases.

13) <u>Multiplier as an additional factor.</u> In 1980, the Oklahoma Supreme Court followed and modified *Burk, supra,* to further instruct District Courts that counsel fees cannot be fairly awarded on the basis of time alone, but other factors, particularly the litigation risk factor, must be considered.

15. The general agreement in all jurisdictions is that the time and labor spent by the attorney in performing services for which compensation is sought is a factor to be considered in setting a reasonable fee. However, it is also commonly agreed that the time element must be considered in connection with other factors. <u>Fees cannot fairly be awarded on the basis of time alone.</u> The use of time as the sole criterion is of dubious value because economy of time could cease to be a virtue; and inexperience, inefficiency, and incompetence may be rewarded to the detriment of expeditious disposition of litigation. The litigation risk factor must be considered. Hourly rates must be adjusted where compensation is <u>contingent,</u> by assessing the likelihood of success at the outset of the representation. See *Oliver's Sportcenter, Inc. vs. National Standard Ins. Co.,* 1980 OK 120, 615 P.2d 291.

16. In the authorities noted herein, this amounts to a cross-check via the lodestar method. Once the amount of reasonable hourly billing has been determined, the court generally uses this as a cross-check to determine whether the percentage recovery from the common fund is reasonable. Here one must multiply approximately 3.2 times the billed amount to equal the forty percent (40%) recovery that is requested.[7] The Court finds that Class Counsel expended in excess of 10,000 hours for the benefit of the Class. The Court finds that the hourly rates of Class

---

[7] *Newberg on Class Actions,* Fourth Edition, indicates that multipliers of one to four are frequently awarded in common fun cases, but these may be larger in "large common fund" cases. § 14.6, footnote 87 indicates that multipliers from 5 to 10 have been used.

- 12 -

Counsel are reasonable and within the acceptable range in the legal community for this type of legal services. Based upon the authority presented by Class Counsel, the multiplier of 3.2 awarded herein is consistent with (if not below) the multipliers approved in other class action cases with similar procedural postures.

17.     In light of the additional factors from *the Manuel for Complex Litigation*, the Court is of the opinion that Class Counsels' fee request is fair and reasonable.

a. *The size of the fund and the number of persons who actually receive monetary benefits:* The Class comprises over a thousand members. Clearly this is a significant fund, $25,000,000. As indicated above, the settlement represents an excellent recovery.

b. *Any agreements or understandings, including side agreements, between attorneys and their clients or other counsel involved in the litigation:* This is the contingency agreement as to attorneys' fees between Class Counsel and class representative noted above.

c. *Any substantial objections to the settlement terms or fees requested by counsel for the class by class members (it is, however, a court's duty to scrutinize applications for fees, independently of any objection . . .):* There were no objections to the fairness of the settlement. Without any credible evidence being presented to the contrary, the Court finds that all evidence presented supports the request of the Class Representative and Class Counsel for the award of their requested fees and expenses.

d. *The skill and efficiency of the attorneys; (Newberg, states this together with e, below, as "the amount of the benefit conferred upon the Class that could properly be*

*attributed to Class Counsel"[8]):* As noted above it is clear that this result could not have been reached except for the skill, tenacity, and insight of Class Counsel into both the merits of this litigation, and what was a reasonable damage amount. It is also clear that without Class Counsel, that the class would likely not have benefited. First, until this action was filed these matters had not been litigated by the class members as this is the only litigation pending against the Defendants for the claims being released under the Settlement. Thus, the class members elected not to take the risks of litigating for these many years. It is very unlikely that the class would have received any return aside from this lawsuit. The only way that the settlement became possible was via Class Counsel doing tremendous amounts of discovery, both of the merits – so that all were well aware of the strengths of their case, and of the damages – so that the amounts of loss could be accurately determined. This, again, was due to the skill and tenacity of Class counsel. In summation, Class Counsel has conferred great benefits on this class for which they otherwise would have received nothing.

e.  *The complexity and duration of the litigation:* I will not reiterate these findings as they were made already above, but this was very difficult and complex litigation.

f.  *The risks of nonrecovery and nonpayment:* Prior to settlement, the risks of nonrecovery, as noted above, were great.

g.  *The amount of time reasonably devoted to the case by counsel; even where fees are to be awarded on a percentage-of-fund basis, some judges cross-check the percentage by conducting a modified lodestar analysis:* The multiplier of 3.2 is well within

---

[8] *Newberg on Class Actions,* Fourth Edition, § 14.7, p. 582.

- 14 -

the acceptable range of multipliers awarded in other similar class actions[9]. I find that due both to the difficulties of this case and the excellent settlement, this is an acceptable multiplier for these particular facts. Class Counsel has devoted in excess of 10,000 hours prosecuting this case. While this is a lot of time, Class Counsel had to do a lot to prepare and they were not outworked by the large law firms representing the Defendants.

h. *The awards in similar cases:* A contingent attorneys' fee of at least forty percent (40%) of the common fund is normative for this type of royalty owner class litigation. The table of cases listed by Class Counsel supports this conclusion and the same is incorporated herein and made a part hereof. Also compelling is the recent decision of *Velma-Alma Ind. School Dist. No. 15 v. Texaco, Inc.*, 2007 Ok CIV APP 42, 162 P.3d 238, wherein the Court affirmed the trial court's order approving an award of attorney fees equal to forty percent (40%) of the common fund in a royalty owner class settlement.

To reach a decision in this case, the authorities indicate that this amount must be determined ultimately by the specific facts of this case. These findings have generally been made via the *Burk* factors, and this court's findings on the factors within the *Manuel for Complex Litigation*.

---

[9] In appropriate cases where Class Counsel has created a large common fund, such as in the present case, multipliers of 5 to 10 have been awarded. See, *Herbert Newberg*, Newberg on Class Actions (3rd), § 14.03 (emphasis added): Courts applying the lodestar approach will often use large multipliers or monetary enhancements of the time/rate (lodestar) calculation in order to reach fee award results comparable to percentage of recovery fees. **Multiples ranging from one to four frequently are awarded in common fund cases when the lodestar method is applied. A large common fund award way warrant an even larger multiple**. *See e.g., In re Beverly Hills Fire Litig*, 639 F. Supp. 915 (ED Ky 1986) (**multiplier of 5** for lead counsel); *Wilson v. Bank of Am Natl Trust & Savs Assn*, No. 643872 (Cal Sup Ct Aug 16, 1982) (**multiplier of up to 10 times** the hourly rate).

18.     This litigation was quite complex and difficult, and class counsel had engaged in significant discovery and work in preparing a damage model which, absent the settlement, would have been presented at trial. Secondly, the settlement reached was clearly quite advantageous for each of the class members even after the requested attorneys' fees are removed. Thirdly, the Class has not objected to the request for attorneys' fee. Fourthly, Class Counsel clearly has taken great risks, and exercised considerable skill and tenacity over an extended length of time to achieve this result. Finally, as noted by Class Counsels' experts, the forty percent (40%) figure is reasonable and normal for this type of litigation – especially in light of the other factors listed herein. For all of these reasons, it appears that the attorneys' fee request of forty percent (40%) is reasonable, especially for this set of facts.

19.     Knowing the rewards for Class Counsel can be great, so travels the path of loss for Class Counsel if defeat is the end result. Financial, personal, and emotional devastation are the potential events for a very few members of this profession willing and able to represent thousands of strangers in order to obtain monetary benefit for those strangers that otherwise, without question, is unattainable. From this aspect, the potential rewards of Class Counsels' success and the potential devastation realized of a Class Counsels' defeat must be considered with open judicial mind.

20.     The Court in this case certainly considers the Total Common Fund to be an excellent recovery to the Class. To award Class Counsel a lesser percentage of the Total Common Fund because the efforts of Class Counsel have created an exceptionally large Fund would amount to penalizing Class Counsel for their success which the Court is unwilling to do. The Court will not reduce Class Counsel's percentage of fees from the common fund because of

the remarkable success they achieved. Additionally, the common sense realty is, when the efforts of Class Counsel create an exceptionally large Total Common Fund for the benefit of the Class and if Class Counsels' fees awarded therefore are greatly restricted, the foreseeable so goes later access to the Courthouse for other potential and future class members.

21.     The Court is satisfied that the most important determinant of the attorneys' fee award is the amount of the client recovery and that the lodestar/multiplier analysis is best used to check that the percentage of the fund award is in line with what a reasonable fee should be. Based upon the Court's analysis of all of the factors above-listed, the Court finds a reasonable fee in this case to be forty percent (40%) of the settlement fund (or $10,000,000.00), plus accrued interest thereon pursuant to the settlement agreement, is reasonable in this particular case.

### Expert Witness Fees, Litigation Expenses and Class Representatives Fee:

22.     The Court, having reviewed the accounting records which detail the expert witness fees and litigation expenses incurred in pursuit of class claims, and having heard testimony of Class Counsel regarding the necessity of such expenditures in preparation of the case, finds that reasonable expert witness fees and litigation expenses were incurred in the amount of $325,000.[10]

23.     The Court finds that the Class Representative has made substantial time and labor commitments to the Class, and has incurred both legal and financial risks while pursuing this case on behalf of the Class, all of which resulted in obtaining an excellent benefit for the Class[11].

---

[10]     It is apparent that the litigation costs and expenses advanced by Class Counsel will exceed this figure; however, they have limited their reimbursement request to this amount.

[11]     Mr. Sacket personally participated in this litigation, attended most every hearing (including the lengthy class certification hearing), provided two depositions, attended both mediations, worked closely with class counsel, responded to numerous discovery requests, and bore the risks associated with participating in litigation of this nature.

- 17 -

Case 6:16-cv-00189-JWL Document 84-4 Filed 05/26/21 Page 234 of 350
Case 2:13-cv-00 Document Document 185-12 Filed 06/17/16 Page 235 of 351

The granting of a Class Representative fee is based upon the same equitable considerations discussed above which related to a party's efforts in the creation of a common fund for the mutual benefit of a class. Court awards to Class Representatives of 1% of the common fund are typical in these types of actions, with some awards approaching 5% of the common fund. In this action, Class Counsel has recommended and requested a Class Representative's fee of .7% of the Settlement Fund. The Court finds that compensation to the Class Representative in the amount of .7% of the Settlement Fund is fair and reasonable compensation for the Class Representative's services to the Class.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED** that (1) Class Counsel are awarded attorney fees in the amount of 40% of the Common Fund ($10,000,000) plus 40% of accrued interest to the date of distribution pursuant to the Settlement Agreement; (2) Class Counsel are awarded reimbursement of litigation expenses in the amount of $325,000; and (3) the Class Representative is awarded fees in the amount of 0.7% ($175,000.00) of the Settlement Fund plus 0.7% of accrued interest to the date of distribution pursuant to the Settlement Agreement.

IT IS SO ORDERED this 5th day of March, 2009

Honorable Ray Dean Linder
District Judge

# EXHIBIT 13

FILED
DISTRICT COURT
Washita County, Okla.

AUG 3 0 2017

CAROL CORBETT COURT CLERK
BY: _____
DEPUTY

## IN THE DISTRICT COURT OF WASHITA COUNTY
## STATE OF OKLAHOMA

BANK OF AMERICA, N.A., formerly )
known as NATIONS BANK, N.A., as )
TRUSTEE OF THE VIRGINIA C. )
EARMAN TRUST, et al., )
                              )
            Plaintiffs, )
                              )        **Case No. CJ-2004-45**
v. )        **Judge Christopher S. Kelly**
                              )
EL PASO NATURAL GAS COMPANY, A )
Delaware Corporation; and BURLINGTON )
RESOURCES OIL & GAS COMPANY, LP, )
formerly Burlington Resources Oil & Gas )
Company, a Delaware Corporation, )
formerly Meridian Oil, Inc.; formerly )
El Paso Exploration Company, )
a Delaware Corporation, )
                              )
            Defendants. )

## FINAL ORDER GRANTING CLASS COUNSEL ATTORNEYS' FEES, LITIGATION COSTS, AND CLASS REPRESENTATIVE INCENTIVE AWARD

On July 18, 2017, the following matters came before the Court for evidentiary hearing: Class Counsels' Motion for Attorneys' Fees, Litigation Costs, Class Representative Incentive Fees, and Anticipated Administrative Costs From the Settlement Fund and Memorandum in Support Thereof filed May 18, 2017; and Class Counsels' Supplemental Motion for Attorneys' Fees, Litigation Costs, Class Representative Incentive Fees, and Anticipated Administrative Costs From the Settlement Fund and Memorandum in Support Thereof filed June 30, 2017 (collectively, "the Motion"). Appearing at the hearing for the certified subclasses and Plaintiffs were Bradley D. Brickell of BRICKELL & ASSOCIATES, Stephen R. McNamara and Brian T. Inbody of MCNAMARA, INBODY, AND PARRISH, Loyd Benson, Stephen Beam, Karen Aubrey,

and Stan Koop; for the Defendant El Paso Natural Gas was Terry Ragsdale of GABLEGOTWALS; for the Defendant Burlington Resources Oil & Gas Company were Robert Sutphin of HOLLAND & HART and Charles Correll of KING & SPALDING; for the Objector Charles David Nutley was Daniel V. Carsey of RISCHARD & CARSEY, PLLC; and for the Objector William L. Galbreath was Bonner Walsh.

Having reviewed and considered all testimony and evidence tendered by Class Counsel, including the testimony of all witnesses presented at the hearing, including the Objections of Charles David Nutley and William L. Galbreath, ("Galbreath") also filed herein on June 14, 2017, (collectively the "Objections"), and having reviewed and considered the briefing submitted and arguments of Class Counsel and Attorneys for Objectors, including Closing Argument Briefs of both Class Counsel and the Objectors, the hereby **GRANTS** Class Counsel's Motion and **FINDS** as follows:

## ATTORNEYS' FEES

### A.     The "Lodestar" Analysis

The Court **FINDS** that the following evidence and cited authorities were submitted by Class Counsel:

At the outset of this case, starting in 1997, Class Counsel entered into one hundred and forty (140) separate contingency fee agreements with the named Plaintiffs. These agreements called for a 40 percent, or in some cases, a 45 percent, contingency fee and were introduced as Exhibit 21.

Recently, on July 11, 2017, the Oklahoma Court of Civil Appeals ("COCA"), Division IV, in *Hess v. Volkswagen Group of America, Inc.,* 2017 OK CIV APP 35 ("*Hess III*"), held:

> In Oklahoma, "in all cases, the attorney fees must bear some reasonable relationship to the amount in controversy."

2

*Hess III*, at ¶ 8.

In *Hess III*, the COCA approved an award of attorney's fees in the amount of $983,616.75 even though the amount recovered was $45,780.00. Here, the Common Fund amounts to $127,622,000.00, which represents present cash value of $115,000,000.00 plus an additional cash value of $14,000,000.00 to be paid over ten (10) years to the New Mexico "non-same-as-fed" Class Members as a result of the payment method change agreed to in ¶ 3.2 of the Settlement Agreement. The testimony of Class Administrator Barbara Ley established the present monetary value of this payment method change as $12,622,000.00. Ms. Ley also testified that should the Court award Class Counsels' requested fee, only those beneficiaries of this payment method change would be allocated attorney fees associated with that value. Rather than the relative minor amount recovered in *Hess*, this case represents one of the three Oklahoma royalty owner class actions to have exceeded one hundred million dollars. The result herein clearly establishes justification for an increase over the "lodestar hours."

Even though the term "lodestar" is not mentioned in 12 O.S. § 2023(G)(4)(e), some authorities, including *Burk v. Oklahoma City*, 1979 OK 115 598 P.2d 659, specifically mention lodestar. The lodestar analysis is a starting point for the appropriate attorney fee analysis and is used to cross-check an appropriate attorney fee by comparing the fee requested with any percentage award.

Exhibit 19, admitted at the July 18, 2017 hearing, shows that the lodestar for this case exceeds $16,383,278.00. Evidentiary support for Exhibit 19 was provided at the hearing on July 18, 2017, and Exhibit 19A, which was also admitted, contains copies of time records for twenty (20) years, which were maintained on a contemporaneous basis. Lead Class Counsel Brad Brickell testified that the 36,665.90 hours documented in those time records were accurate and in

fact incurred by Class Counsel.

Class Counsel's expert witness, former Court of Civil Appeals Judge William Hetherington, testified that he also had reviewed Exhibit 19A prior to the hearing and, based upon his review, the summary of hours set forth as a lodestar as Exhibit 19 were reflective of the voluminous time records of Exhibit 19A. Both Mr. Brickell and Judge Hetherington testified that the hourly rates reflected in Exhibit 19 were, in their experience, fair and reasonable hourly rates for this particular case. Judge Hetherington further testified that the hourly rates reflected in Exhibit 19 are similar and corresponded to rates approved in royalty owner and other class action cases in Oklahoma. Mr. Brickell testified that his rates reflected in Exhibit 19 were in fact less than what he believed to be his current market rate for this type of case.

The "hourly rate analysis" de-emphasizes the length of time that Class Counsel has labored on this particular case. In 1997, when this case was initially filed, a fair and reasonable hourly rate would have been less than the current market value for the same services.

In using a lodestar analysis, a common multiplier is 1 to 4 times the attorneys' hours and rates, and "[a] large common fund may warrant an even larger multiple." *Velma-Alma Indep. School Dist. No. 15, et al. v. Texaco, Inc., et al.,* No. CJ-2002-104 (Okla. Dist. Ct., Texas Cty. Dec. 22, 2005), p. 25 (quoting *Newberg on Class Actions,* 3d ed., § 14.03); *Laverty v. Newfield Exploration Mid-Continent, Inc.* (Okla. Dist. Ct. Beaver Cty. Aug. 27, 2017), p. 11, n. 11 (same) (citing federal cases approving multipliers of 5 to 10). In a large common fund case such as this one, the testimony and declaration of Judge Hetherington illustrated that lodestar multipliers in Oklahoma have ranged from 5.25 to 8.7, as follows:

> Multipliers of (i) 8.7 approved in *Lobo v. BP* (Beaver County); (ii) 5.25 approved in *Lawrence v. Cimarex* (Caddo County); (iii) 4-6.6 approved in *Shockey v. Chevron* (Washita County); (iv) 3.85 approved in *Brumley v. ConocoPhillips* (Texas County).

4

*Laverty*, p. 8 (approving 4.2 multiplier). *See also Bridenstine v. Kaiser Francis* (5.25 multiplier); Order on Attorney Fees, Litigation Expenses, and Class Representatives Fee, *Simmons, et al. v. Anadarko Petroleum Corp.*, No. CJ-2004-57 (Okla. Dist. Ct. Caddo Cty. Dec. 23, 2008), at 7 (4.2 multiplier); *Mitchusson v. EXCO Res.*, No. CJ-2010-32, Caddo County, Oklahoma, p. 9 (6.3 multiplier). Here, as evidenced by the chart admitted as Exhibit H-5, a multiplier of 3 to 3.6 easily comports to the 40 percent fee request and is well-within the parameters of fees granted in similar cases.

**B.     The 12 O.S. § 2023(G)(4)(e) Factors:**

Upon consideration of the evidence submitted and applying the 13 factors, individually and collectively as set forth in 12 O.S. § 2023(G)(4)(e), the Court **FINDS** the following:

**1.     Time and labor required 12 O.S. § 2023(G)(4)(e)(1).**

The history of this litigation and creation of the common fund demonstrate that over 36,000 hours of time and labor spanning approximately twenty years were invested by Class Counsel in the presentation of this litigation. This is an extraordinary dedication to this case by class counsel. Included are two removals to federal district court and to the Tenth Circuit, two appeals to the Oklahoma Supreme Court, consideration of appeal to the U.S. Supreme Court, and voluminous depositions plus hours and hours of document discovery amounting to multiple terabytes of data were exchanged.

**2.     The novelty and difficulty of the questions presented by the litigation, 12 O.S. § 2023(G)(4)(e)(2).**

Cases filed as class actions are known to be complex and vigorously contested. This matter was even more complex, involving three states. This is evidenced by the district court record, expert testimony, the appellate record, and the lengthy settlement process. Also, while

the implied covenant to market may not be novel, the complexity of the pricing and deductions being assessed to the Class and the calculation methods used on a monthly basis (50,000 Class Members) is extraordinarily complex. Class Counsel and their experts spent many years and over $1,400,000.00 in advanced costs and expenses to determine the ways in which Burlington's payment methods, across four different accounting systems affected Class Members. The evidence clearly showed increasing substantial litigation risk exists in this case, both for class certification and in a trial on the merits.

3. **The skill required to properly perform the legal services, 12 O.S. § 2023(G)(4)(e)(3).**

The nature of this litigation, coupled with the issues presented herein, mandated that the class be represented by highly skilled counsel with knowledge of the natural gas industry. In addition, Class Counsel had to be highly skilled and experienced oil and gas attorneys in order to prosecute these claims against defendants with vast resources, who were represented by multiple firms of defense counsel. Class Counsel individually and collectively have decades of experience in oil and gas litigation and have prosecuted numerous class actions and complex cases. This case could not have been prosecuted by few, if any other, counsel.

4. **The preclusion of other employment, 12 O.S. § 2023(G)(4)(e)(4).**

Class Counsel are engaged in the on-going practice of law. Had Class Counsel not committed all of their relatively limited resources to this litigation, Class Counsel could have accepted other matters, but did not. The hours expended alone show the prosecution of this litigation significantly reduced Class Counsels' opportunity for employment in other matters.

5. **The customary fee, 12 O.S. § 2023(G)(4)(e)(5).**

The customary fee is reflective of the competitive market for attorneys willing and able to take on this type of case and see it to conclusion. In a contingent fee agreement, the percentage

6

of recovery is set by contract before the case is filed, pursuant to Rule 1.5, 5 O.S. 2011 Ch. 1, App. 3-A, ORPC, and long before it can be determined whether the case can be won, not to mention the effort, time and expenses required. In the royalty underpayment class action content, the evidence revealed the customary contingency fee is forty (40) percent. Order on Motion for Attorney Fees, Litigation Expenses, and Class Representatives Fee, *Continental Resources, Inc. et al. v. Conoco, Inc., et al.,* No. CJ-1995-739 (Okla. Dist. Ct., Garfield Cty. Aug. 22, 2005) (Perry, J.), at 8 ("These types of cases (oil and gas class action cases) are handled on a contingent fee. The fee percentage in these types of cases is typically 40% of the gross fund."), *see Velma-Alma*, at 27 ("The 'customary fee' in cases of this nature is contingency fee in the range of 40%-50%."). Hearing Exhibit 21 shows that Class Counsel entered into 140 separate fee agreements with Plaintiffs for a forty percent fee, and most were signed in 1997. Here, the evidence presented in Hearing Exhibit 33 shows the fees awarded in similar royalty owner underpayment class actions in Oklahoma District Courts were 40 percent, with some slightly lower and some higher. The cases shown involving settlements exceeding $100,000,000 dollars awarded a forty (40) percent fee.

6. **Whether the fee is fixed or contingent, 12 O.S. § 2023(G)(4)(e)(6).**

This case is a common fund case, not a fee shifting case, and the Court's analysis begins with the basis under which counsel accepted the representation. Here, the case was undertaken on a contingent, not a fixed or hourly, basis. Hearing Exhibit 21. This evidence is undisputed. This fact has legal significance because, had the representation been undertaken on a fixed basis, *i.e.* hourly rate multiplied by the number of hours, or were this a fee-shifting, rather than a common fund award, then a lodestar/multiplier analysis, would be applicable. *See State ex rel. Dept. of Transp. v. Norman Indus. Development Corp.,* 2001 OK 72, 41 P.3d 960.

When the legal representation is undertaken on a contingent fee basis, and that representation results in a common fund recovery for the benefit of a class, Oklahoma law allows a percentage analysis to determine an appropriate fee. *See* June 21, 2006 Order entered by Judge Ellis Cabaniss, Case No. CJ-97-68, Washita County. The legal representation for this case, like most, if not all, class actions, was undertaken on a contingent fee basis. No class member could afford to finance this case on a fixed hourly basis because the cost would exceed any individual benefit recovered.

7.    **Time limitations imposed by client or circumstances, 12 O.S. § 2023(G)(4)(e)(7).**

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), defines "priority work" as that work which delays other legal work of the attorney. This case continually called for "priority" time, especially when removals were filed in federal court; when voluminous class certification evidence was gathered and prepared; and when witnesses were deposed and when vast discovery data was reviewed.

8.    **The amount in controversy and the results obtained, 12 O.S. § 2023(G)(4)(e)(8).**

The amount in controversy was in excess of $200,000,000.00. The Defendants continually disputed all damages and even whether any interest was awardable. Many similar royalty owner class action settlements recovered a smaller percentage of claimed damages. The cash value of this Settlement is close to 50 percent of claimed damages, going back to 1992, without interest. This is an outstanding result for the Class, especially when compared to similar royalty underpayment class action settlements in various Oklahoma district courts.

> According to expert accounting witness Barbara Ley's damage calculations, the *Kouns [v. ConocoPhillips,* No. CJ-98-61, Dewey Co. Dist. Ct., OK] settlement represented a recovery of approximately 14% of the class damages accruing within the five year limitations

8

> period…Further, Ms. Ley testified that the class recovery in the *Brumley v. ConocoPhillips,* No. CJ-2001-5, Texas Co. Dist. Ct., OK case…represented less than 30% of the total class damages…Moreover, Mr. Pulliam testified that the recovery in the *Shockey v. Chevron,* No. CJ-2001-7, Washita Co. Dist. Ct., OK case represented a recovery of approximately 7.5% of the total potential damage universe available to the class, and notwithstanding the settlement represented an excellent recovery for the class given the litigation risks which the class faced…as to the post-production cost portion of the Settlement in *Lawrence v. Cimarex,* Mr. Waterman calculated the Class recovery at 33.6% of total damages (exclusive of interest) accruing within the five year limitation period.

Order Granting Approval of Settlement Agreement and Findings of Fact and Conclusions of Law, *Lawrence v. Cimarex,* No. CJ-2004-391 (Okla. Dist. Ct. Caddo Cty. Feb. 24, 2006), at 19-20. The recovery of more than 50 percent of the *potential* damages over a twenty five year period weighs strongly in favor of a higher fee. The result here, $127,660,000.00, is the most important factor in the contingent fee analysis.

**9.    Experience, reputation and ability of counsel, 12 O.S. § 2023(G)(4)(e)(9).**

Class Counsel's persistence, qualifications, skills, experience and ability were personally witnessed by this Court, while pursuing this matter against some of the best class action and oil and gas defense attorneys in the country. The Defendants were represented by three of Oklahoma's very largest firms and two out of state, international firms with over a thousand lawyers. The reputation and demonstrated skill of Class Counsel are simply among the best in this state and region, having pursued complex class cases for years. These same Counsel have pursued and settled the three largest cases ever filed in this county.

**10.    The undesirability of the case, 12 O.S. § 2023(G)(4)(e)(10).**

Measuring the desirability of this case against other civil contingent fee cases and its "attractiveness" to any potential counsel capable of representing a huge class of royalty owners, this class action satisfies the "undesirable" factor. Few lawyers are willing to litigate cases

requiring review of millions of pages of contracts and accounting records, carry their office overhead with no income for years and additionally, advance expenses over $1,400,000.00, plus an investment of over 36,000 hours throughout twenty (20) years on a case with high risk that includes both the trial and appellate level, especially with class certification issues. Expert witness Robert Gum testified that the appellate courts in Oklahoma, and especially federal court, have evidenced a growing trend of de-certifying similar cases.

Defendants' counsel bears no such risk, as payment of their hourly fees and recovery of their out-of-pocket expenses are assured, especially when the Defendants are some of the largest oil and gas companies in the world. When Class Counsel accepted representation and filed suit, the risk was high and a positive outcome was far from guaranteed. Class Counsel's investment of time, money and effort, paired with a substandard risk of losing all that investment, makes the case undesirable such that few law firms would take it, and may have settled early for pennies on the dollar.

11. **The nature and length of the professional relationship with the client, 12 O.S. § 2023(G)(4)(e)(11).**

In cases accepted on an hourly basis and when the client and attorney have a long-standing relationship or a significant volume of business, the client may receive a discounted fee. This factor does not apply to this matter accepted on a contingent fee agreement basis. Therefore, the Court evaluates this factor as neutral in determining the reasonableness of the attorneys' fee request here.

12. **Awards in similar cases, 12 O.S. § 2023(G)(4)(e)(12).**

Hearing Exhibit 33 compiles a long list of "awards in similar cases." These Oklahoma State Court oil and gas class action settlements reflect an attorney fee award at or very close to forty (40) percent. More than half are forty (40) percent or slightly higher. Judge Hetherington,

testifying as an expert witness, stated that an award below forty (40) percent would be atypical. *Id.* This factor heavily favors a forty (40) percent fee in this case.

**13.     The risk of non-recovery in the litigation, 12 O.S. § 2023(G)(4)(e)(13).**

In class actions, the risk of no or minimal recovery is very high, especially when recent appellate cases in Oklahoma and the Oklahoma federal courts, including the U.S. Supreme Court are considered. *See Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338 (2011), and its progeny. At the outset of a royalty owner class action, plaintiff's counsel has no assurance of class certification, much less recovery. Significant risks of "non-recovery" included (i) the recent class decertification rulings in *Wal-Mart v. Dukes, id. Comcast Corporation, v. Behrend,* 133 S. Ct. 1426 (2013), *Panola v. Unit Petroleum,* 2012 OK CIV APP 94, 87 P.3d 1033, and *Tipton Home v. Burlington Resources,* Appeal No. 111,735; (ii) factors specific to this case include two federal court removals (2007 and 2016), as well as appeals of the Oklahoma, Texas, and New Mexico sub-class certifications, separately, almost to the U.S. Supreme Court (Justice Sotomayor issued extension to file); and (iii) defenses which had the potential to severely limit damages such as: statute of limitations claims for each state, the *Altheide* settlement which released claims in COR1 period per ruling in Case No. CJ-97-68, comity defense and motion to dismiss with the New Mexico subclass, an overriding royalty interest ruling in Case No. CJ-97-68, Texas law which allows post-production deductions, and lack of a clear precedent in New Mexico. Class Counsels' withdrawal of support for the preliminary approval of a prior $9,000,000.00 settlement in 2007, based on accounting discrepancies and then litigating for ten more years. Class Counsel incurred large direct and indirect expenses over the last twenty (20) years with a great risk of no recovery.

**C.     The Litigation Expenses Requested by Class Counsel Were Actually Incurred, Reasonable and Necessary.**

11

The requested expenses are $1,453,981.51 as of July 18, 2017. *See* Hearing Exhibit 20. Class Counsel and the Class Administrator testified that an additional $669,324.34 has been estimated for expenses to Class Counsel and the Administrator for the cost of completion of allocation work through final distribution and mailing of checks for the approximately 50,000 Class Members. Accordingly, the Court **HEREBY AWARDS** Class Counsel $1,453,981.51 in litigation expenses incurred, and authorizes the Settlement Administrator to pay and disburse up to an additional $669,324.34 in administrative expenses to be accounted for in quarterly reports to the Court and at final closing.

**D.    A $75,000.00 Incentive Award to Each of the Class Representative is Reasonable.**

Without the Class Representatives' willingness to litigate on behalf of other Class Members, this case could not have proceeded and no recovery would have been obtained for the Class. The Court **FINDS** that the Class Representatives went to extraordinary lengths to provide documents, attended hearings and testified for class certification. Some Class Representatives traveled from out of state. All Class Representatives took the risk of bearing the defendants' attorney fees, individually, if the case had been lost. The Representatives' participation materially enabled the Class's settlement recovery.

In the instant case, the incentive award very conservatively reflects the degree of time and commitment that the Class Representatives dedicated to pursuing the claims of the Class Members. Four of the Class Representatives appeared at the Fairness Hearing and testified regarding the time and efforts they have expended in this case over the past decade. Judge Hetherington opined that, in light of the Class Representatives' efforts, the requested award was fair and reasonable. No witness or evidence contradicted Judge Hetherington's opinion.

The Court **FINDS** the incentive award is fully justified by the risk alone. Even when viewed as a percentage of the Settlement, it is far less than every case presented into evidence (Hearing Exhibit 33) and identified by expert witness Judge Hetherington.

## CONCLUSION

The Court, acting as fiduciary on behalf of the Class, as the Statute directs, has considered each statutory factor and applicable case law and evidence, as well as this Court's own personal observations over the years of litigation herein and **HEREBY FINDS** and **IT IS ORDERED** that a fair and reasonable attorney fee is equal to forty (40) percent of the $115,000,000.00 cash portion of the recovery, plus forty (40) percent of $12,662,000.00, the present discounted value of the $14,000,000.00 New Mexico payment method agreed to in ¶ 3.2 of the Settlement Agreement, for a total attorney fee award of $51,048,000.00 to be paid and disbursed from the Settlement Fund. Only those New Mexico Class Member receiving the benefit of the payment method change will proportionately bear the attorney fees associated therewith. In addition, the reimbursement of reasonable litigation expenses is the amount of $1,453,981.51 is hereby **ORDERED**, payable and disbursed to Class Counsel and a reasonable incentive award of $75,000.00 paid to each of the four (4) listed Class Representatives: Robert Lakey, The Tipton Children's Home, Raymond Keating, III, trustee, and Donna Robertson. The Class Administrator is **FURTHER AUTHORIZED** and **ORDERED** to expend and disburse up to an additional $669,324.00 in administration costs, with reports of expenditures to be filed quarterly, until final closing. All amounts are to be paid directly from the Common Fund Settlement Proceeds.

There is no reason for delay in the entry of this Judgment. Pursuant to 12 O.S. § 994 of the Code of Civil Procedure of the State of Oklahoma, the Court directs the Clerk of the Court to immediately enter this Judgment. The claims of non-objecting, participating Class Members are final, as well as Objecting Class Members as found in the separate Order(s) issued concurrently herewith.

**IT IS SO ORDERED THIS** 22 **DAY OF** _August_, 2017.

_____
CHRISTOPHER S. KELLY
JUDGE OF THE DISTRICT COURT

14

# EXHIBIT 14

IN THE DISTRICT COURT OF DEWEY COUNTY
STATE OF OKLAHOMA

DEWEY COUNTY, OKLAHOMA
F I L E D

DEC 2 3 2013

RACHELLE ROGERS, Ct. Clerk
By_____
DEPUTY

PHILLIP J. CORNETT and ASHCRAFT
GROUP LLC, on their own behalf and on
behalf of all others similarly situated,

          Plaintiffs,

v.

SAMSON RESOURCES COMPANY,
an Oklahoma Corporation,

          Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. CJ-09-81

## FINAL ORDER GRANTING CLASS COUNSEL FEES, LITIGATION COSTS, AND INCENTIVE AWARD

This matter came before the Court for an evidentiary hearing on issues regarding the Motion for Attorneys' Fees, Litigation Costs, and Class Representative Award from the Common Fund and Brief in Support Thereof. The Court has considered all submissions and evidence, including all matters presented at the hearing and everything presented by the various objectors and now grants the motion in its entirety. In doing so, the Court has considered and followed all the requirements and considerations set forth in 12 O.S. § 2023 (G)(4)(e) (effective Sept. 10, 2013).

The cited statute governs the award of fees to Class Counsel in this case. The Court has considered each of the statutory factors, acting as a fiduciary on behalf of the class and determining, after consideration of all factors and the submissions and evidence before the Court as noted above, that a fair and reasonable attorneys' fee for Class Counsel is the requested amount—40% of the $15,200,000 cash portion of the recovery (subject to opt-out adjustment per para. 5.2 of the Settlement Agreement), which shall be paid from the Settlement Proceeds.

1

The Court finds that consideration of all 13 factors, individually and collectively, found in 12 O.S. § 2023 (G)(4)(e) supports the conclusion that the amount awarded herein is a fair and reasonable fee for Class Counsel. The Court addresses the 13 factors below in the order of importance in class action litigation such as is involved in this case:

1.    **Whether the fee is fixed or contingent.** Class action fee agreements are almost always contingent fee agreements. Most class member cannot afford to finance a class action on a fixed hourly basis or it would not be worthwhile to do so. As a result, many of the hourly related factors, such as time spent, client relationship length, client imposed deadlines, and hourly rates are of lesser importance in most class actions. Class Counsel here entered into a contingency fee agreement with the named Plaintiffs which provides that attorneys would be compensated at a 40% contingency fee. Prearranged fees, whether fixed or contingent, can be helpful in setting court awarded fees in a class action. In *Sholer v. State of Oklahoma*, 1999 OK CIV APP 100, 990 P.2d 294, ¶¶ 13-14, the court explained:

> Contingent fee agreements may be appropriate in class action cases. . . . Many courts have held, however, that once a class is certified and a decision on the merits is had, **the trial court may decide whether to approve the contingent fee agreement, and whether to extend the contingent arrangement to all class members.** [emphasis added.]

That concept in the Oklahoma law has been carried through by the Oklahoma Legislature in adopting 12 O.S. § 2023 (G)(1) ("In a certified class action, the court may award reasonable attorney fees and nontaxable costs that are authorized by law *or by the parties' agreement.*") (emphasis added). *See also Continental Res. v. Conoco, Inc.*, Consolidated Cases CJ-95-739 and CJ-2000-356 (Okla. Dist. Ct. Garfield County) (Aug. 22, 2005, Order at 5-6)( holding that: "The Court has the authority to extend the contingency fee agreements entered into between the Class Representative and Class Counsel to the entire Class.") (citing *Sholer*). The contingent fee

2

agreement here should be spread across the Class unless the remaining factors indicate a reason to increase or decrease the amount in that agreement which represents the actual market contingency rate for this case at the time the outcome was unknown.

2. **The customary fee.** The customary fee is the second most important factor because in a contingent fee context, the fee is set before the case is filed and discovery and motion practice determines whether the case is a loser or winner, or if a winner, how big. The "customary fee" in cases of this nature is a 40% contingency fee essentially as the Class Representatives and Class Counsel entered into. Had the actual contingent fee agreement been at variance with the customary fee for this type of case, additional scrutiny would have been required. "These types of cases (oil and gas class action cases) are handled on a contingent fee. **The fee percentage in these types of cases is typically 40% of the gross fund.**" (emphasis added). Honorable Richard Perry, *Continental Resources v. Conoco*, Order at 8. That customary fee is reflected in this case.

3. **The amount in controversy and the results obtained.** At the outset, Class Counsel had no assurance of any recovery. Cases brought against operators on behalf of royalty interest owners are riddled with tenuous issues, and some (especially recently in federal court) have not recovered at all. [1] Considering the amount in controversy and, most importantly for a contingent fee case, the result obtained of $15.2 million (plus some on notice costs and mutual releases), which provides outstanding benefits to the Class, this factor weighs strongly in favor of the requested fee.

4. **Awards in similar cases.** This is an important factor as it generally reflects the customary fee entered into in the free market, adjusted for reasonableness, and in this case it

---

[1]   *See Tucker v. BP Am. Prod. Co.*, 278 F.R.D. 646, 654 (W.D. Okla. 2011) (Oklahoma royalty underpayment class certification denied); *Morrison v. Anadarko Petroleum, Corp.*, 280 F.R.D. 621 (W.D. Okla. 2012) (same).

3

again reflects the actual fee agreement entered into. The "awards in similar cases" is approximately 40% of the total value. *See Laverty v. Newfield*, Case No. CJ-2002-101, (Okla. Dist. Ct. Beaver Co.) ("finding that the requested 40% fee is customary in these types of cases" and that "[a] contingent attorneys' fee of at least forty percent (40%) of the common fund is normative for this type of royalty owner class litigation") (emphasis added); *Cont'l Resources v. Conoco Inc.*, No. CJ-95-739 (Dist. Ct. of Garfield Co. Order of Aug. 22, 2005) ("The fee percentage in these types of cases is typically 40% of the gross fund."); *Been v. O.K. Industries, Inc.*, No. CIV-02-285-RAW, 2011 WL 4478766, at *5 (E.D. Okla. Aug. 16, 2011) ("[A] source of comparison is the oil and gas class action settlements in Oklahoma … In those cases, there is a consensus for a 40% fee award."); *Kouns v. ConocoPhillips*, Case No. C-98-61 (Okla. Dist. Ct. Dewey Co.) (42.56% fee); *Velma-Alma v. Texaco*, Case No. CJ-2000-1 (Okla. Dist. Ct. Stephens Co.) (40%); *Rudman v. Texaco*, Case No. CJ-97-1-E (Okla. Dist. Ct. Stephens Co.) (40%); *McIntoush v. Questar*, Case No. CJ-02-22 (Okla. Dist. Ct. Major Co.) (40%); *Robertson/Taylor v. Sanguine*, Case No. CJ-02-150 (Okla. Dist. Ct. Grady Co.) (40%); *Lobo v. BP*, Case No. CJ-97-72 (Okla. Dist. Ct. Beaver Co.) (40%); *Mayo v. Kaiser-Francis*, Case No. CJ-93-348 (Okla. Dist. Ct. Grady Co.) (40%); *DSR v. Devon*, Case No. CJ-11-12 (Okla. Dist. Ct. Dewey Co.) (40%); *Tatum, et al. v. Devon*, FJ-2010-77 (Okla. Dist. Ct. Nowata Co.) (45%).

5. **The risk of recovery in the litigation.** If there was no risk in the litigation, the customary fee would be much lower. However, the risk of recovery in all class actions is high. Class certification can be denied, and even if granted, the Class can lose on the merits on summary judgment, trial, or on appeal.

6. **Experience, reputation and ability of counsel.** Class Counsels' qualifications, skills, experience, ability and reputation in class actions in general and in royalty underpayment in particular are highly regarded by state and federal courts throughout Oklahoma and Kansas.

7. **The novelty and difficulty of the questions presented by the litigation.** Cases filed as class actions are known to be complex and vigorously contested. That certainly was the case here as evidenced by the class certification briefing and expert opinions attached thereto. Substantial litigation risks existed in this case, both at the certification stage and on the merits.

8. **The skill required to perform the legal services properly.** The nature of this litigation, coupled with the issues, mandated that the Class be represented by highly skilled counsel. To prosecute these claims against well-financed defendants with vast resources, represented by the well-known defense counsel, necessitated assembling a team of Class Counsel qualified, skilled, and experienced in oil and gas litigation as well as the details of complex litigation. Class Counsel collectively have decades of experience in oil and gas litigation and have prosecuted numerous class actions and complex cases.

9. **The preclusion of other employment.** Class Counsel are engaged in the on-going practice of law. Had Class Counsel not committed their limited resources to this litigation, Class Counsel could have accepted other matters, but did not. The prosecution of this litigation has reduced Class Counsel's opportunity for employment in other matters.

10. **Time and labor required.** This factor in the contingent fee common fund class actions such as this one is intended to show that the case was not a lay-down (though it may have more importance in a fee shifting class action). The history of this litigation and creation of the common fund demonstrate that substantial time and labor were invested by Class Counsel. Class

5

Counsel risked substantial time, several thousand hours, and many more will be expended before the Settlement allocation is finalized, paid out, and the case closed.

11.    **The undesirability of the case.** Compared to most civil contingent fee litigation attracting counsel to represent plaintiffs, this class action fits the "undesirable" test. Few law firms are willing to litigate cases which require reviewing thousands of pages of detailed contracts and accounting records, consulting and hiring expert witnesses, and risking a substantial investment of time, trouble, and expense necessary to prosecute a case with such uncertainty. Defendant is well-financed and well represented. The risk of success was uncertain and the potential exposure for failure was significant. The investment by Class Counsel of their time, treasure, and effort, coupled with the attendant potential for non-recovery and loss of all the time and expenses advanced by Class Counsel, rendered the case sufficiently undesirable so as to preclude most law firms from taking a case of this nature.

12.    **Time limitations imposed by client or circumstances.**    Though not a significant factor in this case, or in most class actions, time limitations have been imposed on Class Counsel throughout the course of the proceedings not by the client, but by the Court.

13.    **The nature and length of the professional relationship with the client.**

Both named Plaintiffs are long-time clients of class counsel, Kandi Jepsen Pate and Mark A. Wolfe.  Plaintiffs have consulted with their attorneys on numerous occasions concerning many facets of their mineral ownership.  Plaintiffs have assisted Class Counsel with developing this case and discovery.

Based on a review of these 13 factors, the Court finds the 40% contingency fee contained in the fee agreement between Class Counsel and the Class Representatives is within the typical range of contingency fee percentages for oil and gas class action litigation approved in this State,

is fair and reasonable in similar cases, and is fair and reasonable in this case and should be, and is hereby, approved and extended to the members of the Class.

## II.     Litigation Expenses Are Reasonable.

The requested expenses are $271,319.21. All of the expenses incurred, or to be incurred are reasonable and necessary and the Court expressly so finds after due consideration of the evidence.

## III.     The Requested 1% Incentive Award To Each Of The Class Representatives Is Reasonable.

The Class Representatives have performed well based on the evidence before the Court and the Court's knowledge from presiding over this litigation. Without the Class Representatives' willingness to litigate on behalf of other royalty owners, this case could not have proceeded and no recovery would have been had for the Class. The Class Representatives spoke with Class Counsel about their royalty payments and about the facts and legal issues in the case, negotiated the fee agreement, provided documents, participated in the mediation process and consulted with Class Counsel on the terms of the Settlement, all to enable the Class's recovery on its claims.

The incentive award sought is consistent with such awards in other cases. Recently, courts have awarded class representatives in royalty owner class actions approximately 1-2% of the settlement. *See Continental Res. v. Conoco, Inc.*, Consolidated Cases CJ-95-739 and CJ-2000-356 (Okla. Dist. Ct. Garfield County Aug. 22, 2005) ("Court awards to Class Representatives of 1% of the common fund are typical in these types of actions, with some awards approaching 5% of the common fund"); *Velma-Alma Independent School District No. 15 v. Texaco, Inc.*, Consolidated Case Nos. CJ-2002-304, CJ-04-581-E and CJ-2005-496M (Okla. Dist. Ct. Stephens County Dec. 22, 2005) (awarding 1.07% of the respective total settlement

7

amounts); *Robertson v. Sanguine, Ltd.*, Case No. CJ-02-150, (Okla. Dist. Ct. Caddo County July 11, 2003) (approving 1%); *Fazekas v. ARCO*, Case No. C-98-65 (Okla. Dist. Ct. Latimer County 2002) (awarding 6.40%); *Rudman v. Texaco*, Case No. CJ-97-1-E (Okla. Dist. Ct. Stephens County 2001) (awarding 1.00%); *Brumley v. ConocoPhillips*, Case No. CJ-2001-5 (Okla. Dist. Ct. Texas Co. 2005) (awarding 1.13%); *Robertson/Taylor v. Sanguine*, Case No. CJ-02-150 (Okla. Dist. Ct. Grady County 2003) (awarding 1.00%); *DSR v. Devon*, Case No. CJ-11-12 (Okla. Dist. Ct. Dewey Co.) (awarding 1%). A fee of 1% of the Settlement Proceeds to each of the Class Representatives is reasonable.

## IV. **Objections**

On December 9, 2013, Charles A. Newman filed his written objection, which among other contentions, contends that the Attorneys Fees and class representatives' incentive award are not proper. Class Counsel has filed their response to these contentions. Mr. Newman also states that he will not appear at the hearing to present his objection, which appearance is required by this Court and the Notice of Proposed Settlement of Class Action.

On December 2, 2013, Tony Ray Whisenant, filed an objection to the proposed settlement contending that the attorneys fee of 40% (as requested by Class Counsel) should be reduced by the Court to 30%. Mr. Whisenant stated in his objection that he planned to attend the hearing "unless weather or an unforeseen (sic) event prevents it". Class Counsel has responded to this objection.

Don Edward Williams, on November 20, 2013, filed a motion to continue the Fairness Hearing to which Class Counsel responded by filing their Motion to Strike Improperly Filed Motion to Continue. On December 6, 2013, Mr. Williams filed a Notice of Intent to Be Heard

Before the District Court of Dewey County in the State of Oklahoma. Class Counsel has responded to this filing.

The Court, having reviewed all related pleadings and filings, including the pleadings filed by Charles A. Newman, Tony Ray Whisenant and Don Edward Williams, having heard the presentation of counsel for the Class, the Defendant, and other proper participants, hereby finds that that all the objections to the requested attorney fees, litigation expenses and incentive award to class representatives are without merit and should be and hereby denied. In addition, objections of those objectors who failed to appear are denied for failure to appear as required by the Court; however, as recited above, based on the submissions presented, all objections have been and are denied on the merits as well without reference to whether appearance was made.

## V.    Conclusion

The Court finds reasonable, approves, and orders: 1) an award of 40% of the Settlement Proceeds as a fee to Class Counsel (subject to opt-out adjustment per para. 5.2 of the Settlement Agreement); 2) an award of $271,319.21 in litigation expenses to Class Counsel; and 3) an incentive award of 1% of the Settlement Proceeds to each of the Class Representatives (subject to opt-out adjustment per para. 5.2 of the Settlement Agreement), all of which shall be paid from the Settlement Proceeds.

There is no reason for delay in the entry of this Judgment and immediate entry by the Clerk of the Court is expressly directed pursuant to Sec. 994 of the Oklahoma Code of Civil Procedure.

**IT IS SO ORDERED THIS 23rd DAY OF DECEMBER, 2013.**

Ray Dean Linder, District Court Judge

9

# EXHIBIT 15

## IN THE DISTRICT COURT OF DEWEY COUNTY
## STATE OF OKLAHOMA

DSR INVESTMENTS LLC, ON ITS OWN ) 
BEHALF AND ON BEHALF OF ALL )
OTHERS SIMILARLY SITUATED, )
                                   )
       Plaintiff, )
                                   )
v. )
                                   )    Case No. CJ-11-12
DEVON ENERGY PRODUCTION )
COMPANY, LP, )
                                   )
       Defendant. )
                                   )

DEWEY COUNTY, OKLAHOMA

**F I L E D**

DEC 1 3 2013

RACHELLE ROGERS, Ct. Clerk
By_____
                        DEPUTY

## FINAL ORDER GRANTING CLASS COUNSEL FEES, LITIGATION COSTS, AND INCENTIVE AWARD

This matter came before the court for an evidentiary hearing on issues regarding the Motion for Attorneys' Fees, Litigation Costs, and Class Representative Award from the Common Fund and Brief in Support Thereof filed on October 4, 2013. The Court has duly considered all submissions and evidence, including all matters presented at the hearing and now grants the motion in its entirety. In doing so, the Court has considered and followed all the requirements and considerations set forth in 2013 Okla. Sess. Law Serv. 1st Ex. Sess. Ch. 10 (H.B.1013) (West) (effective September 10, 2013) and with particular attention to the requirements and considerations set forth in Section 5, subsection G of that statute.

The cited statute governs the award of fees to Class Counsel in this case. The Court has considered each of the statutory factors, acting as a fiduciary on behalf of the class and determining, after consideration of all factors, that a fair and reasonable attorneys' fee for Class Counsel is the requested amount—40% of the $11,000,000 cash portion of the recovery (plus accrued interest and subject to opt-out adjustment per para. 1.14 of the Settlement Agreement),

1

which shall be paid from the Settlement Proceeds. Although the total recovery, which includes Defendant's payment of Administrative Expenses and Defendant's release of its potential right to recoup certain previously made payments to class members, exceeds the $11,000,000 cash portion of the settlement and could justify additional fees, Class Counsel did not move for fees of 40% of the total value of the settlement and the Court will not award more than was requested. However, because the fair value of the total recovery for the Class exceeds $11,000,000, the fee approved by this order is actually less than the 40% of total recovery that is typical in cases like this one.

The Court finds that consideration of all 13 factors found in Section 5, Part G, Paragraph e of 2013 Okla. Sess. Law Serv 1st Ex. Sess. Ch. 10 (H.B.1013)(West) (effective September 10, 2013) supports the conclusion that the amount awarded herein is a fair and reasonable fee for Class Counsel. Indeed, except for factor e (11) which does not by itself support either a higher or lower fee in this case, all of the factors, individually and certainly collectively, support the fee awarded herein. Additional observations of the Court, in no particular order, follow.

The evidence and experience of this Court is that class actions are taken on a contingent fee, not an hourly, basis. This case was. Without the class action procedure and the contingent fee agreement, it is unlikely that this case could have been brought. The amount in controversy for each member of the class would likely be dwarfed by the anticipated litigation expenses alone, not even considering the enormous legal fees that could be expected under such a hypothetical arrangement, it is a virtual certainty that the typical class could neither afford nor rationally enter into an hourly fee arrangement in a complicated class action case like this. As a result, class counsel, unlike Defense counsel who could count on being routinely paid fees for time and labor expended and for expenses incurred, took an enormous risk at the outset of the

6:18-cv-00100-JKL Document 84-4 Filed in ED/OK on 05/26/21 Page 263 of 351

case as they might have received nothing at all in return for the large amount of time and expenses that could be expected to be spent in litigating against a sophisticated adversary who would likely be (and was) represented by top-flight lawyers in a case that could well have taken much longer than it did. Had the case been lost, as it could have been at various stages including if no class were certified or if the case were lost on the merits, then class counsel stood to take a serious financial and no doubt emotional loss to the small law firms involved.

Here, the case presented novel and difficult questions both of law and of uncovering, developing and interpreting facts through formal discovery and informal means. A great deal of skill was required to perform the legal services—representation of the class—properly. And, that skill was apparent from the issues presented, the quality of papers presented to the Court, and the necessity of litigating against highly qualified and well-funded defense counsel. There is no doubt that acceptance of this case such as this one precluded other employment due to the issues and time involved. And, the Court finds from the evidence presented that there was a great deal of time (not to mention litigation expenses) that were actually required in litigating the case on behalf of the class.

Under all the circumstances, including the amount in controversy, the results obtained were very good. Success was not assured for the class which could have ended up with nothing had the highly skilled counsel representing the defense prevailed on any of a host of legal or factual issues. Hence, there was a real and tangible risk that there would be no recovery in the case. That fact, the anticipated length of time involved in cases like this one and the enormous expenditure of time and expense money anticipated to be involved would lead many lawyers to view such cases as unduly risky and undesirable, which explains why there are not that many lawyers willing to undertake representation of a class in cases like this one. And, the court has

already found elsewhere that the settlement itself given the amount in controversy and circumstances of the case was fair, adequate and in the best interests of the class. But for the skill, time and labor of class counsel, such a result would not have been obtained. And, the evidence reveals, and the court finds, that the class counsel are highly experienced class action counsel whose reputation and abilities are recognized to be exemplary.

The evidence establishes, and the Court from its own experience confirms, that an award of 40% of the value of the recovery is the typical in class action royalty litigation. That is the market rate in cases like this and the determination of the free market deserves credence from this court. Not surprisingly, many other courts have found a 40% award of attorneys' fees is typical, fair and reasonable in cases like this. *See, e.g., Laverty v. Newfield*, Case No. CJ-2002-101, (Okla. Dist. Ct. Beaver County) ("finding that the requested 40% fee is customary in these types of cases" and that "[a] contingent attorneys' fee of at least forty percent (40%) of the common fund is normative for this type of royalty owner class litigation") (emphasis added); *Cont'l Resources v. Conoco Inc.*, No. CJ-95-739 (Dist. Ct. of Garfield Cnty. Order of Aug. 22, 2005) ("The fee percentage in these types of cases is typically 40% of the gross fund."); *Been v. O.K. Industries, Inc.*, No. CIV-02-285-RAW, 2011 WL 4478766, at *5 (E.D. Okla. Aug. 16, 2011) ("[A] source of comparison is the oil and gas class action settlements in Oklahoma ... In those cases, there is a consensus for a 40% fee award."). *See also* Section 5, Paragraph G(1) of 2013 Okla. Sess. Law Serv. 1st Ex. Sess. Ch. 10 (H.B.1013)(West)(effective September 10, 2013) ("In a certified class action, the court may award reasonable attorney fees and nontaxable costs that are authorized by law *or by the parties' agreement*.") (emphasis added); *Sholer v. State ex rel. Dept. of Pub. Safety*, 1999 OK CIV APP 100, 990 P.2d 294, 299-300 (citing *Deposit Guaranty Bank*, 100 S.Ct. at 1174)(holding that "the trial court may decide whether to approve

the contingent fee agreement, and whether to extend the contingent arrangement to all class members." ); *Continental Res. v. Conoco, Inc.*, Consolidated Cases CJ-95-739 and CJ-2000-356 (Okla. Dist. Ct. Garfield County) (Aug. 22, 2005, Order at 5-6)( holding that: "The Court has the authority to extend the contingency fee agreements entered into between the Class Representative and Class Counsel to the entire Class. [citing *Sholer, supra*]. The Court finds the 40% contingency fee percentage contained in the agreement between Class Counsel and the Class Representatives is within the typical range of contingency fee percentages for oil and gas class action litigation approved in this State. The Court finds: (a) that the 40% contingency fee agreement between Class Counsel and the Class Representatives is fair and reasonable and should be, and is hereby, approved and extended to the members of the Class"). The evidence demonstrates that awards of greater than 40% of the gross recovery have sometimes been justified and the Court does not opine on whether a somewhat higher dollar amount could have been justified in this case had it been sought. Sometimes awards of less than the going rate, down to as low as 33 1/3 %, have been made. However, in this case, the negotiated fee agreement is consistent with the market rate of 40% and, after consideration of all of the factors required by the statute, the Court finds that the requested 40% of the gross cash recovery should be awarded and is a fair and reasonable fee.

## II.     Litigation Expenses Are Reasonable

The requested expenses are $233,514.85. All of the expenses incurred, or to be incurred are reasonable and necessary and the Court expressly so finds after due consideration of the evidence.

5

## III. The Requested 1% Incentive Award To Class Representatives Is Reasonable.

The Class Representative has performed well based on the evidence before the Court and the Court's knowledge from presiding over this litigation. Without the Class Representative's willingness to litigate on behalf of other royalty owners, this case could not have proceeded and no recovery would have been had for the Class. The Class Representative spoke with Class Counsel about their royalty payments and about the facts and legal issues in the case, negotiated the fee agreement, provided documents, participated in the mediation process and consulted with Class Counsel on the terms of the settlement, all to enable the Class's recovery on its claims.

The incentive award sought is consistent with such awards in other cases. Recently, courts have awarded class representatives in royalty owner class actions approximately 1-2% of the Settlement. *Continental Res. v. Conoco, Inc.*, Consolidated Cases CJ-95-739 and CJ-2000-356 (Okla. Dist. Ct. Garfield County Aug. 22, 2005) ("Court awards to Class Representatives of 1% of the common fund are typical in these types of actions, with some awards approaching 5% of the common fund"); *Velma-Alma Independent School District No. 15 v. Texaco, Inc.*, Consolidated Case Nos. CJ-2002-304, CJ-04-581-E and CJ-2005-496M (Okla. Dist. Ct. Stephens County Dec. 22, 2005) (awarding 1.07% of the respective total settlement amounts); *Robertson v. Sanguine, Ltd.*, Case No. CJ-02-150, (Okla. Dist. Ct. Caddo County July 11, 2003) (approving 1%); *Fazekas v. ARCO*, Case No. C-98-65 (Okla. Dist. Ct. Latimer County 2002) (awarding 6.40%); *Rudman v. Texaco*, Case No. CJ-97-1-E (Okla. Dist. Ct. Stephens County 2001) (awarding 1.00%); *Brumley v. ConocoPhillips*, Case No. CJ-2001-5 (Okla. Dist. Ct. Texas Co. 2005) (awarding 1.13%); *Robertson/Taylor v. Sanguine*, Case No. CJ-02-150 (Okla. Dist. Ct. Grady County 2003) (awarding 1.00%). A 1% fee the Settlement to the Class Representative is reasonable.

6

## IV. Conclusion

The court finds reasonable, approves, and orders: 1) an award of 40% of the Settlement Proceeds as a fee to Class Counsel (plus accrued interest and subject to opt-out adjustment per para. 1.14 of the Settlement Agreement); 2) an award of $233,514.85 in litigation expenses to Class Counsel; and 3) an incentive award of 1% of the Settlement Proceeds to the Class Representative (plus accrued interest and subject to opt-out adjustment per para. 1.14 of the Settlement Agreement), all of which shall be paid from the Settlement Proceeds.

There is no reason for delay in the entry of this Judgment and immediate entry by the Clerk of the Court is expressly directed pursuant to Sec. 994 of the Oklahoma Code of Civil Procedure.

**IT IS SO ORDERED THIS** *13th* **DAY OF DECEMBER, 2013.**

Ray Dean Linder, District Court Judge

7

# EXHIBIT 16


*102156989*

**IN THE DISTRICT COURT OF ROGER MILLS COUNTY**
**STATE OF OKLAHOMA**

GARLAND HOLCOMB, TRUSTEE )
OF THE FRADY B. HOLCOMB )
REVOCABLE TRUST, for himself )
and all others similarly situated, )
     )
     )
    Plaintiffs, )
     )
vs. )
     )
CHESAPEAKE ENERGY CORPORATION )
and CHESAPEAKE OPERATING, INC., )
     )
    Defendants. )

**FILED**

APR 2 3 2013

COURT CLERK
ROGER MILLS COUNTY
PER_____

Case No. CJ-2011-6

### ORDER APPROVING ATTORNEY FEES, CLASS REPRESENTATIVE FEE AND LITIGATION EXPENSES

This matter came on for hearing on April 23, 2013 on Class Representative and Class Counsel's motion for attorney fees, litigation expenses and Class Representative fees. The Plaintiffs were present and represented by counsel, and the Defendants were represented by counsel. The Class Representative submitted his affidavit supporting the requested fees and expenses.

After reviewing the motion and all related pleadings, having reviewed the evidence submitted, having heard the testimony and arguments presented, and being fully advised in the premises, **THE COURT FINDS AND ORDERS AS FOLLOWS:**

**Notice and Objections;**

1.    Notice of hearing was properly mailed to the Class Members with known valid mailing addresses, and was published as required by this Court's previous order. The Court

previously approved the form of Notice issued and now finds that the Notice to the Class of the hearing is proper and sufficient under 12 Okla. Stat. §2023(E), as well as the Due Process Clause of the United States Constitution and the Due Process Clause of the Oklahoma Constitution.

2. The Court notes that no Class Members filed any objection or opted out of the class.

**Class Counsel Fees:**

Evidence was presented at the hearing by the Class Representative and Class Counsel, demonstrating that an attorney fee award of 40% is fair, reasonable and appropriate. Testimony was presented through the affidavits of the Class Representative, and by way of live testimony at the hearing, including the testimony of Stephen Beam (an expert witness for the Class), all of whom testified that a 40% attorney fee is reasonable, normal and customary in a case such as this, that Class Counsel have earned, and is entitled to, a 40% fee and that the Class would likely have received nothing for their claims but for the efforts of Class Counsel. The affidavits, exhibits and testimony offered by Class Counsel and the Class Representatives were accepted by the Court, without objection by any other party, person or entity.

Based upon the evidence, the Court finds that Class Counsel's efforts on behalf of the Class in this lawsuit began with an investigation that led to the filing of this lawsuit in early 2011. Over the past two years, Class Counsel have devoted hundreds of hours of time and effort, including extensive discovery of documents and data, research, accounting review and analysis, consultation with and preparation of expert witnesses, formal mediation, settlement negotiations

2

among counsel, land and lease record review and analysis, engineering review and analysis, damage modeling, and other investigations and preparation. Class Counsel have advanced and paid substantial amounts of money to achieve a fair and reasonable settlement for the benefit of the Class. Class Counsel have borne hardships of the litigation and the risk of potential loss. To date, Class Counsel have received no compensation for their efforts or reimbursement of their expenses. The Court acknowledges: (i) the reasonableness of the attorney rates, attorney hours, expenses, and Class Representative fees, (ii) the excellent efforts of Class Counsel, without whom the Class would have received none of their underpaid royalty; (iii) the need of royalty owners to have lawyers willing to represent classes in matters of this sort so that cases will be properly pursued so as to achieve excellent results.

3. Class Counsel have made substantial time and labor commitments which have now inured to the financial benefit of the Plaintiff Class and which have resulted in the creation of a Common Fund of $2,000,000.00, plus accrued interest.[1]

---

[1] The Common Fund Doctrine is well recognized by the Oklahoma Supreme Court (as well as the United States Supreme Court). If the plaintiff and/or his counsel have created, preserved, protected, or increased a common fund (or common property) , or have brought into court a fund in which others may share with him, a court, in the exercise of equitable jurisdiction, may order the allowance of attorney fees and litigation expenses to counsel.

> The conceptual underpinnings for the chancery common-fund doctrine teach us that an equitable charge may be impressed in favor of its creator when the fund is within the direct control of the court. The "pre-existing fund" must be immediately subject to counsel-fee assessment, and the benefits conferred have to be traceable with some accuracy to each beneficiary. [Footnotes and citations omitted.]

*Oklahoma Tax Com'n v. Ricks*, 1994 OK 115, ¶¶7-8, 885 P.2d 1336.

> It is well settled that ordinarily "a court in the exercise of equitable jurisdiction, will, in its discretion, order an allowance of counsel fees, or, as it is sometimes said, allow costs as between solicitor and client, to a complainant (and sometimes directly to the attorney) who at his own expense has maintained a successful suit for the preservation, protection, or increase of a common fund, or of common property, or who has created at his own expense, or brought into court, a fund in which others may share with him." [Citations omitted.]

4. Under the Common Fund Doctrine, and in particular in a "class action" (which is one type of action that can create a common fund), the Court has the authority to extend contingency fee agreements entered into between the Class Representatives and Class Counsel to the entire Class.

> Contingent fee agreements may be appropriate in class action cases. . . . Many courts have held . . . that once a class is certified and a decision on the merits is had, the trial court may decide whether to approve the contingent fee agreement, and whether to extend the contingent arrangement to all class members.

*Sholer v. State of Oklahoma,* 1999 OK CIV APP 100, ¶¶13-14, 990 P.2d 294.

5. This Court recognizes the importance of contingent fees in our judicial system, especially in class actions.

> Although contingent fee contracts are subject to restrictions . . . such agreements have generally been enforced unless the contract is unreasonable. Often contingent fee agreements are the only means possible for litigants to receive legal services -contingent fees are still the poor man's key to the courthouse door. The contingent fee system allows persons who could not otherwise afford to assert their claims to have their day in Court. [Footnotes omitted.] *Sneed v. Sneed,* 1984 OK 22, ¶3, 681 P.2d 754.

6. *Newberg on Class Actions §14:6* (4th ed. 2002) recognizes that it is appropriate to award an attorney's fee based on a percent of the value of the common fund established for the benefit of the class.

7. This Court finds that the efforts of Class Counsel created a large common fund for the benefit of the Class. The Court finds that Class Counsel and the Class Representative entered into a contingency fee agreement whereby Class Counsel agreed

---

*State ex rel. Board of Com'rs of Harmon Co. v. OTC,* 1944 OK 250, ¶4, 151 P.2d 797; see also *Kellough v. Taylor,* 1941 OK 320, 119 P.2d 556.

to prosecute this action in exchange for receiving a contingency fee based on the gross recovery, plus reimbursement of litigation expenses.

8. The Court finds that the 40% contingency fee percentage fee is customary, typical and usual for oil and gas class action attorney fee awards approved in this State.

9. The Court finds: (a) that the 40% contingency fee is fair and reasonable and should be, and is hereby, approved and extended to the Members of the Class, and (b) that based upon the foregoing factors and reasoning, as well as the additional analysis described below, an attorney fee award of 40% of the Settlement Proceeds (as defined in Compromise and Settlement Agreement), is a fair and reasonable amount of compensation to Class Counsel for establishing the Common Fund.

10. The Court has reviewed the detailed time records submitted by Class Counsel and finds that the time reflected in the records was reasonably expended for the benefit of the Class. The Court has also reviewed the hourly rates of Class Counsel as set forth in the record and finds them to be reasonable and within the acceptable range in the legal community for this type of legal services. Thus, the Court further finds that the hours multiplied by the reasonable hourly rates yields a cross-check multiplier for a 40% contingent fee of less than 2, which is well within the bounds established by numerous courts.

11. The Court considered the basic guidelines established by the Oklahoma Supreme Court set forth in *State ex rel. Burk v. City of Oklahoma City*, 1979 OK 115, 598 P.2d 659, and codified in 12 Okla. Stat. §2023(G)(4)(e). In *Burk* and §2023(G)(4)(e), the Supreme Court enunciated various factors to be considered by the District Court in fixing fees.

a.    **Time and labor required.** The two year history of litigation and creation of the common fund demonstrates the time and labor invested by Class Counsel in this litigation. Counsel have made large time and labor commitments which have now inured to the financial benefit of the Class and have resulted in the Common Fund. In fact, Class Counsel invested have large amounts of time for the benefit of the Settlement Class.

b.    **The novelty and difficulty of the question.** Cases filed as class actions are known to be complex and vigorously contested. That certainly was the case here. The issues and questions raised by parties in this litigation were extremely complex as can be evidenced by the pleadings and other court filings themselves. The Court takes judicial notice of this factor.

c.    **The skill requisite to perform the legal services properly.** The nature of this litigation mandated that the Class be represented by highly skilled counsel. To prosecute these claims against a large corporate defendant like Chesapeake, with extensive resources, represented by the very best defense counsel, necessitated assembling a team of Class Counsel qualified, skilled and experienced in oil and gas litigation as well as the details of complex litigation.

d.    **The preclusion of other employment.** Class Counsel are engaged in the on-going practice of law. Furthermore, all three law firms representing the Class are relatively small firms. Had Counsel not committed their limited resources to

6

this litigation, Counsel could have accepted other matters, but did not. The prosecution of this litigation has reduced Counsel's opportunity for employment in other matters.

e.  **The customary fee.** The "customary fee" in cases of this nature is a contingency fee of the type agreed to by the Class Representatives and requested by Class Counsel. Such a contingency fee is the preferred method of compensation to the attorneys.

f.  **Whether the fee is fixed or contingent.** Counsel entered into a contingency fee agreement with the named Plaintiffs, for a contingency fee based upon the gross consideration recovered, plus expenses, to be paid out of the Settlement Fund.

g.  **Time limitations imposed by client or circumstances.** Numerous time limitations have been imposed on Class Counsel throughout the course of the proceedings. The schedules of the courts, witnesses and clients were accommodated on a regular basis by Class Counsel. A case of the size and complexity of this one deserves and requires the commitment of a large percentage of the total time and resources of firms the size of those of Class Counsel and worked significant hardships on them over the course of nearly two years.

h.  **The amount involved and the results obtained.** At the outset, Class Counsel had no assurance of any recovery. Considering all involved, but for the

efforts of Counsel, the $2,000,000.00 Common Fund settlement in this case would not exist.

i.  **Experience, reputation and ability of counsel.** Counsels' qualifications, skills, experience, ability and reputation were addressed above.

j.  **The undesirability of the case.** Compared to most civil, contingent fee litigation attracting counsel to represent Plaintiffs, this Litigation clearly fits the initially "undesirable" test. Not many law firms would be willing to risk investing the time, trouble and expenses necessary to prosecute this litigation for almost two years (and potentially much longer). Chesapeake is well-financed and well-represented. There was no doubt from the beginning that this lawsuit would be a lengthy, expensive, time-consuming and arduous undertaking. The investment by Class Counsel of their time, money and effort, coupled with the attendant potential for non-recovery and loss of all the time and expenses advanced by Class Counsel, rendered the case sufficiently undesirable so as to preclude most law firms from taking a case of this nature. Two years of paying out large litigation and overhead costs, without income, from a case combine to create more than enough reasons to prevent most attorneys from taking on a case like this.

k.  **Nature and length of the professional relationship with the client.** Class Counsel, Randy Smith has maintained an ongoing attorney/client

relationship with the named Plaintiff for years. There is always significant risk to a client who participates as a plaintiff in a large lawsuit, in terms of the client's reputation, future business dealings, liability for costs, and other potentially adverse considerations. Class Counsel's relationship could have been severely jeopardized in the event of an unsuccessful end to the litigation that could have caused significant damage to the clients, thus not only adversely affecting Class Counsel and the named Plaintiff in the present case, but also potentially impacting Class Counsel's income from other cases in the future.

1.   **Awards in similar cases.** The requested award of a 40% contingency fee in this case is entirely in line with other similar class action fee awards in oil and gas related cases in Oklahoma.

12.   Based upon the Court's analysis of the factors discussed above, the Court finds a reasonable fee in this case to be $800,000.00 (which represents 40% of the gross Settlement Proceeds, (and a multiplier on the base hourly fees of less than 2), which is well within the range of reasonableness.[2]

**IT IS THEREFORE ORDERED** that Class Counsel be, and hereby is, awarded a fee of forty percent (40%) of the gross Settlement Proceeds, for an attorney fee in the amount of $800,000.00.

---

[2]   In appropriate cases where Class Counsel have created a large common fund, such as in the present case, multipliers of 5 to 10 have been awarded. *See* Herbert Newberg, *Newberg on Class Actions (3rd)*, §14.03.

**Expert Witness Fees, Litigation Expenses and Class Representatives Fee:**

13.     The Court, having reviewed the accounting records which detail the expert witness fees and litigation expenses incurred in pursuit of class claims, having heard testimony regarding the necessity of such expenditures in preparation of the case, and having no objections filed as to these expenses, finds that reasonable expert witness fees and litigation expenses were incurred in the amount of $78,186.04.

14. The Court finds the Class Representative has made substantial time and labor commitments to the Class, and have incurred serious legal and financial risks while pursuing this case on behalf of the Class, all of which resulted in obtaining an excellent benefit for the Class. The granting of a Class Representative fee is based upon equitable considerations discussed above which relate to a party's efforts in the creation of a common fund for the mutual benefit of a class. Court awards to Class Representative of more than 0.5% of the common fund are typical in these types of class actions with recoveries of this magnitude. In this action, Class Counsel has recommended and requested a Class Representative's fee of $10,000.00 (0.5%) of the gross Settlement Proceeds. The Court finds that compensation to the Class Representative of $10,000.00 is fair and reasonable compensation for his services to the Class.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED** that (1) Class Counsel are awarded an attorney fee of forty percent (40%) of the gross Settlement Proceeds in the amount of $800,000.00; (2) Class Counsel are also awarded reimbursement of litigation expenses in the amount of $88,186.04; and, (3) Class Representative is awarded fees of 0.5% of the gross Settlement Proceeds in the amount of $10,000.00.

**IT IS SO ORDERED** this 23rd day of April, 2013.

The Honorable Doug Haught
Judge of the District Court

**Approved:**

Douglas D. Wilguess, OBA No. 16337
Heather A. Garrett, OBA No. 19099
**WILGUESS & GARRETT, PLLC**
One Leadership Square
211 N. Robinson, Suite 1350
Oklahoma City, Oklahoma 73102
Telephone: (405) 235-0200
Facsimile: (405) 232-6515

Gerald P. Green, OBA No. 3563
**PIERCE, COUCH, HENDRICKSON,
BAYSIGNER AND GREEN, P.C.**
P. O. Box 26350
Oklahoma City, OK 73126-0350
Telephone: (405) 235-1611
Facsimile: (405) 235-0085

**ATTORNEYS FOR PLAINTIFF CLASS**

11

6:16-cv-00199-JH Document 84-4 Filed in ED/OK on 05/26/21 Page 280 of 351

# EXHIBIT 17

FEB- 4-05 FRI 11:53 AM   WRIGHT, DALE, JETT&CARTER      FAX NO. 580 338 8244         P. 2

*File Brumley Atty Fees*

IN THE DISTRICT COURT OF TEXAS COUNTY
STATE OF OKLAHOMA

| | | |
|---|---|---|
| JEANNE BRUMLEY, TIM MEYER INDIVIDUALLY AND AS TRUSTEE OF THE ALLEN TIM MEYER REVOCABLE TRUST DATED APRIL 5, 1993, and JANITH NEVILLE INDIVIDUALLY AND AS Co-TRUSTEE OF THE CHESTER L. PHILIPPE TESTAMENTARY TRUST AND CO-TRUSTEE OF THE EDNA MAUREEN PHILIPPE TESTAMENTARY TRUST, for themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> CONOCOPHILLIPS COMPANY, a Delaware Corporation, formerly known as Phillips Petroleum Company, and CONOCOPHILLIPS, a Delaware Corporation, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. CJ-2001-5 <br><br> **TEXAS COUNTY** <br> # F I L E D <br><br> **FEB 3 – 2005** <br><br> **KAREN PARISH** <br> **COURT CLERK** |

## ORDER ON CLASS COUNSELS' MOTION FOR ATTORNEYS' FEE, REPRESENTATIVES' FEE AND REIMBURSEMENT OF LITIGATION EXPENSES FROM THE COMMON FUND

This matter came on for hearing the 11th day of October, 2004, pursuant to Notice for hearing to determine the fairness and appropriateness of Class Counsel's fees and expenses and Class Representatives' fees to be paid out of the Common Fund. All named parties were present (Class Representatives were present by and through Jeanne Brumley, Tim Meyer individually and as trustee of the Allen Tim Meyer Revocable Trust dated April 5, 1993 and Janith Neville individually and as Co-Trustee of the Chester L. Philippe Testamentary Trust and Co-Trustee of the Edna Maureen Philippe Testamentary Trust) and represented by Class Counsel (Robert N.

– 1 –

Barnes, Charles L. Puckett, Jr., Robert G.Gum and Bryan Wright). Also appearing *pro se* were the following class members: David Patrick Long and James N. Oakes, Sr.

After reviewing the motion and all related pleadings, having reviewed the evidence submitted, having heard the testimony and arguments presented, and being fully advised in the premises, THE COURT FINDS AND ORDERS AS FOLLOWS:

**Notice:**

Notice of this hearing, and Class Counsels' requested fees and litigation expense reimbursement, and Class Representative fee, was properly mailed by ConocoPhillips to Class Members with known valid mailing addresses and was published as required by this Court's previous order (see ConocoPhillips's reports concerning notice previously filed with the Court).

The Notice provided that Class Counsel were seeking an attorney fee equal to 1/3 of the Total Common Fund and recovery of litigation expenses estimated at that time to be $860,000. Also, the Notice disclosed that a Class Representative fee equal to 1% of the Total Common Fund would be sought. The Court previously approved such notice and now finds that the notice to the class of this hearing is proper and sufficient under 12 O.S. § 2023 (E), the Due Process Clause of the United States Constitution and the Due Process Clause of the Oklahoma Constitution.

**Objections:**

The Class includes more than 3,000 members. The attorney fee request originally made was 1/3 of the Total Common Fund. Only 18 of the class members have objected to the Class Counsel's

– 2 –

6:18-cv-00199-JHP Document 84-4 Filed in ED/OK on 05/26/21 Page 283 of 350
6:16-cv-00184-JHP Document 295-1 Filed in ED/OK on 05/17/2018 Page 280 of 351

request for attorneys' fees.[1] There have been no objections to Class Counsel's request for reimbursement of expenses which were previously estimated to be $860,000.00.[2] One objection (James N. Oakes, individually and as joint tenants with Betty L. Oakes) has been made to the 1% of the Total Common Fund Class Representatives' fee. Mr. Oakes did not object to the requested 1/3 of the Total Common Fund attorney fee request. None of the objectors presented any evidence or witnesses. There was no evidence presented that the fee requested was unreasonable or improper. Class Counsel presented numerous exhibits, affidavits and the live testimony of Robert N. Barnes, Michael Burrage (former Oklahoma federal district judge), and Jeanne Brumley. There was no evidence contradicting Class Counsel's evidence of what a reasonable fee should be.

None of the objectors purport to represent anyone other than themselves. Objector D. Patrick Long did cross examine witnesses. Mr. Long is an attorney licensed to practice law in the State of Texas.[3] Mr. Long appeared only *pro se* and not as the representative of any other objector. None of the objectors sought in any way to represent the Class as a whole in opposition to the requested fees and expenses which are the subject of this order. Therefore, to the extent any

---

[1] Persons objecting to the attorney fee along with their respective percentages of class claims are: Mary Margaret Lindley Erker .0021512%, Voncicle W. Gray.1114442%, John O. & Beatrice F. Grice .0065411%, William & Suzanne Landnm 2.2914996%, Beulah Yoakum Lee .1145659%, Joe R. Lee .0853432%, Lawrence P. Lindley .0021512%, Margaret Long Lindley.0025390%, Michael P. Lindley .0021512%, Phillip B. Lindley .0021512%, Thomas Joseph Lindley .0021512%, George M. Long .0075291%, Louis & Esther Long.0094407%, Stephen K. Long .1533990%, Martha Ann Lindley McClenney .0021512%, Betty Sue Moore .0387778%, Dale Moore .0037607% and David Patrick Long .0500345%. In total the objectors represent approx. 2.9% of the class claims.

[2] At the time of the hearing, class counsel put on evidence that the expenses incurred were $912,955.36. The increased amount resulted from additional expenses incurred since the time the notice was mailed and estimated future expenses likely to be incurred during the distribution process. No objections were made to this amount at the hearing. The hearing exhibit supporting the above amount had some corrections and additions not previously reflected in Appendix 4 of Class Counsel's "Report to the Court" filed on October 7, 2004. There were no objections to class Counsel being reimbursed for all of the $912,955.36 expenses. The objection of James Oakes also asserted that one-third of the total litigation expenses be borne by class counsel, but no evidence or authority in support of this proposition was offered.

[3] Mr Long is known by this Court to be held in high regard and well respected by his colleagues and the legal communities in which he practices law. Mr. Long has appeared Pro Hac Vice before this Court on prior dates and in matters not related herein.

-- 3 --

6:18-cv-00193-JKew Document 34-4-1 Filed in ED/OK on 05/26/21 Page 284 of 350
6:18-cv-00193-JKew Document 295-1 Filed in ED/OK on 05/26/21 Page 285 of 351

objector appeals this order his appeal shall only effect that portion of the award affecting his/her individual interest and not to any other class member now identified and certified by this Court. This judicial determination is necessary and proper to prevent the appeal of one or a few objectors impacting and causing lengthy delay in the distribution of settlement funds to the remaining class members.

**Class Counsel's Attorneys' Fee:**

Class Counsel presented evidence that the Total Common Fund is comprised of $30,000,000 cash plus accrued interest of $761,379 and future benefits of approximately $7,590,000 and less $600,000 representing the approximate portion of the Total Common Fund attributable to the interest of the Commissioners of the Land Office (CLO), which opted out of the class.[4]  Thus, the Total Common Fund, after considering the CLO opt out, is estimated to be $37,751,379 through the time that distribution will be made to the Class Members in early 2005.  At the time of the hearing, Class Counsel reduced their attorney fee request to a total of $11,092,736 which is 29.38% of the Total Common Fund value.  This reduced amount takes into consideration the opt out of the CLO.

The attorney fee amount is to be paid out of the cash settlement proceeds consideration paid by ConocoPhillips.  Class Counsel has not requested any additional amount be paid in the future even though the settlement negotiated with ConocoPhillips will result in higher royalty revenue being paid in the future.  Testimony showed that the Class Representatives fee is $331,861, i.e. 0.88% of the Total Common Fund as calculated above.

---

[4] The future benefit is based upon pricing concessions from ConocoPhillips on future gas royalty payments which will be paid over a 10 year period commencing 8/1/04.  The amount is based upon engineering estimates of future production assuming a $4/mmbtu price and discounted to present value at 8%.  The evidence showed that the increased price was approximately 25% higher than the price being paid before the settlement by ConocoPhillips to royalty owners.

-4-

FEB- 4-05 FRI 11:55 AM   WRIGHT, DALE, JETT&CARTER        FAX NO. 580 338 8244           P. 6

The objecting class member presented an argument under *Burke v. City of Oklahoma City*, 598 P.2d 659 (Okla. 1979), that attorney's fees in common fund class actions are limited to hours expended times hourly rate ("loadstar") plus a bonus of no more than 40 – 50%, if special circumstances or performance so warrants. The Court concludes that *Burke* does provide for a loadstar approach to calculating fees in cases requiring such an approach and has not been specifically overturned. However, two of the factors (so called "*Burke* factors") that a court is required to consider as to the reasonableness of a fee are the "customary fee" and the "fee awarded in similar cases." *Burke*, 598 P.2d at 661. Class Counsel introduced evidence that attorney's fees in every common fund class action in Oklahoma dealing with underpayment of royalty were calculated by the percent of common fund method and that the average fee was 32.2% of the common fund value. Class Counsel Exhibit 11 (pages 2 and 3) and testimony of Michael Burrage. This evidence was uncontroverted. The uncontroverted testimony of Michael Burrage and corresponding Class Counsel Exhibit II introduced, was of great benefit and assistance to this sitting Court for determination of the attorneys' fee award issue herein. Simply stated, the Burrage testimony and presentation gave this Court a vivid panoramic view of similar awards in State and Federal Class Action Cases and the application of Oklahoma law to its affect therein. The presentation of testimony and evidence from Michael Burrage as well, encompassed cases from the Federal 10th Circuit and State District Courts of Kansas.

A percent of common fund attorney fee award is recognized in Oklahoma:

> As a general rule attorney's fees are not recoverable absent some statutory authority or an enforceable contract. The common-fund (or equitable-fund) doctrine affords a recognized exception to this rule. When an individual's efforts succeed in

–5–

02/04/05  FRI 11:58  [TX/RX NO 9198]

6:18-cv-00199-JKL-w Document 84-4 Filed in ED/OK on 05/26/21 Page 286 of 350
6:16-cv-xxxx-JKL-w Document Document-EDF/oc00617261-8 Page 286 of 351

> creating or preserving a fund, which benefits similarly situated non-litigants, equity powers may be invoked to charge that fund with attorney's fees for legal services rendered in its creation or preservation.   The doctrine is rooted in historic equity jurisdiction, but owes its sudden appearance in this country to U.S. Supreme Court jurisprudence of the last century. Oklahoma case law has long recognized the doctrine. [Footnote citations omitted. Emphasis added.]

*Oklahoma Tax Commission v. Ricks*, 1994 OK 115, 885 P.2d 1336

The Newburg class action treatise, citing and quoting from *Blum v. Stenson*,  465 U.S. 886, 104 S.Ct. 1541 (1984), recognizes that it is appropriate to award an attorney's fees based on a percent of the value of the common fund established for the benefit of the class:

> In contrast to a statutory fee determination, payable by the defendant depending on the extent of success achieved, a common fund is itself the measure of success. While the common fund recovered may be more or less than demanded or expected, the common fund represents the benchmark from which a reasonable fee will be awarded. Accordingly, in *Blum v. Stenson*, [FN83] another statutory fee case, the Supreme Court recognized this major distinction governing the determination of fee awards under a statute in contrast to the common fund doctrines. "Unlike the calculation of attorney's fees under the 'common fund doctrine' where a reasonable fee is based on a percentage of the fund bestowed on the class, a reasonable fee under 1988 [a federal fee shifting statute] reflects the amount of attorney time reasonably expended on the litigation."

*Newburg on Class Actions* § 14:6 (4th ed. 2002)

The calculation and award of attorney's fees using a percent of common fund approach is appropriate.   The Court also considered the basic guidelines established by the Oklahoma

−6−

6:18-cv-00199-JHP Document 84-4 Filed in ED/OK on 05/26/21 Page 287 of 350
6:16-cv-01454-JHP Document 95 Filed in ED/OK on 01/17/2018 Page 280 of 351

Supreme Court in confirming the reasonableness of fees. *Oliver's Sport Center, Inc. v. National Standard Ins. Co.*, 615 P.2d 291 (Okla.1980).

The Court has reviewed the detailed time records submitted by Class Counsel (Class Exhibit 9 and also attached as Appendix 3 to Class Counsel's Report to the Court filed on October 7, 2004) and finds that the time summarized therein (11,057.7 hours) was reasonably expended for the benefit of the Class.[5] The Court has also reviewed the hourly rates of Class Counsel as set forth in the above referenced Exhibit and finds them to be reasonable and within the acceptable range in the local legal community for this type of legal services. Thus, the Court further finds the lodestar (hours X rates) in this case to be $2,582,881 currently expended plus an estimated $300,000 (including both time recently incurred but not yet billed and future time monitoring the distribution of the Settlement Fund) for a total lodestar of $2,882,881.

Only Mr. Long objected to the lodestar amount. At the end of the hearing he advised the Court that his objection was limited to: 1.) the $500/hr rate of Robert Barnes -- which he believed should be reduced; and 2.) the paralegal time of Linda Beebe. As to Mr. Barnes rate neither Mr. Long nor any one else offered evidence as to how much Mr. Barnes rate should be reduced. On the other hand, Mr. Barnes testified that several large Oil Companies in Oklahoma City would be willing to pay him $500/hr for his time. Mr. Barnes further testified he could easily bill all of his available time at this rate if he would agree to forgo working on contingent fee class actions such as this one. Judge Burrage testified that Mr. Barnes' hourly rate was indeed high. However,

---

[5] I note from the presentation on October 11, 2004, the few hours of Attorney Robert Barnes' time that were not attributable to this case and I take the same into consideration herein.

-7-

6:18-cv-00199-JHP Document 84-4 Filed in ED/OK on 05/26/21 Page 288 of 350
6:16-cv-00101-KEW Document 95 Filed in ED/OK on 01/17/2018 Page 289 of 351

Judge Burrage testified that it was reasonable in this case because clients willingly paid that rate to Mr. Barnes. Judge Burrage further opined that Mr. Barnes was virtually in a league of his own among Oklahoma lawyers in relation to the extremely complex legal and factual issues involved in this case. Mr. Barnes has appeared before this Court with this Judge presiding over matters and as settlement conference judge in other matters now for a period exceeding seven (7) years from this date back. Mr. Barnes has represented both Plaintiffs' class and Defendants in class action type cases. Not addressing any one case, but certainly from now a historical mandate of results obtained for clients, it is no surprise and does not even begin to shock the conscious of this Court that Mr. Barnes commands, and is regularly paid, $500/hour for legal services rendered in the field of oil and gas. This observation I make only from a retrospective historical view and with no prospective thought or anticipation in mind as to other pending or future case. Each will stand on its own facts and circumstances. For these and other reasons the Court agrees, for purposes of lodestar calculation in this case it is appropriate to use the $500/hr rate for Mr. Barnes.

Mr. Long's objection to Linda Beebe's time at $80/hr for paralegal work is without merit. Mr. Long's only explanation for his objection was that Ms. Beebe had separately billed time as a landman expert in the case which was included as part of the expenses incurred in the case. Mr. Barnes testified that Ms. Beebe did work on the case in two different capacities i.e. as an expert testifying landman expert and as a contract paralegal. Her time was separately billed and paid. The Court finds, for purposes of calculating lodestar in this case, that Ms. Beebe's paralegal time and $80/hr rate should be allowed. It should be noted that the $80.00/hour rate for Ms. Beebe's

— 8 —

6:18-cv-00189-JH Document 84-4 Filed in ED/OK on 05/26/21 Page 289 of 350
6:16-cv-00184-JH Document 255 Filed in ED/OK on 07/20/18 Page 20 of 351

legal assistant time is not unreasonable when compared to the known hourly rate of legal assistants in the community of Texas County, Oklahoma, and First Judicial District.

Mr. Long also objected to the award of an attorney fee amounting to anything more than 140% of the lodestar.   Mr. Long's objection was based on his legal interpretation of the Oklahoma Supreme Court holding in *Burke v. City of Oklahoma City* 598 P.2d. 659 (Okla. 1979).   This legal point will be discussed later in this order.  No objectors, including Mr. Long, offered in competent evidence of what the attorney fees should be if Mr. Long's legal position is rejected by this Court.  It is not up to the Court to create evidence when none is offered.  The Court will instead rely upon the competent evidence offered.

The Supreme Court in *Oliver's Sport Centers* confirmed twelve Attorney Fee factors to be considered by the District Court in considering the reasonableness of fees.  Judge Burrage and Mr. Barnes provided evidence on each of these factors which is summarized in part below.  Absolutely no contrary evidence was offered.

A.  **Time and labor required**.  Counsel have made substantial time and labor commitments which have now inured to the financial benefit of the Plaintiff Class.

B.  **The novelty and difficulty of the question.** Class certification questions were vigorously contested by an excellent echelon of defense counsel who meticulously and artfully defended the certification questions with a degree of professionalism commensurate with Plaintiffs' counsel in a thirteen (13) day hearing. Furthermore, the oil and gas accounting issues involved in this case were extremely complex.  Many of the legal questions presented were novel and complex.

C.  **The skill requisite to perform the legal services properly**. The unique nature of this case, coupled with the issues, mandated that the Class be represented by highly skilled counsel. To prosecute these claims against a large corporate defendant represented by highly capable defense counsel with extensive resources necessitated assembling a team of Class Counsel

– 9 –

6:18-cv-00189-JH Document 84-4 Filed in ED/OK on 05/26/21 Page 290 of 350
6:16-cv-00183-RAW Document 286 in ED/OK 06/17/19 Page 291 of 351

skilled in oil and gas litigation, as well as details of complex litigation. Counsels' qualifications, skills and experience is well known throughout the oil and gas legal community. Class Counsel are highly skilled and capable counsel in this area of the law demanding focused expertise.

D.  **The preclusion of other employment.** Class Counsel are engaged in the on-going practice of law. Had Class Counsel not committed their resources to this case, Class Counsel could have accepted other matters, but did not. The prosecution of this case has very substantially reduced the Class Counsel's opportunity for employment in other matters.

E.  **The customary fee.** These types of cases (royalty accounting cases, in particular, common fund class actions) are always handled on a contingent fee basis. The fee percentage in these types of cases is typically 30% to 40% of the gross fund.[6]

F.  **Whether the fee is fixed or contingent.** Class Counsel entered into contingency fee agreements with the Class Representatives, and with Hitch Enterprises, Inc, (and other Hitch family members) that provided for an attorneys' fee of 1/3 of the gross consideration received from ConocoPhillips. Class Counsel agrees to advance litigation costs and recover litigation costs only from settlement proceeds received from

---

[6] Class Counsel's Exhibit "11" (Page 3) showed settlement in other royalty cases as follows:

| Case | Amount | Percentage Fee Awarded |
|---|---|---|
| Rudman v. Texaco | $25,000,000 | 40% |
| Robertson v. Sanguine | $16,250,606 | 40% |
| Mayo v. Kaiser-Francis | $ 5,000,000 | 40% |
| McIntosh v. Questar | $ 1,500,000 | 40% |
| Modrall v. Hanson | $ 325,000 | 40% |
| Hieronymus v. Vince Allen & Assoc. | $ 120,000 | 40% |
| Yelma-Alma v. Chesapeake | $15,500,000 | 35% |
| Fazekas v. ARCO | $ 6,250,000 | 35% |
| Shockey v. Chevron U.S.A., No. CJ-2001-7 | $60,000,000 (Approx.) | 33 1/3% |
| Barnaby v. Marathon | $ 3,645,241 | 33% |
| Kouns v. Kaiser-Francis | $ 3,100,000 | 33% |
| Kouns v. Louis Drefus NG (Dominion) | $ 2,778,125 | 33% |
| Booth v. Cross Timbers (XTO Energy) | $ 2,500,000 | 33% |
| Duke v. Apache Corp | $ 1,967,500 | 33% |
| Bridenstine v. Kaiser-Francis | $84,974,437 | 30% |
| Bridenstine v. UP/Questar/Chase | $26,500,000 | 30% |
| Duke v. Samson | $ 1,454,375 | 30% |
| Greghol v. Barrett | $ 180,000 | 30% |
| In re Lease Oil Antitrust Litigation | $11,250,000 | 25% |
| Barnaby v. Ocean Energy | $ 2,875,000 | 23% |
| Dunsten v. Sonat Exploration | $ 1,572,500 | 20% |
| Handley v. Santa Fe Minerals | $ 4,250,000 | 16% |
| Burris v. Stephens Production Co | $ 565,000 | 15% |

– 10 –

6:18-cv-00189-JKL-Document-84-4 - Filed-in ED/OK on 05/26/21 - Page 291 of 350
6:15-cv-00189-JKL-Document 84-4 Filed in ED/OK on 05/26/21 Page 292 of 351

ConocoPhillips. The Court notes that Class Counsel's original agreement with Hitch was for a 30% contingent fee with Hitch paying all litigation costs. After Hitch had paid $346,427.66, Hitch no longer wished to continue paying expenses. By that time more than $90,000.00 in additional expenses had already been incurred and substantially more expenses were anticipated. A new arrangement was entered into between Class Counsel and Hitch whereby the contingent fee was increased to 1/3 of the gross consideration received and Class Counsel agreed to advance litigation costs. Class Counsel also agreed to reimburse Hitch 150% of the litigation expenses that Hitch had already paid.[7] Class Counsel, Robert N. Barnes, testified that he initially offered to handle the case based upon a 15% contingent fee plus payment of an hourly fee equal to ½ of his firm's hourly rates with Hitch paying all expenses. Alternatively, Mr. Barnes offered to handle the case for a 40% contingent fee with Mr. Barnes advancing litigation expenses. Hitch was only willing to proceed on the contingency fee basis described above. Mr. Barnes further testified that Suzanne Landess, one of the objectors, was present at that meeting and was aware that Class Counsel would be pursuing the case on a class action basis for a 30% contingency fee with Hitch paying expenses.[8] Ms. Landess was not a party to the attorney fee agreement, but she voiced no objection to the fee arrangement. Mr. Barnes testified that Stephen Long was also made aware in early 2002 that Mr. Barnes was pursuing the case on a contingent fee basis. Mr. Barnes testified that in oral conversations with Patrick Long in early 2002, he advised Mr. Long that he and other Class Counsel were pursuing the case on a 30% contingent fee basis with Hitch paying all expenses. Mr. Long voiced no objection to this attorney fee even though he was himself an experienced attorney. At the hearing none of the objectors disagreed with Mr. Barnes testimony, Mr. Barnes testified that those objectors acquiesced to the contingent fee basis for pursuing the case. The Court agrees. Pre-arranged fees, whether fixed or contingent, are not binding on the Court, but can be helpful in setting court awarded fees in a class action. Counsel for the Class has represented the Class with vigor and without prior compensation of any kind for their time.

G.    Time limitations imposed by client or circumstances. While this Litigation has not involved any client-imposed time limitations, the circumstances of the case required the litigation to be vigorously pursued if an excellent recovery through settlement was to be achieved. Class Counsel, in fact,

---

[7] The 50% "bonus" which Class Counsel is obligated to pay to Hitch for advancing the initial expenses will be borne exclusively by Class Counsel. That additional amount is not part of the $912,955.36 being sought by Class Counsel for reimbursement of litigation expenses.
[8] As noted earlier Ms. Landess owns by far the largest interest among the objectors i.e. 2.3% out of the total 2.9%.

– 11 –

6:18-cv-00189-JHP Document 84-4 Filed in ED/OK on 05/26/21 Page 292 of 350
6:16-Case 6:13-cv-00189 Document 255 in ED/OK on 01/26/18 Page 292 of 351

did vigorously prosecute the case and obtained excellent results for the Class.

H.  **The amount involved and the results obtained.** Clearly, there can be no doubt that at the outset, Plaintiffs' Counsel had no assurance of any recovery.  But for the efforts of Counsel, no Common Fund would exist. The Court considers this settlement to be an excellent result for the Class.[9] As known to this Court, the Fund created is second only to the *Bridenstine* case settlement fund when considering the results obtained over the last 15 years in Royalty Owner Class actions.  The Court notes that Mr. Barnes was also class counsel in *Bridenstine*.  Indeed, no class member has voiced any objection to the settlement with ConocoPhillips.

I.  **Experience, reputation and ability of counsel.** Counsels' qualifications, skill, experience, ability and reputation are well known throughout the oil and gas and complex litigation legal communities.  Class Counsel are exceptional litigators.

J.  **The undesirability of the case.** Compared to most civil litigation, royalty owner class actions pursued on a contingent fee basis clearly fits the initially "undesirable" test. Testimony showed that only five or so Oklahoma law firms would be willing to risk investing the time and expenses necessary to prosecute this litigation. The issue of Class Certification was hotly contested and well battled in a thirteen (13) day hearing.  At the time of the settlement the court had not yet ruled on certification. If the certification issue had been lost at the trial level or on appeal, Class Counsel would have received nothing for their work and would have had no way to recoup their expenses.  As the Court now understands, those expenses push against the $1,000,000.00 mark. Liability issues were also strongly contested with ConocoPhillips still claiming that it had no liability.  In two recent royalty owner class actions things have gone poorly at the trial level and on appeal resulting in the class counsel in those cases likely losing more than $1,000,000 in fees and expenses.  In this case, there was uncontroverted evidence that the pressure of paying expenses played a large part in one of Class Counsel's firm (Robert Gum's firm) breaking apart.  ConocoPhillips is well-financed, and well represented.  Certainly, the possibility of a recovery was a risky matter.

---

[9] In light of an opinion issued by the Oklahoma Supreme Court on December 7, 2004, which has not been released for publication due to a Petition for Rehearing pending with the Supreme Court.  If that Opinion is ultimately released for publication by the Supreme Court, Class Members' claims in pending or future "Brumley" type cases could potentially be reduced and limited from that which was plead and asserted herein by Plaintiffs' Class. *Howell v. Texaco, Inc.*, 2004 OK 92, Case Number 100164, Decided 12/07/04.

-12-

6:18-cv-00189-JHH Document 84-4 Filed in ED/OK on 05/26/21 Page 293 of 350
6:16-Case 6:13-cv-00 Document Document 285 in ED/OK 06/17/16 Page 292 of 351

**K.**   <u>Nature and length of the professional relationship with the client.</u> Class Counsel had no prior relationship with their clients in the case.

**L.**   <u>Awards in similar cases.</u> The awards in similar cases were discussed in detail in Class Counsels' motion, exhibits and testimony. The Court incorporates said discussion herein by reference. The Court finds that a 30% to 40% fee is customary in these types of cases.

Knowing the rewards for Class Counsel can be great, so travels the path of loss for Class Counsel if defeat is the end result. Financial, personal, and emotional devastation are the potential events for a very few members of this Profession willing and able to represent thousands of strangers in order to obtain monetary benefit for those strangers that otherwise, without question, is unattainable through known legal means. From this aspect, the potential rewards of a Class Counsels' success and the potential devastation realized of a Class Counsels' defeat must be considered with open judicial mind.

While cross-examining Mr. Barnes and Judge Burrage Mr. Long claimed that the Oklahoma Supreme Courts holding in *Burke v. City of Oklahoma City* 598 P.2d. 659 (Okla. 1979) strictly limits attorney fee awards in common fund cases to 140% of lodestar. Both Mr. Barnes and Judge Burrage testified that there was no such limitation and that all subsequent district court attorney fees awards in royalty owner class actions have been on a percentage of the common fund basis averaging 32% of the common fund. Judge Burrage went on to testify that the lawyers in *Burke* actually received 100% of the then available equitable fund which a taxpayer lawsuit had created for the benefit of the City of Oklahoma City. Indeed, the award effectively allowed the attorney to even collect rentals due the city for several years into the future. Thus, to read the

– 13 –

6:18-cv-00189-JHE Document 84-4 Filed in ED/OK on 05/26/21 Page 294 of 350
6:16-case-23-rew00 Document Document 255 in ED/OK 06/17/16 Page 292 of 351

*Burke* case as somehow limiting attorney fees in royalty owner class actions to 140% of lodestar is a view which the Court rejects.

Based upon the Court's analysis of the Attorney Fee factors, the Court finds a reasonable fee in this case to be $11,092,736 (which represents approximately 29.38% of the Total Common Fund or the lodestar of $2,882,881 times a multiplier of approximately 3.85). This percentage fee of 29.38% is notably lower than the average of 32% fee in other similar royalty owner class actions. Counsel have made substantial time and labor commitments which have now inured to the financial benefit of the Plaintiff Class and have resulted in the Common Fund.

An attorneys' fee award of approximately 29.38% of the Total Common Fund is a fair and reasonable amount of compensation to Class Counsel for establishing the Total Common Fund. The common fund percentage method also meets the relevant factors under *Burke* as it is the method used to calculate fees in all "similar cases" involving common fund class actions and is the "customary fee." This District has also applied the percent of common fund method in a similar case, explaining the reason for using this method in *Bridenstine v. Kaiser-Francis, et al.*, Case No. CJ-2000-1, District of Texas County, Oklahoma:

> The percentage fee has important advantages to the Class in that it provides self-regulating incentives for efficiency. First, it compensates counsel on the real value of the services provided (the amount of benefit conferred). Second, the percentage approach awards efficiency. Not only is there no reward for inefficiency, there is a penalty due to the fact that, if the work is unnecessary, the lawyer has wasted his time. Third, the percentage method encourages counsel to go the extra mile. Counsel has an incentive

– 14 –

6:18-cv-00189-JHE Document 84-4 Filed in ED/OK on 05/26/21 Page 295 of 350
6:16-case-1231-cv-00 Document Document 285 in ED/OK on 05/26/16 Page 295 of 351

> to push beyond a "good" recovery to an "excellent" recovery. The Court certainly considers the existing Common Fund to be an excellent recovery to date. Thus, under this percentage approach, the interests of the Class and Class Counsel are consistent and aligned.

Order on Class Counsels' Motion for Attorneys' Fee (And Costs) from the Common Fund in *Robertson v Sanguine*, Case No. CJ-02-150, District of Caddo County, Oklahoma. ¶5 (Copy of Order contained at Tab 17 in Authority for Class Counsel's Motion For Attorney's Fees From Settlement Proceeds, filed herein). Because of the self-regulating incentives for efficiency with the percentage fee as noted above, the percentage fee has important advantages to the Class and promotes efficiency rather than inefficiency. The percentage fee compensates Class Counsel on the real value of the services provided. The percentage fee method encouraged Class Counsel to go the extra mile and push beyond a "good" recovery to an "excellent" recovery. The Court in this case certainly considers the Total Common Fund to be an excellent recovery to the Class Members. To award Class Counsel a lesser percentage of the Total Common Fund because the efforts of Class Counsel have created an exceptionally large Fund would amount to penalizing Class Counsel for their success which the Court is unwilling to do. This Court makes no myth as to Class Counsels' attorney fee award herein. It is significant. Yet, it is reasonable and proper. It is fair and equitable. Additionally, the common sense reality is, when the efforts of Class Counsel create an exceptionally large Total Common Fund for the benefit of the Class and if Class Counsels' fees awarded therefrom are greatly restricted, then forseeably so goes later access to the Courthouse for other potential and future class members. From that common sense viewpoint and understanding it is all a matter of economics. So in conclusion, as in the many

– 15 –

6:18-cv-00189-JHP Document 84-4 Filed in ED/OK on 05/26/21 Page 296 of 350
6:16-cv-00189-JHP Document 288 in ED/OK on 11/28/18 Page 29 of 331

other class cases referenced herein, under this percentage approach as thoroughly addressed hereinabove, the interests of the Class and Class Counsel will be consistent and aligned.

The Court finds that attorneys' fees of approximately 29.38% of the Total Common Fund created by the efforts of counsel for the class are appropriate, and is hereby awarded.

**Expert Witness Fees, Litigation Expenses and Class Representatives Award:**

The Court, having reviewed the accounting records which detail the expert witness fees and litigation expenses incurred in pursuit of class claims, and having heard testimony of Class Counsel regarding the necessity of such expenditures in preparation of the case, finds that expert witness fees and litigation expenses were incurred in the amount of $912,955.36 for the benefit of the Class (including additional amounts yet to be incurred). There has been no objection by any class member to these expenses being awarded to Class Counsel.

The Class Representatives have been in attendance on many days of Court hearings. They have devoted great time and effort as Class Representatives should, both in Court and out of Court. The Court finds the Class Representatives have made substantial time and labor commitments to the benefit of the Class, and have incurred serious legal and financial risks while pursuing this case on behalf of the Class. All of which said has resulted in obtaining a huge benefit to the Class. The Court finds that fair and reasonable compensation in an amount equal to 0.88% of the Total Common Fund calculated above, ($331,861) should be awarded to Class Representatives as a fee, said amount to be split between the three Class Representatives equally.

– 16 –

6:18-cv-00189-JHP Document 84-4 Filed in ED/OK on 05/26/21 Page 297 of 350
6:16-cv-00189-JHP Document 255 in ED/OK on 01/26/18 Page 297 of 351

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the Court that this is a Common Fund Case. The attorney fee should be based upon a percent of the Common Fund. The Court finds that the percent of the Total Common Fund requested by Class Counsel for attorney fee is fair and equitable. Therefore, the Court awards as an attorney fee to Class Counsel 29.38% of the Total Common Fund to be paid out of the cash settlement proceeds. Likewise, the Class Representatives fee is fair and equitable. Therefore, the Court awards to the Class Representatives a fee equal to 0.88% of the Total Common Fund to be paid out of the cash settlement proceeds. Finally, the expense request is fair and equitable. Therefore, the Court awards to Class Counsel the sum of $912,955.36 as expenses to be paid out of the cash settlement proceeds.

IT IS SO ORDERED this 3rd day of February, 2005.

Greg A. Zigler
District Judge
First Judicial District
State of Oklahoma

– 17 –

6:18-cv-00189-JLt-w0 Document 84-4 Filed in ED/OK on 05/26/21 Page 298 of 350
6:16-case 5:13-cw-00 Document Document 233 in ED/OK 06/17/16 Page 292 of 351

## CERTIFICATE OF MAILING

The undersigned hereby certifies that a true and accurate copy of the above and foregoing Order was mailed, postage prepaid on this __4th__ day of February, 2005, to the following:

John Board
2200 North Main Street
P. O. Box 408
Guymon, OK. 73942

Michael V. Powell
Jerry K. Clements
LOCKE LIDDELL & SAPP LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201-6776

Dennis C. Cameron
GABLE & GOTWALS, P.C.
100 W. Fifth Street, Suite 1100
Tulsa, Oklahoma 74103-4217

Robert N. Barnes
Patranell Britten Lewis
Barnes & Lewis
701 NW 63rd Street, Suite 500
Oklahoma City, OK 73116

Robert G. Gum
Charles L. Puckett, Jr.
Patrick O'Hara, Jr.
Spradling, Alpern & Gum
101 Park Avenue, Suite 700
Oklahoma City, OK 73102-7283

Bryan L. Wright
Wright, Dale Jett & Carter
114 Eat 4th Street
P. O. Box 591
Guymon, OK 73942


Jean Taylor
Secretary

— 18 —

02/04/05  FRI 11:56  [TX/RX NO 9196]

IN THE DISTRICT COURT OF TEXAS COUNTY
STATE OF OKLAHOMA

JEANNE BRUMLEY, TIM MEYER )
INDIVIDUALLY AND AS TRUSTEE OF )
THE ALLEN TIM MEYER REVOCABLE )
TRUST DATED APRIL 5, 1993, and JANITH )
NEVILLE INDIVIDUALLY AND AS CO- )
TRUSTEE OF THE CHESTER L. PHILIPPE )
TESTAMENTARY TRUST AND CO- )
TRUSTEE OF THE EDNA MAUREEN )
PHILIPPE TESTAMENTARY TRUST, for )
themselves and all others similarly situated, )     Case No. CJ-2001-5
                Plaintiffs, )
  )
v. )
  )
CONOCOPHILLIPS COMPANY, a Delaware )
Corporation, formerly known as Phillips )
Petroleum Company, and )
CONOCOPHILLIPS, a Delaware Corporation, )
  )
        Defendants. )

## MOTION CONCERNING CLASS COUNSEL FEES AND CLASS REPRESENTATIVES FEES

Comes now, Class Counsel and Class Representatives and request a supplemental order clarifying that the amount for Class Counsel fees is $11,092,736.00 and the amount for Class Representative's Fees is $331,861.00. To the extent this was not clear in the previous Order, the requested order would supersede it in that regard.

### FACTUAL BACKGROUND

1. In the Notice to the Class filed with the Court on July 14, 2004, and sent out on August 16, 2004 to Class Members by ConocoPhillips, the Court had preliminarily approved a Class Counsel fee of 1/3 (33.33%) of the common fund. It was

– 1 –

# EXHIBIT 18

IN THE DISTRICT COURT FOR STEPHENS COUNTY
STATE OF OKLAHOMA

FILED DISTRICT COURT
Stephens County, Okla.

DEC - 5 2016
DANA BLEVINS
COURT CLERK

| | | |
|---|---|---|
| MARY LOU MAHAFFEY, *et al.*, individually and on behalf of a class of other similarly situated persons, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | Case No. CJ-04-581E |
| | ) ) | Judge Ken Graham |
| MARATHON OIL COMPANY, | ) ) | |
| Defendant. | ) | |

**FINAL ORDER APPROVING
CLASS COUNSEL ATTORNEYS' FEES, LITIGATION COSTS, CLASS
<u>REPRESENTATIVES' FEES AND AWARD OF ADMINISTRATIVE COSTS</u>**

Before the Court is the Motion for Attorneys' Fees, Litigation Costs, and Class Representatives' Fees from the Common Fund and for Award of Administrative Costs in the above-referenced case. After reviewing the Motion and the related pleadings and reviewing the evidence presented, and being fully advised in the premises, the Court finds that the Motion should be and hereby is granted and that attorneys' fees, costs, expenses, class representative awards, and administrative expenses should be awarded from the Common Fund as set forth below:

I. **<u>Definitions.</u>**

The terms used in this Order have the same meaning as set forth in the Settlement Agreement attached as Exhibit 1 to Plaintiffs' Unopposed Motion for Class Certification and Approval of Settlement, and for Order Preliminarily Certifying Settlement Class, Preliminarily Approving Settlement Agreement, Approving Form of Notice to Class Members, and Setting Date for Settlement Fairness Hearing, filed herein on August 17, 2016.

## II.     Notice and Objections

The Court finds that notice of Class Counsel's intent to seek an award of attorneys' fees, costs, expenses, class representative awards, and administrative costs was given to members of the Settlement Class as provided in the August 17, 2016 Order Preliminarily Certifying Settlement Class, Preliminarily Approving Settlement Agreement, Approving Form of Notice to Class Members and Setting Date for Settlement Fairness Hearing ("Order of Preliminary Approval") as will be further set out in the Judgment filed in this action. The Court finds that the Notice to the Settlement Class was proper and sufficient under 12 O.S. § 2023(G), the Due Process Clause of the United States Constitution, and the Due Process Clause of the Oklahoma Constitution.

No Settlement Class member objected to the award of attorneys' fees, costs, expenses, class representative awards, and administrative costs or to the Motion for Attorneys' Fees, Litigation Costs, and Class Representatives' Fees from the Common Fund and for Award of Administrative Costs.

## III.     Approved Settlement

On August 17, 2016, this Court entered its Order of Preliminary Approval. In the Order of Preliminary Approval, the Court set the Settlement Fairness Hearing to consider such matters as whether the proposed Settlement Class should be certified, whether the Settlement Agreement should be approved as fair, adequate and reasonable, whether Class Counsel's request for payment of attorneys' fees, litigation costs, and Administrative Expenses should be approved, and whether any awards should be made to Plaintiffs, as class representatives. By separate Judgment entered this date, the Court will give final approval to the Settlement Agreement executed on August 17, 2016 and certify the Settlement Class in this case.

2

## IV.    Attorneys' Fees, Litigation Expenses, and Administrative Expenses

The Settlement Fairness Hearing was held before the Court on December 5, 2016, at which time all interested persons were given an opportunity to be heard. Pursuant to 12 O.S. § 2023(G) and based upon the evidence presented, the Court concludes that the Motion for Attorneys' Fees, Litigation Costs, and Class Representatives' Fees from the Common Fund and for Award of Administrative Costs should be granted, and that Class Counsel should be awarded attorneys' fees in the amount of $7,200,000 plus accrued interest thereon, that Class Counsel should be reimbursed for the litigation expenses incurred and advanced by Class Counsel for the benefit of the Settlement Class in the total amount of $1,226,886.66, all to be paid out of the Settlement Amount. The Court further finds that the Settlement Agreement provides for $300,000 to be used to reimburse Class Counsel for Administrative Expenses in connection with the Settlement Agreement. The Court has considered the attorneys' fees, litigation expenses, and Administrative Expenses awarded and finds that they are fair and reasonable and in accordance with the Settlement Agreement and the factors set out in 12 O.S. § 2023(G). Subject to the terms of the Settlement Agreement, the Court reserves for future determination and approval any additional award of Administration Expenses, Notice and Distribution Expenses, and Second Distribution Expenses, any or all of which shall be determined upon appropriate application therefore and also shall be paid out of the Settlement Amount.

### A.    The Common Fund

The Court finds that through their effort, Class Counsel obtained the Settlement Amount of $18,300,000 through the Settlement Agreement entered into with the Defendant. The Court finds that the Settlement Amount constitutes a common fund as recognized by Oklahoma law.

3

*Oklahoma Tax Comm'n v. Ricks*, 1994 OK 115, ¶ 7, 885 P.2d 1336.[1] The Court finds that this common fund was brought into existence through the efforts of Class Counsel for the Settlement Class and is under the authority of the Court under 12 O.S. § 2023.

Class Counsel seek attorneys' fees in the amount of 40% of the Settlement Amount. Pursuant to 12 O.S. § 2023(G)(1) and the Court's equitable authority in connection with a common fund, the Court finds that it is authorized to consider such an award of reasonable attorneys' fees from the Settlement Amount.

---

[1] The common fund doctrine recognized by the Oklahoma Supreme Court provides that if a party and/or a party's counsel have created, preserved, protected, or increased a common fund or have brought into court a fund in which others may share, a court has the equitable power to order the allowance of attorneys' fees and litigation expenses to counsel to compensate the party and the party's counsel for the benefit conferred. The Oklahoma Supreme Court has held that

> **The conceptual underpinnings for the chancery common-fund doctrine teach us that an equitable charge may be impressed in favor of its creator *when the fund is within the direct control of the court*.** The "pre-existing fund" must be immediately subject to counsel-fee assessment, and the benefits conferred have to be traceable with some accuracy to each beneficiary.

*Oklahoma Tax Comm'n v. Ricks* 1994 OK 115, ¶¶ 7-8, 885 P.2d 1336 (citations omitted) (emphasis added).

> It is well settled that ordinarily "a court in the exercise of equitable jurisdiction, will, in its discretion, order an allowance of counsel fees, or, as it is sometimes said, allow costs as between solicitor and client, to a complainant (and sometimes directly to the attorney) who at his own expense has maintained a successful suit for the **preservation, protection, or increase of a common fund, or of common property, or who has created at his own expense, or brought into court, a fund in which others may share with him.**"

*State ex rel. Board of Comm'rs of Harmon Co. v. OTC*, 1944 OK 250, ¶ 4 151 P.2d 797 (citations omitted) (emphasis added); *see also Kellough v. Taylor*, 1941 OK 320, ¶ 4, 119 P.2d 556.

4

## B.     Class Counsel Attorneys' Fees

In their Motion, Class Counsel have moved for an award of attorneys' fees in the amount of 40% of the Settlement Amount. Pursuant to 12 O.S. § 2023(G)(4), the Court finds that the 40% fee sought by Class Counsel is fair and reasonable.

In arriving at a fair and reasonable attorneys' fee, the Court has considered the following factors provided for by 12 O.S. § 2023(G)(4)(e):

(1)     time and labor required,
(2)     the novelty and difficulty of the questions presented by the litigation,
(3)     the skill required to perform the legal service properly,
(4)     the preclusion of other employment by the attorney due to acceptance of the case,
(5)     the customary fee,
(6)     whether the fee is fixed or contingent,
(7)     time limitations imposed by the client or the circumstances,
(8)     the amount in controversy and the results obtained,
(9)     the experience, reputation and ability of the attorney,
(10)    whether or not the case is an undesirable case,
(11)    the nature and length of the professional relationship with the client,
(12)    awards in similar causes, and
(13)    the risk of recovery in the litigation.[2]

As set out below, the Court finds that, applying these factors to the present case, the fee sought by Class Counsel is fair and reasonable.

**Time and Labor Required.** The evidence presented by Class Counsel demonstrates that the successful resolution of this case required extensive discovery and negotiation by Class Counsel, that this work extended over many years, and required the extensive commitment of Class Counsel's time and effort to this action. This time and labor was necessary in order to create a common fund for the benefit of the members of the Settlement Class. Based on this evidence, the

---

[2] These factors are the same factors the Oklahoma Supreme Court held should be considered in attorneys' fee applications in the cases of *State ex rel. Burk v. City of Oklahoma City*, 1979 OK 115, 598 P.2d 659, and *Oliver's Sports Center, Inc. v. Nat'l Standard Ins. Co.*, 1980 OK 120, 615 P.2d 291.

5

Court finds that the fee sought is supported by the extensive time and labor required by Class Counsel to resolve the action and to obtain the Settlement Amount.

**Novelty and Difficulty of the Questions Presented.** The evidence shows that the questions presented were novel and difficult, and, if not settled, involved claims that might have presented complex or difficult issues of proof in terms of class certification, proof of liability, and damages.

**Skill Required to Perform the Legal Service Properly.** Because of the complexity of this case, the extensive time required to resolve the case, the novelty of the questions presented, and the specialized nature of this class action, the Court finds that significant legal skill was necessary to perform the legal service properly, and the Class Counsel did perform these legal services properly.

**The Preclusion of Other Employment by the Attorney Due to Acceptance of the Case.** The size and complexity of the case required Class Counsel to devote substantial amounts of time to this action. By devoting their resources to the successful creation of a common fund in this case, Class Counsel were precluded from seeking employment in other matters.

**The Customary Fee.** The evidence presented by Class Counsel demonstrates that the customary fee in class actions like the present case is on a contingency basis. Based on the evidence presented by Class Counsel concerning other similar class actions, the Court finds that the 40% fee sought by Class Counsel is the customary fee in cases like the present case and is a fair and reasonable percentage.

**Whether the Fee Is Fixed or Contingent.** The Court finds that the fee in this case was a contingent fee rather than a fixed fee. As a result, Class Counsel undertook the risk that the case

would not be successful and the time and expenses devoted by Class Counsel could not be recovered.

**Time Limitations Imposed by the Client or Circumstances.** The evidence presented by Class Counsel shows that over the course of this case and in related litigation, circumstances and court orders imposed time limitations on Class Counsel that forced Class Counsel to perform services by certain dates. The schedules of the parties, courts, witnesses and clients were accommodated on a regular basis by Class Counsel. Cases of the size and complexity of these cases deserve and require the commitment of a large percentage of the total time and resources of firms the size of those of Class Counsel and work significant hardships on them over the course of many years.

**The Amount Involved and the Results Obtained.** The evidence presented by Class Counsel demonstrated that when Class Counsel were first retained in this case, Class Counsel could not predict the amount that might ultimately be recovered in the case and took the risk that there would be no recovery for the time and effort expended. The Court finds that the recovery of $18,300,000 was an excellent result for the Settlement Class, given the risk involved and the potential delay and risk of recovery.

**Experience, Reputation, and Ability of Counsel.** The Court finds that Class Counsel have extensive experience in class actions like the present case and have successfully pursued a number of similar cases. The successful resolution of this case demonstrated the ability of Class Counsel in class actions.

**The Undesirability of the Case.** The evidence presented by Class Counsel demonstrated that this case was undesirable in the sense that it required an extensive amount of attorney time and potentially significant out-of-pocket expenditure by Class Counsel in order to pursue the case

7

successfully. The time and expense required to resolve this case would make it undesirable to many law firms.

**Nature and Length of the Professional Relationship with the Client.** The evidence showed that Class Counsel established an excellent relationship with the Plaintiffs in this action. The lack of objections filed by members of the Settlement Class also demonstrates a good relationship between Class Counsel and the members of the Settlement Class.

**Awards in Similar Cases.** The evidence presented by Class Counsel concerning awards in other Oklahoma oil and gas class action cases demonstrates that the award sought by Class Counsel is consistent with the awards in such cases.

**The Risk of Recovery in the Litigation.** The evidence by Class Counsel demonstrated that there was a significant risk of non-recovery in this action, given the time, expense and complexity of the case, and unsettled questions of law presented. The evidence further demonstrated that the Defendant was prepared to present a vigorous defense to the action.

The Court further finds that none of the benefits recovered for the Settlement Class were in the form of coupons, discounts, or similar non-cash benefits and that 12 O.S. § 2023(G)(4)(f) is not applicable.

Based on the Court's evaluation of the statutory factors set out above and in the exercise of the Court's equitable authority over the common fund created in this case, the Court finds that the attorneys' fees sought by Class Counsel of 40% of the Settlement Amount are fair and reasonable in light of the time and effort expended in this case by Class Counsel and the factors set out under 12 O.S. § 2023(G). Accordingly, the Court finds that Class Counsel shall recover attorneys' fees of $7,200,000 plus accrued interest thereon from the Settlement Amount.

8

## C.    Litigation Expenses.

Class Counsel seek reimbursement of litigation expenses, incurred and advanced by Class Counsel for the benefit of the Settlement Class in the total amount of $1,226,886.66. Under 12 O.S. § 2023(G)(1), the Court may award "nontaxable costs that are authorized by law or by the parties' agreement." In this case, Class Counsel agreed in their contingency fee agreement with the Plaintiffs to advance costs in this case and have incurred substantial nontaxable costs. Furthermore, if this action had been pursued to judgment and Plaintiffs had prevailed, in addition to the costs normally taxable in civil cases, 52 O.S. § 570.14 would have permitted recovery of "the costs of the suit, including but not limited to reasonable attorney and expert witness fees." The Court therefore finds that recovery from the Settlement Amount of litigation expenses incurred by Class Counsel is thus authorized both by law and by the Plaintiffs' contingency fee agreement, and that Class Counsel should be awarded litigation expenses from the Settlement Amount in the amount of $1,226,886.66.

## D.    Administrative Expenses

The Court finds that in the Settlement Agreement, the Settlement Amount of $18,300,000 included $300,000 to be paid as part of the settlement to cover Administrative Expenses. Class Counsel have shown that they have incurred and will continue to incur Administrative Expenses, particularly expert fees necessary to allocate the Settlement Amount among approximately 200 wells over multiple decades of production. The Court therefore approves distribution to Class Counsel of the $300,000 set aside in the Settlement Amount for Administrative Expenses. Subject to the terms of the Settlement Agreement, any application by Class Counsel for additional Administrative Expenses from the Settlement Amount shall be made by separate application if necessary before final distribution.

9

## V.    Incentive Award to Class Representatives

The Court finds that the law "fully supports compensating class representatives for their work on behalf of the class, which has benefited from their representation." *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 150 (S.D.N.Y. 2010) (citation omitted). Class representatives' fees "are compensatory in nature, reimbursing class representatives who 'take on a variety of risks and tasks when they commence representative actions, such as complying with discovery requests and often must appear as witnesses in the action.'" *Id.* (quoting *Strougo v. Bassini*, 258 F. Supp. 2d 254, 264 (S.D.N.Y. 2003)). Based upon the evidence presented, the Court further concludes that Plaintiffs should receive incentive awards as set forth below for their service as class representatives on behalf of the Settlement Class in this case, which awards also are to be paid out of the Settlement Amount:

| Plaintiff | Amount of Incentive Award |
|---|---|
| Mary Lou Mahaffey | $20,000 |
| Nelson Rice | $10,000 |
| Sally Rice | $10,000 |

**IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED AS FOLLOWS,**

**1.    Award of Fees, Litigation Expenses, and Administrative Expenses to Class Counsel**

Class Counsel are hereby awarded attorneys' fees in the amount of $7,200,000 plus accrued interest thereon, to be paid out of the Settlement Amount.  Class Counsel are further hereby awarded the sum of $1,226,886,66 as reimbursement for litigation expenses incurred to date in this action, which sum also is to be paid out of the Settlement Amount.  In addition, Class Counsel also are hereby awarded the sum of $300,000 as reimbursement for Administrative Expenses, which sum also is to be paid out of the Settlement Amount.  Subject to the terms of the Settlement

10

Agreement, the Court reserves for future determination and approval any award from the Settlement Amount of additional Administration Expenses, Notice and Distribution Expenses, and Second Distribution Expenses, any or all of which shall be determined upon appropriate application therefore.

## 2. Incentive Award to Class Representatives

The Plaintiffs are hereby awarded incentive awards as set forth below for their service as class representatives in these actions, which awards also are to be paid out of the Settlement Amount:

| Plaintiff | Amount of Incentive Award |
|---|---|
| Mary Lou Mahaffey | $20,000 |
| Nelson Rice | $10,000 |
| Sally Rice | $10,000 |

IT IS SO ORDERED, this 5th day of December, 2016.

THE HONORABLE KEN GRAHAM
DISTRICT JUDGE

11

# EXHIBIT 19

FILED IN DISTRICT COURT
Grady County, Oklahoma

FEB 13 2014

Lois Foster, Court Clerk
By _____ Deputy

**IN THE DISTRICT COURT OF GRADY COUNTY
STATE OF OKLAHOMA**

CHRISTOPHER NEAL CECIL, )
)
    *Plaintiff,* )
)
v. )          Case No. CJ-2010-462
)
WARD PETROLEUM CORPORATION, )
)
    *Defendant.* )

## FINAL ORDER AWARDING ATTORNEYS' FEES, LITIGATION EXPENSES, AND CASE CONTRIBUTION AWARD

WHEREAS, this matter comes before the Court on Class Representative's Motion for Approval of Attorneys' Fees, Litigation Expenses and Case Contribution Award wherein Class Representative and Class Counsel seek an award of attorneys' fees equal to forty percent (40%) of the $10,000,000.00 Settlement Amount, Litigation Expenses of not to exceed $225,000.00, and a Case Contribution Award of one percent (1%) of the $10,000,000.00 Settlement Amount to be paid out of the Gross Settlement Fund;

WHEREAS, the Court conducted a hearing on the matter on February 13, 2014 (the "Final Fairness Hearing");

WHEREAS, the Court has considered all matters submitted to it at the Final Fairness Hearing and otherwise, the pleadings on file, the applicable law, and the record;

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1. The Court, for purposes of this Order, adopts all defined terms as set forth in the Settling Parties' Stipulation and Agreement of Settlement (the "Stipulation"), and incorporates them by reference as if fully set forth herein.

2.     The Court, for purposes of this Order, incorporates its findings of fact and conclusions of law from its Judgment Granting Final Approval of Class Action Settlement (the "Final Approval Order") as if fully set forth herein.

3.     The Settling Parties and Class Counsel provided the Court with abundant evidence in support of the Settlement, Class Counsel's requests for attorneys' fees and Litigation Expenses, and Class Representatives' request for a Case Contribution Award. Specifically, the Settling Parties and Class Counsel filed dozens of docket entries, including: nine (9) supporting affidavits (from Class Representatives and absent Class Members); a declaration from Class Counsel; an expert affidavit regarding allocation of the Net Settlement Proceeds to the Class Wells; detailed legal memoranda, and other documents. This evidence and the Settling Parties' final motions were submitted to the Court and posted to the Settlement Website for Class Members to review before the objection and opt-out deadline.

4.     The Court finds that Barbara Ley, who submitted a supporting affidavit regarding allocation of the Net Settlement Proceeds to the Class Wells, is a qualified and reliable expert in her field and provided relevant and compelling evidence. There were no challenges or objections to Ms. Ley, her affidavit, or the opinions contained therein.

5.     The Notice stated that Class Counsel would apply for an award of attorneys' fees not to exceed forty percent (40%) of the Settlement Amount and reimbursement of Litigation Expenses not to exceed $225,000.00. In their Motion for an award of attorneys' fees and Litigation Expenses, Class Counsel requested attorneys' fees of forty percent (40%) of the Settlement Amount and reimbursement of past and future Litigation Expenses preliminarily calculated to be $163,422.81. At the Final Fairness Hearing, Class Counsel informed the Court

that it was able to reduce its total expense request to $130,488.66. This new expense request consists of $90,488.66 in past expenses and $40,000 in reasonably anticipated future expenses.

6.     Class Counsel is hereby awarded attorneys' fees in the amount of forty percent (40%) of the Settlement Amount (or $4,000,000.00), plus accrued interest, and a total of $130,488.66 in reimbursement of Litigation Expenses, which sums the Court finds to be fair and reasonable. The foregoing awards of fees and expenses shall be paid to Class Counsel from the Gross Settlement Fund, and such payment shall be made at the time and in the manner provided in the Stipulation, with interest from the date the Settlement Fund was funded to the date of payment at the same net rate that interest is earned by the Settlement Fund. The appointment and distribution among Plaintiffs' Counsel of any award of attorneys' fees shall be within Class Counsel's sole discretion.

7.     In making this award of attorneys' fees and reimbursement of Litigation Expenses, the Court makes the following findings of fact and conclusions of law in addition to those set forth above:

(a)     Plaintiffs initiated this action over three years ago by filing a class action complaint against Ward in this Court on November 12, 2010 (the "Action").

(b)     On November 22, 2010, Plaintiff filed his First Amended Petition, which, among other things, included additional facts and clarified the proposed class definition.

(c)     In the summer of 2013, the Settling Parties preliminarily agreed to settle this Action for $10 million. And, on October 1, 2013, the Settling Parties finalized their settlement agreement in the Stipulation.

(d)     On November 13, 2013, the Settling Parties filed their Preliminary Approval Motion, and Class Representative filed a supporting memorandum. The Court held a

hearing on the Preliminary Approval Motion and issued its Order Granting Preliminary Approval of Class Action Settlement, Approving Form and Manner of Notice and Setting Date for Hearing on Final Approval of Settlement (the "Preliminary Approval Order") on the same date. In the Preliminary Approval Order, the Court, among other things, certified the Class for settlement purposes; appointed Plaintiff as Class Representative; appointed Nix, Patterson & Roach, LLP ("NPR"), Barnes & Lewis, LLP ("B&L"), and Park, Nelson, Caywood, Jones, LLP ("PNCJ") as Class Counsel; preliminarily approved the Settlement and the form and manner of the notice campaign; directed the Settling Parties to disseminate the notice to the Class; appointed Rust Consulting, Inc. as Settlement Administrator and Wells Fargo, N.A. as Escrow Agent; and set a Final Fairness Hearing for February 13, 2014.

(e)     The Settlement value upon which the attorneys' fee calculation should be based in this case is $10 million. Pursuant to the terms of the Stipulation, Ward agreed to pay $10 million in cash, which is already on deposit, plus interest thereon, to be distributed to the royalty owners in Oklahoma Wells from which Ward sold gas during the Class Period.

(f)     Approximately 18,496 copies of the Notice of Proposed Settlement, Motion for Attorneys' Fees and Fairness Hearing (the "Notice") were disseminated to Class Members, stating that Class Counsel were moving for attorneys' fees not to exceed forty percent (40%) of the $10 million Settlement Amount and reimbursement of Litigation Expenses from the Settlement Fund in a total amount not to exceed $225,000.00. Class Representatives filed their Motion for Approval of Attorneys' Fees, Litigation Expenses and Case Contribution Award six (6) days prior to the deadline for objections in this Action. No objections were filed in opposition to final approval of the proposed

Settlement or to the requests for attorneys' fees, Litigation Expenses, or a Case Contribution Award. To the extent any objection was raised at the Final Fairness Hearing, such objection is overruled.

(g)     The Settlement in this case created a common fund of $10 million. Class Counsel who obtain a common fund settlement for a class are entitled to a reasonable attorneys' fee awarded from that fund on the theory that "persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at the successful litigant's expense." *Gottlieb v. Barry*, 43 F.3d 474, 482 (10th Cir. 1994) (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)). Oklahoma recognizes the propriety of contingent fee arrangements in class action cases. *Sholer v. State ex rel. Dept. of Public Safety*, 990 P.2d 294, 299 (Okla. Civ. App. Div. 3 1999). This is because, absent the possibility of substantial attorneys' fees, most attorneys would not assume the extensive risks associated with challenging large corporations. *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980).

(h)     In Oklahoma royalty underpayment class actions, courts, including this one, typically award attorneys' fees using the percentage of the fund approach at a rate of 40% of the fund. *Continental Resources, et al. v. Conoco*, Cases CJ-95-739 and CJ-2000-356, Aug. 22, 2005 Order at *8, District Court of Garfield County, Oklahoma (stating "[t]he fee percentage in these types of cases is typically 40% of the gross fund," and awarding 40% of $23 million fund); *see e.g., Drummond v. Range Res.*, CJ-2010-510, District Court of Grady County (40% of the $87.5 million settlement); *Tatum v. Devon Energy Corp.*, CJ-10-77, District Court of Nawata County, OK (April 18, 2013) (45% of $3.8 million fund); *Mitchusson v. EXCO*, CJ-2010-32, District Court of Caddo County,

Oklahoma (2012) (40% of the $23,5000,000 fund); *Taylor v. ChevronTexaco*, CJ-2002-204, District Court of Texas County, OK (2009) (40% of $12 million fund); *Brown v. Citation*, CJ-04-217, District Court of Caddo County, OK (2009) (40% of $5,250,000 fund); *Simmons v. Anadarko*, CJ-2004-57, District Court of Caddo County, Oklahoma (2008) (40% of the $155,000,000 fund); *Laverty v. Newfield*, CJ-98-06012, District Court of Tulsa County, OK (2007) (40% of $17,250,000 fund); *Lobo v. BP*, CJ-97-72, District Court of Beaver County, Oklahoma (2005) (40% of the $150,000,000 fund in a working-interest owner class action); *Velma-Alma v. Texaco*, CJ-2002-304, District Court of Stephens County, OK (2005) (40% of $27 million fund); *Kouns v. ConocoPhillips*, CJ-98-61, District Court of Dewey County, OK (2004) (42% of $4,300,000 fund); *Robertson v. Sanguine*, CJ-02-150, District Court of Grady County, OK (2003) (40% of $13,250,606 fund); *McIntoush v. Questar*, CJ-02-22, District Court of Major County, OK (2002) (40% of $1.5 million fund); *Rudman v. Texaco*, CJ-97-1E, District Court of Stephens County, OK (2001) (40% of $25 million fund).

(i)      Under the percentage of the fund method, Courts in Oklahoma may analyze the reasonableness of the requested fee under the factors set out in *Oliver's Sports Ctr., Inc. v. Nat'l Standard Ins. Co.*, 615 P.2d 291, 295 (Okla. 1980) and codified at Oklahoma Code of Civil Procedure §2023(G)(4)(e). Those factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions presented by the litigation; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount in controversy and the results obtained; (9) the experience,

6

reputation and ability of the attorney; (10) whether or not the case is an undesirable case; (11) the nature and length of the professional relationship with the client; (12) awards in similar causes; and (13) the risk of recovery in the litigation. OKLA. STAT. tit. 12, §2023(G)(4)(e); *see also Oliver's Sports Ctr.*, 615 P.2d at 295. In analyzing the reasonableness of the requested attorneys' fee here, the Court used these factors as guiding principles in conjunction with all other applicable law and precedent regarding the award of attorneys' fees in class actions in Oklahoma and in light of the evidence presented.

(j)  The Court finds that Class Counsel expended countless time and resources in prosecuting this action on behalf of the Class, analyzing leases, engaging in fact and expert discovery, overcoming dispositive motions, and ultimately achieving an outstanding Settlement through extensive negotiations with Ward. Of course, "[f]ees cannot fairly be awarded on the basis of time alone." *Oliver's Sports Ctr.*, 615 P.2d at 294. This is because "[t]he use of time as the sole criterion is of dubious value because economy of time could cease to be a virtue; and inexperience, inefficiency, and incompetence may be rewarded to the detriment of expeditious disposition of litigation." *Id.* Here, in the more than three years since this Action was filed, Class Counsel has displayed the efficiency and competency to be expected of experienced royalty class action attorneys.

(k)  The market rate for Class Counsel's legal services is a primary consideration in the determination of a reasonable percentage to be awarded from the common fund as attorneys' fees. *Millsap v. McDonnel Douglas Corp.*, No. 94-CV-633-H(M), 2003 U.S. Dist. LEXIS 26223, at *26 (N.D. Okla. May 28, 2003). Again, Oklahoma courts have

7

expressly recognized the propriety of contingent fee arrangements in class action cases. *Sholer*, 990 P.2d at 299. Here, Class Representative negotiated at arm's length and agreed to a forty percent (40%) contingency fee at the beginning of this case, reflecting the value Class Representative placed on the future success of this Action. Class Representative, who has a long-standing professional relationship with Class Counsel, fully supports Class Counsel's fee request. In addition, eight absent Class Members filed supporting affidavits with the Court endorsing the Settlement and the forty percent (40%) fee request.

(l) Additionally, the number of opt-outs, approximately three (3) Class Members, is *de minimus*. The extensive notice campaign undertaken in this Action resulted in 18,496 Notices being sent directly to Class Members representing approximately 98% of the Net Settlement Fund, and additional notice was provided by publication (both online and in newspapers). Still, only three Class Members opted out. These three Class Members represent approximately 0.0069% of the Net Settlement Fund to be distributed to the Class. Thus, the near absence of opt-outs supports Class Counsel's attorney's fee and expense request.

(m) The fact that courts in cases similar to this Action have awarded similar fees also supports the fee request. Again, attorneys' fees awarded in oil and gas class actions brought in Oklahoma State courts in recent years is especially informative. *See* ¶(h) *supra*.

(n) The amount involved and the substantial recovery obtained for the Class also support the fee request. Class Counsel achieved an excellent result for the Class, especially considering Ward's financial position and ability to pay. In light of the

8

Settlement, the Class will receive meaningful compensation for the alleged past royalty underpayments and, importantly, Ward will not be required to wind down its operations—an event that would be detrimental to all interested parties, since Ward and Class Members will benefit from Ward's future oil and gas production.

(o)     This Action posed difficult and highly complex issues of Oklahoma law, some of which were being litigated in multiple forums in Oklahoma (including state district and appellate courts, federal district and appellate courts, and the Oklahoma Corporation Commission) during the pendency of this Action. Had Class Counsel not achieved the Settlement, there would remain a significant risk that Class Representatives and the Class may have recovered less or nothing from Ward.

(p)     Class Counsel are highly experienced and skilled attorneys in oil and gas royalty underpayment actions and complex class action litigation and were well qualified to litigate the issues in this Action. Class Counsel has conducted the litigation and achieved the Settlement in good faith and with skill, perseverance and diligent advocacy. The favorable Settlement obtained in this Action is the direct result of Class Counsel's excellent work throughout the litigation and settlement negotiations.

(q)     The Action was actively prosecuted for almost three years and, in the absence of a settlement, would involve further lengthy proceedings with uncertain resolution of the complex factual and legal issues.

(r)     The Court finds an attorneys' fee award of forty percent (40%) of the $10 million Settlement Amount paid from the Gross Settlement Fund is appropriate in this case. The Court concludes the forty percent (40%) fee award is fair and reasonable under all of the circumstances and considering the applicable law and precedent and the evidence

9

presented.

8. As stated above, Class Representative and Class Counsel are awarded $ 130,488.66 in reimbursement of Litigation Expenses. The actual amount of Class Counsel's out-of-pocket expenses to date is approximately $101,681.41. However, Class Counsel has written off some of these expenses and only seeks to recover $90,488.66 in past expenses. But, because additional expenses may continue to be incurred through the remainder of the litigation, including additional expenses for administration and expert work, Class Counsel specifically requests reimbursement of an additional $40,000 in expenses. This brings the total request for Litigation Expenses to $130,488.66, which is much less than the $225,000.00 stated in the Notice. The Court concludes Class Counsel's expenses to date were necessary and reasonable to litigate and resolve the Action. Class Counsel submitted detailed expense charts demonstrating that all expenses were reasonable and were actually incurred in the prosecution of this Action on behalf of the Class. The magnitude and complexity of this case further supports the reasonableness of Class Counsel's expense request, as does the fact that Class Counsel wrote off thousands in expenses it deemed to be overhead or otherwise not properly chargeable to the Class. Moreover, the Court received no objections to the expense request. The Court also finds that Class Counsel should be reimbursed for any additional expenses actually incurred through the remainder of this Litigation, though the total reimbursement amount received by Class Counsel shall not exceed $225,000.00.

9. Finally, Class Representative is hereby awarded a Case Contribution Award of one percent (1%) of the $10 million Settlement Amount. In making this Case Contribution Award to be paid from the Settlement Fund, the Court makes the following findings of fact and conclusions of law:

10

(a)     The Notice stated that Class Representative would move for a Case Contribution Award of one percent (1%) of the Settlement Amount as compensation for his time and effort in the Litigation. Class Representative filed his Motion for Approval of Attorneys' Fees, Litigation Expenses and Case Contribution Award six (6) days prior to the deadline for objections in this Action. However, no objections were filed in opposition to this Request for a Case Contribution Award;

(b)     ⸳ Case contribution awards are meant to "compensate class representatives for their work on behalf of the class, which has benefited from their representation." *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 150 (S.D.N.Y. 2010). Oklahoma courts, including this one, commonly award case contribution awards of one percent (1%) of the gross common fund. *Drummond v. Range Res.*, CJ-2010-510, District Court of Grady County (2013) (awarding 1% of the $87.5 million settlement fund); *Brown v. Citation*, CJ-04-217, District Court of Caddo County, Oklahoma (2009) (awarding 1% of $5,250,000 settlement fund); *Velma-Alma Indep. Sch. Dist. No. 15 v. Texaco, Inc.* No. CJ-2002-304, District Court of Stephens County, Oklahoma (2005) (awarding 1-2% of total settlement amounts); *Robertson v. Sanguine, Ltd.*, No. CJ-02-150, District Court of Caddo County, Oklahoma (2003) (awarding 1% class representative fee); *Continental Resources, Inc. v. Conoco, Inc.*, No. CJ-95-739, District Court of Garfield County, Oklahoma (2005) ("Court awards to Class Representatives of 1% of the common fund are typical in these types of actions, with some awards approaching 5% of the common fund."); *Hitch Enters., Inc. v. Cimarex Energy Co.*, No. CIV-11-13-W (W.D. Okla. July 2, 2013) (awarding 1% of the settlement amount and holding "the incentive award sought by

11

[class representatives] is consistent with incentive awards in other royalty owner class actions litigated in Oklahoma.").

(c)    The Court finds Christopher Neal Cecil is entitled to a Case Contribution Award. Mr. Cecil, an individual royalty owner and Class Member, has been actively involved in this action since its inception. Mr. Cecil has contributed by producing documents, reviewing and approving drafts of all substantive pleadings prior to filing, communicating regularly with Class Counsel, monitoring and contributing to the settlement negotiations, and approving the terms of the Settlement. Mr. Cecil's efforts helped lead to a settlement that greatly benefits the Class, and he should be rewarded for those efforts. The Court concludes a Case Contribution Award is reasonable and should be awarded to Mr. Cecil;

(d)    Class Representative is hereby awarded a total of one percent (1%) of the Settlement Amount (or $100,000.00), which the Court finds to be fair and reasonable. The foregoing award shall be paid to Class Representative from the Settlement Fund, and such payment shall be made at the time and in the manner provided in the Stipulation, with interest from the date the Settlement Fund was funded to the date of payment at the same net rate that interest is earned by the Settlement Fund.

10.    There is no reason for delay in the entry of this Judgment and immediate entry by the Clerk of the Court is expressly directed pursuant to § 994 of the Oklahoma Code of Civil Procedure.

IT IS SO ORDERED this 13th day of Feb. 2014.

Wyatt Hill
Judge of the District Court

12

# EXHIBIT 20

**IN THE DISTRICT COURT OF GRADY COUNTY**
**STATE OF OKLAHOMA**

FILED IN DISTRICT COURT
Grady County, Oklahoma

SEP - 9 2013 ⏤4

Lois Foster, Court Clerk
By _____ Deputy

| | |
|---|---|
| JAMES A. DRUMMOND and | ) |
| MARK PARRISH, Personal Representative | ) |
| of the Estate of CHRIS PARRISH, | ) |
| | ) |
| *Plaintiffs,* | ) |
| | ) |
| v. | ) |
| | ) |
| RANGE RESOURCES CORPORATION, | ) |
| RANGE RESOURCES-MIDCONTINENT, | ) |
| LLC and RANGE PRODUCTION | ) |
| COMPANY, | ) |
| | ) |
| *Defendants.* | ) |

Case No. CJ-2010-510

## FINAL ORDER AWARDING ATTORNEYS' FEES, LITIGATION EXPENSES, AND CASE CONTRIBUTION AWARD

WHEREAS, this matter comes before the Court on Class Representatives' Motion for Approval of Attorneys' Fees, Litigation Expenses and Case Contribution Award wherein Class Representatives and Class Counsel seek an award of attorneys' fees equal to 40% of the $87,500,000 Settlement Amount, Litigation Expenses in the amount of $641,852.06 [which consists of $491,852.06 for past expenses and $150,000.00 for future administrative expenses], and a Case Contribution Award of 1% of the $87,500,000 Settlement Amount to be paid out of the Gross Settlement Fund;

WHEREAS, the Court conducted a hearing on the matter on September 9, 2013 (the "Final Fairness Hearing");

WHEREAS, the Court has considered all matters submitted to it at the Final Fairness Hearing and otherwise, the pleadings on file, the applicable law, and the record.

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.      The Court, for purposes of this Order, adopts all defined terms as set forth in the Settling Parties' Stipulation and Agreement of Settlement (the "Stipulation"), and incorporates them herein by reference as if fully set forth.

2.      The Court, for purposes of this Order, incorporates herein its findings of fact and conclusions of law from its Judgment Granting Final Approval of Class Action Settlement and Form and Manner of Notice as if fully set forth.

3.      The Settling Parties and Class Counsel provided the Court with abundant evidence in support of the Settlement, Class Counsel's requests for attorneys' fees and Litigation Expenses, and Class Representatives' request for a Case Contribution Award.  Specifically, the Settling Parties and Class Counsel filed dozens of docket entries, including:  seven (7) supporting affidavits (from Class Representatives and absent Class Members); multiple declarations (including declarations from mediator and former federal judge Layn Phillips, Class Counsel, and the Settlement Administrator); four (4) expert reports (on subjects ranging from damages calculations and the value of the Settlement to the propriety of Class Counsel's request for attorneys' fees); detailed legal memoranda, and other documents.  This evidence and the Settling Parties' final motions were submitted to the Court one week before the objection and opt-out deadline.

4.      The Court finds that all experts who submitted supporting declarations are qualified and reliable experts in their respective fields and provided relevant and compelling evidence.  There were no challenges or objections to the experts, their declarations, or the opinions contained therein. Class Representatives and Class Counsel's expert, Geoffrey Miller, a professor of law at New York University and the former law clerk to Justice Byron White of the United States Supreme Court, is a leading scholar on attorneys' fees in class actions

nationwide. Professor Miller submitted his opinion through his declaration in support of the Settlement, Class Counsel's requests for attorneys' fees and Litigation Expenses, and Class Representatives' request for a Case Contribution Award. The Court finds Professor Miller's opinion to be reliable and persuasive.

5. The Notice stated that Class Counsel would apply for an award of attorneys' fees in an amount not to exceed forty percent (40%) of the Settlement Amount to be paid from the cash proceeds of the Settlement and the reimbursement of Litigation Expenses in an amount not to exceed $900,000.00. In their Motion for an award of attorneys' fees and reimbursement of Litigation Expenses, Class Counsel requested attorneys' fees of 40% of the Settlement Amount, and stated that its expenses incurred to date were over $672,000.00, but only requested reimbursement for $524,612.57 of these expenses. Class Counsel also requested an additional $240,000 in anticipated future expenses for the continued administration of the Settlement and the costs of any appeals, bringing the total expense request to $764,612.57. By stipulation with the sole objector to the Settlement, and in order to avoid the delay of distribution to the Class of the settlement funds, Class Counsel agreed to reduce its total expense request from $764,612.57 to $641,852.06. This expense request consists of $491,852.06 in past out-of-pocket expenses, plus $150,000.00 in future expenses related to the continued administration of the Settlement and expert work.

6. Class Counsel is hereby awarded a total of $641,852.06 in reimbursement of Litigation Expenses, plus accrued interest, and attorneys' fees in the amount of 40% of the Settlement Amount (or $35,000,000.00), plus accrued interest, which sums the Court finds to be fair and reasonable. The foregoing awards of fees and expenses shall be paid to Class Counsel from the Gross Settlement Fund, and such payment shall be made at the time and in the manner

3

provided in the Stipulation, with interest from the date the Settlement Fund was funded to the date of payment at the same net rate that interest is earned by the Settlement Fund. The appointment and distribution among Plaintiffs' Counsel of any award of attorneys' fees shall be within Class Counsel's sole discretion.

7.     In making this award of attorneys' fees and reimbursement of Litigation Expenses to be paid from the Cash Settlement Fund, the Court makes the following findings of fact and conclusions of law in addition to those set forth above:

(a)     Plaintiffs initiated this action over two and a half years ago by filing a class action complaint against Range in this Court on December 7, 2010 (the "Action");

(b)     Upon Plaintiffs' Motion for Class Certification, the Court certified a class on February 19, 2013;

(c)     The Action ultimately settled in May 2013, resulting in the filing of Class Representatives' Motion for Approval of Attorneys' Fees, Litigation Expenses and Case Contribution Award;

(d)     The Settlement value upon which the attorneys' fee calculation should be based in this case is $87.5 million. Pursuant to the terms of the Stipulation, Range agreed to pay $87.5 million in cash, which is already on deposit, plus interest thereon, to be distributed to the royalty owners in Oklahoma Wells from which Range sold gas during the Class Period;

(e)     Approximately 8,998 copies of the Notice of Proposed Settlement, Motion for Attorneys' Fees and Fairness Hearing (the "Notice") were disseminated to Class Members, stating that Class Counsel were moving for attorneys' fees not to exceed 40% of the $87.5 million Settlement Amount and reimbursement of Litigation Expenses from

4

the Settlement Fund in a total amount not to exceed $900,000.00. Class Representatives filed their Motion for Approval of Attorneys' Fees, Litigation Expenses and Case Contribution Award seven (7) days prior to the deadline for objections in this Action. No objections were filed in opposition to final approval of the proposed Settlement and only one (1) objection was filed in opposition to the request for attorneys' fees and reimbursement of Litigation Expenses. That objection was withdrawn prior to the Final Fairness Hearing. To the extent any objection to the Settlement or to the requests for attorneys' fees, Litigation Expenses, or a Case Contribution Award remains, such objection is overruled;

(f)     The Settlement in this case created a common fund of $87.5 million. Class Counsel who obtain a common fund settlement for a class are entitled to a reasonable attorneys' fee awarded from that fund on the theory that "persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at the successful litigant's expense." *Gottlieb v. Barry*, 43 F.3d 474, 482 (10th Cir. 1994) (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)). Oklahoma recognizes the propriety of contingent fee arrangements in class action cases. *Sholer v. State ex rel. Dept. of Public Safety*, 990 P.2d 294, 299 (Okla. Civ. App. Div. 3 1999). Further, the Oklahoma Supreme Court has affirmed that the attorneys' fee awarded should bear a reasonable relationship to the amount in controversy. *Arkoma Gas Co. v. Otis Eng'g Corp.*, 849 P.2d 392, 394 (Okla. 1993). This is because, absent the possibility of substantial attorneys' fees, most attorneys would not assume the extensive risks associated with challenging large corporations. *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980);

5

(g)     In Oklahoma royalty underpayment class actions, courts, including this one, typically award attorneys' fees using the percentage of the fund approach at a rate of 40% of the fund. *Continental Resources, et al. v. Conoco*, Cases CJ-95-739 and CJ-2000-356, Aug. 22, 2005 Order at *8, District Court of Garfield County, Oklahoma (stating "[t]he fee percentage in these types of cases is typically 40% of the gross fund," and awarding 40% of $23 million fund); *see e.g.*, *Tatum v. Devon Energy Corp.*, CJ-10-77, District Court of Nawata County, OK (April 18, 2013) (45% of $3.8 million fund); *Mitchusson v. EXCO*, CJ-2010-32, District Court of Caddo County, Oklahoma (2012) (40% of the $23,5000,000 fund); *Taylor v. ChevronTexaco*, CJ-2002-204, District Court of Texas County, OK (2009) (40% of $12 million fund); *Brown v. Citation*, CJ-04-217, District Court of Caddo County, OK (2009) (40% of $5,250,000 fund); *Simmons v. Anadarko*, CJ-2004-57, District Court of Caddo County, Oklahoma (2008) (40% of the $155,000,000 fund); *Laverty v. Newfield*, CJ-98-06012, District Court of Tulsa County, OK (2007) (40% of $17,250,000 fund); *Lobo v. BP*, CJ-97-72, District Court of Beaver County, Oklahoma (2005) (40% of the $150,000,000 fund in a working-interest owner class action); *Velma-Alma v. Texaco*, CJ-2002-304, District Court of Stephens County, OK (2005) (40% of $27 million fund); *Kouns v. ConocoPhillips*, CJ-98-61, District Court of Dewey County, OK (2004) (42% of $4,300,000 fund); *Robertson v. Sanguine*, CJ-02-150, District Court of Grady County, OK (2003) (40% of $13,250,606 fund); *McIntoush v. Questar*, CJ-02-22, District Court of Major County, OK (2002) (40% of $1.5 million fund); *Rudman v. Texaco*, CJ-97-1E, District Court of Stephens County, OK (2001) (40% of $25 million fund).

(h)     Under the percentage of the fund method, Courts in Oklahoma may analyze the

6

reasonableness of the requested fee under the factors set out in *Oliver's Sports Ctr., Inc. v. Nat'l Standard Ins. Co.*, 615 P.2d 291, 295 (Okla. 1980). Those factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions presented by the litigation; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) whether or not the case is an undesirable case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar causes. *Oliver's Sports Ctr.*, 615 P.2d at 295. The Court notes that the provision of 12 Okla. Stat. § 2023, which codified these factors as mandatory requirements, was held unconstitutional and voided in its entirety on June 4, 2013 by the Oklahoma Supreme Court. *See Douglas v. Cox Retirement Properties, Inc.*, 302 P.2d 789 (Okla. 2013). However, in analyzing the reasonableness of the requested attorneys' fee here, the Court used these factors as guiding principles in conjunction with all other applicable law and precedent regarding the award of attorneys' fees in class actions in Oklahoma and in light of the evidence presented.

(i)     The Court finds that Class Counsel expended thousands of hours in prosecuting this action on behalf of the Class, engaging in substantial fact and expert discovery, overcoming dispositive motions, obtaining hard-fought class certification, and ultimately achieving an outstanding Settlement through grueling litigation and an intense mediation. Of course, "[f]ees cannot fairly be awarded on the basis of time alone." *Oliver's Sports Ctr.*, 615 P.2d at 294. This is because "[t]he use of time as the sole criterion is of dubious

7

value because economy of time could cease to be a virtue; and inexperience, inefficiency, and incompetence may be rewarded to the detriment of expeditious disposition of litigation." *Id.* Here, in the more than two and half years since this Action was filed, Class Counsel has displayed the efficiency and competency to be expected of experienced royalty class action attorneys.

(j)     The market rate for Class Counsel's legal services is a primary consideration in the determination of a reasonable percentage to be awarded from the common fund as attorneys' fees. *Millsap v. McDonnel Douglas Corp.*, No. 94-CV-633-H(M), 2003 U.S. Dist. LEXIS 26223, at *26 (N.D. Okla. May 28, 2003). Again, Oklahoma courts have expressly recognized the propriety of contingent fee arrangements in class action cases. *Sholer*, 990 P.2d at 299. Here, each Class Representative negotiated at arm's length and agreed to a 40% contingency fee at the beginning of this case, reflecting the value Class Representatives placed on the future success of this Action. Class Representatives fully support Class Counsel's fee request. And, Class Representative James A. Drummond, who is also an attorney, has a long-standing relationship with Class Counsel. In addition, five absent Class Members filed affidavits with the Court endorsing the 40% fee request;

(k)     Additionally, the number of opt-outs, approximately ten (10) Class Members, is *de minimus*. The extensive notice campaign overseen by Class Counsel resulted in 8,998 Notices being sent directly to Class Members representing at least 92% of the Net Settlement Fund, and additional notice was provided by publication (both online and in newspapers). Still, only ten Class Members opted out. These ten Class Members represent approximately 0.04 percent of the Settlement Amount. Thus, the near absence of opt-outs supports Class Counsel's attorney's fee and expense request.

8

(l)     That courts in cases similar to this Action have awarded similar fees also supports the fee request. Again, attorneys' fees awarded in oil and gas class actions brought in Oklahoma State courts in recent years is especially informative. *See* ¶(g) *supra*;

(m)     Former federal Judge Layn Phillips, who mediated the Settlement and is familiar with the strengths and weakeness of the parties' claims, stated his opinion that Class Counsel's request for 40% fee is fair and reasonable under the specific facts and circumstances of this case.   Class Representatives' expert, Professor Miller, an experienced academic in the subject of class action attorneys' fees, also expressed his expert opinion in support of the fee requested here;

(n)     The amount involved and the substantial recovery obtained for the Class also support the fee request.  Class Counsel achieved an excellent result for the Class.  If Range had prevailed on its statute of limitations defense, the best possible recovery for the Class in past principal would have been approximately $24.6 million.  The Settlement is more than three times this amount;

(o)     This Action posed complex issues. Had Class Counsel not achieved the Settlement, there would remain a significant risk that Class Representatives and the Class may have recovered less or nothing from Range;

(p)     Class Counsel are highly experienced and skilled attorneys in oil and gas royalty underpayment actions and complex class action litigation and were well qualified to litigate the issues in this Action. Class Counsel has conducted the litigation and achieved the Settlement in good faith and with skill, perseverance and diligent advocacy. The favorable Settlement obtained in this Action is the direct result of Class Counsel's excellent work throughout the litigation and settlement negotiations;

9

(q)    The Action was actively prosecuted for over two and a half years and, in the absence of a settlement, would involve further lengthy proceedings with uncertain resolution of the complex factual and legal issues; and

(r)    The Court finds an attorneys' fee award of 40% of the $87.5 million Settlement Amount paid from the Gross Settlement Fund is appropriate in this case. The Court concludes the 40% fee award is fair and reasonable under all of the circumstances and considering the applicable law and precedent and the evidence presented.

8.    As stated above, Class Representatives and Class Counsel are awarded $641,852.06 in reimbursement of Litigation Expenses. The actual amount of Class Counsel's out-of-pocket expenses to date is $750,514.20. However, Class Counsel only seeks to recover $491,852.06 in past expenses to date, which is less than their actual expenses. Because additional expenses may continue to be incurred through the remainder of the litigation, including additional expenses for administration and expert work, Class Counsel specifically requests reimbursement of an additional $150,000.00 in expenses. This brings the total request for Litigation Expenses to $641,852.06, which is substantially less than the $900,000.00 stated in the Notice. The magnitude and complexity of this case further supports the reasonableness of Class Counsel's expense request, as does the fact that Class Counsel independently chose to reduce its expense request by more than $150,000.00 when it filed its request for reimbursement on August 19, 2013. The Court concludes Class Counsel's expenses to date were necessary and reasonable to litigate and resolve the Action. Class Counsel submitted detailed expense charts demonstrating that all expenses were reasonable and were actually incurred in the prosecution of this Action on behalf of the Class. Moreover, the Court received only one objection to the expense request, which has been withdrawn. The Court also finds that Class Counsel should be

reimbursed for any additional expenses incurred through the remainder of this litigation, not to exceed $150,000.00, if such expenses are incurred.

9.       Finally, Class Representatives are hereby awarded a Case Contribution Award of 1% of the $87.5 million Settlement Amount. In making this Case Contribution Award to be paid from the Settlement Fund, the Court makes the following findings of fact and conclusions of law:

(a)       The Notice stated that Class Representatives would move for a Case Contribution Award of one percent (1%) of the Settlement Amount in the aggregate for Class Representatives. Class Representatives filed their Motion for Approval of Attorneys' Fees, Litigation Expenses and Case Contribution Award seven (7) days prior to the deadline for objections in this Action. In response, zero objections were filed in opposition to this Request for Case Contribution Award;

(b)       Class Representatives request a Case Contribution Award for Class Representatives James A. Drummond and Mark Parrish, personal representative of the estate of Chris Parrish, in the amount of 1% of the $87.5 million Settlement Amount;

(c)       Case contribution awards are meant to "compensate class representatives for their work on behalf of the class, which has benefited from their representation." *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 150 (S.D.N.Y. 2010). Oklahoma courts commonly award case contribution awards of 1% of the gross common fund. *Brown v. Citation*, CJ-04-217, District Court of Caddo County, Oklahoma (2009) (awarding 1% of $5,250,000 settlement fund); *Velma-Alma Indep. Sch. Dist. No. 15 v. Texaco, Inc.* No. CJ-2002-304, District Court of Stephens County, Oklahoma (2005) (awarding 1-2% of total settlement amounts); *Robertson v. Sanguine, Ltd.*, No. CJ-02-150, District Court of Caddo County, Oklahoma (2003) (awarding 1% class representative fee); *Continental Resources, Inc. v.*

11

*Conoco, Inc.*, No. CJ-95-739, District Court of Garfield County, Oklahoma (2005) ("Court awards to Class Representatives of 1% of the common fund are typical in these types of actions, with some awards approaching 5% of the common fund."); *Hitch Enters., Inc. v. Cimarex Energy Co.*, No. CIV-11-13-W (W.D. Okla. July 2, 2013) (awarding 1% of the settlement amount and holding "the incentive award sought by [class representatives] is consistent with incentive awards in other royalty owner class actions litigated in Oklahoma.").

(d)     The Court finds James A. Drummond is entitled to a Case Contribution Award. Mr. Drummond, an individual royalty owner and Class Member who also happens to be an attorney, has been actively involved in this action since its inception over two and half years ago. Mr. Drummond has contributed his knowledge and skill in the oil and gas industry, and as an attorney, has produced documents, reviewed and approved drafts of all substantive pleadings prior to filing, communicated regularly with Class Counsel, monitored and contributed to formal mediation sessions, and approved the terms of the Settlement. Mr. Drummond's efforts helped lead to a settlement that greatly benefits the Class, and he should be rewarded for those efforts. The Court concludes a Case Contribution Award is reasonable and should be awarded to Mr. Drummond;

(e)     The Court further finds Mark Parrish, as personal representative of the Estate of Chris Parrish, is entitled to a Case Contribution Award as well. Mr. Parrish, has actively participated in this litigation since becoming involved as Class Representative and continuing the efforts of his father, Chris Parrish, who passed away during the pendency of this Action. Specifically, both Chris and Mark Parrish reviewed pleadings, motions and other court filings, communicated regularly with Class Counsel, responded to

12

document requests and interrogatories, searched for and produced documents and monitored all mediation sessions. Based on the Parrishes' significant efforts and contributions in this case, the Court finds a Case Contribution Award is reasonable and should be awarded to Mark Parrish as personal representative of the estate of Chris Parrish; and

(f)     Class Representatives are hereby awarded a total of one percent (1%) of the Settlement Amount (or $875,000.00) in the aggregate, which the Court finds to be fair and reasonable.  The foregoing award shall be paid to Class Representatives from the Settlement Fund, and such payment shall be made at the time and in the manner provided in the Stipulation, with interest from the date the Settlement Fund was funded to the date of payment at the same net rate that interest is earned by the Settlement Fund.  The appointment and distribution among Class Representatives of any Case Contribution Award shall be within their sole discretion.

10.     There is no reason for delay in the entry of this Judgment and immediate entry by the Clerk of the Court is expressly directed pursuant to § 994 of the Oklahoma Code of Civil Procedure.

IT IS SO ORDERED this _9_ day of _SEPT_ 2013.

_____
Richard G. Van Dyck
District Judge

13

# EXHIBIT 21

# IN THE DISTRICT COURT OF CADDO COUNTY
## STATE OF OKLAHOMA

JENNIFER BROWN AND FRANCES JOHNSON, )
    FOR THEMSELVES AND ALL OTHERS )
    SIMILARLY SITUATED, )
                      )
           PLAINTIFFS, )
                      )         CASE NO. CJ-04-217
VS. )
                      )
CITATION OIL & GAS CORPORATION, )
                      )
           DEFENDANT. )



STATE OF OKLAHOMA
CADDO CO.
FILED
DEC 23 2009
At _____ o'clock _____ M.
OPAL CAROL FINCH, Court Clerk
By _____ Rhonda Bauer Deputy

## ORDER ON ATTORNEY FEES, LITIGATION EXPENSES AND CLASS REPRESENTATIVES FEE

This matter comes on for hearing this 23rd day of December, 2009, on Class Representatives' and Class Counsel's motion for attorney fees, litigation expenses and Class Representatives fee. All named parties were present and represented by counsel. After reviewing the motion and all related pleadings, having reviewed the evidence submitted, having heard the testimony and arguments presented today, and being fully advised in the premises, **THE COURT FINDS AND ORDERS AS FOLLOWS**:

### Notice and Objections:

1. Notice of this hearing was properly mailed to the Class Members with known valid mailing addresses and was published as required by this Court's previous order (see Report Concerning Notice, previously filed with the Court). The Court previously approved such notice and now finds that the notice to the Class of this hearing is proper and sufficient under 12 Okla. Stat. § 2023 (E), the Due Process Clause of the United States Constitution and the Due Process Clause of the Oklahoma Constitution.

- 1 -

2. The Court notes that with over 12,000 Class Members, only one (1) person filed an objection to the attorney fee request, and no one objected to the expenses that were incurred on behalf of the Class or to the requested Class Representatives fee. The sole objector did not appear at the hearing, nor did she submit any credible evidence for the Court to consider or add anything of benefit to the Class. As recently explained by the Oklahoma Court of Appeals in *Velma-Alma Independent School Dist. No. 15 v. Texaco, Inc.*, 2007 OK CIV APP 42, 162 P. 3d 238, ¶13, while written comments and objections can be submitted by class members, those class members must file objections in compliance with the order and notice of the settlement court, state their intent to appear at the fairness hearing, and appear **in person** or through their disclosed counsel at the hearing for their objection to be preserved. Without any credible evidence being presented by the one person who filed timely an objection, the Court finds that all evidence presented supports the requests of the Class Representatives and Class Counsel for the award of their requested fees and expenses.

**Class Counsel Fees:**

3. Class Counsel's efforts in this lawsuit began in late 2003 and early 2004 with an investigation that led to the filing of this lawsuit in February of 2004. Over the past five and a half years Class Counsel conducted extensive discovery, motion practice and other demanding prosecution of this case. The issues in this case have been aggressively advanced throughout the history of this case. A further overview of the history of this case can be gleaned from the Court Clerk's docket sheet and the court file. This Court granted class certification in this case only after it had reviewed extensive briefing, volumes of exhibits and arguments of counsel. Citation appealed the class certification decision and shortly

thereafter a settlement was reached by the parties. The appeal was held in abeyance, and this Court's jurisdiction to approve settlement was specifically confirmed by the appellate court.

4. Class Counsel and the Class Representatives have devoted thousands of hours of time and effort, and have paid large sums of money, to achieve a fair and reasonable settlement for the benefit of the Class. Class Counsel and the Class Representatives have borne the hardships of the litigation and the risk of potential loss solely on their own shoulders. To date, Class Counsel and the Class Representatives have received no compensation for their efforts or reimbursement of their expenses. Class Counsel and the Class Representatives now request that the contingent fee and expense reimbursement contract they negotiated be extended to the Class.

5. Class Counsel have made substantial time and labor commitments which have now inured to the financial benefit of the Plaintiff Class and which have resulted in the creation of a Common Fund of $5,250,000.00, plus accrued interest.[1]

---

[1] The Common Fund Doctrine is well recognized by the Oklahoma Supreme Court (as well as the United States Supreme Court). If the plaintiff and/or his counsel have **created, preserved, protected, or increased a common fund (or common property), or have brought into court** a fund in which others may share with him, a court, in the exercise of equitable jurisdiction, may order the allowance of attorney fees and litigation expenses to counsel.

> **The conceptual underpinnings for the chancery common-fund doctrine teach us that an equitable charge may be impressed in favor of its creator *when the fund is within the direct control of the court*. The "pre-existing fund" must be immediately subject to counsel-fee assessment, and the benefits conferred have to be traceable with some accuracy to each beneficiary. [Footnotes and citations omitted. Emphasis added.]**

*Oklahoma Tax Com'n v. Ricks* 1994 OK 115, ¶7-8, 885 P.2d 1336.

> It is well settled that ordinarily "a court in the exercise of equitable jurisdiction, will, in its discretion, order an allowance of counsel fees, or, as it is sometimes said, allow costs as between solicitor and client, to a complainant (and sometimes directly to the attorney) who at his own expense has maintained a successful suit for the **preservation, protection, or increase of a common fund, or of common property, or who has created at his own expense, or brought into court, a fund in which others may share with him.**" [Citations omitted. Emphasis added.]

*State ex rel. Board of Com'rs of Harmon Co. v. OTC*, 1944 OK 250, ¶4, 151 P.2d 797; *see also, Kellough v. Taylor*, 1941 OK 320, 119 P.2d 556.

- 3 -

6.    Under the Common Fund Doctrine, and in particular in a "class action" (which is one type of action that can create a common fund), the Court has the authority to extend contingency fee agreements entered into between the Class Representative and Class Counsel to the entire Class.

> **Contingent fee agreements may be appropriate in class action cases.** . . Many courts have held . . . that once a class is certified and a decision on the merits is had, **the trial court may decide whether to approve the contingent fee agreement, and whether to extend the contingent arrangement to all class members**. [Emphasis added.]

*Sholer v. State of Oklahoma*, 1999 OK CIV APP 100, ¶¶ 13-14, 990 P.2d 294.

7.    The Oklahoma Supreme Court recognizes the importance of contingent fees in our judicial system, especially in class actions.

> Although contingent fee contracts are subject to restrictions . . . such agreements have generally been enforced unless the contract is unreasonable. **Often contingent fee agreements are the only means possible for litigants to receive legal services ---- contingent fees are still the poor man's key to the courthouse door. The contingent fee system allows persons who could not otherwise afford to assert their claims to have their day in Court.** [Emphasis added. Footnotes omitted.]

*Sneed v. Sneed,* 1984 OK 22, ¶3, 681 P.2d 754.

8.    *Newberg on Class Actions* §14:6 (4th ed. 2002) recognizes that it is appropriate to award an attorney's fee based on a percent of the value of the common fund established for the benefit of the class.

9.    A review of other Oklahoma District Courts' orders reveals similar sound logic. In *Bridenstine v. Kaiser-Francis, et al.*, Case No. CJ-2000-1, District Court of Texas County, State of Oklahoma, ¶3, the Honorable Ronald Kincannon explained his rationale for using the percentage of fund method for determining the appropriate attorney's fee:

-4-

The percentage fee has important advantages to the Class in that it provides self-regulating incentives for efficiency. First, it compensates counsel on the real value of the services provided (the amount of benefit conferred). Second, the percentage approach awards efficiency. Not only is there no reward for inefficiency, there is a penalty due to the fact that, if the work is unnecessary, the lawyer has wasted his time. Third, the percentage method encourages counsel to go the extra mile. Counsel has an incentive to push beyond a "good" recovery to an "excellent" recovery. The Court certainly considers the existing Common Fund to be an excellent recovery to the Class Members. Thus, under this percentage approach, the interests of the Class and Class Counsel are consistent and aligned.

In *Brumley v. ConocoPhillips,* Case No. CJ-2001-5, District Court of Texas County, Oklahoma, Judge Zigler stated additional rationales for awarding the full percentage fee:

> **To award Class Counsel a lesser percentage of the Total Common Fund because the efforts of Class Counsel have created an exceptionally large Fund would amount to penalizing Class Counsel for their success which the Court is unwilling to do.** This Court makes no myth as to Class Counsel's attorney fee award herein. It is significant. Yet, it is reasonable and proper. It is fair and equitable. **Additionally, the common sense reality is, when the efforts of Class Counsel create an exceptionally large Total Common Fund for the benefit of the Class and if Class Counsel's fees awarded therefrom are greatly restricted, then forseeably [sic] so goes later access to the Courthouse for other potential and future class members.** From that common sense viewpoint and understanding it is all a matter of economics. So in conclusion, as in the many other class cases referenced herein, under this percentage approach as thoroughly addressed hereinabove, the interests of the Class and Class Counsel will be consistent and aligned.
>
> \* \* \*
>
> **Knowing the rewards for Class Counsel can be great, so travels the path of loss for Class Counsel if defeat is the end result. Financial, personal, and emotional devastation are the potential events for a very few members of this Profession willing and able to represent thousands of strangers in order to obtain monetary benefit for those strangers that otherwise, without question, is unattainable through known legal means. From this aspect, the potential rewards of a Class Counsel's success and the potential devastation realized of a Class Counsel's defeat must be considered with [an] open judicial mind.**

Emphasis added.

10. This Court finds that the efforts of Class Counsel created an exceptionally large total common fund for the benefit of the Class. The reasoning of the above-quoted Oklahoma courts on the award of attorney fees in cases such as the present action is compelling, and this Court adopts their reasoning in this case. The Court will not reduce Class Counsel's percentage of fees from the common fund because of the excellent success they achieved. To do so would effectively penalize Class Counsel for their success in this case and thereby restrict later access to the courthouse for potential class members in other cases who look to effective lawyers like Class Counsel in this case as their keys to the courthouse doors.

11. The Court finds that Class Counsel and the Class Representatives entered into contingency fee agreements whereby Class Counsel agreed to prosecute this action in exchange for receiving a fee of 40% of the gross recovery for the Class plus reimbursement of litigation expenses.

12. The Court finds that the 40% contingency fee percentage contained in the agreement between Class Counsel and the Class Representatives is within the typical range of contingency fee percentages for oil and gas class action litigation approved in this State.

13. The Court finds: (a) that the 40% contingency fee agreement between Class Counsel and the Class Representatives is fair and reasonable and should be, and is hereby, approved and extended to the members of the Class, and (b) that based upon the foregoing factors and reasoning, as well as the additional analysis described below, an attorney fee award of 40% of the gross Settlement Proceeds (as defined in Compromise and Settlement Agreement), together with accrued interest thereon, is a fair and reasonable amount of compensation to Class Counsel for establishing the Common Fund.

14. The Court has reviewed the detailed time records submitted by Class Counsel and finds that the time reflected in the record (in excess of 4,000 hours) was reasonably expended for the benefit of the Class. The Court has also reviewed the hourly rates of Class Counsel as set forth in the record and finds them to be reasonable and within the acceptable range in the legal community for this type of legal services. Thus, the Court further finds the base hourly fees in this case (hours X rates), prior to consideration of the enhancement factors under a "lodestar" approach, is over $1,600,000, which results in a lodestar multiplier of approximately 1.28 on an attorney fee award of 40%. A 1.28 multiplier is low for a case of this nature; however, it demonstrates the willingness of Class Counsel, in their zealous representation of the Class, to expend whatever time and effort is necessary to reach a good result, regardless of whether the attorney fee award becomes modest when compared to the time spend by the lawyers.

15. The Court considered the basic guidelines established by the Oklahoma Supreme Court set forth in *State ex rel. Burk v. City of Oklahoma City*, 1979 OK 115, 598 P.2d 659.[2] In *Burk,* the Supreme Court enunciated twelve factors to be considered by the District Court in assessing fees under the lodestar approach.

> A.  Time and labor required. Counsel have made substantial time and labor commitments which have now inured to the financial benefit of the Plaintiff Class.
>
> B.  The novelty and difficulty of the question. Class action issues are known to be difficult and vigorously contested. Furthermore, the oil and gas royalty issues involved in this case are also very complex.
>
> C.  The skill requisite to perform the legal services properly. The unique nature of this case, coupled with the issues, mandated that the Class be

---

[2] The Court recognizes that *Burk* was not a class action and that the equitable fund created by the attorneys' effort benefited only the City of Oklahoma City. The attorneys fee awarded in that case amounted to 100% of the equitable fund currently available and all of the benefit due the City for several years into the future.

-7-

represented by highly skilled counsel. To prosecute these claims against a large corporate defendant represented by highly capable defense counsel with extensive resources necessitated assembling a team of Class Counsel skilled in oil and gas litigation, as well as details of complex litigation. Counsels' qualifications, skills and experience are well known throughout the oil and gas legal community. Class Counsel are certainly highly skilled and capable counsel.

D.   The preclusion of other employment. Class Counsel are engaged in the on-going practice of law. Had Class Counsel not committed their resources to this case, Class Counsel could have accepted other matters, but did not. The prosecution of this case has very substantially reduced Class Counsel's opportunity for employment in other matters. In fact, the Barnes & Lewis law firm and The DeVore Law Firm declined substantially all new work for their longstanding oil company clients, all of which work would have been compensated on an hourly fee basis, in order to allow Class Counsel to devote more time to this case and others similar to it.

E.   The customary fee.   These types of cases (oil and gas class action cases), are handled on a contingent fee. The fee percentage in these types of cases is typically 40% of the gross fund.

F.   Whether the fee is fixed or contingent. Class Counsel entered into contingency fee agreements with the Class Representatives that provide for an attorneys' fee of 40% of the gross consideration received, as discussed in detail above. Counsel for the Class have represented the Class with vigor and without prior compensation of any kind for their time and have advanced over one hundred thousand dollars of litigation expenses out of their own pockets.

G.   Time limitations imposed by client or circumstances. Numerous time limitations were imposed on Class Counsel throughout the course of the proceedings. This Court imposed time limitations through case scheduling over the last five years that forced Class Counsel to perform services of great magnitude by certain dates. The schedules of the courts, witnesses and clients were also accommodated on a regular basis by Class Counsel. A case of the size and complexity existing here required the commitment of a large percentage of the total time and resources of the firms of Class Counsel and worked significant hardships as time went on. The circumstances of the case required the litigation to be vigorously pursued if an excellent recovery through settlement was to be achieved. Class Counsel, in fact, did vigorously prosecute the case and obtained excellent results for the Class.

H.   The amount involved and the results obtained. There can be no doubt that at the outset, Plaintiffs' Counsel had no assurance of any recovery. Considering all involved, the amount and terms of the settlement reflect the quality of the result and the outstanding benefits provided by Class Counsel to the Class. The Court considers this settlement to be an excellent result for the Class.

I.   Experience, reputation and ability of counsel. Class Counsel's qualifications, skill, experience, ability and reputation are well known throughout the oil and gas and complex litigation legal communities. Class Counsel are exceptional litigators.

J.   The undesirability of the case. Compared to most civil litigation attracting counsel to represent plaintiffs, this litigation clearly fits the initially "undesirable" test. Few law firms would be willing, or able, to risk investing the time and expenses necessary to prosecute this litigation. The Defendants were well-financed, and well represented. Certainly, the possibility of a recovery was a risky matter. In the end, the fees that Class Counsel will receive based on their contracted percentage, will result in a lodestar multiplier of just 1.28, a return above their normal hourly fees that would generally be insufficient to entice lawyers of the caliber of Class Counsel to take on a case like this.

K.   Nature and length of the professional relationship with the client. Class Counsel have various long-term relationships with various Class Members.

L.   Awards in similar cases. The awards in similar cases were discussed in detail in Class Counsel's motion, exhibits and testimony. The Court incorporates said discussion herein by reference. The Court finds that a 40% fee is customary in these types of cases.

16. In 1980, the Oklahoma Supreme Court followed and modified *Burk, supra,* to further instruct District Courts that counsel fees cannot be fairly awarded on the basis of time alone, but other factors, particularly the litigation risk factor, must be considered. See *Oliver's Sports Center, Inc. vs. National Standard Ins. Co.,* 1980 OK 120, 615 P.2d 291.

17. Based upon the Court's analysis of the *Burk* factors, the Court finds a reasonable fee in this case to be forty percent (40%) of the gross Settlement Proceeds, plus accrued

interest thereon (representing a lodestar multiplier on the base hourly fees of approximately 1.28, which is near the bottom of the range of reasonableness).[3]

**IT IS THEREFORE ORDERED** that Class Counsel be, and hereby are, awarded an attorney fee of forty percent (40%) of the gross Settlement Proceeds, plus accrued interest thereon.

## Expert Witness Fees, Litigation Expenses and Class Representatives Fee:

18. The Court, having reviewed the accounting records which detail the expert witness fees and litigation expenses incurred in pursuit of Class Claims, having heard testimony regarding the necessity of such expenditures in preparation of the case, and having no objections filed as to these expenses, finds that reasonable expert witness fees and litigation expenses were incurred in the amount of $127,840. 07.

19. The Court finds the Class Representatives have made substantial time and labor commitments to the Class, and have incurred serious legal and financial risks while pursuing this case on behalf of the Class, all of which resulted in obtaining an excellent benefit for the Class. The granting of a Class Representative fee is based upon equitable considerations discussed above which relate to a party's efforts in the creation of a common fund for the

---

[3] In appropriate cases where Class Counsel have created a large common fund, such as in the present case, multipliers of even 5 to 10 have been awarded. See, *Herbert Newberg*, Newberg on Class Actions (3rd), §14.03 (emphasis added):

> Courts applying the lodestar approach will often use large multipliers or monetary enhancements of the time/rate (lodestar) calculation in order to reach fee award results comparable to percentage of recovery fees. **Multiples ranging from one to four frequently are awarded in common fund cases when the lodestar method is applied. A large common fund award way warrant an even larger multiple.**[21]

> [Fn. 21] *See e.g., In re Beverly Hills Fire Litig*, 639 F. Supp. 915 (ED Ky 1986) (personal injury class action; **multiplier of 5 for lead counsel for contingency and superior trial skill**); *Wilson v. Bank of Am Natl Trust & Savs Assn*, No. 643872 (Cal Sup Ct Aug 16, 1982) (illegal use of escrow funds by lender for profit; noncontingent hourly rates of up to $150/hour and a **multiplier of up to 10 times** the hourly rate).

- 10 -

mutual benefit of a class. Court awards to Class Representatives of 1% of the common fund are typical in these types of class actions with recoveries of this magnitude. In this action, Class Counsel has recommended and requested a Class Representatives' fee of one percent (1%) of the gross Settlement Proceeds. The Court finds that compensation to the Class Representatives in the amount of one percent (1%) of the gross Settlement Proceeds (to be divided equally among the two Class Representatives) is fair and reasonable compensation for their services to the Class.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED** that (1) Class Counsel are awarded an attorney fee of forty percent (40%) of the gross Settlement Proceeds, plus accrued and accruing interest thereon until paid; (2) Class Counsel are also awarded reimbursement of litigation expenses in the amount of $127,840.07; and (3) Class Representatives are awarded fees in the amount of one percent (1%) of the gross Settlement Proceeds, to be divided equally among them.

IT IS SO ORDERED this 23rd day of December, 2009.

_____
The Honorable Richard Van Dyck
Judge of the District Court